UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | CIVIL ACTION NO: |
| Plaintiffs | * | 1:13-cv-00323 |
| | * | |
| v. | * | DISTRICT JUDGE |
| | * | MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| | * | MAGISTRATE JUDGE |
| Defendants | * | ZACK HAWTHORN |
| | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**REPLY MEMORANDUM OF SIGNAL DEFENDANTS
CONCERNING SIGNAL'S MOTION FOR PARTIAL DISMISSAL
FOR FAILURE TO STATE A CLAIM UNDER RULE 12(b)(6)**

MIDDLEBERG RIDDLE & GIANNA

*/s/ Jonathan M. Herman*
Jonathan M. Herman
(Texas Bar No. 24052690)
Middleberg, Riddle & Gianna
717 North Harwood, Suite 2400
Dallas, TX 75201
Tel: (214) 220-6300
Fax: (214) 220-2785

Attorneys for Signal International LLC,
Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.

1

**TABLE OF CONTENTS**

                                                                                                **PAGE**

I.     DECLINING SUPPLEMENTAL JURISDICTION OF NOVEL CLAIMS………1

II.    CHOICE-OF-LAW DETERMINATIONS ARE NECESSARY……………………4

III.   SECTIONS 1981 AND 1985………………………………………………………8

IV.   CONCLUSION……………………………………………………………………8

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                  **Page**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)…………..1,2,6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167
L. Ed. 2d 929 (2007)……………………………………………………………………..…..1,2,6

*Boureslan v. Aramco*, 892 F.2d 1271, 1272 (5th Cir. 1990) (en banc)……………..…………..…7

*Brookshire Brothers Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 603
(5th Cir. 2009)………………………………………………………………………………………3

*Carroll v. Jaques*, 927 F. Supp. 216, 219 (E.D.Tex. 1996)……………………………….….…4

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2011)…...………………….....6

*David v. Signal Int'l, LLC*, 2012 U. S. Dist. LEXIS 114247, *110
(E.D.La. Jan. 4, 2012)………………………………………………………………........………6

*EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 111 S. Ct. 1227,
113 L. Ed. 2d 274 (1991)…………………………………………………………………...7,8

*Highland Crusader Offshore Partners LP v. Lifecare Holdings, Inc.*,
377 Fed. Appx. 422, 425-26 (5th Cir. 2010)…………………………………………………….4

*Infineon Technologies v. Volterra Semiconductor Corp.*,
2013 U.S. Dist. LEXIS 17501, *4 (N.D.Cal. Feb. 7, 2013)……………………………….…..2,6

*Intelligender, LLC v. Soriano*, 2011 U.S. Dist. LEXIS 26301,
*46 (E.D.Tex. March 15, 2011)……………………………………………………………….5,7

*Kiobel v. Royal Dutch Petroleum Co.*, -- U.S. --, 133 S. Ct. 1659,
1662, 185 L. ed. 2d 671 (2013)7……………………………………………………………….7,8

*National Union Fire Ins. Co. v. American Eurocopter Corp.*, 692 F.3d 405,
408 (5th Cir. 2012)……………………………………………………………………….…...5

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp*., 512 F.3d 137, 141 (5th Cir. 2007)……..…4

*Romero v. Drummond Co., Inc.*, 552 F.3d 1303, 1318 (11th Cir. 2008)………………………..3

*The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680 (Tex. 2006)……………..7,9

*Thule Drilling ASA v. Schimberg*, 290 Fed. Appx. 745, 746 n. 1 (5th Cir. 2008)……………...4

*Turner v. Americahomekey, Inc.*, 2013 U.S. App. 3729, \*5-\*6 (5th Cir. 2013)……………...1,2

*Volkswagen, A.G v. Hon. Rogelio Valdez, Judge*, 909 S.W.2d 900, 903 (Tex. 1995)………..7,9

**Statutes**

28 U.S.C. § 1367(a)……………………………………………………………………………..1

28 U.S.C. § 1367(c)……………………………………………………………………….2,3,9

42 U.S.C. § 1981……………………………………………………………........................8

42 U.S.C. § 1985……………………………………………………..……….……………8

16 Moore's Federal Practice, §106.05[4] (Lexis 2013)………………………………………3

**Rules**

Local Rule CV-7(a)(1)…………………………………………………………………………..1

Local Rule CV-7(f)……………………………………………………………………………1

Fed.R.Civ.P. 12(b)(6)……………………………………………………………...….…1,3,4,5,8

**MAY IT PLEASE THE COURT:**

Defendants, Signal International, LLC ("LLC"), Signal International, Inc. ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal"), pursuant to LR CV-7(a)(1) & (f), respectfully respond and reply to "Plaintiffs' Response in Opposition to Motion of Signal Defendants to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)" (Doc. #22) (hereinafter, "Opposition"). There are, in the Opposition, several, material errors deserving of a response.

