UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

REJI SAMUEL, et al                  *          Case No: 1:13-cv-0323
         Plaintiffs
                                        *

vs.                                       *
                                        *

SIGNAL INTERNATIONAL, LLC, et al,
         Defendants               *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(B)(2)
OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.,
AND GULF COAST IMMIGRATION LAW CENTER, L.L.C.,
AND
MEMORANDUM IN SUPPORT

May It Please the Court,

       Defendants, Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APC, and the Gulf South Immigration Law Center, LLC, (hereinafter referred collectively to as "Burnett", unless otherwise indicated)herewith move to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of jurisdiction over the person of the Burnett Defendants.

       Burnett submits that this Court lacks personal jurisdiction over these Defendants, the nationwide service provisions of RICO not dispensing with the requirements of Due Process, and none of these Defendants having sufficient minimal contacts with the state of Texas to justify the imposition of jurisdiction over their person.

RULE 12 (B)(2)- LACK OF PERSONAL JURISDICTION.

       Burnett was served in this matter on or about August 28, 2013. There is no assertion in the Complaint that personal jurisdiction exist over any of the Burnett Defendants pursuant to 18 U.S.C. 1965(b), but rather a conclusory allegation, based only upon an assertion of

"information and belief", that Burnett "has committed tortious conduct in Texas". Yet, nowhere in Plaintiffs 50 page 288 paragraph complaint or 37 page 216 row "Fraud Chart" is there any mention of Burnett doing anything in Texas, much less anything that might be plausibly construed as being tortious conduct in Texas.

Burnett submits that even had Plaintiffs requested or prayed that summons issue and process served on Burnett pursuant to 18 U.S.C. 1965(b), that the requirements of the constitution and Due Process must still be fulfilled. None of the Burnett defendants have or ever had sufficient minimal contacts to justify imposition of personal jurisdiction. Attached hereto as Exhibit 1 to this Motion is the affidavit of Malvern Burnett which establishes that Burnett has had no contacts with the state of Texas that would satisfy the Due Process requirements of the Fifth Amendment for purposes of asserting personal jurisdiction over Burnett in this matter.

Before a federal court asserts personal jurisdiction over a defendant in a case based on a federal statute or law, the court must determine whether the applicable statute "potentially confers jurisdiction" by authorizing service of process, and whether the exercise of jurisdiction comports with due process. Peay v. BellSouth Medical Asitance Plan, 205 F.3d 1206, at 2009 (10th Cir., 2000). The Tenth Circuit in BellSouth Medical, went on to note,

> While service of process and personal jurisdiction both must be satisfied before a suit can proceed, they are distinct concepts that require separate inquiries. (internal citations omitted). In the federal system, service of process is governed by Rule 4 of the Federal Rules of Civil Procedure. By contrast, "'[t]he requirement that a court have personal jurisdiction flows . . . from the Due Process Clause. . . . It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.'" Omni Capital Int'l, 484 U.S. at 104 (quoting Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)). More specifically, in federal question cases, personal jurisdiction flows from the Due Process Clause of the Fifth Amendment.

BellSouth Medical, supra at 1209-1210.

The United States Supreme Court in Insurance Corp of Ireland, Ltd v. Compagnie Bauxites Guinee, 456 U.S. 694, at 702-703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982), emphasized,

> The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual

liberty. Thus, the test for personal jurisdiction requires that "the maintenance of the suit . . . not offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).

The same is true as to the authority of a court pursuant to 18 U.S.C. 1965(b) to issue summons or have a defendant served. The requirements of Due Process, or that is "traditional notions of fair play and substantial justice", still must be met. In an unpublished decision, Gonzalez v. Bank of America Ins. Servs. Inc., No. 11-20174, decided December 12, 2011, (5th. Cir., 2011), involving a RICO case, the Fifth Circuit in a footnote although not needing to "explore the contours of RICO's jurisdictional procedures", did reference a Tenth Circuit decision, in which it felt that the "ends of justice" were not met and thus performed a traditional jurisdictional analysis.

> Because this ground for personal jurisdiction was waived, we need not explore the contours of RICO's jurisdictional provisions. Instead, we only consider whether jurisdiction is permissible under the traditional contacts analysis. See Cory v. Aztec Steel Building, Inc., 468 F.3d 1226, 1230-33 (10th Cir. 2006) (analyzing traditional contacts analysis after finding RICO does not support jurisdiction); World Wide Minerals, 296 F.3d at 1168-69 (analyzing minimum contacts analysis after finding waiver of jurisdiction under RICO).

Bank of America , supra, at pg 12, ft. 6.

