UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | Case No: 1:13-cv-0323 |
| Plaintiffs | * | |
| | * | |
| vs. | * | |
| | | |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(B)(6)
OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.,
AND GULF COAST IMMIGRATION LAW CENTER, L.L.C.,
AND
MEMORANDUM IN SUPPORT

May it Please the Court,

Defendants, Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APC, and the Gulf South Immigration Law Center, LLC, (hereinafter referred collectively to as "Burnett", unless otherwise indicated)herewith move to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6).

Burnett asserts that Plaintiffs' complaint fails to state a claim against Burnett for which relief can be granted, in that Plaintiffs' allegations against Burnett contain mere conclusions and recitals of statutory language, without any basis in fact, that the foundation of the federal causes of action and predicate acts under RICO asserted against Burnett in Plaintiffs' complaint rests almost entirely on the erroneous conclusion that being required to work under the threat of deportation constitutes involuntary servitude. Further, as to the alleged state based causes of action, the Complaint establishes that all possible statute of limitations have lapsed, the states

of Texas, Louisiana, and Mississippi not recognizing cross jurisdictional tolling of state statute of limitations by the filing of a federal class action where class certification was denied.

### RULE 12(B) - FAILURE TO STATE A CLAIM

Plaintiffs' complaint against Burnett alleges federal causes of action under the Trafficking Victims Protection Reauthorization Act of 2003, 18 U.S.C. 1589 and 18 U.S.C. 1590, (TVPA), 18 U.S.C. 1962(c) and (d) (RICO), and 42 U.S.C. 1985 (KKCA), and assert state claims of fraud and negligent misrepresentation, and breach of contract. Despite a 69 page complaint and 52 pages of an addendum, Plaintiffs have not stated any cause of action against Burnett beyond unsupported and unsupportable conclusions and talismanic recital of statutory language, and even then by only general conclusory allegations as to all defendants. Plaintiffs have not pled the allegations of fraud with the specificity required by Rule 9 of the Federal Rules of Civil Procedure.

Most importantly, each of the federal causes of action has as its linchpin the concept that threats of deportation satisfies the definition of involuntary servitude. As a matter of law, the threat of deportation does not satisfy a determination of involuntary servitude. See Zavala v. Wal Mart Stores Inc., 691 F.3d 527, (3rd Cir., 2012). Likewise, under the applicable federal immigration and labor regulations existing at the time, there was no prohibition against requiring the non-immigrant workers to pay recruitment fees, legal fees, and travel costs. See Valdez-Baez v. Decatur Hotels, LLC, 622 F.3d 393 (5th. Cir., 2010).

Lastly, as to all the state based causes of action, the complaint itself establishes that the statute of limitations has run on each and every alleged state based cause of action irrespective of whether the laws of Texas, Louisiana, or Mississippi are claimed as the basis of the causes of action asserted. These states do not recognize cross jurisdictional tolling of the statute of limitations by the filing of a federal class action which ultimately was not certified. The longest

statute of limitations for the state based causes of action ran no later than March 8, 2012, well over a year before this action was filed.

Plaintiffs 'First, Second, and Fourth Claims for Relief levied against Burnett contain statements of Plaintiff's conclusions that "legal Facilitator Defendants" violated the TVPA, RICO, and the KKKA. Plaintiffs reference all of the preceding179 paragraphs as the factual support for theses conclusory allegations. However, not one of those 179 paragraphs state any acts or conduct by Burnett that was illegal. Rather they simply narrate, in speculative fashion, occurrences and actions that are consistent with any attorney representing his or her clients. The statements, even if established do not demonstrate any illegal act by Burnett or any intent to commit an illegal act, much less any conspiracy by or with Burnett. More than mere conclusions are needed.

The United States Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and again in Ashcroft v. Iqbal, 556 U.S. 662 129 S.Ct. 1937, 173 L.Ed2d 868 (2009)visited the issue of what is required to state a claim upon which relief can be based. Mere conclusions and allegations of "the-defendant-unlawfully-harmed-me accusation" are insufficient. Where the facts merely support a "possibility" that the defendant acted unlawfully, the complaint fails to state a claim upon which relief can be granted.

> As the Court held in Twombly, 550 U.S.544,127 S.Ct. 1955,167 L.Ed.2d 929,the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.(citations omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555,127 S.Ct. 1955.Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to

relief.' "
Ashcroft v. Iqbal, 556 U.S. 662 129 S.Ct. 1937, 173 L.Ed2d 868 (2009).

The Predicate Acts alleged by Plaintiffs for its RICO allegations against Burnett are all simply that the "Legal Facilitator Defendants" "intentionally committed and/or conspired to commit" the various alleged unlawful acts. However, these are simply statements without any facts stated that would support the allegations. The reliance on any of the supposed facts stated in the paragraphs preceding the Plaintiffs Claims for Relief, is unwarranted. The particular facts as to Burnett do not even support an inference of a possibility of unlawful acts. the facts as to Burnett are all consistent with what would happen in the ordinary course of events in representing non-immigrant workers recruited for work in the United states. It is neither an illegal activity nor an unethical activity for an immigration attorney to represent both the non-immigrant visa applicant in preparing the necessary immigration petitions and applications and the United states employer in need of such non-immigrant workers.

