**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| REJI SAMUEL, ATHA MOHAMMAD ABDUL, KESAVARAO BUNDANKAYALA, RAJU DIVAKARAN, BIJU PERUMPILLY GEORGE, KRISHNA GONTHINA, NAYAPPULLI JAYACHANDRAN, GALLA VENKATA RAMA KRISHNA, SAMUEL JOSE KUMRUMTHODATHIL, LOHITHAKSHAN MADAMPET, JOHNY MANDY MATHAI, BELTHAZAR PETER, MOHANAN BALAKRISHNA PILLAI, SANTHOSH KUMAR RAJENDRAN PILLAI, ABY KARICKATHARA RAJU, SUMESH PORAMBATHUPARAMBIL SUBRAMANIAN, and CHANDRAN SHAJU THANISSERY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | CIV. NO. 1:13-cv-00323 |
| v. | ) ) | |
| SIGNAL INTERNATIONAL L.L.C., SIGNAL INTERNATIONAL, INC., SIGNAL INTERNATIONAL TEXAS, G.P., SIGNAL INTERNATIONAL TEXAS, L.P., MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS), | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION CENTER, L.L.C.**

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com
bcorgan@kilpatricktownsend.com
spangborn@kilpatrickstockton.com
hheindel@kilpatricktownsend.com

William H. Boice
Georgia Bar No. 065725
Brian G. Corgan (*Admitted Pro Hac Vice*)
Georgia Bar No. 187700
Susan Pangborn (*Admitted Pro Hac Vice*)
Georgia Bar No. 735027
California Bar No. 282533
Heather L. Heindel (*Admitted Pro Hac Vice*)
Georgia Bar No. 285204
Attorneys for Plaintiffs

US2008 4933949 3

## Table of Contents

Page

I.   INTRODUCTION ....................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND............................................................3

    A.   The Defendants' Labor Trafficking Scheme ..........................................................3

    B.   Burnett's Role in the Scheme ...............................................................................4

    C.   Procedural Background........................................................................................7

III. LEGAL ARGUMENT ...........................................................................................8

    A.   The RICO Statute Provides for Jurisdiction over the Burnett
        Defendants ........................................................................................................8

    B.   The Burnett Defendants Are Subject to Specific Personal Jurisdiction
        in this District....................................................................................................11

    C.   Alternatively, Plaintiffs Request Permission to Conduct Jurisdictional
        Discovery .........................................................................................................15

IV. CONCLUSION....................................................................................................16

**<u>Table of Authorities</u>**

**Page(s)**

<u>**Cases**</u>

*Allstate Ins. Co. v. Plambeck*,
No. 3-08-CV-0388-M, 2009 WL 347423 (N.D. Tex. Feb. 11, 2009) ........................... 9, 10, 11

*Blackmon v. Am. Home Prods. Corp.*,
267 F. Supp. 2d 667 (S.D. Tex. 2002) .................................................................................. 16

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)............................................................................................................. 12

*Castellanos-Contreras v. Decatur Hotels, LLC*,
622 F.3d 393 (5th Cir. 2010) ............................................................................................... 14

*Central Freight Lines, Inc. v. APA Transp. Corp.*,
322 F.3d 376 (5th Cir. 2003) ............................................................................................... 12

*Cory v. Aztec Steel Blding, Inc.*,
468 F.3d 1226 (10th Cir. 2006) .............................................................................................. 8

*David v. Signal Int'l*,
No. 08-1220, 2012 U.S. Dist. LEXIS 114247 (E.D. La. Jan. 3, 2012).................................. 7, 8

*ESAB Grp. v. Centricut, Inc.*,
126 F.3d 617 (4th Cir. 1997),
*cert. denied*, 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998)..................................... 9

*Fielding v. Hubert Burda Media, Inc.*,
415 F.3d 419 (5th Cir. 2005) ............................................................................................... 16

*Freudensprung v. Offshore Technical Servs., Inc.*,
379 F.3d 327 (5th Cir. 2004) ............................................................................................... 15

*Gonzalez v. Bank of America Ins. Services, Inc.*,
No. 11-20174, 2011 WL 6156856 (5th Cir. 2011) ................................................................ 11

*Guidry v. United States Tobacco Co.*,
188 F.3d 619 (5th Cir. 1999) ........................................................................................... 12, 13

*Hawkins v. Upjohn Co.*,
890 F. Supp. 601 (E.D. Tex. 1994)......................................................................................... 9

*Hewlett-Packard Co. v. Byd:Sign, Inc.*,
No. 6:05-CV-456, 2006 WL 2822151 (E.D. Tex. Sept. 28, 2006)..................................... 10, 15

*Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*,
   700 F.2d 1026 (5th Cir. 1983) ............................................................. 14

*Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*,
   No. 5:08CV26, 2009 WL 1025467 (E.D. Tex. Mar. 26, 2009) ............................... 15

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)................................................................. 12, 13

*Moncrief Oil International, Inc. v. OAO Gazprom*,
   481 F.3d 309 (5th Cir. 2007) ........................................................ 13, 14

*Oblio Telecom, Inc. v. Patel*,
   No. 3–08–CV–0279–L, 2008 WL 4936488 (N.D. Tex. Nov. 18, 2008)................................ 9

*Paolino v. Argyll Equities, L.L.C.*,
   401 F. Supp. 2d 712 (W.D. Tex. 2005) ..................................................... 9

*Patterson v. Dietze, Inc.*,
   764 F.2d 1145 (5th Cir. 1985) ........................................................... 15

*Republic of Pan. v. BCCI Holdings*,
   119 F.3d 935 (11th Cir.1997) ............................................................. 9

*Rolls–Royce Corp. v. Heros, Inc.*,
   576 F. Supp. 2d 765 (N.D. Tex. 2008) ................................................. 9, 11

*United Galvanizing Inc. v. Imperial Zinc Corp.*,
   No. H-08-0551, 2008 WL 4746334, 11 (S.D. Tex. Oct. 27, 2008) .......................... 16

*Zavala v. Wal Mart Stores Inc.*,
   691 F.3d 527 (3rd Cir. 2012) ........................................................... 14

## **Statutes**

18 U.S.C. § 1589................................................................................. 7

18 U.S.C. § 1590................................................................................. 7

18 U.S.C. § 1965(b) ......................................................................... 1, 11

18 U.S.C. § 1965(d) ............................................................................. 9

18 U.S.C. §§ 1961-1968 ......................................................................... 7

29 U.S.C. § 203................................................................................. 7

42 U.S.C. § 1981............................................................................... 7

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(2)........................................................................................................... 8, 16

Fed. R. Civ. P. 12(b)(6)............................................................................................................ 8

# I.   __INTRODUCTION__

Defendants Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. (collectively the "Burnett Defendants") have moved to dismiss the Complaint (the "Complaint") as against the Burnett Defendants for an alleged lack of personal jurisdiction.  The Motion should be denied as the Burnett Defendants are undeniably subject to personal jurisdiction before this Court.

First, the Burnett Defendants are subject to jurisdiction under the RICO statute, 18 U.S.C. § 1965(b).  Other Defendants, including the various Signal entities (collectively "Signal")[1], are indisputably subject to personal jurisdiction here.   This case involves Defendants' labor trafficking scheme designed to recruit Plaintiffs to work for Signal, based on false promises of permanent residency in the United States for the Plaintiffs and their families.  In reliance upon these false promises made by Defendants, including the Burnett Defendants, Plaintiffs sold everything they had and borrowed significant amounts to pay the exorbitant fees Defendants charged them to come to Texas to work for Signal.   Upon arrival in Texas, Plaintiffs were subjected to appalling work and living conditions in Signal's so-called "man camp" in Orange, Texas (the "Texas Labor Camp"), which is within this District.

The Burnett Defendants are clearly subject to personal jurisdiction in this district under any analysis the Court determines is appropriate (be it under RICO or a traditional due process analysis).  Regarding personal jurisdiction under a RICO analysis, Signal ran its labor trafficking scheme, which the Burnett Defendants helped facilitate, from the United States.  The Burnett Defendants assisted Signal in luring the Plaintiffs to the Texas Labor Camp and otherwise defrauded Plaintiffs, breached their obligations to Plaintiffs, and abused, discriminated against

---

[1] Signal refers to all Signal entities named in the Complaint: Signal International, Inc., Signal International, L.L.C., Signal International Texas, L.P., and Signal International Texas, G.P.

and mistreated Plaintiffs, all in Texas.  Accordingly, the "ends of justice" require a finding of personal jurisdiction over the Burnett Defendants under the facts of this case.

Regardless of personal jurisdiction under RICO, the Burnett Defendants are themselves subject to personal jurisdiction in this District.  No mere "fortuity" brings the Burnett Defendants before this Court.  This is where the Burnett Defendants and its co-defendants trafficked Plaintiffs for exploitative labor.  The Burnett Defendants were integral in perpetrating the labor trafficking scheme to lure Plaintiffs to the Texas Labor Camp, which is located within this District. The Burnett Defendants are subject to specific personal jurisdiction in this Court by virtue of the Burnett Defendants' tortious and wrongful acts designed to defraud Plaintiffs with the intended effect that these Plaintiffs were trafficked to the Texas Labor Camp.  As a direct result of the Burnett Defendants' actions, Plaintiffs were subjected to months of appalling conditions at the Texas Labor Camp.  This Court should determine it has personal jurisdiction over the Burnett Defendants.

