**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

| | | |
|---|---|---|
| REJI SAMUEL, ATHA MOHAMMAD ABDUL, KESAVARAO BUNDANKAYALA, RAJU DIVAKARAN, BIJU PERUMPILLY GEORGE, KRISHNA GONTHINA, NAYAPPULLI JAYACHANDRAN, GALLA VENKATA RAMA KRISHNA, SAMUEL JOSE KUMRUMTHODATHIL, LOHITHAKSHAN MADAMPET, JOHNY MANDY MATHAI, BELTHAZAR PETER, MOHANAN BALAKRISHNA PILLAI, SANTHOSH KUMAR RAJENDRAN PILLAI, ABY KARICKATHARA RAJU, SUMESH PORAMBATHUPARAMBIL SUBRAMANIAN, and CHANDRAN SHAJU THANISSERY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | CIV. NO. 1:13-cv-00323 |
| v. | ) ) | |
| SIGNAL INTERNATIONAL L.L.C., SIGNAL INTERNATIONAL, INC., SIGNAL INTERNATIONAL TEXAS, G.P., SIGNAL INTERNATIONAL TEXAS, L.P., MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS), | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION CENTER, L.L.C.**

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com
bcorgan@kilpatricktownsend.com
spangborn@kilpatrickstockton.com
hheindel@kilpatricktownsend.com

William H. Boice
Georgia Bar No. 065725
Brian G. Corgan (*Admitted Pro Hac Vice*)
Georgia Bar No. 187700
Susan Pangborn (*Admitted Pro Hac Vice*)
Georgia Bar No. 735027
California Bar No. 282533
Heather L. Heindel (*Admitted Pro Hac Vice*)
Georgia Bar No. 285204
Attorneys for Plaintiffs

## **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL BACKGROUND.................................................................................2

     A.      The Defendants' Labor Trafficking Scheme to Recruit Plaintiffs...........................2

     B.      The Procedural Background ...................................................................................5

III.    STANDARD OF REVIEW ...................................................................................6

IV.     LEGAL ARGUMENT...........................................................................................7

     A.      Plaintiffs' Complaint States Sufficient Facts Alleging Their Federal Law
              Claims and Common Law Claims. .........................................................................7

     B.      Plaintiffs' Federal Law Claims Do not Depend on Threats of Deportation. ...........9

     C.      Plaintiffs' Damages for Paying Recruiting Fees, Legal Fees, and Travel
              Costs are not based on a FLSA claim. ...................................................................10

     D.      The Statute of Limitations was Tolled For Plaintiffs' Common Law
              Claims. .................................................................................................................10

          1.      Judge Morgan's Order in the *David* Litigation Explicitly Tolled
                   All of Plaintiffs' Common Law Claims......................................................11

          2.      Texas Law Supports the Tolling of the Statute of Limitations for
                   the Plaintiffs' Common Law Claims in this Situation. ...............................11

V.      CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ............................................... 13

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................... 6

*Bara v. Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469 (Tex. App. –
    Austin 1994) .................................................................................................................... 13

*Beavers v. Metropolitan Life Ins. Co.*, 2007 WL 3342540 (S.D. Tex. Nov. 8,
    2007) ................................................................................................................................ 13

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929
    (2007) ................................................................................................................................. 6

*Bell v. Showa Denko K.K,* 899 S.W.2d 749 (Tex. App. – Amarillo 1995)............................ 14, 15

*Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. Appx. 361, 2013 WL 49587
    (5th Cir. 2013) ................................................................................................................... 6

*Hall v. Variable Annuity Life Ins. Co.*, 2013 WL 4233103 (5th Cir. Aug. 15,
    2013) ................................................................................................................................ 14

*Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141 (5th Cir. 2009)................................... 6

*In re Norplant Contraceptive Products Liability Litig.*, 961 F. Supp. 163 (E.D.
    Tex. 1997)................................................................................................................... 14, 15

*Newby v. Enron Corp.,* 542 F.3d 463 (5th Cir. 2008)................................................ 11, 12, 14, 16

*Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011)......................................................................... 6

*Ventura v. Banales*, 905 S.W.2d 423 (Tex. App. – Corpus Christi 1995)................................... 13

*Zavala v. Wal-Mart Stores, Inc,*  691 F.3d 527 (3rd Cir. 2012) ................................................... 9

# I.  INTRODUCTION

Defendants Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C. (collectively "Burnett") move to dismiss  Plaintiffs' Complaint (the "Complaint") that alleges various federal and state law causes of action against Burnett arising out of Burnett's participation in a labor trafficking scheme.  Burnett contends that Plaintiffs' Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6) because it states mere conclusory allegations for the federal causes of action ("Federal Law Claims") and that Plaintiffs' RICO claims rest "almost entirely" on the conclusion that being required to work under threat of deportation constitutes involuntary servitude.  Further, Burnett contends that Plaintiffs' allegations do not support a breach of Plaintiffs' state common law causes of action (the "Common Law Claims") and that Plaintiffs' Common Law Claims have lapsed under the applicable statute of limitations.  All of these arguments are fatally flawed and must fail.

