**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **REJI SAMUEL**, *et al.* | § | |
| | § | |
| **v.** | § | **1:13-CV-323** |
| | § | |
| **SIGNAL INTERNATIONAL L.L.C.**, *et al.* | § | |

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge, and is referred to the undersigned United States Magistrate Judge for all pretrial matters pursuant to a Referral Order.  (Doc. No. 5.)  Pending before the undersigned is the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) of Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C."  (Doc. No. 38.)  The undersigned has considered the pending motion and the corresponding response.  (Doc. No. 42.)  The Defendants' motion should be denied because 1) the court has personal jurisdiction over the Defendants since the RICO statute provides for nationwide service of process; and 2) the court has specific personal jurisdiction over the Defendants given the number of alleged tortious acts committed by the Defendants both outside and inside Texas that injured the Plaintiffs within Texas.

## I.  Background

*A.  Procedural Background*

On March 7, 2008, twelve individuals who were allegedly trafficked into the United States to work for Defendant Signal filed a putative class action in the Eastern District of Louisiana.  See David v. Signal Int'l, LLC, Civ. A. No. 08-1220 (E.D. La.).  That Court denied class certification for the Plaintiffs' trafficking, RICO, civil rights and state law contract and fraud claims.  David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3,

2012).   As a result of this ruling, on May 21, 2013, the Plaintiffs filed suit in this District against the following Defendants: Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P. (hereinafter collectively referred to as "Signal"), Malvern C. Burnett, Gulf Coast Immigration Law Center, L.L.C., Law Offices of Malvern C. Burnett, A.P.C. (hereinafter collectively referred to as "Burnett Defendants"), Global Resources, Inc., Michael Pol, Sachin Dewan, and Dewan Consultants PVT. LTD. (a/k/a Medtech Consultants).   (Doc. No. 1.)   The Plaintiffs allege that some or all of the Defendants violated the following federal statutes: 1) The Trafficking Victims Protection Reauthorization Act of 2003; 2) Racketeer Influenced and Corrupt Organizations Act ("RICO"); 3) The Civil Rights act of 1866; and 4) The Ku Klux Klan Act of 1871.   (Id.)   In addition, the Plaintiffs bring state law fraud, negligent misrepresentation and breach of contract claims against all of the Defendants.   (Id. at 46-48.)   On September 10, 2013, the Burnett Defendants filed the pending motion to dismiss. (Doc. No. 38.)

*B.  Factual Background*

In the aftermath of Hurricane Katrina, approximately 590 men, including the Plaintiffs, were allegedly trafficked into the United States through the federal government's H-2B guest worker program to provide services to Signal.   (Doc. No. 1 at 2.)   The Plaintiffs claim that they were lured to work for Signal through fraudulent promises made by the Burnett Defendants and others of legal and permanent work-based immigration to the United States.   (Id.)   Subsequently, after coming to the United States, the Plaintiffs were allegedly subjected to forced labor and other serious abuses at Signal's operations in Orange, Texas.   (Id. at 4.)

## II.  Jurisdiction

The Burnett Defendants move to dismiss the instant case under Federal Rule of Civil

Procedure 12(b)(2) alleging that this court lacks personal jurisdiction over them.   (Doc. No. 38.)

Rule 12(b)(2) requires a court to dismiss a claim if it does not have personal jurisdiction over the

defendant.   Grynberg v. BP P.L.C., 855 F. Supp. 2d 625, 638 (S.D. Tex. 2012); see FED. R. CIV. P.

12(b)(2).   "When a court rules on a motion to dismiss for lack of personal jurisdiction without

holding an evidentiary hearing, the party asserting jurisdiction is required to present facts

sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden."   Duke

Energy Int'l, L.L.C. v. Napoli, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing Central Freight

Lines Inc. v. APA Transport Corp., 322 F.3d 376, 380 (5th Cir. 2003); Alpine View Co. v. Atlas

Copco A.B., 205 F.3d 208, 214 (5th Cir. 2000)).   "[O]n a motion to dismiss for lack of

jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and

conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's

favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists."

Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990).

A.   *Nationwide Service of Process under the RICO Statute, 18 U.S.C. § 1965(b)*

In their complaint, the Plaintiffs allege RICO claims against all of the Defendants,

including the Burnett Defendants.   (Doc. No. 1, pp. 34-43.)   A federal court obtains personal

jurisdiction over a defendant in a suit based upon a federal statute if that statute provides for

nationwide service of process and the defendant has had minimum contacts with the United States.

Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994).   The

Burnett Defendants have minimum contacts with the United States.   (See Doc. No. 38, Ex. 1,

Affidavit of Malvern Burnett.)   Thus, the next issue to be decided is whether the RICO statute

provides nationwide service of process.

Title 18 U.S.C. § 1965 provides, in pertinent part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.
> (b) In any action under section 1964 [the civil RICO remedies] of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

While the Fifth Circuit has not yet ruled on this issue, it appears all of the district courts in this Circuit have interpreted § 1965(b) to confer nationwide jurisdiction in a RICO action over nonresident defendants if the plaintiff can establish personal jurisdiction over at least one defendant under § 1965(a).   Allstate Ins. Co. v. Plambeck, No. 3-08-cv-0388-M, 2009 WL 347423, at *3 (N.D. Tex. Feb. 11, 2009) (citing Rolls–Royce Corp. v. Heros, Inc., 576 F.Supp.2d 765, 778-79 (N.D. Tex. 2008); Oblio Telecom, Inc. v. Patel, No. 3–08–cv–0279–L, 2008 WL 4936488 at *4 (N.D. Tex. Nov. 18, 2008)); see also Hawkins v. Upjohn Co., 890 F. Supp. 601, 606 (E.D. Tex. 1994); Paolino v. Argyll Equities, L.L.C., 401 F. Supp. 2d 712, 719 (W.D. Tex. 2005). Furthermore, the majority of circuit courts have determined that § 1965(b) confers nationwide service of process in RICO cases.   See Allstate Ins. Co., 2009 WL 347423, at *3 n.2 (collecting cases).

The Burnett Defendants argue that even if § 1965(b) provides for nationwide service of process, "the requirements of the constitution and due process must still be fulfilled."  (Doc. No. 38, p. 2.)  Thus, the Burnett Defendants argue they have insufficient minimum contacts with Texas to justify personal jurisdiction here.  (Id.)  This argument is contrary to Fifth Circuit precedent.   As stated previously, a federal court obtains personal jurisdiction over a defendant in a

suit based upon a federal statute if that statute provides for nationwide service of process and the defendant has had minimum contacts with the *United States*.   Busch, 11 F.3d at 1258. Accordingly, the undersigned will follow the majority rule that § 1965(b) of the RICO statute provides for nationwide service of process if the plaintiff can establish personal jurisdiction over at least one defendant under § 1965(a).   That is easily determined here.   In the instant case, it is clear that Defendant Signal transacts its affairs in this forum as they have a facility in Orange, Texas.

Having decided § 1965(b) provides nationwide service of process, the last inquiry is whether the "ends of justice require" the Burnett Defendants, who reside and conduct business in the Eastern District of Louisiana and Southern District of Mississippi, be brought before the court in the Eastern District of Texas.   See 18 U.S.C. § 1965(b) ("In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned . . . .").   The Burnett Defendants argue that "under the totality of the circumstances" and given the speculative allegations against them in the complaint, the "ends of justice" do not require they be brought before this court.   Again, the Burnett Defendants take issue with their lack of contacts with Texas, the forum state.   Furthermore, they argue the Plaintiffs have failed to plead enough facts in their complaint to show the Burnett Defendants engaged in a conspiracy or a scheme to defraud or commit illegal acts subjecting them to the personal jurisdiction of this court.

These are not relevant considerations when deciding whether "the ends of justice" require the Burnett Defendants to be brought to Texas.   To reiterate, when a federal court attempts to exercise personal jurisdiction over a defendant in a suit based on a federal statute providing for

nationwide service of process—which is the case here—the relevant inquiry is whether the defendant has sufficient contacts with the *United States* as a whole, not the forum state.   Busch, 11 F.3d 1255, 1258; Adams v. Unione Mediterranea di Sicurta, 364 F.3d 646, 650-51 (5th Cir. 2004). Furthermore, questions of whether the complaint sufficiently pleads violations of the RICO statute should not be raised in a motion under Rule 12(b)(2) challenging personal jurisdiction.   See Allstate Ins. Co., 2009 WL 347423, at *4.

"[T]he 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." Cory v. Aztec Steel Building, Inc., 468 F.3d 1226, 1232 (10th Cir. 2006).   The Fifth Circuit has not implemented any legal test as to what exact set of facts meet "the ends of justice" requirement. See Hewlett-Packard Co. v. Byd:Sign, Inc., No. 6:05-cv-456, 2006 WL 2822151, at *9 (E.D. Tex. Sept. 28, 2006).   While courts have used somewhat differing tests, the two considerations that are used most frequently are 1) whether no other district court would have personal jurisdiction over *all* of the alleged RICO conspirators[1] and 2) judicial economy.[2]

The "ends of justice" require the Burnett Defendants to answer in this forum because numerous defendants reside in different states, and there is likely no alternative forum in which jurisdiction would be proper as to all defendants.[3]   For reasons of judicial economy, the "ends of justice" should also require the Burnett Defendants to litigate this suit in Texas.   There are

---

1.   Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 539 (9th Cir.1986).

