UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION


| | | |
|---|---|---|
| REJI SAMUEL, *et al* | * | Case No: 1:13-cv-0323 |
| Plaintiffs | | |
| | * | |
| vs. | * | |
| | * | |
| SIGNAL INTERNATIONAL, LLC, *et al*, | | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*
  \*


OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION TO
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(B)(2)
OF MALVERN C. BURNETT, THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.,
AND GULF COAST IMMIGRATION LAW CENTER, L.L.C.,

May It Please the Court,

Defendants, Malvern C. Burnett, the Law Offices of Malvern C. Burnett, APC, and the Gulf South Immigration Law Center, LLC, (hereinafter referred collectively to as "Burnett", unless otherwise indicated)herewith object to the Report and Recommendation of the Magistrate Judge on the Burnett Defendants' Motion to dismiss for lack of jurisdiction over the person of the Burnett Defendants.

Burnett objects to the Magistrate's findings , and resultant recommendations, that service in this matter was effectuated through the RICO statute, and as such jurisdiction has not been conferred pursuant to the service provisions of RICO.  To the contrary, plaintiffs did not submit

the matter to the Court for the requisite showing and have process issued for service by the United States Marshall.   Rather, service was pursuant to Rule 4 (d), which preserves any objection to venu or jurisdiction of the court.   Burnett submits that plaintiffs simply did not utilize the RICO nationwide service provisions, and as such rely solely on service being proper using the traditional contacts analysis.

Further, Burnett objects to the determination that the ends of justice are met in this matter, where all of the named defendants are subject to the jurisdiction of the Eastern District of Louisiana and presently defending six different suits brought eighty-six plaintiffs, nearly as many plaintiffs as have filed suit in Texas, arising out of the same nucleus of operative facts.  As such, there is another forum in which jurisdiction would be proper as to all defendants, and where judicial economy in resolving the entire matter as all parties is best served.  There is no reason to "force fit" personal jurisdiction over the Burnett defendants in a matter where virtually the identical action is pending in six other cases.  This is especially true considering virtually all Texas plaintiffs have consented to participating in the FSLA collective action pending in the Eastern District of Louisiana.

Burnett further objects to the finding that Burnett purposefully directed his activities at residents of this forum, and the determination that the injuries alleged by plaintiffs arose out of any activities directed toward the state of Texas.  To the contrary, all activities were directed toward representation of Signal, whose main office was located in Mississippi and from where all direction to Burnett occurred.  Further only Signal determined and identified the specific workers who would work at Signal's Orange, Texas facility.   Burnett, following the directions of his client, merely prepared H-2B visa petitions on behalf of Signal for specified numbers of unnamed workers in  Mississippi and unnamed workers in Texas.  Signal provided the numbers

for Burnett to put into the petitions, and Signal, after conducting interviews in India and the United Emirates decided who to send to Mississippi and who to send to Texas.

Moreover, the allegations of damages suffered while plaintiffs were in Texas have no bearing on the petitions prepared by Burnett for Signal.  All damages alleged based on allegations of misrepresentation and breach of contract occurred in India, not Texas.  The damages claimed to have occurred in Texas are all based on the alleged conditions and activities of signal at its Texas facility, with which Burnett had no involvement.

Lastly, Burnett objects to the Magistrate's determination that exercising jurisdiction over Burnett will not violate traditional notions of fair play and substantial justice.  Burnett has not availed himself of the privileges and protections of the state of Texas.  The allegations of the petition show that Burnett was acting as an attorney, in another state, for a client whose directions and instructions came from their main office located in another state.  The mere fact that Burnett's client decided how many and which individuals it would send to Texas does not show that Burnett either availed himself of the laws and protection of Texas or that he should have anticipated being sued in Texas.  If so, then any time an attorney represents a nationally based company, that attorney could be simply lumped into a lawsuit against that company anywhere the company may do business.  This is not consistent with traditional notions of substantial justice and fair play.

Moreover, although the state of Louisiana may be a contiguous state, the sheer burden of being forced to litigate a complex case hundreds of miles from where he lives and works violates traditional notions of fair play.  This is even more so in this case, where Burnett, with one attorney defending six other suits by as many plaintiffs arising out of the same nucleolus of operative facts in one state will have to simultaneously defend five suits in the district.  The

3

scheduling logistics alone, with depositions, motions, and numerous status conferences in the cases proceeding in the Eastern District of Louisiana present a huge burden in litigating the present case and the other cases presently in Texas.   Conversely, all of the plaintiffs presently have consented to litigating their FLSA claims in the Eastern District of Louisiana, all of the defendants in this case are subject to the jurisdiction of the Eastern District, and virtually every named defendant has a substantial connection with Mississippi. .

