# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# BEAUMONT DIVISION

| | |
|---|---|
| REJI SAMUEL, ATHA MOHAMMAD ABDUL, KESAVARAO BUNDANKAYALA, RAJU DIVAKARAN, BIJU PERUMPILLY GEORGE, KRISHNA GONTHINA, NAYAPPULLI JAYACHANDRAN, GALLA VENKATA RAMA KRISHNA, SAMUEL JOSE KUMRUMTHODATHIL, LOHITHAKSHAN MADAMPET, JOHNY MANDY MATHAI, BELTHAZAR PETER, MOHANAN BALAKRISHNA PILLAI, SANTHOSH KUMAR RAJENDRAN PILLAI, ABY KARICKATHARA RAJU, SUMESH PORAMBATHUPARAMBIL SUBRAMANIAN, and CHANDRAN SHAJU THANISSERY, <br><br>　　　　　　　　　　　　　　Plaintiffs, <br>v. <br><br>SIGNAL INTERNATIONAL L.L.C., SIGNAL INTERNATIONAL, INC., SIGNAL INTERNATIONAL TEXAS, G.P., SIGNAL INTERNATIONAL TEXAS, L.P., MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS), <br><br>　　　　　　　　　　　　　　Defendants. | CIVIL ACTION NO.: <br> 1:13-cv-00323-MAC-ZJH |

## SAMUEL PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND STRIKE THE EXPERT REPORT OF KEVIN FOX GOTHAM

| | |
|---|---|
| KILPATRICK TOWNSEND & STOCKTON, LLP <br> 1100 Peachtree Street, Suite 2800 <br> Atlanta, GA 30309-4528 <br> Telephone: (404) 815-6500 <br> Facsimile: (404)-815-6555 <br> bboice@kilpatricktownsend.com <br> bcorgan@kilpatricktownsend.com <br> spangborn@kilpatricktownsend.com <br> sramsey@kilpatricktownsend.com <br> hheindel@kilpatricktownsend.com | William H. Boice <br> Georgia Bar No. 065725 <br> Brian G. Corgan (*Pro Hac Vice*) <br> Georgia Bar No. 187700 <br> Susan W. Pangborn (*Pro Hac Vice*) <br> Georgia Bar No. 735027; CA Bar No. 282533 <br> Shane G. Ramsey (*Pro Hac Vice*) <br> Georgia Bar No. 940547 <br> Heather L. Heindel (*Pro Hac Vice*) <br> Georgia Bar No. 285204 <br> *Remaining Counsel Listed on Signature Page* <br><br> Attorneys for Plaintiffs |

Plaintiffs Reji Samuel, et al. ("Plaintiffs") move the Court to exclude the Testimony of Kevin Fox Gotham offered by Signal International, LLC., Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P. (collectively, "Signal") because each of Professor Gotham's opinions as articulated in his Report dated July 29, 2014 (the "Report") and his deposition testimony from October 6, 2014 (the "Deposition") do not bear on facts at issue or explain evidence, fail to reliably apply reliable methods to sufficient facts, and risk confusing the jury about which facts are relevant to the jury's deliberations.

## I. INTRODUCTION

Professor Gotham is offered by Signal as an expert, and states in his Report that he was "asked to assess the recovery of the housing market in Jackson County, Mississippi and Orange County, Texas up through 2007 [in the aftermath of Hurricanes Katrina and Rita]." Report, at p. 10 (attached hereto as Exhibit A). That generalized subject has not been put into issue by any claim or defense in this case. Thus Professor Gotham's testimony or opinions about those issues would be irrelevant, even were Professor Gotham otherwise qualified to give an expert opinion on that subject.

Moreover, in his Deposition[1], Professor Gotham opines that Signal had no other choice but to build the Orange, Texas camp and that the Orange, Texas camp benefitted the Plaintiffs. This testimony should be excluded inasmuch as Professor Gotham does not support his opinions with any specific data or analysis on these issues and, as a result, it fails to meet applicable legal standards for the admittance of expert testimony.

---

[1] Relevant portions of the transcript of the Deposition of Kevin Fox Gotham taken on October 6, 2014, are attached hereto as Exhibit B.

