UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION


REJI SAMUEL, et al                       *                 Case No: 1:13-cv-0323

            Plaintiffs

                                  *


           vs.                          *


                                  *

SIGNAL INTERNATIONAL, LLC, et al,

            Defendants         *


\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*


MOTION AND MEMORANDUM IN SUPPORT OF
BURNETT DEFENDANTS' MOTION IN LIMINE
TO EXCLUDE LEGAL OPINION TESTIMONY OF
SIGNAL'S IMMIGRATION LAW EXPERTS

Now comes the Burnett Defendants who herewith move this Court to exclude legal

opinion testimony of Signal's immigration law expert, Enrique Gonzales, for the reasons, as is

more fully set forth below, his expert report, as well as his deposition testimony, is replete with

his own opinions of the law, impermissible inferences, characterizations and legal conclusions

of what certain supposed evidence establishes, and arguments of counsel disguised as expert

testimony.

Attached hereto are copies of the Enrique Gonzales, marked as Exhibit 1, and the deposition of Enrique Gonzales, Exhibit 2, and an expert report of Cyrus D.  Mehta, an expert for the Plaintiffs in the matter of David, et al, v Signal, et al, CA 08-1220, of the Eastern District of Louisiana.  The later is attached to demonstrate the difference of opinion that exists between immigration law experts and why the court should be the only expert on the law providing the jury with instructions as to the law.

Burnett submits that the expert report of Signal's immigration law expert far exceedes the permissible bounds of expert testimony by offering numerous opinions of the law, as well as how and why, in his view, the evidence established certain legal elements required by various immigration laws, all of which are reserved to the trier of fact.

Signal's expert, Mr. Gonzales, also repeatedly expressed opinions as to what the evidence established, although those assertions are very much in dispute, and then proceeded to reach conclusions, based on his determination of the facts, on numerous issues which are reserved for the trier of fact.  As will be shown below, the opinion of Mr.  Gonzales is not limited to factual explanations of immigration law and procedures which might assist the jury in their determinations of the ultimate issues, but went further to express his "expert" opinions as to what the law is, and what the evidence established, including various findings on ultimate issues reserved to the jury.  Even a cursory review of this report shows that the reports is but thinly disguised arguments of counsel.

-2-

BACKGROUND INFORMATION.

Signal submitted an expert report of Enrique Gonzales, an attorney who practices immigration law out of Coral Gables, Florida.  His expert report is attached as Exhibit 1.  In the David matter, pending in the Eastern District of Louisiana, counsel for the David Plaintiffs deposed Mr. Gonzales on September 30, 2014.  That deposition is attached as Exhibit 3.

Burnett does not contest the training, experience, knowledge, or skill of Mr. Gonzales in the field of immigration law.  Likewise, the Burnett has no objection to this witness testifying as to limited factual issues dealing with immigration law, such as the identification and wording of particular statutes and regulations that might be at issue, explaining applicable procedures, the proper filing of forms, timing, and the like.  Burnett does, however, very much object to this experts giving opinions as to what the evidence establishes, what actions or inactions constitute immigration fraud, what Burnett should or should not have done, and his conclusions on ultimate findings reserved to the jury.  These sorts of opinions are not allowed from any expert.

LAW AND ARGUMENT.

Jurisprudence.

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court assigned to trial courts the gate keeping responsibility of determining whether expert testimony under Rule 702 is "not only relevant, but reliable."  In meeting this gate-keeping function, trial courts make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether

that reasoning or methodology properly can be applied to the facts in issue." Daubert, supra at

592-93.  Although Daubert lists a number of factors that a trial court may use in determining

an expert's reliability, the list is neither exclusive nor mandatory.  However, more than mere

credentials and a purely subjective opinion is required.

> These factors are not mandatory or exclusive; the district court must decide
> whether the factors discussed in Daubert are appropriate, use them as a starting
> point, and then ascertain if other factors should be considered. See Black v. Food
> Lion, 171 F.3d 308, 311-12 (5th Cir. 1999). But the existence of sufficient facts
> and a reliable methodology is in all instances mandatory. "[W]ithout more than
> credentials and a subjective opinion, an expert's testimony that `it is so' is not
> admissible."

Hathaway v. Bazany, 507 F.3d 312, at 318 (5th. Cir., 2007).

Moreover, when it comes to experts offering opinion as to a law that may be at issue,

only factual opinions are allowed.  Not allowed is testimony as to what the law is, or what

ultimate conclusions a jury should reach under the evidence as to the law at issue.

