# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | CIVIL ACTION NO: |
| Plaintiffs | * | 1:13-cv-00323-MAC-ZJH |
| | * | |
| v. | * | DISTRICT JUDGE |
| | * | MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| | * | MAGISTRATE JUDGE |
| Defendants | * | ZACK HAWTHORN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SIGNAL DEFENDANT'S MOTION IN LIMINE TO EXCLUDE/LIMIT TESTIMONY OF AMY MOWL

Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689

And

Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890

***Counsel for Signal International, L.L.C.***
***Signal International, Inc.,***
***Signal International Texas, G.P., and***
***Signal International Texas, L.P.***

# TABLE OF CONTENTS

I.      MOTION.................................................................................................................. 1

II.     INTRODUCTION ................................................................................................... 1

III     ARGUMENT AND ANALYSIS .......................................................................... 2

        A    Legal Standards.......................................................................................... 2

        B.   Testimony Based on Credibility of Witnesses Must Be Excluded ................ 4

        C.    Testimony regarding suicide must be limited ............................................... 5

        D.   Ms. Mowl Uses Inssuficient Information And Unreliable Principles And
             Methods In Forming Her Opinions, And Her Testimony Must Be Excluded
             Or In The Alternative Limited....................................................................... 6

IV.     CONCLUSION....................................................................................................... 8

**Exhibits**

**A.** Expert Report – David, in globo

**B.** Expert Report – Samuel, in globo

**C.** Expert Report – Jospeh, in globo

**D.** Deposition Transcripts

i

# TABLE OF AUTHORITIES

Cases

Aetna Life Ins. Co. 140 U.S. 76, 88 ........................................................................................ 4, 5, 8

Bourjaily v. United States,

    483 U.S. 171, 175 (1987) ........................................................................................... 3

Curtis v. M&S Petroleum, Inc.

    174 F.3d 661, 668 (5th Cir. 1999) ........................................................................... 3

Daubert v. Merrell Down Pharm., Inc.,

    509 U.S. 579, 592-93 (1993) ................................................................................... 3

Dufrene v. Indemnity Insurance Co. of North America,

    5 Cir., 1962, 303 F.2d 788, 789, cert. denied, 371 U.S. 868 (1962) .......................................... 4

Elat v. Ngoubene,

    993 F. Supp. 2d 497, 518 (D. Md. 2014) ......................................................... 4, 5, 8

Goodman v. Harris Cnty.,

    571 F.3d 388, 399 (5th Cir. 2009) ........................................................................... 3

Johnson v. Arkema, Inc.,

    685 F.3d 452, 459 (5th Cir. 2012) ........................................................................ 3, 6

Mathis v. Exxon Corp.,

    302 F.3d 448, 459-60 (5th Cir. 2002) .............................................................. 3, 6, 7, 8

Moore v. Ashland Chem.,Inc.,

    151 F.3d 269, 276 (5th Cir. 1998) ........................................................................... 3

Owen v. Kerr-McGee Corp.,

    698 F.2d 236, 240 (5th Cir. 1983) ........................................................................... 3

Pipitone v. Biomatrix, Inc.,

   288 F.3d 239, 243-44 ............................................................................................................ 3, 6, 8

V & S Ice Mach. Co. v. Eastex Poultry Co., 437 F.2d 422, 426 (5th Cir. 1971) ................... 4, 5, 8

      Rules

Fed R. Evid. 403 ..................................................................................................................... 6

Fed. R. Evid. 702 .................................................................................................................. 5, 8, 9

**MAY IT PLEASE THE COURT:**

## I.     MOTION

NOW INTO COURT, through undersigned counsel, COMES Defendants Signal International, LLC ("LLC"), Signal International, Inc.  ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal") to move this honorable Court to exclude Plaintiffs' expert witness, Amy Mowl, from offering an expert report and testifying at trial or, in the alternative, to limit her testimony.

Counsel for Signal and Plaintiffs discussed by telephone Signal's desire to file this Motion, a Motion which Plaintiffs advised they oppose.