**I.      DECLINING SUPPLEMENTAL JURISDICTION OF NOVEL CLAIMS**

One such error occurs on pages 13-14 of the Opposition, where plaintiffs argue that Signal's Rule 12(b)(6) "provides no basis for dismissing Plaintiffs' Common Law Claims" because, even if Signal is correct in suggesting that the FAC does not set forth a plausible basis for concluding that the FAC's pendent claims are indeed based on state law, federal courts regularly hear suits involving foreign law. *See* Opposition, p. 13. Such an argument begs the question. Pursuant to ***Twombly***, ***Iqbal***, and their Circuit progeny, the dispute is whether ¶ 10 of the Complaint is plausible when it states: "This Court has supplemental jurisdiction over the causes of action ***based on state law*** pursuant to 28 U.S.C. § 1367(a), as the state law claims arise out of the same nucleus of operative facts which support the federal claims." ***Cf***. Doc. #1, ¶ 10 (Emphasis added). Paragraph 10 states a legal conclusion, and "'Rule 12(b)(6) . . . 'authorizes a court to dismiss a claim on the basis of a dispositive issue of law.'" ***Turner v. Americahomekey, Inc.***, 2013 U.S. App. LEXIS 3729, *5-*6 (5th Cir. 2013).

Such a dispositive issue of law is that if the pendent claims are, in fact, by virtue of the law-choosing process, ***not*** based on, for example, Texas law, then the FAC sets forth no plausible basis, as a matter of law, for concluding that the plaintiffs are entitled to recover

1

compensatory and punitive damages from Signal as the result of fraud, negligence or breach of contract *on the basis of* state law. Based, therefore, on *Turner* and *Twombly* and *Iqbal*, the pendent claims deserve dismissal. *Cf.*, *e.g.*, Doc. #1, ¶¶ 273-274 (claim for relief concerning fraud and negligent misrepresentation).[1]

It is plaintiffs who bear the responsibility of setting forth, in accordance with *Twombly* and *Iqbal*, the parameters of their claims. *Infineon Technologies v. Volterra Semiconductor Corp.*, 2013 U.S. Dist. LEXIS 17501, *4 (N.D.Cal. Feb. 7, 2013) (since pleader bears burden of proving its claims, pleader "is required to set forth, in accordance with *Iqbal* and *Twombly*, the parameters of its claims."). If the plaintiffs have failed to set forth plausibly a basis for concluding that state law applies to their pendent claims, this is a responsibility the plaintiffs did not discharge and did not at their peril.

Second, on page thirteen (13) of the Opposition, plaintiffs also say, "Even if this Court decides Indian law applies, this Court remains the proper forum for resolving Plaintiffs' Common Law Claims." The truth is that significant questions surround the issue of whether the Court would ever reach claims based on the law of India considering 28 U.S.C. § 1367(c) and the jurisprudence construing it.

The issues arising under § 1367(c) are largely beyond the ken of this memorandum. Were the Court, however, to conclude that the law governing the pendent claims is the indigenous law of the nation in which representations were made to a foreign national, the Court could invoke § 1367(c)(4) and declare that the associated foreign policy and international relations considerations persuade the Court that exceptional circumstances justify declining the invitation

---

[1] "273. As a direct and proximate result of Defendants' knowing, willing, intentional, and/or negligent actions, Plaintiffs have been injured. 274. Plaintiffs are entitled to recover compensatory and punitive damages in an amount to be proven at trial."

to exercise jurisdiction over the pendent claims. *See* 16 Moore's Federal Practice, § 106.05[4] (Lexis 2013). According to a leading treatise on federal practice, this Court is authorized to so declare without regard to whether the federal claims have been dismissed, *see id*., though the Court could and probably would wish to invoke, also, the so-called common law factors the Fifth Circuit discussed in ***Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.***, 554 F.3d 595, 601-602 (5th Cir. 2009) relative to § 1367(c), namely, "judicial economy, convenience, fairness, and comity."