In Cory the Tenth Circuit determined that 18 U.S.C. 1965(b) provided for nationwide service under RICO, but only if "the ends of justice were met". It found in Cory that the ends of justice were not met by haling non-resident defendants into Kansas. Informative, though, is the indication by the Tenth Circuit that had the "ends of justice" been met, it would have then been necessary to perform a due Process analysis of the exercise of jurisdiction over the person of the defendant.

> And in the current case, we have Cory's assertion that the ends of justice require nationwide service simply because he has sustained damages and litigation costs in Kansas. We conclude, as a matter of law, that such facts, standing alone, do not satisfy the "ends of justice" standard. Without federal statutory authorization for nationwide service, we need not proceed to the Fifth-Amendment inquiry.

Cory v. Aztec Steel Building, Inc., 468 F.3d 1226, at 1232-1233 (10th Cir., 2006). Emphasis added.

Pretermitting for now, the "ends of justice" issue, Burnett submits that a Due Process analysis herein establishes that personal jurisdiction over the Burnett Defendants is not proper. The Fifth Circuit in Moncrief Oil Intern. Inc. v. Oao Gazprom, 481 F.3d 309, at 311 (5th. Cir., 2007), affirmed the dismissal of a case based on the lack of personal jurisdiction over the defendant. It did so by performing a Due Process analysis

> In order for personal jurisdiction to satisfy Due Process requirements, a plaintiff must show that (1)the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2)the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." Int'l Shoe Co. v. Wash., 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir.1999).

Moncrief , supra at 311.

Herein, Plaintiffs' conclusory allegations, based only on the talimanic assertion of "upon information and belief",  that Burnett "committed tortious conduct in Texas"  are mere unsupported conclusions without any basis in fact. Quite the opposite is true, Burnett has never conducted business in Texas or ever purposefully availed himself of the privileges and protections of the state of Texas.  Burnett has never committed any acts in Texas, much less any tortious acts in Texas.

The affidavit of Malvern Burnett factually sets forth the totality of his contact with the state of Texas.  It establishes that Burnett does not have "substantial business contacts in Texas", and most certainly demonstrates that Burnett does not have "continuous and systematic" contacts with Texas that would confer general personal jurisdiction.  Likewise, his affidavit shows that he does not have "minimum contacts with Texas arising from or directly related to" Plaintiffs' claims sufficient to establish specific jurisdiction.  In short, the imposition of personal jurisdiction over Burnett in this case would be unreasonable in this case and would not comport with notions of "substantial justice and fair play".

In Moncrief , plaintiff asserted that one of the defendant's executives visited plaintiff at its facility in Texas to further negotiated parts of the contract there, which was a sufficient minimal contact to impose personal jurisdiction.  The Fifth Circuit found that visit insufficient

to impose personal liability on the defendant.

> The only remaining alleged contact for Zapsib is the 1997 visit of its executive, Mr. Nikiforov, to Texas. The visit, at the invitation of Moncrief, helped to further planning and negotiations, but no agreement was established during the trip. In Hydrokinetics, we found that the defendant's two physical visits to Texas did not create jurisdiction, in part because the defendant did not regularly do business in Texas, and because most of the negotiations appeared elsewhere. 700 F.2d at 1028-29. The same is true here, and Mr. Nikiforov's visit did not create jurisdiction.

Moncrief, supra at 313.

In Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, at 1029 (5th Cir., 1983) the Fifth Circuit likewise found that telecommunications, telefaxes, and letters to plaintiff in Texas was insufficient contacts to satisfy the due Process requirements.

Burnett submits that the conclusory statement, based only on a bare assertion of information and belief, that Burnett "has committed tortious conduct in Texas" is insufficient to raise a prima facie case of minimal contacts to support personal jurisdiction. On the other hand, the affidavit of Burnett definitively establishes that there are insufficient contacts with the state of Texas to impose personal liability on Burnett.

Lastly, given the mere conclusory allegations against Burnett throughout Plaintiffs' Complaint, without facts alleged to support such allegations, forcing Burnett to answer to such charges in Texas does not meet the "ends of justice" required in 18 U.S.C. 1965(b). As will be shown in further detail below, the only facts as to Burnett directly that were pled in the Complaint do not demonstrate any illegal activity or any conspiracy with any person, entity, or member of the alleged enterprises. Not one of the facts Burnett is alleged to have done constitutes an illegal activity.

The Fifth Circuit in recognized that under existing federal regulations it was permissible for non-immigrant visa applicants to be required to pay recruiter fees, legal fees, and travel costs. See Valdez-Baez v. Decatur Hotels, LLC, 622 F.3d 393 (5th. Cir., 2010). The Third Circuit in Zavala v. Wal Mart Stores Inc., 691 F.3d 527, (3rd Cir., 2012), held that as a matter of law the threat of deportation does not satisfy a determination of involuntary servitude, although there are no specific facts pled against Burnett that he ever threatened any Plaintiff with deportation.