Similarly, none of the alleged communications by Burnett support a plausibility of an intent to defraud. To the contrary, the totality of the facts provided show that quite a lot of work in the preparation of H-2B visa applications was performed by Burnett. Likewise the facts show that virtually all of the H-2b visa extensions were obtained by Burnett's work. Lastly, the allegations all demonstrate that Signal would have to be the sponsor of any permanent residency applications, but only if the applicants were working for signal. Burnett could neither sponsor the applicants nor prepare applications for permanent residency without a sponsor. As such, there is not any suggestion of an intent on his part to defraud any of the Plaintiffs.

The conclusions contained in Plaintiffs allegations against Burnett of each and every one of the Plaintiffs' Claims for Relief have no factual support. The entirety of Plaintiffs' Complaint against Burnett "stops short of the line between possibility and plausibility of 'entitlement to relief."

The same is true of the allegations of the state based claims against Burnett. There are

no facts alleged that would support a finding of negligent or false misrepresentation or breach of contract. To the contrary, as indicated above, the totality of the facts support a fulfillment of Burnett's obligations to the Plaintiffs.

Moreover, the Complaint on its face establishes that the applicable statute of limitations would have run, irrespective of the state laws on which such claims may be based. The seminal case of Erie Railway Co. v. Tompkins, 304 U.S. 64, 71–80, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its long progeny require that federal courts exercising diversity jurisdiction must apply as their rules of decision the substantive law of the states. The United States Supreme Court in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), established that federal courts deciding matters of state law must apply the law of the state, and that neither Congress nor any federal court has the power or the authority to alter state law.

The Fifth Circuit in Hulin v. Fibreboard Corp., 178 F.3d 316 (5th Cir. 1999), fairly summed this up as follows.

> In Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Supreme Court announced the governing principle that was to become the heart of the Erie doctrine:
>
> Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern. There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or "general," be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts.

Hulin, supra at 317.

This is true for a state's statute of limitations, as well. In Guaranty Trust Co of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, (1945), the United States Supreme Court unequivocally ruled that federal courts deciding state based claims are bound to follow a state's laws on statute of limitations. A federal court faced with a stated based claim for relief cannot provide relief when the state's highest court or its legislature has declared otherwise.

> But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.
> . . .
>
> Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law. . . .
> Such particular rules of local law, however, do not in the slightest change the crucial consideration that if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery.

Guaranty Trust , supra, p. 108 -109, 110. (Emphasis added).

In, Ellis v. Great Southwestern Corp., 646 F.2d 1099 (5th Cir.,1981). the Fifth Circuit, as it must, followed this pronouncement.

> Our starting point in this case, as in all cases in which subject-matter jurisdiction is premised on diversity of citizenship, is Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), in which the Supreme Court held that there is no federal general common law and that a federal court must apply the laws of the state in which it sits except in those cases governed by the Constitution or laws of the United States. Two of Erie's progeny are particularly relevant. In Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), the Court confirmed that the Erie doctrine extends to state statutes of limitations. And in Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the Court confirmed that the Erie doctrine means also that as a general matter, a federal court is bound to apply the choice of law rules of the state in which it sits in determining whether that state's or some different state's substantive law should govern.

*Ellis*, supra at 1102-1103.

As such, this Court, on the claims based on state claims, must look to the laws of the state in which it is sitting, including the forum state's choice of law provisions and decisions, as well as the applicable state's law as to the tolling of the statute of limitations by the filing of a federal class action in which class certification was denied.

Although there are not really any factual allegations against Burnett that would invoke the laws of Texas, its statute of limitations for any Texas based claims against Burnett would

-6-

likely be the longest, four years. In Texas, as most states, the statute of limitations commences to run when the plaintiff knows or should know of the commission of the act giving rise to liability. See Morenov. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex.1990). Attached to this supporting memorandum, as Exhibit 2,is the Complaint in Kurian David, et al vs. Signal International LLC, et al, case no. 08-1220, of the United States District Court for the Eastern District of Louisiana. This case was referenced throughout the Plaintiffs' complain therein, and may be considered by this Court in its determination of the rule 12(b)(6) motion.

Significantly for purposes of this issue, is that the David complaint was filed on March 7, 2018. A review of the complaint herein shows that it is a very nearly a copy of the allegations in David. Virtually each and every fact paragraph in the Complaint herein can be found in the David complaint. Likewise, the causes of action in David are essentially the same causes of action asserted in David. Hence, Plaintiffs herein, all Indian, non-immigrant workers who obtained H-2B visas to work for Signal, are necessarily aware of all the facts as alleged in David, in that the exact factual allegations herein, involving all Indian workers, are the same as in David. Further, Plaintiffs admit to having been putative members of the David class action. As a result, the statute of limitations began to run no later than March 7, 2008, and in all likelihood, much earlier.