Although Plaintiffs contend that jurisdiction over the Burnett Defendants is clear on these bases and jurisdictional discovery is unnecessary, to the extent the Court may harbor any doubt, Plaintiffs respectfully request the opportunity to conduct jurisdictional discovery as to certain specific categories of information in the Burnett Defendants' sole possession that would bear on these jurisdictional questions.

## II.      FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.      The Defendants' Labor Trafficking Scheme

The Burnett Defendants were central participants in a complex labor trafficking scheme planned and executed by and among the Defendants in this case.   Signal is a large marine and fabrication company with extensive operations in Orange, Texas; Pascagoula, Mississippi; and Mobile, Alabama.   Compl. at ¶¶ 36-39 (ECF No. 1).    Plaintiffs were among approximately 590 Indian workers lured to the United States by Signal and Signal's network of recruiters working on its behalf, including the Burnett Defendants, with false promises of permanent residency in the United States for the Plaintiffs and their families, in order to perform welding and pipefitting work in the Texas Labor Camp, located in Signal's marine fabrication facility in this judicial district (Orange, Texas).   *Id.* at ¶¶ 1-7, 36-179.

While Plaintiffs were working at the Texas Labor Camp, Signal repeatedly promised visa extensions and green cards as originally contracted for when Plaintiffs were recruited by Signal and the Signal Recruiters.   *Id.* at ¶¶ 170-175; Compl. Ex. 1 ¶¶ F214, F215, F217.   Signal continued to defraud Plaintiffs at the Texas Labor Camp regarding their visa status, while threatening Plaintiffs with arrest, loss of immigration status, and deportation.   Compl. at ¶¶ 6, 159, 165, 169, 170-172, 174, ECF No. 1; Compl. Ex. 1 ¶¶ F214, F215, F217.

The full details of Plaintiffs' living and working conditions are beyond the scope of this Motion.   But generally, Signal subjected Plaintiffs to deplorable living and working conditions at the Texas Labor Camp.   *Id.* at ¶¶ 7, 140-179, 246.   Plaintiffs were forced to live in a guarded, overcrowded, isolated labor camp surrounded by a barbed wire fence.   *Id.* at ¶¶ 140, 144. Up to

---

[2] The facts recited herein are taken from the allegations of the Complaint (ECF No. 1).   Citations to Exhibit 1 of the Complaint refer to the RICO Fraud Chart, which is Document 1-1 in the ECF docket and will be cited as "Compl. Ex. 1 ¶ F--" (ECF No. 1-1) and incorporated into the Complaint by reference.

twenty-four men were housed in each bunkhouse, sleeping in two-tiered bunk beds. *Id.* at ¶ 146. The housing conditions violated OSHA regulations. *Id.* The Texas Labor Camp bunkhouses had insufficient toilet and bathing facilities for twenty-four men, with long lines and unsanitary conditions. *Id.* at ¶ 147. Non-Indian workers were not subjected to these appalling living conditions. *Id.* at ¶¶ 154, 246.

Beyond the unsanitary, inhumane living conditions, Signal also subjected Plaintiffs to abusive and discriminatory working conditions at the Texas Labor Camp. The Indian national Plaintiffs were discriminated against based on ethnic origin, given more difficult work than others when work was available, and less work (so less pay) when it was not. *Id.* ¶¶ 217-218, 347-349. Signal subjected Plaintiffs to skills testing and re-testing, on-the-job discipline, layoffs, periods without work, inadequate safety precautions, unfavorable job assignments, unfair evaluation processes, and other adverse employment actions to which non-Indian and United States citizen workers were not similarly subjected. *Id.* at ¶ 155. Due to their uncertain immigration status and Signal's coercive actions, Plaintiffs believed they had no choice but to continue working at Signal. *Id.* at ¶ 177.

## B.      Burnett's Role in the Scheme

The Burnett Defendants played an integral role in the illegal and tortious labor trafficking scheme run by the Defendants. The Burnett Defendants contend in their Motion that the Complaint fails to allege that Burnet did anything in Texas to support personal jurisdiction. Instead, the Burnett Defendants contend the Complaint presents only a "conclusory allegation" as against the Burnett Defendants, without any specific "mention of Burnett doing anything in Texas, much less anything that can be construed as being tortious conduct in Texas." Mot. Dismiss, p. 2, ECF No. 38.