Plaintiffs' 288-paragraph Complaint and accompanying RICO Fraud Chart are replete with facts detailing the illegal, tortious acts committed by Burnett in furtherance of a labor trafficking scheme that violated federal law and state law.  The Complaint explicitly alleges that Burnett was an integral member of a labor trafficking scheme designed to recruit Plaintiffs for work at Signal[1] based on false promises of permanent residency in the United States.  Based on these false promises made by Defendants, including Burnett, Plaintiffs sold everything they owned to pay the exorbitant fees to Defendants to come to Texas and work for Signal.  Upon arrival in Texas, Plaintiffs were subjected to appalling working and living conditions in Signal's so-called "man camp" in Orange, Texas (the "Texas Labor Camp").  At this preliminary stage in

---

[1] Signal refers to all Signal entities named in the Complaint: Signal International, Inc., Signal International, L.L.C., Signal International Texas, L.P., and Signal International Texas, G.P.

the litigation, where these factual allegations are presumed true, the Complaint adequately states Federal Law Claims and Common Law Claims.

Further, Plaintiffs' Common Law Claims are not barred by any statute of limitations. The presiding judge in the Plaintiffs' previous putative class action issued an order tolling all of Plaintiffs' Common Law Claims.  Additionally, the statute of limitations was tolled for Plaintiffs' Common Law Claims where the Plaintiffs' previous putative class action asserted the same claims against the same defendants.  Under these circumstances, Texas courts undoubtedly would recognize the tolling of the statute of limitations for Plaintiffs' Common Law Claims.

Accordingly, Burnett's baseless motion to dismiss should be denied in its entirety.

## II.     FACTUAL BACKGROUND

### A.     THE DEFENDANTS' LABOR TRAFFICKING SCHEME TO RECRUIT PLAINTIFFS

The Defendants, including Burnett, were involved in an elaborate and illegal labor trafficking scheme in direct violation of the Victims of Trafficking and Violence Protection Act ("TVPA"), the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Civil Rights Act of 1866, the Ku Klux Klan Act of 1871, and several state common law claims.  Compl. at ¶ 8, ECF No. 1.  Beginning in 2006, Signal, by and through the Signal Recruiters[2] and Burnett, conducted a global recruitment effort to lure Plaintiffs from India, the United Arab Emirates, and Saudi Arabia to perform welding and pipefitting work at Signal's marine fabrication facility in Orange, Texas.  *Id.* at ¶¶ 1-2, 72, 77-80, 84, 136.  To accomplish this goal, the Signal Recruiters and Burnett made fraudulent promises of legal and permanent work-based immigration to the Plaintiffs.  *Id.* at ¶ 2.  The Signal Recruiters and Burnett were all agents of Signal.  *Id.* at ¶¶ 49-58, 66.  Signal, operating from the United States, authorized and utilized the Signal Recruiters and Burnett to act as their agents to obtain cheap labor for Signal's Texas Labor Camp.  *Id.*

---

[2] Recruiter Defendants are defined collectively in the Complaint as Defendants Dewan, Dewan Consultants, Pol, and Global. *Id.* at  ¶ 58.

Once the Plaintiffs arrived at the Texas Labor Camp, Signal subjected the Plaintiffs to appalling living conditions in the Texas Labor Camp.  *Id.* at ¶¶ 7, 140-179.  Plaintiffs were forced to live in a guarded, overcrowded, isolated labor camp surrounded by a barbed wire fence. *Id.* at ¶¶ 140, 144.  Up to twenty-four men were housed in each bunkhouse and made to sleep in two-tiered bunk beds.  *Id.* at ¶ 146.  Beyond the unsanitary, inhumane living conditions, Signal also subjected Plaintiffs to abusive and discriminatory work conditions at the Texas Labor Camp. *Id.* at ¶¶ 155-159, 246.  Signal subjected Plaintiffs to skills testing and re-testing, on-the-job discipline, layoffs, periods without work, inadequate safety precautions, unfavorable job assignments, unfair evaluation processes, and other adverse employment actions to which non-Indian and United States citizen workers were not similarly subjected.  *Id.* at ¶ 155.  Due to their uncertain immigration status and Signal's coercive actions, Plaintiffs believed they had no choice but to continue working at Signal.  *Id.* at ¶ 177.