2.   Farmers Bank of State of Del. v. Bell Mortg. Corp., 577 F. Supp. 34, 35 (D.C. Del. 1978).

3.   The various Signal defendants have operations in Texas, Mississippi and Alabama and are organized under the laws of Delaware and Texas; Michael Pol is a Mississippi resident; Global is a Mississippi corporation; Sachin Dewan is a resident of India while Sachin Consultants conduct operations in India and the United Arab Emirates; and Malvern Burnett is a Louisiana resident who practices law there and in Mississippi. (Doc. No. 1, pp. 9-12.)  Defendants Law Office of Malvern Burnett, APC and Gulf Coast Immigration Center were corporations organized under the laws of Louisiana.   (Doc. No. 38, Ex. 1, p. 3.)

currently seventeen plaintiffs in this case and over seventy in the four companion cases.[4]   Most of these same plaintiffs already have pending FLSA claims in the Eastern District of Louisiana stemming from the same allegations.[5]   (Doc. No. 56.)   This court and the Fifth Circuit have already denied Signal's vigorous attempts to transfer this case to Louisiana.   (Doc. Nos. 56, 63, 66); In re: Signal International, L.L.C., et al., No. 14-40313, (5th Cir. April 4, 2014) (court order denying the petition for writ of mandamus in reference to their motion to transfer filed by Signal). Thus, it can safely be assumed that approximately ninety plaintiffs will be trying this case here in Texas against the lead Defendant Signal and other defendants that have not sought transfer.   If the Burnett Defendants were dismissed from this case, most of the plaintiffs in this and the companion cases would be litigating their FLSA claims against Signal in Louisiana, all of the plaintiffs would be litigating their RICO, federal law and state law claims against the remaining defendants here, and then potentially those same RICO, federal law and state law claims against only the Burnett Defendants would be litigated in an entirely different forum.[6]   That would be contrary to Congress' intent for the "ends of justice" provision which enables plaintiffs to bring all members of a nationwide RICO conspiracy before a court in a single trial.   Butcher's Union, 788 F.2d 535, 539.   The undersigned also notes that it would be impractical to require roughly ninety plaintiffs to travel to a different forum all for the sake of the Burnett Defendants, who consist of a single attorney and two defunct companies located in a contiguous state.

B.   *The Burnett Defendants are also subject to specific personal jurisdiction in this District*

Although this court has personal jurisdiction over the Burnett Defendants due to the

---

4.   See 1:13-cv-324; 1:13-cv-497; 1:13-cv-499; 1:13-cv-498.

5.   The Plaintiffs recently filed an amended complaint in which they seek to transfer their FLSA claims to this court.   (Doc. No. 83.)   However, the undersigned has not yet ruled on this motion.

6.   The Burnett Defendants do not say which forum they would be subject to personal jurisdiction.

nationwide service provisions of the RICO statute, this court also has specific personal jurisdiction over the Burnett Defendants.   Absent a statute that permits nationwide service of process, when a suit is based on a federal statute, the court looks to the long-arm statute of the state in which it sits to determine whether a defendant is subject to personal jurisdiction.   Omni Capital Intern., Ltd. Rudolf Wolff & Co., Ltd., 484 U.S. 97, 105 (1987).   The Texas long-arm statute confers jurisdiction to the limits of the federal constitution.   Companion Prop. & Cas. Ins. Co. v. Palermo, 723 F.3d 557, 559 (5th Cir. 2013).   Therefore, the undersigned's focus is whether the exercise of personal jurisdiction offends or satisfies constitutional requirements of due process.

In order to satisfy due process, the Burnett Defendants must have "certain minimum contacts with [Texas] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."   Parker v. Pro W. Contractors, L.L.C., No. 13-30142, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing Int'l Shoe Co. v. State of Wash., 326 U.S. 310, 316 (1945)).   "The minimum contacts requirement is satisfied by either: (1) contacts that give rise to general personal jurisdiction or (2) contacts that give rise to specific personal jurisdiction."   Id. (citing Wilson v. Belin, 20 F.3d 644, 647 (5th Cir. 1994)).   Because the Plaintiffs do not argue minimum contacts are satisfied through general personal jurisdiction, the undersigned will focus only on whether the Burnett Defendants have sufficient contacts that give rise to specific personal jurisdiction.