In an unpublished decision, *Gonzalez v. Bank of America Ins. Servs. Inc.,* No. 11-20174, decided December 12, 2011, (5th. Cir., 2011), involving a RICO case, the Fifth Circuit in a footnote not needing to "explore the contours of RICO's  jurisdictional procedures, did reference a Tenth Circuit decision, in which it felt that the "ends of justice" were not met and thus performed a  traditional jurisdictional analysis.

> Because this ground for personal jurisdiction was waived, we need not explore the contours of RICO's jurisdictional provisions. Instead, we  only  consider whether jurisdiction is permissible under the traditional contacts analysis. *See Cory v. Aztec Steel Building, Inc.,* 468 F.3d 1226, 1230-33 (10th Cir. 2006) (analyzing traditional contacts analysis after finding RICO does not support jurisdiction); *World Wide Minerals,* 296 F.3d at 1168-69 (analyzing minimum contacts analysis after finding waiver of jurisdiction under RICO).

*Bank of America* , *supra*, at pg 12, ft. 6.

In *Cory* the Tenth Circuit determined that 18 U.S.C. 1965(b) provided for nationwide service under RICO, but only if "the ends of justice were met".  It found in *Cory* that the ends of justice were not met by haling non-resident defendants into Kansas.  Informative, though, is the indication by the Tenth Circuit that had the "ends of justice" been met, it would have then been necessary to perform a Due Process analysis of the exercise of jurisdiction over the person of the defendant.

And in the current case, we have Cory's assertion that the ends of justice require

nationwide service simply because he has sustained damages and litigation costs in Kansas. We conclude, as a matter of law, that such facts, standing alone, do not satisfy the "ends of justice" standard. *Without federal statutory authorization for nationwide service, we need not proceed to the Fifth-Amendment inquiry.*

*Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, at 1232-1233 (10th Cir., 2006). Emphasis added.

Pretermitting for now, the "ends of justice" issue, Burnett submits that a Due Process analysis herein establishes that personal jurisdiction over the Burnett Defendants is not proper. The Fifth Circuit in *Moncrief Oil Intern. Inc. v. Oao Gazprom*, 481 F.3d 309, at 311 (5th. Cir., 2007), affirmed the dismissal of a case based on the lack of personal jurisdiction over the defendant. It did so by performing a Due Process analysis

In order for personal jurisdiction to satisfy Due Process requirements, a plaintiff must show that (1)the defendant purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2)the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999).

*Moncrief* , supra at 311.

Herein, Plaintiffs' conclusory allegations, based only on the talimanic assertion of "upon information and belief",  that Burnett "committed tortious conduct in Texas"  are mere unsupported conclusions without any basis in fact.  Quite the opposite is true, Burnett has never conducted business in Texas or ever purposefully availed himself of the privileges and protections of the state of Texas.  Burnett has never committed any acts in Texas, much less any tortious acts in Texas.

Exhibit 1 to Burnett's original motion to dismiss was the affidavit of Malvern Burnett that factually sets forth the totality of his contact with the state of Texas.  It establishes that Burnett does not have "substantial business contacts in Texas", and most certainly demonstrates that Burnett does not have "continuous and systematic" contacts with Texas that would confer

5

general personal jurisdiction.  Likewise, his affidavit shows that he does not have "minimum contacts with Texas arising from or directly related to" Plaintiffs' claims sufficient to establish specific jurisdiction.  In short, the imposition of personal jurisdiction over Burnett in this case would be unreasonable in this case and would not comport with notions of "substantial justice and fair play".

In *Moncrief* , plaintiff asserted that one of the defendant's executives visited plaintiff at its facility in Texas to further negotiated parts of the contract there, which was a sufficient minimal contact to impose personal jurisdiction.  The Fifth Circuit found that visit insufficient to impose personal liability on the defendant.

> The only remaining alleged contact for Zapsib is the 1997 visit of its executive, Mr. Nikiforov, to Texas. The visit, at the invitationof Moncrief, helpedto further planning and negotiations, but no agreement was established during the trip. In *Hydrokinetics,* we found that the defendant's two physicalvisits to Texas did not create jurisdiction, inpart because the defendant did not regularly dobusiness in Texas, and because most of the negotiations appeared elsewhere. 700 F.2d at 1028-29. The same is true here, and Mr. Nikiforov's visit did not create jurisdiction.

*Moncrief* , supra at 313.

In *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*,700 F.2d 1026,at 1029 (5th Cir., 1983) the Fifth Circuit likewise found that telecommunications, telefaxes, and letters to plaintiff in Texas was insufficient contacts to satisfy the due Process requirements.

Burnett submits that the conclusory statement, based only on a bare assertion of information and belief, that Burnett"has committed tortious conduct in Texas" is insufficient to raise a prima facie case of minimal contacts to support personal jurisdiction.  On the other hand, the affidavit of Burnett definitively establishes that there are insufficient contacts with the state of Texas to impose personal liability on Burnett.