Simply put, Professor Gotham is not an expert with any helpful testimony to give on any issue in this case. His Report and any testimony from him should be excluded under Fed. R. Civ. P. 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

## II. BACKGROUND

### A. Factual and Procedural Background

Following Hurricanes Katrina and Rita's damage to oil rigs in the Gulf of Mexico, Signal, a marine repair company, faced huge potential demand for its services. Unable to meet the demand with the workforce it had – Signal contracted with recruiters to bring in approximately 600 welders and fitters from India. Rather than house the Indian migrant workers in the communities near its shipyards, or allow the workers to decide where they wanted to live, Signal leased windowless refurbished trailers and built "man camps" on its industrial yards in Pascagoula, Mississippi and Orange, Texas. Signal required the Indian migrant workers to pay for the man camps – at the rate of $1,050 per person per month – as a term of employment at Signal. Signal required none of its non-Indian workers to pay for, or live in, the man camps. Signal housed up to 24 workers in each 24' by 36' trailer (in laymen's terms, a double-wide trailer) in the treeless and guarded yard that made up the man camps. When the Indian workers asked Signal for permission to live offsite in the local communities, Signal managers told the workers that Signal would deduct the $1,050/month from each worker's paycheck regardless of whether such worker lived in the mancamp or found better housing in town.

The *Samuel* Plaintiffs, sixteen of the Indian migrant workers, brought suit against Signal and its agents for violations of state and federal law under *inter alia* 42 U.S.C. § 1981 (racial, national origin and alienage discrimination), the Trafficking Victims Protection Reauthorization Act, and breach of contract.

### B. Gotham's Report and Deposition

Professor Gotham describes his testimony as assessing "the general state of the recovery and housing rebuilding effort at the counties [sic] level as well as the state level." Gotham Dep. 70:10-17, Oct. 6, 2014, attached herein as Exhibit B.[2] Such testimony is not relevant to any of the claims or defenses in this case.

Nowhere in his Report does Professor Gotham offer data on housing in Orange, Texas or surrounding areas available to the incoming Indian migrant workers. *See* Ex. A (Report). Nor does Professor Gotham's Report analyze the housing conditions, rents, or commute distances that would have been available to the 300 or so Indian workers coming to Signal's labor camp in Orange, Texas. *Id.* As Professor Gotham explained in his Deposition, he did not consider housing availability for 300 Indian migrant workers coming to Signal's Orange, Texas man camp at specific times because he was focusing on general housing trends for the area:

> Q. Do you in your report make conclusions about more specific considerations, like what housing was available to Signal for 300 men?
>
> A. And I would say no in the sense that my report talks about the state of the housing market in general during the years after the disaster.

Ex. B at 68:7-14; *see also id.* at 68:15-70:17. Consistent with Professor Gotham's general focus, he offers four opinions so generalized as to be common sense, which conclude that Hurricanes Rita and Katrina destroyed housing and other buildings on the Gulf Coast. Ex. B at 156:6-159:4.

Professor Gotham offers two specific conclusions about Signal's man camps, namely that Signal had "no other housing options" but to build man camps and that the man camps benefitted

---

[2] During his Deposition, Professor Gotham was questioned regarding the related *David* and *Joseph* cases and the reports he issued in each of those cases. He made clear that his testimony was either similar, or in some cases, the same, with respect to each report. Ex. B at 169:25 – 171:17.

3

Plaintiffs. *Id.* The facts Gotham considered were not specific to the quality or quantity of housing available to Signal's migrant workforce.[3]

> Q: Did you talk to anybody at Signal about why they built on-site housing?
>
> A: No.
>
> Q: Did you talk to workers who had lived in the on-site housing?
>
> A: No.

Ex. B at 36:24 – 37:4.

> Q: I believe it was your testimony with respect to the Pascagoula camp that you did not talk with anyone at Signal about what steps they took to ascertain housing availability before building the Pascagoula man camp; is that correct?
>
> A: That's correct.
>
> Q: Okay. And is that testimony the same with respect to the Orange camp?
>
> A: Yes.
>
> Q: Did you talk to any real estate brokers about what housing listings were available in Orange and the surrounding areas in 2006 to 2008?
>
> A: I did not.
>
> Q: Did you talk to any hotel or motel operators to find out the availability of rooms during that same time period in Orange?
>
> A: I did not.

*Id.* at 137:14 – 138:5.

---

[3] Professor Gotham offers only four opinions in his Report for the *Samuel* matter while offering six opinions in his report for the related *David* matter, but during his Deposition made it clear that he would be offering the same six opinions he reached in *David* in *Samuel* and would not be amending his *Samuel* Report. Ex. B 155:11 – 159:4.