> Rule 704, however, does not open the door to all opinions. The Advisory
> Committee notes make it clear that questions which would merely allow the
> witness to tell the jury what result to reach are not permitted. Nor is the rule
> intended to allow a witness to give legal conclusions.

Owen v. Kerr-McGee Corp., 698 F.2d 236, at 240(5th Cir., 1983).

> We agree that merely being a lawyer does not disqualify one as an expert
> witness. Lawyers may testify as to legal matters when those matters involve
> questions of fact.  See e.g., Huddleston v. Herman & MacLean, 640 F.2d 534, 552
> (5th Cir. Unit A March 1981), aff'd in part, rev'd in part on other grounds, 459
> U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)(lawyer could testify that language
> in a boilerplate contract was standard because the effect of the language went to
> scienter). However, "it must be posited as an a priori assumption [that] there is
> one, but only one, legal answer for every cognizable dispute. There being only
> one applicable legal rule for each dispute or issue, it requires only one spokesman
> of the law, who of course is the judge."

Askanase v. Fatjo, 130 F.3d 657, at 672-673 (5th Cir., 1997).

> Nevertheless, an expert may never render conclusions of law. Snap-Drape, Inc. v. Comm'r, 98 F.3d 194, 198 (5th Cir.1996). Nor, may an expert go beyond the scope of his expertise in giving his opinion. First United Fin. Corp. v. U.S. Fid. & Guar. Co., 96 F.3d 135, 136 (5th Cir.1996) (noting that expert testimony was properly rejected by the court because the "opinion of dishonesty goes beyond the scope of expertise.")

Goodman v. Harris County, 571 F.3d 388, 400 (5th. Cir., 2009).

 See also Estate of Willie Mae Sowell v. U.S., 198 F.3d 169, at 172 (5th Cir., 1999);

Snap-Drape, Inc. v. Comm'r, 98 F.3d 194, 198 (5th Cir.1996).

The Fifth Circuit in Askanase, citing a Tenth Circuit decision, Specht v. Jensen, 853 F.2d

805, 807 (10th Cir.1988), expounded on this principle.

> [W]hile experts could give their opinions on ultimate issues, our legal system reserves to the trial judge the role of deciding the law for the benefit of the jury. Id. at 808-09.  Moreover, allowing attorneys to testify to matters of law would be harmful to the jury. Id. at 809. First, the jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word "expert" and once the jury hears of the attorney's experience and expertise, it might think the witness even more reliable than the judge. Id. Second, if an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position.  Such differing opinions as to what the law is would only confuse the jury. Id.

Askanase, supra at 673.

A review of Specht, cited with approval by the Fifth Circuit, helps delineates when the

opinion testimony of an expert crosses the boundary of permissible expert testimony.  Specht

was a civil action for damages under 42 U.S.C. § 1983 for alleged invalid searches of the

plaintiffs' home and office.   Plaintiffs' counsel called an attorney as an expert witness to testify

as to whether there had been illegal searches. The trial court, after stating how it would generally instruct the jury on searches, allowed the testimony.  On the basis of hypothetical questions, which were formulated so as  to reflect plaintiffs' view of the evidence, the expert witness testified there had been no consent given, and, accordingly, that illegal searches had occurred.  For the reasons which the Fifth Circuit in <u>Askanase</u> recited, the Tenth Circuit, in an en banc decision, concluded that the testimony exceed the permissible bounds of expert testimony.

> The committee's illustration establishes the starting point for analysis of admissibility by distinguishing between testimony on issues of law and testimony on ultimate facts. While testimony on ultimate facts is authorized under Rule 704, the committee's comments emphasize that testimony on ultimate questions of law is not favored. The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; <u>testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case</u>.  .  .  .    In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. He told the jury that warrantless searches are unlawful, that defendants committed a warrantless search on plaintiffs' property, and that the only applicable exception to the warrant requirement, search by consent, should not vindicate the defendants because no authorized person voluntarily consented to allow a search of the premises.  He also stated that the acts of the private individual could be imputed to the accompanying police officer to constitute sufficient "state action" for a Sec. 1983 claim.  <u>By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under Sec. 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.</u>

<u>Specht</u>, supra at 808, (emphasis added).