## II.     INTRODUCTION

Plaintiffs designated Ms. Amy Mowl as an expert witness to offer opinions on debt and debt collection practices in India. Ms. Mowl submitted expert reports in *David*, *Samuel*, and *Joseph*. She concedes her reports in the three cases are substantially similar. *See* Expert Reports of Amy Mowl from *David, Samuel,* and *Joseph*, attached as *in globo* Exhibit "A"; *see also* Deposition of Amy Mowl, p. 19:4-17, attached herein as Exhibit "B"[1]; She was deposed for the purposes of all three cases and reports on October 8, 2014. From her reports and deposition testimony, Ms. Mowl intends to opine at trial regarding lending and debt collection practices in

---

[1] All deposition testimony referenced herein is attached as *in globo* Exhibit "B".

India, the Plaintiffs' decision to borrow in order to pay recruitment fees, the impact of debt on the Plaintiffs, and social impact of debt in India.

The breath of testimony Plaintiffs intend Ms. Mowl to offer must be excluded or in the alternative limited. First, any testimony she intends to offer based upon credibility assessments of Plaintiffs' statements must be excluded as usurping the province of the jury as trier of fact. Second, her testimony regarding suicides in India stemming from debt must be excluded insofar as (1) it involves studies applicable to agricultural workers, or (2) it involves opinions based on anecdotal, non-peer reviewed newspaper articles. Third, her testimony regarding Plaintiffs' mental state or thought processes must be excluded because she is not qualified to offer such opinions. Fourth, her economic opinions must be limited where she has considered insufficient data in forming her opinions.

## III    ARGUMENT AND ANALYSIS

### A    LEGAL STANDARDS

The admission of expert testimony is governed by the Federal Rules of Evidence which provide that opinion testimony may be given by, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" provided "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue", "the testimony is based on sufficient facts or data", "the testimony is the product of reliable principles and methods", and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." Mathis v.

2

Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002) (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).

Nonetheless, the trial courts act as "gatekeepers" who must make a preliminary assessment of whether a purported expert's testimony is reliable and relevant. *See* Pipitone v. Biomatrix, Inc., 288 F.3d 239, 243-44 (citing Daubert v. Merrell Down Pharm., Inc., 509 U.S. 579, 592-93 (1993)); *See also* Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012).  Reliability requires the expert opinion be grounded in scientific methods and procedures and be more than unsupported speculation or subjective belief. *See* Johnson, 685 F.3d 452, 459 (citing Curtis v. M&S Petroleum, Inc. 174 F.3d 661, 668 (5th Cir. 1999)). "This requires some objective, independent validation of the expert's methodology." Moore v. Ashland Chem.,Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc). "Furthermore, courts consider the following non-exclusive list of factors when conducting the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." Johnson, 685 F.3d 452, 459.

Opinions which embrace an ultimate issue are not *per se* objectionable under Rule 704, but a witness is not permitted to tell the jury what result to reach or to give legal conclusions. Fed. R. Evid. 704; *See* Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (citing United States v. Fogg, 652 F.2d 551, 557 (5th Cir.1981), cert. denied). "Nor, may an expert go beyond the scope of his expertise in giving his opinion." Goodman v. Harris Cnty., 571 F.3d 388, 399 (5th Cir. 2009) (citing First United Fin. Corp. v. U.S. Fid. & Guar. Co., 96 F.3d 135, 136 (5th Cir. 1996)). ". . . [T]he credit and weight to be assigned to expert testimony are matters entrusted to the sound

discretion of the trier of fact. <u>V & S Ice Mach. Co. v. Eastex Poultry Co.</u>, 437 F.2d 422, 426 (5th Cir. 1971) (citing <u>Aetna Life Ins. Co. v. Ward</u>, 140 U.S. 76, 88 (1891); <u>Dufrene v. Indemnity Insurance Co. of North America</u>, 5 Cir., 1962, 303 F.2d 788, 789, cert. denied, 371 U.S. 868 (1962)); *See also* <u>Elat v. Ngoubene</u>, 993 F. Supp. 2d 497, 518 (D. Md. 2014) ("…[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702") (internal quotations omitted)). Likewise, testimony that is otherwise relevant may still be excluded if its probative value is outweighed by the danger of it posing an, "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." <u>Fed R. Evid.</u> 403.