Or the Court could, on the basis of, for example, ***Brookshire Bros. Holding, Inc.***, *supra*, at 601-602, invoke, under § 1367(c)(1), "novel or complex issue of state law" and declare the questions raised, questions that incline the Court to carry the Rule 12(b)(6) issues with the case. The Court could sever the pendent claims in order to await determination of the federal claims and then and only then consider whether to exercise jurisdiction over the pendent claims. ***Cf***. ***Romero v. Drummond Co., Inc.***, 552 F.3d 1303, 1318 (11th Cir. 2008).[2]

In either case, there is no merit to the glibness with which the Opposition seemingly embraces Indian law and then opines that "this Court remains the proper forum for resolving Plaintiffs' Common Law Claims." *See* Opposition, p. 13.

---

[2] "The plaintiffs contend that the district court abused its discretion when it declined to exercise supplemental jurisdiction over their claim of wrongful death under Colombian law, but we disagree. The supplemental jurisdiction statute permits district courts to decline supplemental jurisdiction when 'the claim raises a novel or complex issue of State law.' 28 U.S.C. § 1367(c)(1). The district court concluded that the Colombian law claim met that requirement. After extensive briefing of this issue, the district court was unable to reconcile conflicting translations of Colombian legal precedents, to 'navigate the complexities of the parties' submissions,' or 'to discern . . . the Colombian law requisites for a wrongful death claim.' The conclusion of the district court that the claim raised complex issues is supported by the record, and the court was well within its discretion to decline jurisdiction over that claim."

3

## II.     CHOICE-OF-LAW DETERMINATIONS ARE NECESSARY

In the Opposition, the most marked and fundamental error concerns the contention, based on District Court decisions from the Fourth and Eighth Circuits, that "a choice of law analysis is entirely premature at the threshold stage of a Rule 12(b)(6) motion to dismiss." *See* Opposition, p. 8. In the Fifth Circuit, the breadth of the jurisprudence proving this contention incorrect is impressive, beginning with the Fifth Circuit's decisions in *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007), *Highland Crusader Offshore Partners LP v. Lifecare Holdings, Inc.*, 377 Fed. Appx. 422, 425-26 (5th Cir. 2010) and *Thule Drilling ASA v. Schimberg*, 290 Fed. Appx. 745, 746 n. 1 (5th Cir. 2008). They prove that there is no sense in which a choice-of-law analysis is, at this time, premature.

In *Thule*, for example, the Fifth Circuit said:

> Where, as here, federal jurisdiction is established owing to the diversity of the parties[3], 'federal courts . . . apply state substantive law and federal procedural law.' We also apply the choice of law rules of the forum state. The district court provided no discussion relating to choice of law rules, although all of the activity forming the basis of this suit appears to have occurred in foreign settings. Because both parties based their Rule 12(b)(6) arguments on Texas law, we assume that the district court applied Texas law. We should note, however, that Texas applies the 'most significant relationship' test for choice of law determinations, which, given the facts underlying this case, adds to our uncertainty about the basis for the district court's decision.

*See Thule*, *supra*, at 746 n. 1 (internal citations omitted and emphasis added).

This is language proving the impropriety of the contention that choice-of-law determinations have no place in Rule 12(b)(6) decision-making. Similarly, at the District Court level in this Circuit, innumerable decisions, *see*, *e.g.*, *Carroll v. Jaques*, 927 F. Supp. 216, 219

---

[3] As Signal discusses below, when pendent state law claims are presented on the basis of § 1367, there is no substantive difference whatever in the applicable choice-of-law rule: *Klaxon*, or a *Klaxon* like effect, governs.

4

(E.D.Tex. 1996) (carrying out, in response to Rule 12(b)(6) motion, choice of law analysis to determine which state's law governed statute of limitations question in malpractice action), explicitly or implicitly refute the suggestion that choice-of-law determinations have no place in Rule 12(b)(6) decision-making. A shining example of this law is *Intelligender, LLC v. Soriano*, 2011 U.S. Dist. LEXIS 26301, *46 (E.D.Tex. March 15, 2011).