In fact, the majority, if not all, of the allegations of any wrongdoing against Burnett is by way of simply being encompassed within the term "Defendant", with no specification of any particular acts or actions by Burnett that would constitute some actionable conduct.

Rather, the facts alleged as to Burnett show no more than what is expected of any attorney representing his clients, both the non-immigrant Indian workers, and Signal. It is not illegal, unethical, or even unusual in such an immigration practice to actually be considered representing both the immigration applicant and the sponsor. Attorneys are expected to confer with their clients, to determine what petitions, pleadings, or legal documents may be needed. Attorneys correspondwiththeir clients, make plans for filing documents, answer questions, and provide advise. Communications are conducted by telephone, e-mail, correspondence, and face to face meetings. Nothing in any of the factual statements concerning Burnett show anything more than what would typically be expected in an ongoing project to perform the work necessary to allow the Indian workers to legally enter and work in the United States.

There are no factual allegations of any conspiratorial meetings to engage in illegal conduct. There are no facts pled that support an allegation of mail or wire fraud. There are no facts pled that show a scheme to defraud or commit illegal acts. There are no factual assertions that support a claimof communications to further any such scheme ,by wires, telefax, facsimile or mail. In fact, there is no factual showing of any conspiracy, only conclusory allegations. Moreover, the conclusory allegations only include Burnett by lumping him generally into the category of "Defendants", without any specific claims as to Burnett.

To subject Burnett to the personal jurisdiction of this Court based on such unsupported conclusions, would not meet the ends of justice, especially considering that Burnett is already a party to an identical suit with all of the same allegations and causes of action asserted herein, David, et al, vs. Signal International, LLC, et al, Civ. No. 08-1220, Eastern District of Louisiana, filed on March 7, 2008, ("David ") ,a suit in which all Plaintiffs herein admit that they were once putative members and in which they could have filed individual actions. Further, some of the

named Plaintiffs are participating in a FLSA collective action against Signal as an additional cause of action in that case, and all would be considered similarly situated for purposes of that collective action. The point is that Plaintiffs causes of action against Burnett herein, could, and in fact, should, be pursued in the jurisdiction in which Burnett is subject to personal jurisdiction of the federal court. Burnett submits that to subject him to this suit in Texas, under the totality of the circumstances, and the speculative allegations against him would not meet the ends of justice test. To the contrary, it would be contrary to all notions of substantial justice and fair play.

CONCLUSION

Burnett submits that he was not served pursuant to the nationwide service of process provisions of RICO. Yet, even if he had, the Due Process requirements of the Fifth Amendment must still be met. Burnett does not have the minimal contacts with the state of Texas to justify imposition of personal jurisdiction over him in this case. Moreover, to impose personal jurisdiction on Burnett in this matter, given the spurious and conclusory allegations against Burnett, essentially being swept into a suit where anyone and everyone who had any tangential connection was named as a defendant, would not meet the requirement that the ends of justice be met, especially considering the ability of all the named Plaintiffs to simply join in the other non-FLSA causes of action already asserted in David.

This matter should be dismissed as all Burnett Defendants on the grounds that to do otherwise would violate the Due Process requirements of the Fifth Amendment, and would not further the ends of justice.

Wherefore, Burnett submits that this Court should dismiss Plaintiffs complaint against all Burnett Defendants for lack of personal jurisdiction.

Respectfully submitted,

s/ Timothy W. Cerniglia
Timothy W. Cerniglia (TX Bar# 00789930)

1521 St. Charles Avenue
New Orleans, Louisiana 70130
Office: 504-586-0555
Facsimilie: 504-586-0550
tcerniglia@cerniglialaw.pro

Attorney for Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C., and the Gulf Coast Immigration Law Center, LLC.

CERTIFICATE OF SERVICE

This is to certify that a copy of this motion has been served electronically on Plaintiffs and the signal Defendants with the Clerk of court using the CM/ECF system, and by placing a copy of same to their attorneys of record by placing a copy of same in the mail properly addressed and postage prepaid, this 10$_{th}$ day of September, 2013.

s/ Timothy W. Cerniglia


1521 St. Charles Avenue
New Orleans, Louisiana 70130
Office: 504-586-0555
Facsimilie: 504-586-0550
tcerniglia@cerniglialaw.pro

Attorney for Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C., and the Gulf Coast Immigration Law Center, LLC.

CERTIFICATE OF SERVICE

This is to certify that a copy of this motion has been served electronically on Plaintiffs and the signal Defendants with the Clerk of court using the CM/ECF system, and by placing a copy of same to their attorneys of record by placing a copy of same in the mail properly addressed and postage prepaid, this 10$_{th}$ day of September, 2013.

s/ Timothy W. Cerniglia