In each of the potential states that could serve as the basis for the alleged state based actions the statute of limitations began running at that time, unless tolled by reason of the filing of the federal class action in David. In the state of Texas, a federal class action filed in another state that is not certified will not toll the running of the statute of limitations on state based claims.

> We do not agree that American Pipe operates to toll our state statute of limitations. That case involved an interpretation of Rule 23 of the Federal Rules of Civil Procedure and concerned the question of whether a federal statute of limitations was tolled for the purpose of filing a federal claim. Under the doctrine of the hoary case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, where a claim is derived from state law, as is appellant's suit, state law governs the tolling of the statute of limitations.
> . . .

> For us to hold that the filing of a mass personal injury suit, in a federal court, in another state, with the variety of claims necessarily involved in such a case, entitled a plaintiff to a tolling of the limitations period such as in American Pipe, would be an extension not warranted by the Grant decision and we refuse to do so.
>
> Parenthetically, with regard to the appellees in this case other than Showa Denko America, Inc., even if we accepted appellant's theory of an American Pipe-type tolling of limitations, in as much as they were not named as defendants in the class action, the tolling theory would not apply to them.

Bell v. Showa Denko K.K., 899 S.W.2d 749, at 757-58 (Tex.App.-Amarillo, 1995).

See also, Newby v. Enron Corp., 542 F.3d 463 (5th. Cir., 2008), ("district court correctly concluded that, based on our understanding of Texas law, the Texas courts likely will not extend American Pipe tolling to this situation").

> The same is true in Louisiana.
>
> In sum, and for the reasons expressed herein, our analysis of La. C.C.P. art. 596 leads us to conclude that the legislature has rejected "cross-jurisdictional tolling" in class action proceedings. As a result, the Quinns cannot rely on the "recently dismissed" class action claim in the U.S. District Court for the Eastern District of Louisiana to establish a suspension of prescription as to the "individual" claims asserted in their lawsuit. The petition is prescribed on its face.

Quinn v. La. Citizens Prop. Ins. Corp., ____ So. 3d ____, no. 2012-0152 (La., 2012)

While there are no direct cases in Mississippi dealing with cross tolling of the statute of limitations, the state of Mississippi does not allow for or have a state class action at all. U S F &G Ins. Co. of Miss. v. Walls, 911 So.2d 463 (MS, 2005). As to tolling of the statute of limitations by the filing of a suit that is later dismissed without prejudice, the Mississippi Supreme Court has held that when a case is dismissed without prejudice, its filing has no effect on the tolling of the statute of limitations.

> This Court held long ago, however, that "[t]he dismissal of a suit without prejudice 'does not... confer any new right or advantage on the [plaintiff], and hence it will not have the effect of excepting from the period prescribed by the statute of limitations, the time during which that suit was pending.'" W.T. Raleigh Co. v. Barnes, 109 So. 8, 9 (Miss. 1926) (quoting Nevitt v. Bacon, 32 Miss. 212, 66 Am. Dec. 609 (1856)). In other words, "when a suit is dismissed without prejudice, the statute of limitations is deemed unaffected by the filing of the suit...."

Clark Sand Co. v. Kelley, ___ So.2d___, no. 2008-IA-01437-SCT, (Miss., 2011).

Plaintiffs herein, as putative class members in David, would be in the same position as though their claims had been dismissed without prejudice when the class certification was

denied. They were all able at that time to re-file the claims and causes of action individually. Under the holding and reasoning of Kelly, supra, the filing of the federal class action in David would have had no effect on the tolling of the statute of limitations. Any Mississippi state based claims against Burnett would have lapsed three years from the time Plaintiffs knew or should have known of the causes of action, or that is, March 8, 2011.

Accordingly, Burnett asserts that irrespective of the state on which the state based causes of action are based, the statute of limitations on the claims for negligent or fraudulent misrepresentations and breach of contract would have run over a year ago, As such, the state based claims in Plaintiffs' complaint fail to state a claim upon which relief can be granted.

Wherefore, Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C. ,and the Gulf Coast Immigration Law Center, LLC pray that its Motion to dismiss for lack of personal jurisdiction be granted, and additionally, Plaintiffs Complaint be dismissed pursuant to rule 12(b)(6) for failure to state a cause of action upon which relief can be granted.

Respectfully submitted,

s/Timothy W. Cerniglia
Timothy W. Cerniglia (TX Bar# 00789930)
1521Charles Avenue
New Orleans, Louisiana 70130
Telephone: 504-586-0555
Facsimilie:504-586-055
tcerniglia@cerniglialaw.pro

Attorney for Malvern C. Burnett,
The Law Offices of Malvern C. Burnett, A.P.C. ,
and the Gulf Coast Immigration Law Center, LLC.

CERTIFICATE OF SERVICE

      This is to certify that a copy of this motion has been served electronically on Plaintiffs and the signal Defendants with the Clerk of court using the CM/ECF system, and by placing a copy of same to their attorneys of record by placing a copy of same in the mail properly addressed and postage prepaid, this $10_{th}$ day of September, 2013.

                                               s/ Timothy W. Cerniglia