These statements are false.  The Complaint and incorporated RICO Fraud Chart provide numerous specific and detailed allegations of the Burnett Defendants' prominent role in facilitating the labor trafficking scheme.  Compl. ¶¶ 2-4, 6, 8, 49-57, 59-70, 73, 77, 78, 79-84, 86-96, 101, 108-111, 114-120, 133, 137-138, 164-165, 168, 179; Compl. Ex. 1 ¶¶ F31, F45, F46, F51, F52, F53, F58, F59, F60, F94, F103, F106, F126, F141, F189, F193 (ECF No. 1-1).

Generally, the Burnett Defendants were agents of Signal in helping facilitate the concerted labor trafficking scheme for the purposes of recruiting, obtaining, contracting, and transporting Plaintiffs to provide labor services at the Texas Labor Camp.  *Id.* at ¶¶ 59-70.  This activity included the Burnett Defendants entering into contracts with the various recruiter defendants and Plaintiffs for labor to be provided at the Texas Labor Camp.  *Id.* at ¶ 64.

The Burnett Defendants and their co-defendants made false promises to Plaintiffs that they would receive green cards for permanent residence in the United States, either right away or after traveling to the U.S. on an H-2B Visa, and that green cards would also be made available to their families.  *Id.* at ¶¶ 73-96.  The Signal Recruiters, including the Burnett Defendants, made these representations even though they knew or had reason to know that such visa extensions and green card applications would not be *bona fide*, valid, or lawful under United States immigration law and even though Signal did not have the intention at that time to apply for visa extensions or green cards on behalf of the Plaintiffs.  *Id.*

Despite this, the Burnett Defendants continued to be paid exorbitant fees and continued to facilitate the transportation of hundreds more Indian workers, including Plaintiffs, to Signal worksites in Texas and Mississippi because it was in Signal's financial interest to do so.  *Id.* at ¶ 81.  The Burnett Defendants would repeatedly extract additional fee payments from Plaintiffs in order to allow the Plaintiffs to continue in the recruitment process.  *Id*. at ¶ 114-117.

The Burnett Defendants further conspired to make and did make false statements to the United States Citizenship and Immigration Service ("USCIS") regarding Signal's projected actual labor need so that Signal's petitions for H-2B visas would be granted.  *Id.* at ¶¶ 102-110. Accordingly, the Burnett Defendants' actions allowed Plaintiffs to enter the U.S. for purposes of working at Signal's Texas Labor Camp.  *Id.*

The Burnett Defendants concede that by participating in this program they were purportedly "representing [their] clients, both the non-immigrant Indian workers, and Signal." Mot. Dismiss, p. 6, ECF No. 38.  The Complaint specifically alleges that the Burnett Defendants were lying to their Indian worker clients both to extract unfair sums of money from them and to facilitate their trafficking to the Texas Labor Camp, where Plaintiffs were exploited and abused by Signal.

Contrary to the averments in Mr. Burnett's Affidavit (ECF No. 38-1), the Burnett Defendants continued to communicate with Plaintiffs after Plaintiffs were lured to the Texas Labor Camp in furtherance of the scheme alleged in the Complaint.  The Complaint clearly alleges the Burnett Defendants were contacted by Signal in order to develop a response to Signal's concerns about worker organizing efforts by the Indian H-2B Workers, including Plaintiffs.  *Id.* at ¶ 164.  The Burnett Defendants expressly agreed to take steps to discourage worker organizing efforts and to ensure that Plaintiff and the other Indian H-2B Workers would continue to work at the Texas Labor Camp without complaint, as well as to prevent Plaintiffs and the other Indian H-2B Workers from exercising their legal rights.  *Id.* at ¶ 165.

In this context, Mr. Burnett's express admission in his supporting affidavit that he visited the Texas Labor Camp in order to confer with Signal management about the "overall status and employment of the [Indian workers] who had been initially deployed to Signal's facility in

Texas" confirms the Burnett Defendants' continuing role in facilitating the scheme that not only

lured Plaintiffs to Texas, but kept them there.

The Burnett Defendants have at all times has been well aware of the damage they and the

other Defendants inflicted on Plaintiffs, including their treatment in Texas.  As shown by the

Complaint's detailed allegations, the Burnett Defendants were critical to implementing the

fraudulent and illegal labor trafficking scheme, which continued after the Plaintiffs were

subjected to the conditions of the Texas Labor Camp.