Burnett played an integral role in the illegal, tortious labor trafficking scheme run by the Defendants.  The Complaint and attached RICO fraud chart are replete with specific transactions and representations made by Burnett.  Specifically, Burnett contracted with, authorized and utilized the Recruiter Defendants to act as its India and United Arab Emirates based operations and/or agents. *Id.* at ¶¶ 52, 54, 56, 57, 73, 177.  Burnett and the Recruiter Defendants acted as a joint venture with respect to the recruitment, contacting, and retention of Plaintiffs to work for Signal.  *Id.* at ¶ 55.  Further, Defendant Signal authorized Burnett to act as its agent for the purposes of recruiting and providing Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's Texas Labor Camp. *Id.* at ¶ 78.  Burnett was involved in the tortious scheme to recruit  Plaintiffs to work at Signal from the inception, directing and consulting the Recruiter Defendants to advertise the Signal jobs (that promised permanent residency in the United States). *Id.* at ¶¶  73, 74.

Burnett coordinated the recruitment of Plaintiffs with Signal and Recruiter Defendants through the use of telephone, fax, and e-mail communications throughout 2006 and 2007. *Id*. at ¶ 77.  At Signal's direction, Burnett was instructed to represent to Plaintiffs that Plaintiffs would be eligible for visa extensions and green cards if they worked for Signal.  *Id*. at ¶ 80.  Burnett was fully aware that such extensions or applications for green cards were unlawful under United States immigration law and Signal had no intention at the time to apply for green cards for the Plaintiffs. *Id*.

Burnett, having full knowledge of Signal's fraudulent and tortious intentions, travelled to India and made false representations to Plaintiffs about obtaining permanent legal status and/or green cards in the United States to induce Plaintiffs to pay exorbitant recruitment fees to Defendants, including Burnett.  *Id*. at ¶¶ 81, 82, 84, 86, 88, 265, 268.  Burnett further misrepresented to Plaintiffs that he would do everything necessary to ensure that Plaintiffs would obtain green cards within 24 months of initiating the green card process.  *Id*. at ¶ 88.  The contracts signed by Plaintiffs with Burnett also promised that Plaintiffs would be refunded for all payments if the Defendants were unable to secure green cards for Plaintiffs. *Id*.  These fraudulent and tortious representations were made to Plaintiffs by Burnett in-person and via telephone conversations, faxes, contracts, and other written documents.  *Id*. at ¶ 87.

Based upon these representations made by Burnett and the Recruiter Defendants, Plaintiffs paid exorbitant recruitment fees to Defendants, including Burnett.  Burnett greatly benefitted from these fraudulent representations because the Plaintiffs were instructed to pay these recruitment fees directly to Burnett.  *See* Compl. Ex. 1 ¶¶ F37, F44, F49, F50, F51, F54, F57, F60, F86, F93, F99, F140, F151, F157, F166, F167, F170, F171, F173, F186, F189, F190, F193, F200, F206, F207, F210.  Burnett further conspired to make, and did make, false statements to the United States Citizenship and Immigration Service ("USCIS") regarding

Signal's labor needs so that Signal's petition for H-2B visas would be granted.  *See* Compl. at ¶¶ 102-110, ECF No. 1.

Burnett made it possible for Plaintiffs to be trafficked into the United States for the purpose of working at the Texas Labor Camp.  Burnett was a key cog that helped run the Defendants' tortious, illegal human trafficking scheme.

**B.**    **THE PROCEDURAL BACKGROUND**

The procedural background for this case is complex.  Initially, the tortious and illegal conduct of the Defendants was the subject of a putative class action filed by twelve Indian former Signal employees on March 7, 2008.  *See David v. Signal Int'l, LLC*, No. 08-CV-1220 (E.D. La.).  The *David* litigation, which is on-going, asserts claims against the same Defendants[3] under various federal statutes including the TVPA, RICO, the Civil Rights Act, the Fair Labor Standards Act, and common law claims for fraud, negligent misrepresentation, and breach of contract.  Burnett is a named defendant in the *David* litigation.  On January 4, 2012, class certification was denied in *David*, thus paving the way for Plaintiffs to file individual actions. *See* Order and Reasons Denying Class Certification, at 33, *Kurian David, et al. v. Signal International, LLC, et al*., 2:08-cv-01220-SM-DEK (E.D. La. January 4, 2012), ECF No. 1117.