"Specific jurisdiction is proper where the defendant has 'purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'"   Parker, 2013 WL 3534082, at *1 (5th Cir. July 15, 2013) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)); see also Electrosource, Inc. v. Horizon Battery Techs. Ltd., 176 F.3d 867, 871 (5th Cir. 1999) (litigation must arise out of or

relate to activities purposefully directed at residents of the forum).   "The constitutional requirement for specific jurisdiction is that the defendant has 'minimum contacts' with the forum state such that imposing a judgment would not 'offend traditional notions of fair play and substantial justice.'"   Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 484 (5th Cir. 2008) (quoting Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945)).

The complaint raises these allegations against the Burnett Defendants:

Signal authorized the Burnett Defendants to act as their agents for the purposes of recruiting and providing Indian welders and pipefitters to fill anticipated H-2B guest worker jobs at Signal's Orange, Texas operations.  Signal further authorized the Burnett Defendants to represent that Signal would agree to sponsor bona fide green card applications for the Plaintiffs and obtain at least two H-2B visa extensions which would allow them to remain in the United States working for Signal while their green card applications were being processed.  Signal knew that the H-2B Workers paid exorbitant recruitment fees to the Burnett Defendants for these services.  In 2006, the Plaintiffs attended meetings at which the Burnett Defendants, acting on Signal's behalf, informed the Plaintiffs of the opportunity to work for Defendant Signal on H-2B visas which were represented to lead to permanent resident (green card) status.  The Plaintiffs were further informed by the Burnett Defendants that the Plaintiffs would be able to obtain legal permanent residence for their spouses and children. The Burnett Defendants, personally or through their agents, represented to the Plaintiffs that Signal would provide lawful, stable, and ample employment opportunities; working under an H-2B visa for Signal was not inconsistent with applying for permanent immigration status sponsored by Signal; and, Signal would obtain work-authorized green cards for the Plaintiffs, enabling them to permanently and legally reside in the United States with their families.  In such communications with the Plaintiffs, the Burnett Defendants further promised to act diligently and to do everything necessary to ensure that the Plaintiffs would obtain green cards within twenty-four months of initiating the green-card process.
In reasonable reliance upon these and other contractually-binding promises made to them regarding green cards and work opportunities in the United States, the Plaintiffs signed green card contracts at various points from mid-2006 to early 2007

with the Burnett Defendants pursuant to which the Plaintiffs promised to pay the fees charged by the Burnett Defendants.  The contracts signed by the Plaintiffs and other documents provided to the Plaintiffs by the Burnett Defendants further promised that the Plaintiffs would promptly receive a refund of all or nearly all of their payments if the Burnett Defendants did not succeed in securing green cards for the Plaintiffs, as promised.

The Burnett Defendants knew or should have known, however, that they would not refund the Plaintiffs' money as promised in the contracts and other documents.  The Burnett Defendants induced the Plaintiffs to enter the green card contracts even though they did not intend to diligently pursue the Plaintiffs' applications and without any basis for representing that Signal had lawful long-term employment opportunities to provide the Plaintiffs; that Signal could legally apply for numerous H-2B visa extensions to maintain the Plaintiffs' presence in the United States; that working under an H-2B visa for Signal was not inconsistent with applying for permanent immigration status sponsored by Signal; that green card applications sponsored by Signal would be valid and bona fide under United States immigration law; and that such applications were likely to be successfully completed and approved within the promised timelines.  In reasonable reliance on the Burnett Defendants' explicit and repeated promises regarding the procurement of green cards and employment opportunities in the United States, the Plaintiffs undertook considerable economic, personal and familial sacrifices in order to amass the funds necessary to initiate the green card process with Signal.  In reasonable reliance on the promises of the Burnett Defendants, the Plaintiffs signed contracts with these Defendants and made the payments required by these contracts.  Signal and the Burnett Defendants knew that the stated period of need in Signal's applications for labor certifications and for H-2B visas was inconsistent with Signal's projected actual labor need, and therefore the Burnett Defendants knew their statements made to the United States Government were false.  The Burnett Defendants used the H-2B visas, obtained from the United States Government on the basis of false statements by the Burnett Defendants, to elicit certain payments from Plaintiffs.  The Plaintiffs then entered the United States on H-2B guest worker visas, issued by the United States Government on the basis of false statements made by Signal and the Burnett Defendants for the purposes of working for Defendant Signal at its Texas Labor Camp in Orange, Texas.