Lastly, given the mere conclusory allegations against Burnett throughout Plaintiffs' Complaint, without facts alleged to support such allegations, forcing Burnett to answer to such

charges in Texas does not meet the ends of justice required in 18 U.S.C. 1965(b).  As will be shown in further detail below, the only facts as to Burnett directly that were pled in the Complaint do not demonstrate any illegal activity or any conspiracy with any person, entity, or member of the alleged enterprises. Not one of the facts Burnett is alleged to have done constitutes an illegal activity.

The  Fifth Circuit  in recognized that under existing federal regulations it was permissible for non-immigrant visa applicants to be required to pay recruiter fees, legal fees, and travel costs. See *Valdez-Baez v. Decatur Hotels, LLC*, 622 F.3d 393 (5th. Cir., 2010).  The Third Circuit in *Zavala v. Wal Mart Stores Inc*., 691 F.3d 527, (3rd Cir., 2012), held that as a matter of law the threat of deportation does not satisfy a determination of involuntary servitude,  although there are no specific facts pled against Burnett that he ever threatened any Plaintiff with deportation.  In fact, the majority, if not all, of the allegations of any wrongdoing against Burnett is by way of simply being encompassed within the term "Defendant", with no specification of any particular acts or actions by Burnett that would constitute some actionable conduct.

Rather, the facts alleged as to Burnett show no more than what is expected of any attorney representing his clients, both the non-immigrant Indian workers, and Signal.  It is not illegal, unethical, or even unusual in such  an immigration practice  to actually be considered representing both the immigration applicant and the sponsor.  Attorneys are expected to confer with their clients, to determine what petitions, pleadings, or legal documents may be needed. Attorneys correspondwiththeir clients, make plans for filing documents, answer questions, and provide advise.   Communications are conducted by telephone, e-mail, correspondence, and face to face meetings.  Nothing in any of the factual statements concerning Burnett show anything more than what would typically be expected in an ongoing project to perform the work necessary

to allow the Indian workers to legally enter and work in the United States.

There are no factual allegations of any conspiratorial meetings to engage in illegal conduct.  There are no facts pled that support an allegation of mail or wire fraud.  There are no facts pled that show a scheme to defraud or commit illegal acts.  There are no factual assertions that support a claim of communications to further any such scheme ,by wires, telefax, facsimile or mail.  In fact, there is no factual showing of any conspiracy, only conclusory allegations.  Moreover, the conclusory allegations only include Burnett by lumping him generally into the category of "Defendants", without any specific claims as to Burnett.

To subject Burnett to the personal jurisdiction of this Court based on such unsupported conclusions, would not meet the ends of justice, especially considering that Burnett is already a party to an identical suit with all of the same allegations and causes of action asserted herein, a suit in which all Plaintiffs herein admit that they were once putative members and in which they could have filed individual actions, and in which all Plaintiffs are participating in a FLSA collective action against Signal as an additional cause of action.  Burnett submits that to subject him to this suit in Texas, under the circumstances and speculative allegations against him would not meet the ends of justice test.  To the contrary, it would be violative of substantial justice and fair play.

CONCLUSION

Burnett submits that he was not served pursuant to the nationwide service of process provisions of RICO.  Yet, even if he had, the Due Process requirements of the Fifth Amendment must still be met.  Burnett does not have the minimal contacts with the state of Texas to justify imposition of personal jurisdiction over him in this case.  Moreover, to impose personal jurisdiction on Burnett in this matter, given the spurious and conclusory allegations against

8

Burnett, essentially being swept into a suit where anyone and everyone who had any tangential connection was named as a defendant, would not meet the requirement that the ends of justice be met, especially considering the ability of all the named Plaintiffs to simply join in the other non-FLSA causes of action asserted in *David*, and all of the defendants are aminable to suit in the Eastern District of Louisiana.

Wherefore, Burnett submits that the Report and Recommendations of the Magistrate Judge herein was in error, and objects to the Report and Recommendations of Magistrate Hawthorn.

Respectfully submitted,

 s/ Daniel E. Buras, Jr.

Timothy W. Cerniglia
(TX Bar# 00789930)
1521 St. Charles Avenue
 New Orleans, Louisiana 70130
 Office: 504-586-0555
Facsimilie:504-586-0550
tcerniglia@cerniglialaw.pro


Daniel E. Buras, Jr.
LA Bar 26226
Buras Law Firm, LLC
301 N Columbia St.
Covington, LA 70433
985-306-1769
FAX: 888-383-4079
DBuras@Buraslawfirm.com
Attorney for Malvern C. Burnett, The Law Offices of Malvern C. Burnett, A.P.C. , and the Gulf Coast Immigration Law Center, LLC.

CERTIFICATE OF SERVICE

This is to certify that a copy of this motion has been served electronically on Plaintiffs and the signal Defendants with the Clerk of court using the CM/ECF system, and by placing a copy of same to their attorneys of record by placing a copy of same in the mail properly addressed and postage prepaid, this 12th day of May, 2014.

s/ Daniel E. Buras, Jr.