4

> Q: What cities and counties do you consider relevant to determine the housing availability in the Orange, Texas, area in 2006 to 2008?
>
> A: I consider the county, that's one level, but also the surrounding counties in the metropolitan area.
>
> Q: Can you name those counties for me?
>
> A: They're in the report. I don't remember them off the top of my head. Jefferson, Hardin and Orange.
>
> Q: Okay. Did you look at the vacancy rates for any of those counties for those time periods, 2006-2008?
>
> A: I don't remember looking at the vacancy rates specifically in those counties, no.

*Id.* at 143:14 – 144:4.

> Q. Again, just for the record, there's no actual reference to occupancy rates or vacancy rates anywhere in your expert report; isn't that true?
>
> A. Yes.

*Id.* at 145:7-11; *see also id.* at 129:24-130:3.

> Q. Did you do any quantitative analysis of the availability of housing anywhere for this report?
>
> A. No.

*Id.* at 53:11-14.

> Q. And you looked at [housing quality] for people generally moving back to the area. You didn't look at it through the lens of what particular apartments would have been available for 300 men moving into the area?
>
> A. I did not zero in on that 300 number, looking at that as a significant group. . . .

*Id.* at 89:17-24 (objection omitted); *see also id.* at 70:10-17.

5

   Q. Why did you not look at the availability of FEMA trailers in your report?

   A. I couldn't find the data.

*Id.* at 127:10-12.

   Q. By the time that Indian migrant workers stopped arriving at Signal, how many were there?

   A. I don't know.

   Q. Did you know at one time and just can't remember right now?

   A. I remember seeing -- I believe I saw documents that addressed these particular issues, but I don't remember the exact figures.

   Q. Because it wasn't particularly important for the report that you were drafting; is that right?

   A. I did not consider that particular data as -- I don't remember exactly where I was feeling at the time or thinking at the time about that particular source of data. Given that I was developing my opinion about the state of the housing market, I don't remember focusing on the particular workers and the fluctuation at the camp as I was trying to assess the damage that had been done to the outside housing market.

*Id.* at 110:15 - 111:11 (objection omitted).

> Q. Okay. Earlier, you testified that you did not look at classified ads because they were not available, correct?
>
> A. Yes.
>
> Q. As you can see from the Bates label, this document [a classified ad] has been produced in discovery and is available and your counsel has this document. Did you ever ask Counsel to see such documents?
>
> A. I did not.
>
> Q. Why not?
>
> A. I was looking at trends in housing market data over time. What we have here in this particular exhibit is just what's being listed as available at a single point in time, and I was interested in trends, data trends. And, so, I accessed documents and data that would illustrate trends over time.

*Id.* at 146:6-147:1 (objection excluded)

## II. ARGUMENT

### A. Signal Cannot Meet the Standard under Federal Rule of Evidence 702

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *DAC Surgical Partners, P.A. v. United Healthcare Services, Inc.*, 2014 WL 4684834, at *1 (S.D. Tex. July 31, 2014). It applies to "scientific" testimony, as well as to "technical or specialized expert testimony." *Id.* at *1 (citing *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999)); *Seatrax, Inc. v. Sonbeck Intern., Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). Before expert testimony can be admitted, the proponent of the testimony must establish all elements of admissibility under Rule 702 by a preponderance of the evidence. 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 702.05[1][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Rule 702 first requires that the Court qualify the witness as an expert "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Once qualified as an expert, the witness may testify if:

> (a) [T]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.*

Professor Gotham's Report and testimony fail to meet Rule 702 standards in at least two ways. First, Hurricanes Katrina and Rita's destruction of Gulf Coast housing, and the housing market recovery is not relevant to this case, so testimony on those points would not help the fact finder. Second, Professor Gotham's narrower, facially relevant opinions are not "based on sufficient facts or data." Plaintiffs submit that his Report and any testimony should be excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993).

### 1. Gotham's Opinions are Irrelevant

Professor Gotham should not be permitted to testify because his testimony does not meet the requirement of Rule 702(a) that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702(a). Rule 702(a) is principally a matter of relevance. *Roman v. Western Mfg., Inc.*, 691 F.3d 686, 694 (5th Cir. 2012). "Expert testimony which does not relate to any issue in the case is not relevant, and ergo, non-helpful." *Id.* (citing *Daubert*).