The Fifth Circuit in  Estate of  Sowell v. United States, 198 F.3d 169 (5th Cir. 1999),

likewise found that it would be impermissible for an attorney called as an expert witness,

responding to a hypothetical questions that mirrored evidence in the case, to opine whether a

failure to pay income taxes was based on "reasonable cause".

> The principles espoused in Askanase are equally applicable here. Dean Galvin
> sought to testify about what a hypothetical estate executor, faced with the
> identical facts as the Estate in this case, would do if acting reasonably.  Whether
> the Estate was "acting reasonably" was, for all practical purposes, the only
> issue for the jury.  .  .  .   The Estate here essentially attempted to circumvent
> Askanase by asking its expert hypothetical questions with facts identical to those
> in the case at bar rather than simply asking its expert to espouse his opinion on
> the facts of the case. This line of questioning, however, would implicate the same
> concerns present in Askanase, namely, that "if an expert were allowed to testify
> to legal questions, each party would find an expert who would state the law in
> the light most favorable to its position . . . confus[ing] the jury."

Estate of  Sowell, supra at 172, emphasis added.

Cefalu v. Tangipahoa Parish, Civil Action 12-1377, October 10, 2013 (E.D. La., 2013),

involved claims for civil rights violations under 42 U.S.C. § 1983 and for state law negligence

stemming from plaintiff's arrest during the investigation of an automobile accident.  Both parties

intended to call experts in police procedure.   Judge Milazzo, citing Sowell and Askanase,

excluded the testimony of both witnesses, stating, among other reasons, that allowing competing

experts to explain the law could supplant the role of the factfinder.

> Allowing an expert to explain the standard of law at play ultimately "usurp[s] the
> court's role of instructing the jury on the law." Jarrow v. Cupit, No. 99-3539,
> 2000 WL 1537989 (E.D. La. Oct. 17, 2000)(Barbier, J.)  Therefore, expert
> testimony that offers a legal opinion is inadmissible. Estate of Sowell v. United
> States of America, 198 F.3d 169 (5th Cir.1999); Askanase, 130 F.3d at 669.  .  .
> .  In the instant matter, the main issue that will be submitted to the jury is both

-7-

clear and narrow:  did Deputy Edwards have probable cause to arrest the
plaintiff?  This issue ultimately asks the jury to determine whether the officer's
actions were reasonable, and a jury does not need the assistance of a police
procedures expert to make this determination. Id. (finding that plaintiff's police
procedures expert could not testify at a trial where the issues included a claim for
false arrest and a violation of the Fourth Amendment).  Moreover, allowing
competing experts to explain the law would likely muddle the jurors'
understanding of the applicable standard, which will be clearly provided to them
by the trial judge's reading of the jury instructions.  Therefore, because the Court
finds the proposed testimony to be unhelpful, potentially confusing, and
susceptible to supplanting the role of the factfinder, it must be excluded.

Lackey v. SDT Waste & Debris Services, Civil Action No: 11–1087(E.D. La., 8/6/2014),

was a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq,

where the plaintiffs were seeking overtime compensation under the FLSA, asserted retaliation

claims under FLSA, and whistleblower claims under Louisiana state law.  Plaintiffs retained Don

Stroble, a former Assistant Director for the Department of Labor, to "analyze and evaluate the

alleged violations alleged" Lackey p.15.   On defendant's Motion in Limine, Judge Milazzo,

ruled that "Stroble's report offers impermissible legal conclusions, and his common sense analysis

of the facts invades the province of the jury", Lackey p.15, and accordingly did not allow him

to testifying at trial.

Stroble's expert report is rife with impermissible legal conclusions. Stroble
pontificates at length regarding the requirements of the FLSA and its state-law
counterpart. He ultimately concludes that Defendants willfully violated the
FLSA.  For these reasons alone, Stroble's report should be stricken in its entirety.
See Little v. Technical Specialty Prods., LLC, 940 F. Supp. 2d 460, 468 (E.D. Tex.
2013) (striking expert report in FLSA case which consisted "almost entirely of
legal analysis and conclusions").   .   .   .   Stroble ominously foreshadows the
extent to which his report invades the province of the jury. Under the
subheading "Facts, Regulations, and Opinions," the report reads as follows:

-8-

> Facts to be determined - The disputes in this case are:
> 1. Were the employees authorized to take meal breaks?
> 2. Did they in fact take meal breaks?
> 3.  If they did not take meal breaks [sic] was the employer aware that the breaks were not being taken?
> 4. If the breaks were not taken and the employer was aware they were not taken, should the violations be considered "willful" and thus extend the statute of limitations to three (3) years rather than the normal two (2) year period?
> 5. What is the measure of damages in this case?