**B.    TESTIMONY BASED ON CREDIBILITY OF WITNESSES MUST BE EXCLUDED**

Ms. Mowl testified that she first received materials from Plaintiffs' counsel in April of 2014 and that this material consisted of, "declarations and depositions". *See* Exhibit "B", Deposition of Amy Mowl, pp. 16:20-17:3. She clarified that the declarations were, "the statements made by plaintiffs in their own words" and the depositions consisted of Plaintiff depositions and the 2009 deposition of Sachin Dewan. *See* Exhibit "B", Deposition of Amy Mowl, p. 17:4-20. The only other documents Ms. Mowl reviewed from the discovery in this case were the land sale document for Mr. Andrews and the mortgage deed for Mr. Khuttan. *See* Exhibit "B", Deposition of Amy Mowl, pp. 21:17-22:5. She further testified, with regard to the Plaintiffs' statements and deposition testimony, she assumed "some truth behind them" and conducted her own credibility assessment based on "consistency of statements". *See* Exhibit "B", Deposition of Amy Mowl, pp. 46:19-47:16.

4

By making a credibility determination of Plaintiffs' statements and testimony, and basing her opinions on that information, Ms. Mowl has usurped the province of the jury as trier of fact. *See* Elat 993 F. Supp. 2d 497, 518 (noting expert opinions which evaluate witness credibility are inadmissible under Rule 702)*; See also* V & S Ice Mach. Co. 437 F.2d 422, 426 (citing Aetna Life Ins. Co. 140 U.S. 76, 88). Ms. Mowl's opinions impermissibly regurgitates the Plaintiffs' testimony stamped with the *imprimatur* of her expertise. In effect, her opinions will instruct the jury that the Plaintiffs' testimony **is** true; her testimony in this regard is improper and must be excluded. Id.

## C.     TESTIMONY REGARDING SUICIDE MUST BE LIMITED

Ms. Mowl's report discusses suicide in relation to debt default in two contexts. She discusses a "wave of mass suicides" occurring with agricultural workers in the mid-2000s. *See* Exhibit "A", *e.g., David* report at ¶ 36. She also discusses anecdotal instances of suicide discussed in Indian newspapers. Id. She then discusses general consequences of suicide in India. Id. at ¶ 37-39. Ms. Mowl testified that, unlike instances of farmer suicides related to debt in India, her sole source of anecdotal instances of non-farmer suicides stemmed from newspaper reports rather than studies or other authoritative sources. *See* Exhibit "B", Deposition of Amy Mowl, pp. 77:14-90:14. She specifically acknowledged that those data sources were, "not rigorous data on the number of suicides classed by money lenders." *See* Exhibit "B", Deposition of Amy Mowl, p.  81:21-24. She also testified, with regard to the anecdotal newspaper sources, that she had not independently interviewed anyone regarding them nor conducted her own verification of the anecdotal instances. *See* Exhibit "B", Deposition of Amy Mowl, pp. 86:17-90:14.

Indeed, she has not pointed to any peer-reviewed or other authoritative source which shows any general acceptance that Indian farmer suicide data is at all applicable or relevant to non-farmer suicide instances and rates. Given the factors identified by the fifth circuit in <u>Johnson</u> in tandem with the undisputed fact that the Plaintiffs were skilled fitters and welders not farmers, this Court should conclude her use of farmer suicide data is not reliable or relevant and her anecdotal sources regarding non-farmer data are not reliable. *See* <u>Johnson</u>, 685 F.3d 452, 459. With respect to this issue, Plaintiffs cannot meet their burden under <u>Mathis</u> to show her testimony on this issue satisfied Rule 702, and thus she should be limited to testimony of opinions based on reliable data relevant to skilled migrant workers similarly situated to the Plaintiffs here and prevented from offering testimony of opinions based on farmer suicide data or anecdotal unverified newspaper reports. *See* <u>Mathis</u>, 302 F.3d 448, 459-60; *See also* <u>Pipitone</u>, 288 F.3d 239, 243-44.