In *Intelligender*, a Rule 12(b)(6) motion forced the Court to determine, at the "threshold" stage, the validity of a defamation claim. *See id.*, at *46. The Court noted the foreign site of a critical event and remarked that foreign law would therefore apply "unless Texas has the more significant relationship." *Id*. The Court confessed that it actually was "not convinced that Texas law necessarily applies for the defamation claim." *Id*. However, the Court added that the parties had disappointed it by not briefing the problem, saying: "But neither party has performed the necessary choice of law analysis nor has either party explained how Chilean civil defamation law may apply in this case." *Id*. The Court proceeded to discuss the applicability of the conflicts rules of the State of Texas, which are informed by the Restatement. *Id*. *See also National Union Fire Ins. Co. v. American Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012). The *Intelligender* Court reviewed the pertinent factors. Next, the Court regretted the fact that it lacked the information required to carry out the required analysis. *Id*. The *Intelligender* Court continued: "the parties have not briefed the choice of law issue." *Id*. Ultimately, the Court dismissed the Rule 12(b)(6) argument on the basis that the party presenting the argument bore the burden of proof on what was, in actuality, an affirmative defense, one the mover had not presented adequately. *See id.*, at *47.

Here, the situation is reversed. It is undisputed that fraud and negligence and breach of contract theories allocate the burden of proof to the person claiming fraud and negligence and

5

contract breach. *See*, *e.g.*, *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 825 (Tex. 2011).[4] Thus here, relative to such claims, the burden as to plausibility falls squarely on those pleading the application of state law, not on Signal. *See Infineon Technologies v. Volterra Semiconductor Corp.*, 2013 U.S. Dist. LEXIS 17501, *4 (N.D.Cal. Feb. 7, 2013).[5]

It is they who therefore bear the risk of failing to adequately brief the reasons for concluding that the pendent claims are indeed plausibly based on Texas law. Nor are questions of Indian law purely academic. To the contrary, under the Indian Contracts Act and the jurisprudence construing it, a contract cannot be enforced if its enforcement would violate the law or public policy of India. The first court found that there is significant evidence in this litigation of "a plaintiff's own complicity in doing whatever was necessary to enter this country," by being "willing to misrepresent the truth during [consular] interviews . . ." *See David v. Signal International, LLC.*, 2012 U.S. Dist. LEXIS 114247, *109-*111 (E.D.La. Jan. 12, 2012).[6]

There are accordingly significant questions in this litigation concerning whether the law of India would provide *any* remedy to these individuals for negligent misrepresentation, fraud or breach of contract.

---

[4] "Cruz correctly notes that the DTPA did not codify the common law, and that one of its primary purposes is 'to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit.'" (Citation omitted).

[5] "Although the scope of such declaratory relief arguably is defined by the claims as set forth in Infineon's Second Amended Complaint, Volterra bears the burden of proof on its counterclaims, and, accordingly, the Court finds Volterra is required to set forth, in accordance with Iqbal and Twombly, the parameters of its claims."

[6] "Each plaintiff who came to the United States had to apply for an H-2B temporary visa in order to enter the country. Some plaintiffs like Dhananjaya had previously worked in the United States under the temporary H-2B guest-worker program and therefore must have understood the temporary nature of the visa. *Plaintiffs understood that they could not divulge to consular staff that they were expecting to get green cards or to stay in the United States permanently. Arguably, Plaintiffs had to be willing to misrepresent the truth during those interviews and some presumably did just that.* . . . A jury could find, for any given individual plaintiff, that given the nature of green cards, the significant money that Defendants were demanding, *and a plaintiff's own complicity in doing whatever was necessary to enter this country*, that the injuries alleged were not proximately caused by Defendants' conduct." (Emphasis added).

These are not, as the plaintiffs would have it, unimportant questions in this case.[7] The contrary is true; the question of law choice is accordingly fundamental. *See Intelligender*, *supra*. And while the plaintiffs argue that *Boureslan* is in this instance distinguishable and not authority for dwelling on the respect that American courts have for the right of nations to regulate conduct within their own borders as a fundamental attribute of their sovereignty, the Texas Supreme Court's decision in *The Coca-Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 680 (Tex. 2006) indicates that Texas sees the issue the same way. The Court said explicitly that it is an "especially sensitive matter for a jurisdiction to extend its laws governing economic competition beyond its own borders." *Id*. *Cf*. *Boureslan v. Aramco*, 892 F.2d 1271, 1272 (5th Cir. 1990) (en banc) ("respect for the right of nations to regulate conduct within their own borders [as] a fundamental concept of sovereignty . . . [is] not lightly [to be] tossed aside.").[8]

Signal therefore maintains that the distinction the plaintiffs have tried to draw between this case and *Boureslan* is unconvincing and that, especially for a federal district court, there are a great many reasons for the Court to be mindful of the principle that cases like this one present questions of international comity that are not cavalierly to be tossed aside, as the plaintiffs would have the Court do.