**C.**   **Procedural Background**

The Burnett Defendants refer to "an identical suit" in the Eastern District of Louisiana,

*David v. Signal Int'l*, No. 08-1220, 2012 U.S. Dist. LEXIS 114247 (E.D. La. Jan. 3, 2012) (the

"*David* Case").  The *David* Case was a putative class action lawsuit filed by twelve of the Indian

workers, mostly from Mississippi but including Texas workers, in the Eastern District of

Louisiana. [3]   The *David* case is not "an identical suit" and the Burnett Defendants are

disingenuous to characterize it as such.  Relevant to the claims in this action, while Plaintiffs

were putative class members, the defendants in the *David* Case defeated class certification on the

grounds that "individual issues predominated."  Accordingly, Plaintiffs in this action, as well as

numerous other trafficked Indian workers, have had to file individual cases to preserve their

claims.  The instant action is one such individual case.

Plaintiffs filed in the district where Plaintiffs were subjected to the deplorable conditions

of the Texas Labor Camp.  This lawsuit was filed in May of this year on behalf of seventeen

trafficked Indian workers who were recruited by the Burnett Defendants, Signal and others on

---

[3] The David Case asserts similar claims under various federal statutes (trafficking (18 U.S.C. §§ 1589, 1590), RICO (18 U.S.C. §§ 1961-1968), Civil Rights statutes (42 U.S.C. § 1981), and FLSA (29 U.S.C. § 203)), along with state law claims for fraud, negligent misrepresentation and breach of contract.

the basis of misrepresentations and illegal conduct described above, to be trafficked into Signal's Texas Labor Camp.

After a lengthy effort to serve the Burnett Defendants, the Burnett Defendants were finally served on August 28, 2013.  On September 10, 2013 Burnett filed this Motion under Fed. R. Civ. P. 12(b)(2) (ECF No. 38) and a separate Motion under Fed. R. Civ. P. 12(b)(6) (ECF No. 37), to which Plaintiffs are responding separately.

### III.    <u>LEGAL ARGUMENT</u>

The Burnett Defendants Motion appears to present three related arguments for dismissing the Complaint, none of which is sustainable.  First, the Burnett Defendants argue that notwithstanding the RICO statute providing for nationwide service of process, "none of the Burnett [D]efendants have or ever had sufficient minimal contacts to justify imposition of personal jurisdiction."  Second, the Motion argues the Complaint fails to allege illegal activity against the Burnett Defendants.  Finally, the Motion argues the Complaint presents an action identical to the *David* case.  All these arguments fail.

### A.    <u>The RICO Statute Provides for Jurisdiction over the Burnett Defendants</u>

The RICO statute provides for nationwide service of process.  The Burnett Defendants argue there is no substantive basis for establishing personal jurisdiction over Burnett in this Court under RICO.  This argument fails as the RICO statute clearly provides jurisdiction over Burnett.

There is a circuit split regarding jurisdiction over nonresident defendants under the RICO statute.  *See Cory v. Aztec Steel Bldg, Inc.*, 468 F.3d 1226 (10th Cir. 2006) (collecting cases). The Fifth Circuit has not weighed in on this issue, but most federal courts in Texas have followed the majority rule that if a RICO plaintiff can show that at least one defendant "'resides,

is found, has an agent, or transacts his affairs' in the forum, then jurisdiction is proper **as to all**

**other defendants** if 'the ends of justice require.'" *Allstate Ins. Co. v. Plambeck*, No. 3-08-CV-

0388-M, 2009 WL 347423, *3, n. 2 (N.D. Tex. Feb. 11, 2009) (emphasis added) (citing *Rolls–*

*Royce Corp. v. Heros, Inc.,* 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008); *see also Hawkins v.*

*Upjohn Co.,* 890 F. Supp. 601, 605–06 (E.D. Tex. 1994); *Paolino v. Argyll Equities, L.L.C.*, 401

F. Supp. 2d 712, 718 (W.D. Tex. 2005); *Oblio Telecom, Inc. v. Patel,* No. 3–08–CV–0279–L,

2008 WL 4936488 at *4 (N.D. Tex. Nov. 18, 2008).[4]  There are thus two issues to resolve in

determining whether RICO provides a statutory basis for personal jurisdiction: (a) finding

whether at least one defendant resides, is found, has an agent, or transacts affairs in the forum;

and (b) deciding whether the "ends of justice" require extension of jurisdiction to the other

defendants.

Regarding the first issue, there is no doubt that at least one defendant "resides, is found,

has an agent, or transacts his affairs in the forum."  That is indisputably the case here, as the

Signal entities are all found in this District and transact business here through the substantial

facilities at Orange, Texas, the site of the Texas Labor Camp.  Because personal jurisdiction

exists as to the Signal entities in this district, the Court can exercise personal jurisdiction over

other related parties as required by the "ends of justice."