Plaintiffs filed their Complaint on May 21, 2013.  On August 28, 2013, the presiding judge in *David* issued an order granting the *David* plaintiffs' motion, tolling the statutes of limitations for all federal and state claims for the putative class members not named in the *David* complaint through the date of the order (attached hereto as **Exhibit A**).  That order applies to Plaintiffs in this litigation.  On September 10, 2013 Burnett filed this meritless motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and a motion to dismiss pursuant to Rule

_____

[3] Only one Signal entity is named in the *David* litigation, Signal International, LLC.

12(b)(2).   Plaintiffs now provide this opposition in response to Burnett's motion to dismiss pursuant to Rule 12(b)(6).[4]

### III.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) are viewed with disfavor in the Fifth Circuit and are rarely granted.  *Harrington v. State Farm Fire & Cas. Co.,* 563 F.3d 141, 147 (5th Cir. 2009) (quotation marks and citation omitted).  Facts are construed liberally in favor of the plaintiffs, and the Court accepts well-pleaded facts in the complaint as true.  *Gordon v. JPMorgan Chase Bank, N.A.*, 505 Fed. Appx. 361, 362, 2013 WL 49587 (5th Cir. 2013) (citing *Harrington*).

Dismissal is inappropriate unless the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  To satisfy this standard, the Complaint must provide more than conclusions, but it "need not contain detailed factual allegations."  *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Colony Ins. Co. v. Peachtree Constr., Ltd.,* 647 F.3d 248, 252 (5th Cir. 2011)).  The touchstone of the analysis of a motion to dismiss under Rule 12(b)(6) is "plausibility."  The Complaint must allege enough facts to move the claim "across the line from conceivable to plausible." *Turner*, 663 F.3d at 775 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).  Determining whether the plausibility standard has been met is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

---

[4] Plaintiffs submit their opposition to Burnett's 12(b)(2) motion in a separate pleading.

## IV.    LEGAL ARGUMENT

### A.    PLAINTIFFS' COMPLAINT STATES SUFFICIENT FACTS ALLEGING THEIR FEDERAL LAW CLAIMS AND COMMON LAW CLAIMS.

Burnett was an integral member of a labor trafficking scheme designed to recruit Plaintiffs for work at Signal based on false promises of permanent residency in the United States. Burnett argues that "Plaintiffs have not stated any cause of action against Burnett beyond unsupported and unsupportable conclusions and talismanic recital of statutory language." Mot. Dismiss, p. 2, ECF No. 37.  Based on the allegations detailed above, Burnett's argument that the Complaint fails to allege that Burnett was not a key member of the labor trafficking scheme perpetrated on the Plaintiffs by the Defendants and that Burnett did not defraud the Plaintiffs is baseless.  Assuming the Complaint's facts to be true – as the Court must at this stage – the Plaintiffs' Complaint pleads sufficient facts to state a plausible claim for each of the Federal Law Claims and Common Law Claims.  Accordingly, this Court must deny Burnett's motion to dismiss.

Burnett's key contention is that none of the Plaintiffs' allegations "state[s] any acts or conduct by Burnett that was illegal" but rather are actions "consistent with any attorney representing his or her clients." *Id.* at p. 3.  Burnett further contends that none of the alleged communications by Burnett support a "plausibility to defraud," but rather show that Burnett performed a lot of work "in the preparation of H-2B visa applications." *Id.* at p. 4.  These broad, sweeping contentions by Burnett are unverified conclusory statements, inconsistent with the allegations in the Complaint.  The Complaint and RICO Fraud Chart allege specific actions by Burnett that are illegal, tortious and committed in combination with the other Defendants in furtherance of a scheme that constituted violations of the stated federal and state laws.

Burnett worked hand-in-hand with Signal and the Recruiter Defendants in an elaborate scheme to traffic Plaintiffs to the United States for work at Signal.  Burnett told the Plaintiffs he

would obtain green cards for them.  The Plaintiffs received letters from the Recruiter Defendants that explicitly list a "Green Card Processing Fee" to be paid directly to Malvern Burnett.[5] Burnett signed immigration agreements with the Plaintiffs promising permanent residency, knowing full-well that Signal did not intend to ever provide the Plaintiffs with permanent residency.  Reasonably relying on these false representations, the Plaintiffs paid Burnett huge sums of money in hopes of obtaining permanent residency in the United States.  The Plaintiffs' Complaint goes to great lengths to describe the intricate trafficking scheme established by Burnett and the other Defendants and the misrepresentations made to Plaintiffs in violation of federal and state law.