After the Plaintiffs arrived at the Orange, Texas Labor Camp, the Burnett Defendants and Defendant Signal reached an agreement regarding steps to be taken to discourage worker organizing efforts and to ensure that the Indian H-2B Workers

continued to work at Signal without complaint, as well as to prevent the Indian H-2B Workers from exercising their legal rights.   Since first contracting with the Burnett Defendants, the Plaintiffs have yet to receive the promised green cards or permanent residency from any of the Defendants.   Despite clear contractual provisions requiring them to do so, the Burnett Defendants have refused to refund any of the fees the Plaintiffs paid them for unsuccessful green card and visa processing.

First, the Plaintiffs have satisfied the minimum contacts requirement by alleging that the Burnett Defendants committed acts outside of Texas—defrauding the Plaintiffs—that caused tortious injuries within Texas.   The Fifth Circuit has held that sufficient minimum contacts are established "[w]hen a nonresident defendant commits a tort within the state, *or an act outside the state that causes tortious injury within the state*."   Guidry v. United States Tobacco Co., 188 F.3d 619, 628 (5th Cir. 1999) (collecting cases).   "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."   Id. (collecting cases).   An individual injured in Texas "need not go to [another jurisdiction] to seek redress from persons who, though remaining in other states, intentionally, knowingly and recklessly caused severe physical, emotional and economic injuries to the plaintiffs and others" in Texas.   Id. at 630.   Based upon the complaint alone, the Plaintiffs have established that the Burnett Defendants have sufficient minimum contacts with Texas because the alleged tortious acts committed by the Burnett Defendants, even if most were committed outside of Texas, caused tortious injuries within Texas.   The Burnett Defendants, who allegedly conspired with Signal to lure the Plaintiffs to Orange, Texas with false promises, cannot credibly argue that they could not reasonably have anticipated being sued in this District.

Second, it will not "offend traditional notions of fair play and substantial justice" for this

court to exercise personal jurisdiction over the Burnett Defendants.    The Fifth Circuit has used the following test to assess the reasonableness of a court's exercise of personal jurisdiction: "(1) the burden upon the nonresident defendant to litigate in that forum; (2) the forum state's interests in the matter; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies."  Stroman Realty, Inc. v. Wercinski, 513 F.3d 476, 487 (5th Cir. 2008) (citing Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 113 (1987)).   First, the Burnett Defendants will not face a large burden in litigating the instant case in this District, because the Burnett Defendants, who consist of a single attorney and two defunct companies, are located in Louisiana, which is contiguous to Texas.   Second, the forum state, Texas, does have an interest in the matter because the seventeen Plaintiffs were allegedly injured while working at Signal's Orange, Texas facility.   Third, keeping the Burnett Defendants claims in this District will provide the most efficient resolution of this case.   Notwithstanding their status as putative class members, the Plaintiffs have already moved their case once from a different federal district court after their motion for class certification was denied.  David v. Signal Int'l, LLC, Civ. A. No. 08-1220, 2012 U.S. Dist. LEXIS 114247, at *129 (E.D. La. Jan. 3, 2012).   The most expeditious option at this point would be to continue this case in this District.   Finally, the Burnett Defendants have not pointed out any clashes between the substantive social policies of Texas and any other potential forum state in regards to this case.   Taking these factors into consideration, the undersigned finds that this court will not offend traditional notions of fair play and substantial justice by exercising personal jurisdiction over the Burnett Defendants.

In summary, the undersigned finds the Plaintiffs have presented sufficient facts to establish a *prima facie* case of personal jurisdiciton over the Defendants because the RICO statute provides

for nationwide service of process.  Furthermore, the undersigned finds the Plaintiffs have also established a *prima facie* case that this court has personal jurisdiction over the Burnett Defendants by showing 1) the Burnett Defendants have sufficient minimum contacts with Texas; and 2) it will not offend traditional notions of fair play and substantial justice for this court to exercise personal jurisdiction over the Burnett Defendants.

## IV.   Recommendation

For the reasons stated above, the "Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) of Malvern C. Burnett, the Law Offices of Malvern C. Burnett, A.P.C., and Gulf Coast Immigration Law Center, L.L.C." (Doc. No. 38) should be **DENIED**.

## V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(c) (Supp. IV 2011), each party to this action has the right to file objections to this report and recommendation.  Objections to this report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(2).  A party who objects to this report is entitled to a de novo determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); FED R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, <u>see</u> <u>Rodriguez v. Bowen</u>, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such

findings of fact and conclusions of law accepted by the United States District Judge, <u>see</u> <u>Douglass</u>

<u>v. United Serv. Auto. Ass'n.</u>, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 30th day of April, 2014.

_____
Zack Hawthorn
United States Magistrate Judge