Professor Gotham goes to great lengths in the Report to discuss the destruction caused by Hurricanes Katrina and Rita and the recovery of the housing market along the Gulf Coast *in general*. *See, e.g.*, Ex. A at ¶¶ 26 – 29 (cataloguing deaths, devastation, and dislocation as well

8

as insipid governmental responses); *see also id.* at ¶¶30 – 56 (discussing housing damage along the Gulf Coast). Yet, the destruction caused by Hurricanes Katrina and Rita in 2005 is entirely irrelevant to the specific issue of what particular housing was available to Plaintiffs and other H2B workers in Orange, Texas and the surrounding areas during 2006-2008. Common sense dictates that a better barometer for making a determination on this issue would be to look at what housing was *actually* available. Yet, Professor Gotham failed to look at apartment vacancy rates, motel availability, or classified ads showing housing availability—although months' worth of such housing ads were produced to Signal through discovery. *Id.* at 51:17-20; 106:3-13; 145:7-11; 146:6-147:1. Nor did he did talk to anyone who had offered housing in the Orange, Texas area between 2006-2008, nor to anyone at Signal about why Signal had built the man camps. *Id.* at 137:14 – 138:5. Indeed, when asked if it was his opinion that there was not sufficient housing in Orange, Texas and the surrounding areas during 2006-2008 for 300 H2B workers Professor Gotham could not provide a direct answer to the question: "I cannot answer that as 'yes' or 'no.' . . . [T]here was destroyed housing, there was several [sic] damaged housing, there was moderately damaged housing, there were roads that had been destroyed. So, you know, my response to that is I – you know, I can't answer 'yes' or 'no' on it." *Id.* at 140:6 – 16.

The best part of Professor Gotham's testimony for Signal – the conclusory assertion (based simply on trends over time describing housing destruction and the recovery of the housing market in general) that Pascagoula, Orange, and surrounding communities lacked sufficient housing vacancies to house the Indian migrant workers – is best determined by showing jurors what housing was available through introduction of testimony and evidence showing apartment vacancies. Jurors can intelligently evaluate such evidence without expert assistance, making Professor Gotham's testimony irrelevant. *See Bocanegra*, 320 F.3d at 584; *Pipitone v.*

*Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002); *J.S. v. Am. Inst. for Foreign Study, Inc.*, SA-12-CA-1036-XR, 2013 WL 5372531 at *9 (W.D. Tex. Sept. 24, 2013) (excluding expert testimony as irrelevant when "the jury [was] capable of reading [defendant's] policies and determining from the evidence whether [defendant] complied with them").

### 2. Gotham's Opinions Are Not Based on Sufficient Facts or Data

Rule 702(b) requires that the expert's "testimony [be] based on sufficient facts or data." FED. R. EVID. 702(b). This requirement is "in all instances mandatory." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). Still, "[W]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Id.* (citing *Citerbo v. Down Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).

Professor Gotham, without relying on any specific facts or data, attempts to opine that Signal had "no other housing options" but to build the man camps that Professor Gotham considers a boon to Plaintiffs. Ex. B at 155:11 – 159:4. Professor Gotham's opinions on these matters fail to meet the requirements of Rule 702 because he did not conduct the factual research that would support such conclusions.

Excluding expert testimony is proper where "there is simply too great an analytical gap between the data and the opinion proffered." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987). Part of the Court's Rule 702 analysis is "'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Here, Professor Gotham conducted no research and considered no evidence capable of backing up his opinion that Signal needed to build man camps due to a lack a viable alternatives. He did not know how many workers came to Signal (Ex. B at 110:15-111:11), nor what housing would have been available to them (*id.* at 36:24 – 37:12; 53:7-14; 54:18-21; 70:10-17; 145:7-11). He did not look at apartment vacancy rates, motel availability, or classified ads showing housing availability. *Id.* at 51:17-20; 106:3-13; 145:7-11; 146:6-147:1.  He did not talk to anyone who had offered housing in the Orange, Texas area between 2006-2008, nor to anyone at Signal about why Signal had built the man camps. *Id.* at 137:14 – 138:5.  Professor Gotham did not consider specific information important to his opinion because he was looking at "trends over time" (*id.* at 130:23-131:5) and at "the availability of housing for everyone that was either moving into [the Gulf Coast] or seeking to return to that area. *Id.* at 68:16-22.  Courts properly exclude such testimony that fails to conduct relevant research or consider relevant data.  *See*, *Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (affirming exclusion of expert testimony based on "extrapolation . . . [that] depends on the furtive inclusion of a number of supposed facts not in the record"); *Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 587 (5th Cir. 2004) (affirming exclusion of testimony where expert had failed to conduct relevant research and the studies read did not concern the specific question at issue); *Black*, 171 F.3d at 311 (affirming exclusion of testimony that used "the fallacy of post-hoc propter-hoc reasoning"); *Viterbo*, 826 F.2d at 424.