> These are precisely the ultimate factual determinations to be made by the jury; not the expert.

Lackey, supra at 16-17.

The issues as to the admissibility of expert testimony in Robyn Williams vs.  C. Martin Company Inc, et al, CA. No. 07-6592, (E.D. La., 4//14) is very analogous to the situation presented herein, and most instructive.   There, Williams filed a qui tam action on behalf of the United States to recover damages under the False Claims Act, 31 U.S.C. § 3729.  Relator alleged that certain defendants conspired to fraudulently induce the Federal Emergency Management Agency to award several post-Katrina disaster recovery contracts to C. Martin Company. Relator sought to exclude the testimony of defendants experts, a Professor Yukins, and an attorney who practice government contracting law, Antonio Franco.  Defendants, on the other hand sought to exclude the testimony of relator's experts, Professor Morris and Victor Klingelhofer, an attorney who also primarily practiced government contracting law.

The court, citing Askanase, Estate of Sowell, and Snap-Drape, Inc. v. C.I.R., 98 F.3d 194, 198 (5th Cir. 1996) , recognized that "courts have rejected expert testimony which purports to

tell the jury <u>what the law is, or what legal conclusion to reach</u>".  <u>Williams</u>, <u>supra</u> at 18.

Emphasis added.  Following the jurisprudence on this issue, Judge Milazzo, ruled on these

motions as follows.

Professor Glen Morris

Professor Morris is a professor of law at Louisiana State University where he teaches courses in business associations, contracts and corporate finance.  Relator retained Professor Morris to offer an opinion regarding whether the relationship between CMC and MJI constitutes a joint venture under Louisiana law and/or the principles embodied in the Uniform Partnership Act. In his report, Professor Morris offers a detailed explanation of both Louisiana partnership law and the Uniform Partnership Act.  <u>Based on these legal principles, Professor Morris opines that the relationship between CMC and MJI constitutes a joint venture under either body of law.</u>
<u>These opinions are inadmissible because they purport to define the applicable law and draw a legal conclusion therefrom.</u>  Legal opinions of this type have long been excluded by the courts of the Fifth Circuit. See Sowell, 198 F.3d at 172. Therefore, the Court grants Defendants' Motion in part, and Professor Morris will not be permitted to testify at trial.

Victor Klingelhofer

Mr. Klingelhofer is an attorney who practices primarily in government contracting law. Relator retained Mr. Klingelhofer to explain to the jury the general process through which an individual obtains service-disabled-veteran status as well as the bidding process associated with service-disabled-veteran-owned small-business-concern contracts. This type of general explanation is consistent with the sort of testimony other courts have permitted in FCA cases. See U.S. ex rel. Compton v. Midwest Specialties, Inc., 142 F.3d 296 (6th Cir. 1998). <u>Mr. Klingelhofer's report does not purport to instruct the jury on the applicable law, nor does he purport to offer an opinion on whether Ms. Craig qualifies as a service-disabled-veteran. Therefore, Mr. Klingelhofer's testimony is admissible</u>.

Professor Christopher Yukins

Processor Yukins is a professor of government contract law of George Washington University.  CMC retained Professor Yukins to offer two basic opinions.  First, Professor Yukins opines that the question of whether CMC and MJI formed a joint venture with regard to the MD contract is governed by federal procurement regulations and that, under those regulations, no joint venture was formed.  Second, he explains the general process through which a company submits a bid for a service-disabled-veteran-owned-small-business-concern contract.  Professor Yukins's first opinion is excluded for the same reasons articulated with regard to Professor Morris.  However, his second opinion will be permitted for the same reasons articulated with regard to Mr. Klingelhofer.

D. Antonio Franco

Franco is an attorney who practices primarily in government contracting law.  He was retained by MJI in order to provide opinions which are, for the most part, similar to those offered by Professor Yukins.  For reasons already articulated, Mr. Franco will not be permitted to offer any opinions regarding the MD Contract.  However, consistent with the Court's other rulings herein, Mr. Franco will be permitted to testify regarding the service-disabled-veteran issue.

Williams, supra at 19-20, emphasis added.

Judge Milazzo then emphasized that no witness would be allowed to testify as to legal conclusions.