**D.      MS. MOWL USES INSSUFICIENT INFORMATION AND UNRELIABLE PRINCIPLES AND METHODS IN FORMING HER OPINIONS, AND HER TESTIMONY MUST BE EXCLUDED OR IN THE ALTERNATIVE LIMITED**

Rule 702 requires that expert, "testimony is based on sufficient facts or data". <u>Fed. R. Evid. 702(b)</u>. Ms. Mowl testified that she has not reviewed any documents produced by Signal in discovery. *See* Exhibit "B", Deposition of Amy Mowl, p.  22:3-5. She further testified that she limited her request for information to, "everything that was in the clients' own words". *See* Exhibit "B", Deposition of Amy Mowl, p.  22:6-24. The significant issues with Ms. Mowl basing her opinions entirely on Plaintiffs' statements and testimony with the impermissible credibility determinations were discussed *supra* and will not be duplicated here. She further testified she did not request any banking records from the Plaintiffs either in India or in the US. *See* Exhibit "B", Deposition of Amy Mowl, p.  23:4-9.

6

In fact, Ms. Mowl considered only Plaintiffs' own words in evaluating their weekly earnings and hours at Signal and she did not consider the pay data produced by Signal as part of its ESI productions, nor did she ask for it. *See* Exhibit "B", Deposition of Amy Mowl, pp.  139:14-142:3. When pressed upon whether this data would reflect pertinent information as to her opinions with regard to fears about repayment, Ms. Mowl replied, "Maybe there's a problem actually in my report." *See* Exhibit "B", Deposition of Amy Mowl, pp. 144:5-145:5. When questioned as to why she did not intend to review the 2014 deposition of Sachin Dewan to update her understanding (as she did review his 2009 deposition) she indicated she didn't think it would contain information pertinent to topics she was opining on. *See* Exhibit "B", Deposition of Amy Mowl, pp.  49:23-51:5. When pressed as to how she could know, prior to reviewing such information, that it does not contain information pertinent to those topics, she replied, "Good point", and then changed her position to maybe requesting it. *See* Exhibit "B", Deposition of Amy Mowl, pp. 51:11-17.

Ms. Mowl's unreliable and non-rigorous methodology is in stark contrast to the field of economics which, by its very nature, is a field dealing with data and numbers. Here, she relies on testimony rather than monetary data, banking records, pay records, or any other business records. She has purposely limited the information she considered to information, "that was in the clients' own words". *See* Exhibit "B", Deposition of Amy Mowl, p.  22:6-24. Thusly, she has considered insufficient information, shown a reluctance to conduct an objective analysis, and used unreliable principles and methods in forming her opinions. *See* Fed. R. Evid. 702. The Plaintiffs cannot meet their burden to show, by a preponderance, that her testimony meets the requirements of Rule 702. Mathis, 302 F.3d 448, 459-60. This Court should exclude her testimony in accord with its gatekeeper function, or in the alternative limit her testimony to speaking generally of debt practices

in India without speaking specifically to the Plaintiffs' individual situations in this case. *See Pipitone*, 288 F.3d 239, 243-44

## IV.   CONCLUSION

For the foregoing reasons, Ms. Mowl's testimony must be excluded or limited in several areas. First, all opinions she seeks to offer based on Plaintiffs' statements and testimony for which she has made credibility determinations must be excluded as usurping the province of the jury as trier of fact. *See* Elat 993 F. Supp. 2d 497, 518 (noting expert opinions which evaluate witness credibility are inadmissible under Rule 702)*; See also* V & S Ice Mach. Co. 437 F.2d 422, 426 (citing Aetna Life Ins. Co. 140 U.S. 76, 88). Second, all testimony which is based on farmer suicide rates in India or anecdotal sources for non-farmer suicide rates must be excluded as irrelevant or unreliable respectively, and her testimony on suicide rates in India limited to those based on reliable data that are applicable to the persons in the Plaintiffs' positions (i.e. pipe fitters and welders). *See* Mathis, 302 F.3d 448, 459-60; *See also* Pipitone, 288 F.3d 239, 243-44. Third, she should be excluded from testifying because she bases all her opinions on insufficient facts or data and applies unreliable principles and methods in forming those opinions. *See* Mathis, 302 F.3d 448, 459-60; *See also* Pipitone.

Respectfully submitted,

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669

HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com

And

Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890
patricia@bollmanfirm.com

***Counsel for Signal International, L.L.C.***
***Signal International, Inc.,***
***Signal International Texas, G.P., and***
***Signal International Texas, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

9

*/s/ Erin Casey Hangartner*
ERIN CASEY HANGARTNER