In urging the Court to be more mindful of comity, Signal relies on *EEOC v. Arabian American Oil Co.*, which affirmed *Boureslan* and *Kiobel v. Royal Dutch Petroleum Co.*, both of

---

[7] *Cf*. *Volkswagen, A.G v. Hon. Rogelio Valdez, Judge*, 909 S.W.2d 900, 903 (Tex. 1995) (in products liability action, granting writ of mandamus against Judge who "failed to balance the interests of the foreign sovereign with those of the real parties in any respect. In fact, the trial court rejected any consideration of German law. This was an abuse of discretion.").

[8] Plaintiffs try to distinguish *Boureslan* based on the fact that the plaintiff was physically located in Saudi Arabia, but the Fifth Circuit explicitly acknowledged that Boureslan argued that he was working for an American employer, which is analogous to the arguments of the plaintiffs in the present case. This is a factor that lessens the force of the attempt to distinguish *Boureslan* from the present action.

7

which, in different contexts, examine the delicacy of the foreign relations implications of the choice-of-law concerns plaintiffs minimize.[9]

### III.  SECTIONS 1981 AND 1985

Lastly, Signal cannot quite make out whether the plaintiffs have conceded, unequivocally, that they are *not* alleging that Signal directly or indirectly violated § 1981 and § 1985 abroad. Signal is uncertain because of a statement, for example, on page 7 of the Opposition, suggesting that Signal has implied, or said, with regard to the civil rights claims, that "the Complaint refers only to facts that occurred abroad." *See* Doc. #22, p. 7.

Since that statement is so egregiously untrue given the number of times Signal stressed that its Rule 12(b)(6) argument only concerned the inappropriateness of applying § 1981 and § 1985 extraterritorially; reading between the lines, Signal has the sense that the plaintiffs are reserving the right to argue that Signal directed others to engage in conduct abroad that the plaintiffs claim violated § 1981 and § 1985.

The argument of the plaintiffs is that because the direction originated from an American location, one associated with Signal, Signal's direction is, or was, actionable, under § 1981 and of § 1985. Signal contends that such an argument is unequivocally extraterritorial and Signal moves the Court to so rule and Order accordingly.

### IV.  CONCLUSION

Texas' political leaders, its Governor, members of the Legislature, often make statements that indicate that they would likely be troubled by the contention that statements made to Indian

---

[9] ***EEOC*** addresses, for example, the desire to "to protect against unintended clashes between our laws and those of other nations which could result in international discord." ***EEOC v. Arabian American Oil Co.***, 499 U.S. 244, 248, 111 S. Ct. 1227, 1230, 113 L. Ed. 2d 274 (1991). Similarly, ***Kiobel v. Royal Dutch Petroleum Co.***, -- U.S. --, 133 S. Ct. 1659, 1662, 185 L. ed. 2d 671 (2013) mentions "the danger of unwarranted judicial interference in the conduct of foreign policy . . . magnified . . . because the question is not what Congress has done but instead what courts may do."

8

nationals in India or the UAE at the time of their making were nonetheless governed, in that foreign setting, by Texas law, owing to a connection to a Texas industry. More importantly, such statements are echoed by opinions of the Texas Supreme Court like *Volkswagen* and *Coca-Cola*. Taken together, such factors furnish a basis for concluding that when the question is examined through the lens of, for example, § 6 of the Restatement (Second) of the Conflicts of Law, there is ample basis for determining that Texas state law does not apply to the pendent state law claims, notwithstanding the Complaint's allegations to the contrary, because *Volkswagen* and *Coca-Cola* indicate that the public policy of Texas matches the sentiments the Fifth Circuit expressed in *Boureslan* as a matter of state law. The present motion should therefore be granted across the board. In the alternative, the Court could declare the pendent claims dismissed on the discretionary basis spelled out in § 1367(c)(4).

Dated: August 22, 2013.

Respectfully submitted,

MIDDLEBERG RIDDLE & GIANNA

*/s/ Jonathan M. Herman*
Jonathan M. Herman
(Texas Bar No. 24052690)
Middleberg, Riddle & Gianna
717 North Harwood, Suite 2400
Dallas, TX 75201
Tel: (214) 220-6300
Fax: (214) 220-2785

Attorneys for Signal International LLC,
Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.

9

## CERTIFICATE OF SERVICE

      I hereby certify that on August 22, 2013, I electronically filed the foregoing Reply Memorandum concerning Motion to Dismiss Pursuant to Fed. R.Civ. P. 12(b)(6) on behalf of Signal International, LLC, Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P., with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

                                                          */s/ Jonathan M. Herman*

4824-2449-3333, v. 1