---

[4] The Fourth and Eleventh Circuits have ruled that RICO provides a statutory basis for personal jurisdiction in any district over any person involved in a RICO violation who could be served "in any judicial district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(d).  That means that if a defendant were part of a RICO enterprise and could be found in any federal district in the U.S., he would be subject to jurisdiction in any other federal district.  *See ESAB Grp. v. Centricut, Inc.,* 126 F.3d 617, 626–27 (4th Cir. 1997), *cert. denied,* 523 U.S. 1048, 118 S.Ct. 1364, 140 L.Ed.2d 513 (1998); *Republic of Pan. v. BCCI Holdings,* 119 F.3d 935, 942 (11th Cir.1997).  Clearly under this standard the Burnett defendants would be subject to personal jurisdiction because Burnett participated in a RICO enterprise and is found at least in the Southern District of Louisiana and Southern District of Mississippi, as Burnett acknowledges in his affidavit. Aff. of Burnett, ¶¶ 1-2 (ECF Doc. 38-1).

The Fifth Circuit has not determined the precise factors to consider in an "ends of justice" analysis. *Hewlett-Packard Co. v. Byd:Sign, Inc.*, No. 6:05-CV-456, 2006 WL 2822151, at *9 (E.D. Tex. Sept. 28, 2006) (noting different interpretations among various courts of the meaning of "ends of justice"). Courts recognize "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Allstate*, 2009 WL 347423 at *3. Courts further recognize Congress' intent in a RICO action to allow "plaintiffs to bring all members of a nationwide conspiracy before a court in a single trial." *Id.* (citations omitted).

Under any analysis, however, the "ends of justice" test clearly requires a finding of personal jurisdiction over the Burnett Defendants under the facts of this case. There can be no argument the Burnett Defendants' co-conspirator and co-defendant Signal is subject to personal jurisdiction in this district where Signal has extensive operations in Orange, Texas and ran the Texas Labor Camp *in this District*. The Burnett Defendants were an integral part of the fraudulent and illegal scheme to go out and recruit the Plaintiffs in order to lure them to the Texas Labor Camp *in this District*. The Burnett Defendants lied to and deceived these Plaintiffs for the purpose of and with the result of trafficking them to the Texas Labor Camp *in this District*.

Once here, the Plaintiffs were discriminated against, abused and subjected to despicable living and working conditions for months. When Plaintiffs showed signs of unrest, Mr. Burnett consulted with Signal in order to determine ways to keep the Plaintiffs in line. Finally, Mr. Burnett has himself testified that he visited the Texas Labor Camp, where he no doubt saw the despicable ends of his fraudulent recruitment efforts.

Plaintiffs have now chosen to sue defendants in Texas where Plaintiffs suffered such enormous harm at the hands of Signal and its agents, including the Burnett Defendants.

Plaintiffs seek to bring together before this Court in a single trial all defendants who participated in the conspiracy to traffic them to this District.  In light of Burnett's conduct and the effect it had on the Plaintiffs in Texas, this District is not a far flung forum for Burnett.  Bringing Burnett into the District where the Burnett Defendants lured Plaintiffs, where Plaintiffs suffered their injuries, and where the Signal entities conducted business with the assistance of the Burnett Defendants clearly satisfies the "ends of justice."  This Court should determine it has personal jurisdiction over the Burnett Defendants.

**B.**      **The Burnett Defendants Are Subject to Specific Personal Jurisdiction in this District**

Burnett apparently advances an alternative argument, though the argument is intertwined with the Burnett Defendants' RICO argument in the Motion, that they are not subject to personal jurisdiction in this District because suing them here would run afoul of the Due Process clause. Mot. Dismiss, p. 2 (ECF No. 38) ("[E]ven had Plaintiffs requested or prayed that summons issue and process served on Burnett pursuant to 18 U.S.C. 1965(b), that the requirements of the constitution and Due Process must be fulfilled").

As a preliminary matter, the Burnett Defendants' understanding of Due Process is at odds with district courts in Texas that clearly hold due process is satisfied under 18 U.S.C. 1965(b) "if the nonresident defendant has sufficient minimum contacts with the ***United States***," not the district.  *Allstate*, 2009 WL 347423 at *3 (emphasis added).

The Burnett Defendants' reliance on the unpublished case *Gonzalez v. Bank of America Ins. Services, Inc.*, No. 11-20174, 2011 WL 6156856 (5th Cir. 2011) is misplaced.  Unlike the present case, the Defendant in *Gonzalez* failed to raise an argument regarding personal jurisdiction on RICO grounds.  Under those circumstances, not present in the instant case, the court applied a "traditional contacts analysis."  *Id.* at * 3, n. 6.