Further, Burnett's actions were not simply those of an immigration attorney representing his clients.  An immigration attorney would not conspire to make and/or make false statements to the USCIS regarding Signal's labor needs so that Signal's petitions for H-2B visas would be granted.  An ethical immigration attorney would not assure Plaintiffs of their ability to obtain green cards by working for Signal knowing that Plaintiffs would *never* obtain green cards.  The Defendants' entire illegal labor trafficking scheme would not have been possible without Burnett's fraudulent representations to the USCIS because Plaintiffs would not have received H-2B visas to work at the Texas Labor Camp.  Moreover, Plaintiffs certainly would not have agreed to work for Signal and to pay the exorbitant recruitment fees were it not for Burnett's misrepresentations regarding permanent residency.

Burnett's arguments that the Complaint fails to state allegations demonstrating that Burnett violated the law as set forth in Plaintiffs' Federal Law Claims and Common Law Claims are baseless.  Assuming the Complaint's facts to be true – as the Court must at this stage – the

---

[5] Plaintiffs received a variety of letters from Defendant Dewan Consultants listing the fees to be paid to Burnett.  A true and accurate copy of the letter received by Plaintiff Atha Mohammad Abdul is attached as **Exhibit B**.

Complaint pleads sufficient facts to state a plausible claim, and this Court must deny Signal's motion to dismiss.

**B.     PLAINTIFFS' FEDERAL LAW CLAIMS DO NOT DEPEND ON THREATS OF DEPORTATION.**

Burnett alleges that Plaintiffs' Federal Law Claims have as their "linchpin the concept that threats of deportation satisfies the definition of involuntary servitude."  Mot. to Dismiss, p. 2, ECF No. 37.  Plaintiffs do indeed allege in the Complaint that they were subject to threats of deportation.  Compl. at ¶¶ 6, 169, 186, ECF No. 1.  In these special circumstances, Defendants' threats of deportation support a finding of involuntary servitude, certainly at this preliminary stage in the litigation.  However, contrary to Burnett's assertions, these claims are not the "linchpin" of Plaintiffs' Federal Law Claims, but rather, constitute only one of many facts that establish the fraudulent scheme and predicate acts for RICO set out in detail in the Complaint.

Burnett's reliance on *Zavala v. Wal-Mart Stores, Inc.* is also inappropriate.  691 F.3d 527 (3rd Cir. 2012). In *Zavala*, the plaintiffs were illegal aliens alleging violations of the Fair Labor Standards Act ("FLSA") and RICO against Wal-Mart.  However, Wal-Mart did not contract directly with the plaintiffs, and the plaintiffs did not work exclusively for Wal-Mart. *Id.* at 531. The court stated that "[a]bsent some special circumstances, threats of deportation are insufficient to constitute involuntary servitude," adding that:

> Plaintiffs do not claim that they were compelled to come to work each day.  While they allege that managers often kept them beyond the end of their shift to finish their work, they do not claim that they were forced to remain once that work was finished.  **The record demonstrates that Plaintiffs often switched jobs, freely moving to different employers in different cities.**

*Zavala*, 691 F.3d at 541 (emphasis added).

The plaintiffs in *Zavala* did not encounter the systematic coercion and threats of deportation faced by the Plaintiffs in this case.  The Plaintiffs were forced to live in deplorable conditions at the Texas Labor Camp, essentially imprisoned by security and barbed wire fencing.

The Plaintiffs could not legally work for any other employer under their H-2B visas and had no freedom to change locations. Further, the Plaintiffs incurred insurmountable debt and believed that continuing to work at Signal was their only option to repay their debt.

In these special circumstances, Defendants' threats of deportation support a finding of involuntary servitude, certainly at this preliminary stage in the litigation. Accordingly, Burnett's request that any part of the Complaint be dismissed on this ground should be denied.