Plaintiffs move to exclude Professor Gotham's Report and testimony for failing to base his opinions on sufficient facts or data.  Fed. R. Evid. 702(b).

### III.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court to exercise its discretion to exclude Mr. Gotham's Report and testimony by granting the Motion.

DATED: October 17, 2014.

Respectfully Submitted,

KILPATRICK TOWNSEND & STOCKTON, LLP
bboice@kilpatricktownsend.com
bcorgan@kilpatricktownsend.com
spangborn@kilpatricktownsend.com
sramsey@kilpatricktownsend.com
hheindel@kilpatricktownsend.com
tludlam@kilpatricktownsend.com
kreed@kilpatricktownsend.com
abelagodu@kilpatricktownsend.com
rwilliamson@kilpatricktownsend.com
liza.akins@kilpatricktownsend.com

By: *s/ Shane G. Ramsey*
William H. Boice
Georgia Bar No. 065725
Brian G. Corgan (*Pro Hac Vice*)
Georgia Bar No. 187700
Susan W. Pangborn (*Pro Hac Vice*)
Georgia Bar No. 735027; CA Bar No. 282533
Shane G. Ramsey (*Pro Hac Vice*)
Georgia Bar No. 940547
Heather L. Heindel (*Pro Hac Vice*)
Georgia Bar No. 285204
Akarsh P. Belagodu (*Pro Hac Vice*)
Georgia Bar No. 496714
Reginald A. Williamson (*Pro Hac Vice*)
Georgia Bar No. 462110
Elizabeth Crabtree Akins (*Pro Hac Vice*)
Georgia Bar No. 796422
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6500
Facsimile: (404)-815-6555

Taylor H. Ludlam (*Pro Hac Vice*)
North Carolina Bar No. 42377
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609

Kristopher L. Reed (*Pro Hac Vice*)
Colorado Bar No. 36991
1400 Wewatta Street, Suite 600
Denver, CO 80202

*Attorneys for Plaintiffs*

**CERTIFICATE OF CONFERENCE**

This is to certify that on October 16, 2014, counsel for the *Joseph* Plaintiffs (Mr. Fleming and Ms. Landers) met by telephone with counsel for the Signal Defendants (Ms. Hangartner, Mr. Roux, and Mr. Weinberger) for the purposes of complying with the meet and confer requirement in Local Rule CV-7(h). Counsel for plaintiffs in the *Samuel* (Mr. Ramsey) and *David* (Mr. Howard) cases also attended, as did counsel for the Dewan Defendants (Mr. Shapiro). Counsel for the Burnett Defendants (Mr. Cerniglia) was notified of the conference, but was unable to attend. Counsel for the *Joseph* Plaintiffs explained that Plaintiffs intended to file a motion to exclude Mr. Gotham as an expert witness pursuant to Fed. R. Evid. 702 and *Daubert*. Counsel for the Signal Defendants indicated that Signal intends to oppose the motion as to Ms. Miles, although counsel for Signal did agree to withdraw a separate proposed expert report that Signal has served on Plaintiffs (Dr. Sebastian Irudaya Rajan).

*/s/ Shane G. Ramsey*
Shane G. Ramsey (*Pro Hac Vice)*
Georgia Bar No. 940547

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 17, 2014 a true and correct copy of **SAMUEL PLAINTIFFS' MOTION TO EXCLUDE TESTIMONY AND STRIKE THE EXPERT REPORT OF KEVIN FOX GOTHAM** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filings to all attorneys of record.

I FURTHER CERTIFY that U.S. Mail sent to the address of record for Global Resources, Inc. has been returned undeliverable, therefore I am unable to serve a copy of these pleadings on Global Resources, Inc.  The last known address of Global Resources, Inc. is:

> Global Resources, Inc.
> c/o Michael Pol
> 13 Herring Road
> Beaumont, MS 39423-2055

| | |
|---|---|
| KILPATRICK TOWNSEND & STOCKTON, LLP<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA 30309-4528<br>Telephone:  (404) 815-6500<br>Facsimile:  (404)-815-6555<br>sramsey@kilpatricktownsend.com | By:   *s/ Shane G. Ramsey*<br>Shane G. Ramsey (*Pro Hac Vice*)<br>Georgia Bar No. 940547<br><br>Attorney for Plaintiffs |