While the Court will allow expert testimony regarding the service-disabled-veteran issue only, that testimony will be limited.  No expert will be permitted to offer any legal conclusion.  Nor will any expert be permitted to offer an opinion regarding whether Ms. Craig qualifies as a service-disabled-veteran.

Williams, supra at 21.

As will be shown below, both Plaintiffs' expert and Signal's expert offers opinions as to what the law is and what legal conclusion the jury should reach.  Burnett submits that this Court should limit any testimony by Plaintiffs' and Signal's experts to the general process for obtaining non-immigrant visas and permanent work resident visas, but not allowed to offer any

legal opinion as to what the law is or whether or not any applicable laws or regulations were breached by anyone.

Report and Testimony of Signal's Expert, Enrique Gonzales, III, Esq.

The report of Signal's expert, as did his deposition testimony, makes many conclusions as to what the evidence establishes, most of which Burnett disputes as being contrary to the facts and testimony, and then reaches the ultimate legal conclusion reserved to the jury on what conduct constitutes immigration fraud.  Throughout his report Mr. Gonzales makes many declarations as to what the law is, being, in essence, jury instructions on the law.  Notably, but perhaps not surprising, some of these declarations of the law seem to be contradicted by the opinion of an expert retained in the David suit, a Mr.  Cyrus D.  Mehta.  Then ultimately, Mr. Gonzales opines what conduct does and does not constitute "immigration fraud", although he admitted that "immigration fraud" is not defined in the Immigration and Nationality Act, (Exhibit 3, Gonzales deposition, p.  140:22-23.), and that, of course, Burnett, not Signal, committed immigration fraud.

Although entangled with many citations and his interpretation of various immigration laws and regulations, Mr. Gonzales' report is but Signal's arguments, disguised as an expert opinion.  The true nature of Mr. Gonzales' "opinion" is well shown by his concluding comments.

> The bottom line is that the attorney has an obligation to inform foreign nationals of the risks involved with trying to circumnavigate [sic] government regulations in this manner, and advise them not to attempt to deceive the U.S. Government. Further, an attorney has an obligation to not facilitate this kind of wrongdoing, and put foreign nationals in a position that will potentially keep them from

> working and living in the U.S. legally.  <u>These unethical practices are what have</u>
> <u>led Signal to be put into its current predicament</u>.

Gonzales report, p.  24, emphasis added.

Mr.  Gonzales, with no basis other than his unsupported opinion as to what the evidence

establishes, opines that Mr.  Burnett's conduct was unethical, and that everything with which

Signal is faced in this litigation is not its fault, but rather, the fault of Burnett's "unethical

practices".  This is not testimony designed to assist a jury in its quest to understand the evidence,

but rather, to tell the jury what ultimate conclusions it should reach.

Mr.  Gonzales's report, as well as his testimony, strives to instruct the jury as to what

conduct constitutes immigration fraud, and that in his opinion, Burnett, not Signal, was guilty

of immigration fraud.  Both of these goals are not allowed under the guise of expert testimony.

In fact, there is apparently some disagreement between what Mr.  Gonzales's believes on some

points, and what Mr.  Mehta believes.

For example, Mr. Gonzales is of the opinion that not informing consular officials that

there was a previous permanent labor certification filed by an employer different from Signal,

would amount to immigration fraud.

> Though Signal was not privy to this information, the workers, Mr. Burnett, and
> the recruitment team were fully aware that the permanent residence process had
> been initiated by other companies, and that the intent by the foreign nationals
> and other companies was for the workers to remain in the U.S. permanently.
>          Misrepresenting intentions to remain in the United States to a consular or
> immigration officer and/or on a consular or immigration form with the purpose
> of deceiving the U.S. Government <u>is considered immigration fraud</u>, and could
> be subject to a fine and/or imprisonment.

Gonzales report, p.  14-15.

-13-

Yet, in the <u>David</u> case, Plaintiffs' expert there, Mr.  Cyrus D. Mehta stated in his report,

> The filing of a permanent residency application can jeopardize an applicant's ability to obtain an H'-2B visa, although the "<u>mere desire ... to obtain permanent residence in the future does not, by itself, automatically disqualify an alien from admission as a nonimmigrant</u>." See Matter of Hosseinpour, 15 I&N Dec. 191, 192 (BIA 1975).
>
> [I]t is clear that an H-2B extension cannot be approved by the United States Citizenship and Immigration Services ("USCIS"), the federal agency charged with adjudicating visa petitions, if a permanent labor certification has been approved or <u>if a permanent resident employment preference petition has been filed by the same employer</u>.   .   .   .
>
> A <u>labor certification filed by an employer different from the employer who filed the H-2B petition may not impede the former employer's ability to file an H-2B extension</u>, although the adjudicating USCIS-official still has discretion to deny the requested extension on the ground that the applicant is an intending immigrant.