Regardless, even under a traditional due process analysis, the Burnett Defendants are plainly subject to specific personal jurisdiction in this district, through their knowing, active participation in the scheme by which these Plaintiffs were lured to Texas and abused in the Texas Labor Camp.  Under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), courts can exercise personal jurisdiction over a nonresident defendant if "that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state," and "the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'"  *Central Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380-81 (5th Cir. 2003).  Generally, "[w]hen a nonresident defendant has 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities,' the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant."  *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Minimum contacts are established and specific personal jurisdiction can be exercised by courts "[w]hen a nonresident defendant commits a tort within the state, or an act outside the state that causes tortious injury within the state."  *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) (collecting cases).  "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."  *Id.* (collecting cases).  As the Fifth Circuit noted in *Guidry*, an individual injured in Texas "need not go to [another jurisdiction] to seek redress from persons who, though remaining in other states, intentionally, knowingly and recklessly caused

severe physical, emotional and economic injuries to the plaintiffs and others" in Texas.  *Id*. at 630.

As described above, the Burnett Defendants' purposeful, tortious activities were directed at defrauding and exploiting the Plaintiffs and trafficking the Plaintiffs to the United States to work at the Texas Labor Camp, which is located in this District.  On behalf of his principal, Signal, Mr. Burnett held himself out as Plaintiffs' lawyer even as he was trafficking Plaintiffs on behalf of Signal to the Texas Labor Camp.  The Burnett Defendants' purposeful, tortious activities were directly targeted at the District, and Plaintiffs' injuries inevitably flowed from those targeted activities.

The Burnett Defendants, having lured Plaintiffs into this District under false pretenses so that they could be exploited in deplorable working conditions at the Texas Labor Camp, cannot credibly argue that they could not reasonably have anticipated being sued in this District. *Guidry*, 188 F.3d at 630 (holding that the exercise of specific personal jurisdiction over defendants was proper where "their alleged intentional and negligent tortious actions were knowingly initiated and aimed at users and potential consumers of tobacco products" in the district, and each defendant made false representations that they knew would have devastating effects on people in the district).  Under these circumstances, the exercise of personal jurisdiction over the Burnett Defendants in Texas plainly does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co.*, 326 U.S. at 316.

The Burnett Defendants' reliance on cases like *Moncrief Oil International, Inc. v. OAO Gazprom*, 481 F.3d 309 (5th Cir. 2007) and *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700

F.2d 1026, 1027 (5ᵗʰ Cir. 1983) is entirely misplaced.[5]  In *Moncrief*, the plaintiff agreed to provide services to three Russian companies.   The only connection to Texas was unilateral communications from Plaintiffs to Russia.  Otherwise, the agreements were executed in Russia, with a Russian corporation, concerning a Russian joint venture, to develop a Russian gas field. The Cooperation Agreement even provided for arbitration in Russia under Russian law.  *Id.* at 312.   Under these facts, the Fifth Circuit stated that "[a] plaintiff's or third party's **unilateral** activities cannot establish minimum contacts between the defendant and forum state" and that "[a]n exchange of communications in the course of developing and carrying out a contract also does not, by itself, constitute the required purposeful availment of the benefits and protections of Texas law."  *Id.* at 311-312 (emphasis added).

A similar issue of "unilateral" activities was found in *Hydrokinetics*, which involved  a single transaction by an Alaskan company for a Washington state plant where the Alaskans only entered Texas to "close the deal."  700 F.2d at 1029-1030.  The Fifth Circuit in *Moncrief* raised concerns that the danger of finding personal jurisdiction in such circumstances would allow "jurisdiction [to] be exercised based only on the **fortuity** that one of the parties happens to reside in the forum state."  *Id.*  at 311-312 (emphasis added).  There is no such "unilateral" contact or risk of mere "fortuity" here.

---

[5] The Burnett Defendants cite in passing, and with little analysis, two cases that appear to be wholly irrelevant to the jurisdictional issues raised by the Burnett Defendants' Motion to Dismiss.  Neither *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5ᵗʰ Cir. 2010) nor *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3ʳᵈ Cir. 2012) involve issues of personal jurisdiction.  *Castellanos* analyzed the narrow issue of reimbursable expenses under the Fair Labor Standards Act ("FLSA").  The Burnett Defendants' citation to *Zavala* is puzzling where the Burnett Defendants admit the substantive issues addressed by the Court were not alleged against Mr. Burnett.  These cases are irrelevant to the jurisdictional issues raised by the Motion to Dismiss.