**C.     PLAINTIFFS' DAMAGES FOR PAYING RECRUITING FEES, LEGAL FEES, AND TRAVEL COSTS ARE NOT BASED ON A FLSA CLAIM.**

Burnett also contends, albeit not very clearly, that there was no prohibition against requiring the Plaintiffs to pay recruitment fees, legal fees and travel costs to work at Signal. Mot. to Dismiss, p. 2, ECF No. 37. (citing *Castellanos-Centreras v. Decatur Hotels, LLC*, 622 F.3d 393 (5th Cir. 2010)). The issue here is not whether the payment of recruitment fees, legal fees, and travel costs is prohibited. Here, the Defendants, including Burnett, made fraudulent and blatantly false promises to Plaintiffs, inducing Plaintiffs to pay extraordinary fees. Burnett would have the Court believe that he is immune from federal statutes other than "applicable federal immigration and labor regulations existing at the time… ." *Id.* He is not. *Castellanos-Centreras* was an FLSA case and is entirely inapposite. Accordingly, *Castellanos-Centreras* provides no basis for dismissal of any part of Plaintiffs' Complaint.

**D.     THE STATUTE OF LIMITATIONS WAS TOLLED FOR PLAINTIFFS' COMMON LAW CLAIMS.**

Finally, Burnett contends that the statute of limitations has lapsed for Plaintiffs' Common Law Claims because "[i]n the state of Texas, a federal class action filed in another state that is not certified will not toll the running of the statute of limitations on state based claims." Mot. Dismiss, p. 3, ECF No. 37. However, Judge Morgan's Order (the "Order") in the *David* litigation granted tolling to all of Plaintiffs' Common Law Claims. Further, Texas law supports

the tolling of the statute of limitations for the Plaintiffs' Common Law Claims in this situation.[6]

Accordingly, Plaintiffs' Common Law Claims are not barred by the statute of limitations.

1.    **Judge Morgan's Order in the _David_ Litigation Explicitly Tolled All of Plaintiffs' Common Law Claims.**

Judge Morgan's Order in the _David_ litigation explicitly tolled all of Plaintiffs' Common Law Claims.  The Order granted tolling with respect to several federal law claims, "as well as **state law tort and contract claims**."  _See_ Exhibit A, at p. 2 (emphasis added).  The Fifth Circuit recognizes orders issued by federal district judges that toll a statute of limitations.  _See Newby v. Enron Corp.,_ 542 F.3d 463, 470-471 (5th Cir. 2008).[7]  Burnett does not argue – because there is no argument to be made – that any of Plaintiffs' Common Law Claims are barred by the statutes of limitation if they are tolled by the Order.   Accordingly, Plaintiffs request that this Court enforce the Order and find that the Plaintiffs' Common Law Claims were timely filed due to the tolling of the "state law tort and contract claims."

2.    **Texas Law Supports the Tolling of the Statute of Limitations for the Plaintiffs' Common Law Claims in this Situation.**

Texas law supports the tolling of the statute of limitations for the Plaintiffs' Common Law Claims in this situation.  In _American Pipe & Construction Co. v. Utah_, the United States Supreme Court held that the filing of a class action tolls the statute of limitations during the pendency of the action, even when class certification is later denied.  414 U.S. 538, 553 (1974) ("[T]he commencement of the original class suit tolls the running of the statute for all purported

---

[6] Plaintiffs have previously briefed the applicability of Texas law to their Common Law Claims. _See_ Pls.' Opp'n to Signal's Mot. to Dismiss, pp. 8-12, ECF No. 22.  Burnett alleges that this Court's jurisdiction is based on diversity of the Parties and therefore the substantive law of the state must apply.  Mot. Dismiss, p. 2, ECF No. 37.  Plaintiffs explicitly allege in their Complaint that this Court's jurisdiction is based on federal question jurisdiction.  However, because the argument regarding tolling pertains to the supplemental state law claims, the substantive law of the state of Texas applies.

[7] The plaintiffs in _Newby_ also argued alternative equitable tolling theories discussed below.

members of the class who make timely motions to intervene after the court has found the suit

inappropriate for class action status.").   Relying on *American Pip*e, Texas courts follow this

same equitable tolling doctrine during the pendency of a related putative class action.  In *Venture*

*v. Banales,* the Court of Appeals of Texas stated:

> Texas likewise suspends the applicable statute of limitations as to all purported members of the class upon the filing of the class action, **such that any time remaining on the statute of limitations of the class members' individual causes of action on the date of the filing of the lawsuit is restored and begins to run again on the date the class action is dismissed.**

*Ventura v. Banales*, 905 S.W.2d 423, 425 (Tex. App. – Corpus Christi 1995); *see also Bara v.*

*Major Funding Corp. Liquidating Trust*, 876 S.W.2d 469, 471–72 (Tex. App. – Austin 1994)

(finding *American Pipe* tolling appropriate for class action opt-out plaintiffs where defendant had

notice of specific claims and number of potential claimants)*; Beavers v. Metropolitan Life Ins.*

*Co.*, 2007 WL 3342540, at *6 (S.D. Tex. Nov. 8, 2007) (recognizing the use of *American Pipe*

tolling by Texas courts to suspend the limitations period for individual claims due to a pending

class action).