Mehta report, p.  14-15.

8 CFR 214.2(h)(16)(ii) is the only regulation dealing with this issue, and which was referenced by both Mr. Mehta and Mr. Gonzales.  It reads as follows.

> The approval of a permanent labor certification, or the filing of a preference petition for an alien currently employed by or in a training position <u>with the same  petitioner</u>, shall be a reason, by itself, to deny the alien's extension of stay.

Thus, it can be seen that the particular regulation only addresses the denial of an H-2B extension when the permanent labor certification or preference petition is filed by the same employer for whom the alien is currently employed under an H-2B visa.  The point is that these competing expert opinions on what the law is, stating their view of the law in the light most favorable to their client, does not aid the jury in its function of fact finder, but rather would only confuse them.  This is exactly the problem identified by the Fifth Circuit in <u>Askanase</u> and

Estate of Sowell, namely, that "if an expert were allowed to testify to legal questions, each party

would find an expert who would state the law in the light most favorable to its position . . .

confus[ing] the jury."

Further on the issue of immigration fraud, Mr. Gonzales went so far in his deposition

testimony as to venture that there could still be immigration fraud if the applicant does not

volunteer a material fact, even if never asked in the consular interview.  (P. 147:9-148:12).  To

Mr. Gonzales, notwithstanding the opinion in Matter of Hosseinpour, the fact that an applicant

may desire to obtain permanent residency, or that a different employer may have filed for a

permanent labor certification, is a material fact that should be disclosed by the applicant under

even if never asked.  Again, the point is that Mr. Gonzales' "expert" opinion instructs the jury

not only as to what the law is, but also, then instructs them what conclusions they should reach.

Mr. Gonzales's also made conclusions as to what the evidence established, which

conclusions are totally contested and denied by Burnett, and then based on his determination

of what the evidence established, made his conclusions of immigration fraud.

> It has been well-documented that the foreign workers who were to be employed
> by Signal were specifically counseled by their immigration counsel and the
> recruitment team to not mention the fact that the permanent residence process
> had already been initiated by other companies on their behalf, and that they had
> the intention of staying in the U.S. permanently (either because of green card
> approval, or because of a plan to abscond)

Gonzales Report p.  14,

Not only has Mr. Gonzales' assertions <u>not</u>  been "well documented", but also, Mr.

Burnett in all of his depositions testified exactly what he did to prepare applicants for their

consular interviews, and expressly testified that he instructed them to always tell the truth, irrespective of what questions they may be asked.  Both Mr. Gonzales' conclusion of what Mr. Burnett did and what legal conclusions to draw from anything he said or did are not for him to decide, but rather are for the jury to determine.  Mr. Gonzales' opinion is nothing more than telling the jury how to decide the facts and what legal conclusions to draw from those facts. Very much as in <u>Specht, supra</u>, such an opinion only "<u>circumvents the jury's decision-making function by telling it how to decide the case</u>."

Burnett submits that the expert report of Mr. Gonzales is nothing more than veiled attempts to tell the jury how to decide the case.  Signal is merely advocating its position and arguments through a witness which this Court will have imbued with the special status of being an expert in immigration law.  The opinions of this expert goes well beyond aiding the jury in understanding the evidence, which is the reason expert testimony is allowed.  Rather, the reports purport to tell the jury the relevant law, how the law should be interpreted, and what legal conclusions to reach.  This types of expert opinion should not be allowed.

Wherefore, the Burnett Defendants move this Court to prohibit Mr. Gonzales from offering any testimony as to his opinion of the law, his opinion or legal conclusions or interpretation of what the evidence establishes.

Respectfully Submitted,

s/ Timothy W. Cerniglia
Timothy w. Cerniglia, (TX Bar # 00789930)
1521 St. Charles Avenue

New Orleans, Louisiana 70130
Telephone 504-586-0555
Telefax 504-586-0550
tcerniglia@cerniglialaw.pro

CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing will be served on all counsel of record by

and through the Clerk of Court's CM/ECF system, 17th day of October, 2014.


s/Timothy W.  Cerniglia