The Burnett Defendants' were an integral part of the fraudulent and illegal labor trafficking scheme that recruited the Plaintiffs and lured the Plaintiffs on false promises to the Texas Labor Camp in this District.  The Burnett Defendants lied to these Plaintiffs for the specific purpose of, and with the result of, trafficking them to the Texas Labor Camp in this District. Further, Mr. Burnett has admitted he visited the Texas Labor Camp to visit with Signal management regarding issues with the Indian workers, which is consistent with the Complaint's allegations that Burnett worked with Signal to ensure Plaintiffs could not organize to improve their conditions at the Texas Labor Camp but would work without further unrest.

Far from mere "fortuity," the Burnett Defendants are being brought before this court in this District because this is where they and their co-defendants trafficked Plaintiffs for exploitative labor.  This Court should determine it has personal jurisdiction over the Burnett Defendants.

**C.      Alternatively, Plaintiffs Request Permission to Conduct Jurisdictional Discovery**

Plaintiffs do not believe that discovery is needed at this stage because personal jurisdiction over Burnett is plainly established on the two grounds argued above.  To the extent the Court harbors any question as to either of those grounds, Plaintiffs respectfully request discovery in the Court's discretion to address further issues of personal jurisdiction as to Burnett. *See Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 347 (5th Cir. 2004); *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1148 (5th Cir. 1985).

Such leave is regularly granted by courts in this District and in this State. *See e.g., Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, No. 5:08CV26, 2009 WL 1025467, at *1 (E.D. Tex. Mar. 26, 2009) (denying motion to dismiss for lack of personal jurisdiction after jurisdictional discovery); *Hewlett-Packard*, *supra*, at *2 (denying the motions to dismiss of all but one defendant after jurisdictional discovery); *Blackmon v. Am. Home Prods. Corp.*, 267 F.

Supp. 2d 667, 678 (S.D. Tex. 2002) (ordering jurisdictional discovery).  Jurisdictional discovery should be granted where, as here, a plaintiff makes "a preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005).  That preliminary showing can be made by providing "some competent evidence demonstrating that personal jurisdiction might exist over a defendant." *United Galvanizing Inc. v. Imperial Zinc Corp.*, No. H-08-0551, 2008 WL 4746334, 11 (S.D. Tex. Oct. 27, 2008).

If necessary - and Plaintiffs do not believe it is - Plaintiffs would like to be permitted to pursue discovery as to the general jurisdiction points referenced in Mr. Burnett's Affidavit.  ECF No. 38-1.  In addition, were discovery even necessary, Plaintiffs would request discovery related to the specific jurisdiction and "ends of justice" issues raised by the Burnett Defendants.  These would include, without limitation, discovery of other documents showing contact by Burnett with the state of Texas in furtherance of this scheme, documentation and deposition testimony addressing the details of Mr. Burnett's visits to the Texas Labor Camp and interaction with the specific Plaintiffs in this case, both before and after they were trafficked to Texas, and telephone and email records showing communications among the Burnett Defendants, Signal employees and Plaintiffs, particularly while in Texas, in furtherance of the schemes alleged in the Complaint.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that Burnett's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) be denied in its entirety.

DATED:  September 27, 2013.

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com
bcorgan@kilpatricktownsend.com
spangborn@kilpatrickstockton.com
hheindel@kilpatricktownsend.com

By:   s/ William H. Boice
William H. Boice
Georgia Bar No. 065725
Brian G. Corgan (*Admitted Pro Hac Vice*)
Georgia Bar No. 187700
Susan Pangborn (*Admitted Pro Hac Vice*)
Georgia Bar No. 735027
California Bar No. 282533
Heather L. Heindel (*Admitted Pro Hac Vice*)
Georgia Bar No. 285204

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2013**,** I electronically filed the foregoing

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PURSUANT**

**TO FED. R. CIV. P. 12(b)(2) OF MALVERN C. BURNETT, THE LAW OFFICES OF**

**MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION CENTER,**

**L.L.C.** with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to all CM/ECF participants.

I further certify that on September 27, 2013, I served a true and correct copy of the

foregoing document upon the below-named Defendants by depositing a copy of same in the U.S.

Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:


        Michael Pol
        1566 Redwood Court
        Biloxi, MS  39532

        Global Resources, Inc.
        c/o Michael Pol
        13 Herring Road
        Beaumont, MS 39423-2055

I further certify that on September 27, 2013, I served a true and correct copy of the

foregoing document upon the below named Defendants by forwarding a copy to them via

International Mail, with sufficient postage thereon to insure delivery, and properly addressed as

follows:

Sachin Dewan
Dewan Consultants
Dewan Consultants Pvt. Ltd.
708, Sagar Tech Plaza
Andheri Kurla Road
Sakinaka Junction, Andheri (E)
Mumbai 400 072, India


By:   s/ William H. Boice

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com

William H. Boice
Georgia Bar No. 065725


Attorney for Plaintiffs