   This principle is especially true where the previous putative class action raised the same

claims against the same defendants, giving those same defendants in the new case notice of the

claims and potential plaintiffs.  *See In re Norplant Contraceptive Products Liability Litig.*, 961 F.

Supp. 163 (E.D. Tex. 1997).   In *Norplant,* the court emphasized the putative class action

complaint's providing the defendants in the new case with notice of the type and potential

number of claims against them.  *Id.* at 166 (distinguishing *Bell v. Showa Denko K.K,* 899 S.W.2d

749 (Tex. App. – Amarillo 1995)).   The court held that tolling was justified because the

individual claims overlapped significantly with the previous class action claims and because the

number of potential claimants was certain.[8]  *See also Hall v. Variable Annuity Life Ins. Co.*, 2013 WL 4233103, at *2 (5th Cir. Aug. 15, 2013) ("[C]lass action mechanism would not succeed in its goal of reducing repetitious and unnecessary filings if members of a putative class were required to file individual suits to prevent their claims from expiring if certification is denied. As a result, the Supreme Court in *American Pipe & Construction Co. v. Utah* created a special rule to "freeze the clock" for putative class members once a class action lawsuit was filed.").

In this case, the plaintiffs in the *David* case sued on behalf of a putative class of 590 individuals whose identities were well known to Defendants as former Signal employees. This included all the Plaintiffs currently before this Court.  The *David* plaintiffs asserted almost identical federal law claims (TVPA, RICO, Civil Rights Act) and common law claims (fraud, negligent misrepresentation, and breach of contract) as are now asserted by the Plaintiffs here individually against the Defendants.  Where, as here, the Defendants had fair notice, there is no reason that Texas courts should be expected to insist that unnamed class members in a putative class action pending in federal court be required to pre-emptively file the same Common Law Claims in state court as a precaution against the risk that the class might not be certified.  Tolling is an equitable doctrine and equitable considerations requires that Plaintiffs' claims be tolled under this factual situation.

Finally, Burnett's reliance on *Bell v. Showa Denko K.K* and *Newby v. Enron Corp* are inappropriate due to the drastically different factual situation in the present case.  The Court in *Bell* stated that "[t]he basic premise of the *American Pipe* ruling is that a statute of limitations can be tolled while class allegations are pending, **provided the defendant has notice of the type and potential number of the claims against it.**" *Bell*, 899 S.W.2d at 758 (emphasis added).  In

---

[8] *Norplant* was distinguished on a different point by the Fifth Circuit in *Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008), discussed below.

*Bell*, most of the defendants were not named in the class action, leading the court to find that the defendants had not received fair notice of the existence of the claim, and that tolling should not be recognized.  *Id.*  *Bell* is obviously entirely distinguishable from this case and other cases where the defendants received notice of the claims in the class action complaint.  As the court in *Norplant* explained:

> However, the circumstances surrounding the Bell court's refusal to toll the statute of limitations are more complex than just the nature of the class action. **First, the issue of tolling was not raised until Bell filed her "Motion for Reconsideration and New Trial." Second, only one of the named defendants was also a defendant in the class action. Third, Bell did not file suit until 1992, but suffered an injury as early as 1982.  Fourth, the class action was filed in a federal court in another state and involved a variety of claims.** Under these circumstances, the Bell court determined that the class allegations did not provide the defendant notice of the type and potential number of claims against it, and therefore, the class action did not toll the statute of limitations. Because tolling is an equitable doctrine, the circumstances in Bell warranted that court's decision.

*Norplant,* 961 F. Supp. at 166 (emphasis added).

Here, the circumstances warrant the equitable tolling of Plaintiffs' Common Law Claims. First, the issue of tolling is brought at this very preliminary stage in the litigation.  Second, the defendants in the *David* litigation are the same Defendants involved in the current litigation. Third, the *David* litigation was initiated shortly after the putative class members suffered their injuries.  Fourth, the Defendants are faced with the same Federal Law Claims and Common Law Claims.  Equitable considerations, in conjunction with the Order, require the tolling of Plaintiffs' Common Law Claims.

Burnett also cites *Newby v. Enron Corp.*, for the proposition that Texas courts will "likely" not extend *American Pipe* tolling to this situation.  542 F.3d 463, 472 (5th Cir. 2008).  In *Newby,* the plaintiffs requested that the federal court lift an injunction to allow the plaintiffs to bring state court cases on behalf of 1200 additional plaintiffs.  *Id.* at 466-467.  The district court

denied the request to lift the injunction to file the new state court cases because the proposed claims were time barred and no tolling doctrine applied.   The plaintiffs argued that *American Pipe* provided for tolling of similar state law securities claims.   *Id.* at 470.   The court in *Newby* expressed doubt that Texas courts would apply *American Pipe* tolling under the facts of that case.   The court doubted *American Pipe* tolling would apply in a "complex federal [] class action, grounded in federal securities law and **involving a not easily discernible class of plaintiffs."**   Opinion and Order, *Newby v. Enron Corp.*, Civil Action No. H-01-3624 (S.D. Tex. Nov. 29, 2006) (emphasis added).   Under those unique circumstances, where over a thousand *previously unidentified plaintiffs* sought to bring *completely new causes of action*, there indeed would be reason to doubt that Texas courts would permit tolling.

The facts at bar in this current litigation differ drastically from the plaintiffs' situation in *Newby*.   Here, there are not a thousand unidentified plaintiffs asserting new causes of action against the Defendants.   The putative class action in *David* involved the same federal and common law claims against the Defendants, and the Defendants were aware that Plaintiffs were members of the putative class.   The Defendants have had fair notice regarding the types of claims and number and identity of claimants.   Equitable considerations mandate the tolling of the Plaintiffs' Common Law Claims.

Accordingly, Plaintiffs respectfully submit that this Court deny Burnett's motion to dismiss.

## V.      CONCLUSION

Burnett moves to dismiss Plaintiffs' claims by misconstruing the Complaint as alleging only conclusory allegations to support each of the Plaintiffs' Federal Law Claims and Common Law Claims. This is patently false.   The Complaint clearly alleges Burnett participated in a tortious, illegal labor trafficking scheme and defrauded Plaintiffs.   While Burnett may dispute the

merits of these claims, it cannot dispute that such factual allegations, which are presumed to be true at this early stage of the case, state plausible Federal Law Claims and Common Law Claims. Further, Plaintiffs' Common Law Claims were tolled under Texas tolling law and as a result of Judge Morgan's Order in the *David* litigation.

Plaintiffs respectfully request the Court deny Burnett's motion to dismiss in its entirety.

DATED:  September 27, 2013.

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com
bcorgan@kilpatricktownsend.com
spangborn@kilpatrickstockton.com
hheindel@kilpatricktownsend.com

By: ____s/ William H. Boice_____
William H. Boice
Georgia Bar No. 065725
Brian G. Corgan (*Admitted Pro Hac Vice*)
Georgia Bar No. 187700
Susan Pangborn (*Admitted Pro Hac Vice*)
Georgia Bar No. 735027
California Bar No. 282533
Heather L. Heindel (*Admitted Pro Hac Vice*)
Georgia Bar No. 285204

Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2013, I electronically filed the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION PURSUANT TO FED. R. CIV. P. 12(b)(6) OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C., AND GULF COAST IMMIGRATION CENTER, L.L.C. with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF participants

I further certify that on September 27, 2013, I served a true and correct copy of the foregoing document upon the below-named Defendants by depositing a copy of same in the U.S. Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Michael Pol
> 1566 Redwood Court
> Biloxi, MS  39532
>
> Global Resources, Inc.
> c/o Michael Pol
> 13 Herring Road
> Beaumont, MS 39423-2055

I further certify that on September 27, 2013, I served a true and correct copy of the foregoing document upon the below named Defendants by forwarding a copy to them via International Mail, with sufficient postage thereon to insure delivery, and properly addressed as follows:

> Sachin Dewan
> Dewan Consultants
> Dewan Consultants Pvt. Ltd.
> 708, Sagar Tech Plaza
> Andheri Kurla Road
> Sakinaka Junction, Andheri (E)
> Mumbai 400 072, India

KILPATRICK TOWNSEND &
   STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
bboice@kilpatricktownsend.com

By:   s/ William H. Boice
William H. Boice
Georgia Bar No. 065725




Attorney for Plaintiffs