## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | CIVIL ACTION NO: |
| Plaintiffs | * | 1:13-cv-00323-MAC-ZJH |
| | * | |
| v. | * | DISTRICT JUDGE |
| | * | MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| | * | MAGISTRATE JUDGE |
| Defendants | * | ZACK HAWTHORN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SIGNAL DEFENDANTS' MOTION IN LIMINE TO EXCLUDE/LIMIT TESTIMONY OF FLORENCE BURKE

Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689

And

1

Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890

***Counsel for Signal International, L.L.C.***
***Signal International, Inc.,***
***Signal International Texas, G.P., and***
***Signal International Texas, L.P.***

## TABLE OF CONTENTS

I.    MOTION ............................................................................................................... 1

II.   INTRODUCTION................................................................................................... 1

III.  BACKGROUND ................................................................................................... 2

      A.    Ms. Burke Misrepresents Her Credentials ............................................... 2

      B.    Ms. Burke Lacks Familiarity With Her Materials Considered ............................ 3

IV.   ARGUMENT AND ANALYSIS ............................................................................ 4

      A.    Legal Standards ...................................................................................... 4

      C.    Ms. Burke's opinions based on Plaintiffs' statements are inadmissible. .............. 6

      D.    Ms. Burke's interview process was unreliable....................................................... 8

      E.    Ms. Burke is incompetent to render opinions regarding Plaintiffs' mental health, .
          wellbeing, or state of mind.................................................................................. 9

      F.    Ms. Burke's testimony calls for a legal conclusion. ............................................ 10

VII.  CONCLUSION                                                                                  11

Exhibits

A.  Expert Report - Samuel  in globo

B.  Expert Report - Joseph, in globo

C.  Expert Report - David, in globo

D.  Deposition Transcripts

<u>TABLE OF AUTHORITES</u>

Cases

Aetna Life Ins. Co. v. Ward,
    140 U.S. 76, 88, 11 S. Ct. 720, 724, 35 L. Ed. 371 (1891)....................................................... 8

Bourjaily v. United States, 483 U.S. 171, 175 (1987) ................................................... 7

Curtis v. M&S Petroleum, Inc.
    174 F.3d 661, 668 (5th Cir. 1999) ........................................................................................ 7

Dufrene v. Indemnity Insurance Co. of North America,
    5 Cir., 1962, 303 F.2d 788, 789, cert. denied, 371 U.S. 868 (1962)........................................ 8

Elat v. Ngoubene,
    993 F. Supp. 2d 497, 518 (D. Md. 2014) .................................................................. 8, 9, 11, 12

First United Fin. Corp. v. U.S. Fid. & Guar. Co.,
    96 F.3d 135, 136 (5th Cir. 1996) ......................................................................................... 8

Goodman v. Harris Cnty., 571 F.3d 388, 399 (5th Cir. 2009)................................................. 8, 12

Johnson v. Arkema, Inc.,
    685 F.3d 452, 459 (5th Cir. 2012). ...................................................................................... 7

Lincoln Gen. Ins. Co. v. Valley Transp. Brokerage, Inc.,
    2002 U.S. Dist. LEXIS 28245(S.D. Tex.July 18, 2002)........................................................ 13

Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002).................................................. 7

Moore v. Ashland Chem.,Inc.,
    151 F.3d 269, 276 (5th Cir. 1998) ........................................................................................ 7

Owen v. Kerr-McGee Corp.,
    698 F.2d 236, 240 (5th Cir. 1983) ................................................................................. 8, 13

Pipitone v. Biomatrix, Inc.,
    288 F.3d 239, 243-44 ........................................................................................................ 7

Primrose Operating Co. v. Nat'l Am. Ins. Co.,
    382 F.3d 546, 562 (5th Cir. 2004) ...................................................................................... 9

United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002) ....................................................... 13

United States v. Fogg,
    652 F.2d 551, 557 (5th Cir.1981), cert. denied) ....................................................................... 8

V & S Ice Mach. Co. v. Eastex Poultry Co., ..................................................................... 8

Wallis v. Hornbeck Offshore Operators,
    2014 U.S. Dist. LEXIS 105820 (E.D. La.Aug. 1, 2014) ........................................... 9


Statutes

18 U.S.C. § 1589 ........................................................................................................ 13

18 U.S.C. § 1590 ........................................................................................................ 13
Fed. R. Evid. 702 ....................................................................................................... 7, 12

Fed R. Evid. 403. .....................................................................................................

Fed. R. Evid. 704 ....................................................................................................... 8

<u>**MAY IT PLEASE THE COURT:**</u>

### I.    MOTION

NOW INTO COURT, through undersigned counsel, COMES Defendants Signal International, LLC ("LLC"), Signal International, Inc.  ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal") to move this honorable Court to exclude Plaintiffs' expert witness, Florence R. Burke, from offering an expert report and testifying at trial or, in the alternative, to limit her testimony.

Counsel for Signal and Plaintiffs discussed by telephone Signal's desire to file this Motion, a Motion which Plaintiffs advised they oppose.

### II.    INTRODUCTION

Plaintiffs designated Ms. Florence Burke as an expert witness to offer opinions on several issues in this case. First, Plaintiffs intend for Ms. Burke to opine on whether the Plaintiffs were victims of forced labor within the meaning of The Trafficking Victims Protection Act of 2000 ("TVPA").  *See* Expert Reports of Florence Burke from *David, Samuel,* and *Joseph*, attached as *in globo* Exhibit "A", specifically, e.g., *David* Report ¶ 26 *et seq*). Second, Plaintiffs intend for Ms. Burke to opine on factors that caused Plaintiffs to continue working for Signal due to "psychological duress or coercion that forced them to work". <u>Id</u>. at ¶ 31. Third, Plaintiffs intend for Ms. Burke to opine on a "tipping" or "breaking" point which caused Plaintiffs to finally decide to leave Signal. <u>Id</u>. at ¶ 53. Ms. Burke is not a licensed Therapist, Psychologist, or Psychiatrist; she holds no professional licenses of any sort. Her opinions on Plaintiffs' mental state are lay testimony and inadmissible. Her opinions on whether the Plaintiffs were victims of forced labor

1

or human trafficking call for conclusions of law and usurp the role of the jury to decide issues of fact and the role of the Court to instruct the jury on issues of law. Ms. Burke should be precluded from testifying as an expert witness at trial and her expert reports should be excluded from evidence.

## III.     BACKGROUND
### A. Ms. Burke Misrepresents Her Credentials

Ms. Burke indicates she is an independent consultant who provides training to governmental and non-governmental organizations on Human Trafficking. She misrepresented her qualifications in both her *curriculum vitae* and her expert reports in the *David* case pending in E.D.La. and the *Samuel* and *Joseph* cases pending in E.D.Tx. She indicates she is a licensed Marriage, Family and Child Therapist in California, but in fact her license was cancelled and is not eligible to be renewed. *See* Exhibit A; *see also* Deposition of Florence Burke, pp. 24:2-26:4, , attached herein as Exhibit "B".[1] In her expert reports, Ms. Burke also indicates she "completed coursework in the Ph.D. program in Clinical Psychology from the Professional School of Psychology", however the school she attended was not accredited by the American Psychological Association at that time and does not appear to be accredited today. *See* Exhibit "A", Burke Expert Report in *David* at ¶ 2; *see also* Exhibit "B", Deposition of Florence Burke, pp. Burke Dep. 133:13-134:13; *see also* American Psychological Association Search for Accredited Programs, http://apps.apa.org/accredsearch. Further, her description of her post-masters work as "completed coursework" is another instance of misrepresenting her credentials. Within the context of a PhD program, "completed coursework" is generally indicative that an individual has completed all courses and is ready for examinations required for advancing to candidacy. *See e.g.* Florida State

---

[1] All deposition testimony referenced herein is attached as *in globo* Exhibit "B".

University,        College        of        Human        Sciences,        Doctoral        Programs, http://www.chs.fsu.edu/Departments/Family-Child-Sciences/Doctoral-Programs[2].   Ms.   Burke, however,  indicates  she  completed  some  courses  in  the  PhD  program  but  did  not  complete coursework as it is generally understood in the academic context. *See* Exhibit "B", Deposition of **Florence Burke, pp. 27:23-29:8.**

### B. Ms. Burke Lacks Familiarity With Her Materials Considered

Ms. Burke's deposition was taken for and concerned her expert reports in *David, Samuel,* and *Joseph* and she agreed her reports in those three cases were substantially similar. *See* Exhibit "B", Deposition of Florence Burke, p. 35:22-24. Ms. Burke listed the book, "Human Trafficking, A Global Perspective" in her materials considered section in both her *Samuel* and *Joseph* reports, but removed the reference in her *David* report. *See* Exhibit "B", Deposition of Florence Burke, p. 36:10-19. This book, which Ms. Burke originally considered in the *Samuel* and *Joseph* reports, is authored by Dr. Louise Shelley, who happens to have been engaged by Signal as an expert witness in this case. When questioned regarding its removal, Ms. Burke indicated (1) she did not think it was prudent to include a work by a defendant's expert in her materials considered, (2) upon reviewing the work more carefully she did not find it helpful, and (3) she did not use it to help her form her opinions. *See* Exhibit "B", Deposition of Florence Burke, pp. 36:20-37:22. This assertion should  be  particularly  troubling  to  the  Court  because  of  her  testimony  that  her  reports  are substantially similar. The implication is either Ms. Burke listed works on her materials considered section in the *Samuel* and *Joseph* reports that she did not really consider, or that she is committing plagiarism in the *David* report by not disclosing sources she did consider due to the embarrassment

---

[2] "When the student has completed coursework, he or she then must complete a preliminary examination with an oral defense. Upon successful completion of the exam, the student enters into "candidacy," where original research is undertaken, culminating in a dissertation and an oral defense."

of having the work's author criticize her report. Either possibility should give this Court serious reservations of admitting her testimony at trial.

## IV.   ARGUMENT AND ANALYSIS

### A.   Legal Standards

he admission of expert testimony is governed by the Federal Rules of Evidence which provide that opinion testimony may be given by, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education" provided "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue", "the testimony is based on sufficient facts or data", "the testimony is the product of reliable principles and methods", and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. "The party offering the expert must prove by a preponderance of the evidence that the proffered testimony satisfies the rule 702 test." Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002) (citing Bourjaily v. United States, 483 U.S. 171, 175 (1987)).

Nonetheless, the trial courts act as "gatekeepers" who must make a preliminary assessment of whether a purported expert's testimony is reliable and relevant. See Pipitone v. Biomatrix, Inc., 288 F.3d 239, 243-44 (citing Daubert v. Merrell Down Pharm., Inc., 509 U.S. 579, 592-93 (1993)); See also Johnson v. Arkema, Inc., 685 F.3d 452, 459 (5th Cir. 2012).   Reliability requires the expert opinion be grounded in scientific methods and procedures and be more than unsupported speculation or subjective belief. See Johnson, 685 F.3d 452, 459 (citing Curtis v. M&S Petroleum, Inc. 174 F.3d 661, 668 (5th Cir. 1999)). "This requires some objective, independent validation of the expert's methodology." Moore v. Ashland Chem.,Inc., 151 F.3d 269, 276 (5th Cir. 1998) (en banc). "Furthermore, courts consider the following non-exclusive list of factors when conducting

4

the reliability inquiry: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community." Johnson, 685 F.3d 452, 459.

Opinions which embrace an ultimate issue are not *per se* objectionable under Rule 704, but a witness is not permitted to tell the jury what result to reach or to give legal conclusions. Fed. R. Evid. 704; *See* Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) (citing United States v. Fogg, 652 F.2d 551, 557 (5th Cir.1981), cert. denied). "Nor, may an expert go beyond the scope of his expertise in giving his opinion." Goodman v. Harris Cnty., 571 F.3d 388, 399 (5th Cir. 2009) (citing First United Fin. Corp. v. U.S. Fid. & Guar. Co., 96 F.3d 135, 136 (5th Cir. 1996)). ". . . [T]he credit and weight to be assigned to expert testimony are matters entrusted to the sound discretion of the trier of fact. V & S Ice Mach. Co. v. Eastex Poultry Co., 437 F.2d 422, 426 (5th Cir. 1971) (citing Aetna Life Ins. Co. v. Ward, 140 U.S. 76, 88, 11 S. Ct. 720, 724, 35 L. Ed. 371 (1891); Dufrene v. Indemnity Insurance Co. of North America, 5 Cir., 1962, 303 F.2d 788, 789, cert. denied, 371 U.S. 868 (1962)); *See also* Elat v. Ngoubene, 993 F. Supp. 2d 497, 518 (D. Md. 2014) ("…[E]xpert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702") (internal quotations omitted)). Likewise, testimony that is otherwise relevant may still be excluded if its probative value is outweighed by the danger of it posing an, "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403.

5

**C.  Ms. Burke's opinions based on Plaintiffs' statements are inadmissible.**

Ms. Burke's opinions are unreliable and must be excluded. "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact." Wallis v. Hornbeck Offshore Operators, 2014 U.S. Dist. LEXIS 105820 (E.D. La.Aug. 1, 2014) (citing Primrose Operating Co. v. Nat'l Am. Ins. Co., 382 F.3d 546, 562 (5th Cir. 2004)). Here, Ms. Burke's bases and sources of her opinions merely usurp the province of the jury as trier of fact and must be excluded.

During her deposition, Ms. Burke testified that she assumed the veracity of everything the plaintiffs told her for the purposes of forming her opinions and authoring her expert report. *See* Exhibit "B", Deposition of Florence Burke, p.  50:12-19[3]. Ms. Burke further elaborated that she is, "known as an expert in interviewing skills" and that these skills allow her to probe until she gets, "information that coalesces into the retelling of an experience." *See* Exhibit "B", Deposition of Florence Burke, p.  51:4-23. Nonetheless, she assumes everything told to her in the interview is true. *See* Exhibit "B", Deposition of Florence Burke, pp.  51:24-52:3. Ms. Burke's interviewing skills, methods, and expertise were previously considered by Judge Grimm in the District of Maryland. Elat v. Ngoubene, 993 F. Supp. 2d 497 (D. Md. 2014). In Elat, the Court noted that Ms. Burke's "methodology and the opinions she bases on it demonstrate that her evaluation of the truthfulness of Plaintiff's version of the underlying events as compared to the Defendants' is little

---

[3] *See* Deposition of Florence Burke, p. 50:12-19
12    Q.    So just to clarify, you are saying
13    that you assume the veracity of what the
14    plaintiffs tell you; is that correct?
15        A.    Yes.
16        Q.    So when constructing your expert
17    reports in this case you took everything the
18    plaintiffs told you as true; is that correct?
19        A.    Yes.

different from the way that juries themselves determine credibility from conflicting testimony." *See* Exhibit "B", Deposition of Florence Burke, pp.  51:3-14. The Court ruled that any opinion of Ms. Burke assessing the credibility of the parties was inadmissible as was any opinions based on a credibility determination. *See* Exhibit "B", Deposition of Florence Burke, p.  at 51:4.

Here, whether Ms. Burke determined credibility through reliance on her interviewing skills or assumed the veracity of the Plaintiffs is functionally identical – she has used some credibility assessment in forming her opinions in the same way the jury would. Her export report is replete with factual assumptions she has improperly made which would usurp the providence of the jury as trier of fact.  These impermissible assumptions include that a trafficking scheme existed[4], that Plaintiffs were coerced and forced to continue working for Signal[5], that Signal exploited the Plaintiffs[6], that Plaintiffs exhibited signs of stress[7], that Plaintiffs experienced a climate of fear[8], that factors Ms. Burke contends are common features of trafficking were present in Signal's conduct[9], that there were deceptive recruitment practices[10], that Plaintiffs had unequal bargaining power and were subject to exploitive recruitment practices[11], that Signal made ongoing misleading and deceptive statements to the Plaintiffs[12], that the living conditions in the Mississippi man camp were both substandard and affected Plaintiff's health[13], that Signal monitored the comings and goings of Plaintiffs[14], that Plaintiffs experienced stress and anxiety[15], and other similar instances.

---

[4] *See* Exhibit "A", Burke Expert Report ¶ 17
[5] Id. at ¶ 19
[6] Id. at ¶ 20
[7] Id. at ¶ 21
[8] Id. at ¶ 22
[9] Id. at ¶ 32
[10] Id. at ¶ 33
[11] Id. at ¶ 34
[12] Id. at ¶ 36
[13] Id. at ¶ 37
[14] Id. at ¶ 40
[15] Id. at ¶ 49

The opinions she seeks to offer require her to make a factual determination based on the credibility (whether assumed or determined) of Plaintiffs' statements and impermissibly usurps the jury's role as trier of fact. Further, her assumption of veracity without any critical inquiry into the facts is the antithesis of the scientific method and in fact she admits she neither asked for additional information nor has any idea what other evidence is available other than what Plaintiffs' counsel provided her. *See* Exhibit "B", Deposition of Florence Burke, pp. 143:8-146:19. Her testimony must be excluded.

### D.   Ms. Burke's interview process was unreliable

Ms. Burke places a substantial weight on her interviews conducted with plaintiffs. She, however, played no role in selecting the sample of plaintiffs to interview; instead, Plaintiffs' counsel determined the sample selection methodology for her. *See* Exhibit "B", Deposition of Florence Burke, p.  20:18-22. Ms. Burke did not request to take the interviews of any other plaintiffs of her own choosing. *See* Exhibit "B", Deposition of Florence Burke, p. 21:6-15. She conducted all her interviews by telephone rather than conducting an in person interview and thus had no opportunity to consider the demeanor of the interviewee which she has identified as a useful observation. *See* Exhibit "B", Deposition of Florence Burke, p. 46:14-48:21; *See also* Elat v. Ngoubene, 993 F. Supp. 2d 497, 516 (D. Md. 2014) (discussing Ms. Burke's reliance on an interviewee's demeanor). She thus deviated from her normal practice. Further, Ms. Burke was unable to recall details from her interviews of the individual Plaintiffs, spoke of the interviews generally, and repeatedly was unable to answer specific questions about the interviews. *See* Exhibit "B", Deposition of Florence Burke, pp. 53:3-54:3. Her only notes from these interviews were 6-8 sheets of paper half the size of a standard letter sheet consisting of, "Scrolled notes, not careful". *See* Exhibit "B", Deposition of Florence Burke, p. 85:6-13. Her testimony would not be the product

of "reliable principles and methods" that "the expert as reliably applied". Fed. R. Evid. 702.

Therefore, her testimony must be excluded.

### E.   Ms. Burke is incompetent to render opinions regarding Plaintiffs' mental health, wellbeing, or state of mind.

As discussed *supra*, Ms. Burke is not a licensed therapist and has no professional licenses

whatsoever. During her deposition, Ms. Burke admitted that even when she was licensed as a

therapist in California she was not competent to render a final diagnosis, but rather had to have

any diagnosis approved by either a licensed Psychologist or Psychiatrist. *See* Exhibit "B",

Deposition of Florence Burke, pp. 60:16-62:24. Her testimony regarding mental health has

previously been found inadmissible and excluded. Elat, 993 F. Supp. 2d 497, 516-17 (noting Ms.

Burke's opinions were based solely on her lay observations). Ms. Burke also testified that she has

never reviewed current version of the Diagnostic and Statistical Manual of Mental Disorders[16],

version 5. *See* Exhibit "B", Deposition of Florence Burke, p. Burke Dep. 58:9-10.

In her expert report, Ms. Burke offers several opinions related to the mental health,

wellbeing, or state of the Plaintiffs. She opines the Plaintiffs experienced a climate of fear[17], that

there was a psychologically coercive environment at Signal[18], that they experienced a loss of

dignity and shame[19], and that they experienced ongoing fear and anxiety[20]. These opinions are

beyond Ms. Burke's area of expertise, and thus not admissible. *See* Goodman, 571 F.3d 388, 399

(noting experts may not offer opinions outside the scope of their expertise); *See also* Elat, 993 F.

Supp. 2d 497, 515-17 (noting Ms. Burke is not competent to render expert opinions on mental

---

[16] The Diagnostic and Statistical Manual of Mental Disorders, or DSM, is the standard text used in the mental health field for diagnostic purposes in a clinical setting.
[17] *See* Exhibit "A", Burke Expert Report ¶ 22
[18] Id. at ¶ 32
[19] Id. at ¶ 43
[20] Id. at ¶ 48

health issues). Ms. Burke's opinions on mental health related issues, the mental wellbeing, or state of mind of the Plaintiffs must be excluded.

**F.   Ms. Burke's testimony calls for a legal conclusion.**

Ms. Burke's Expert report in *David* cites the Trafficking Victims Protection Act of 2000 in defining "forced labor" which she then discusses in the remainder of her report.[21] Additionally, the first claim for relief in Plaintiffs' sixth amended complaint alleges violations of 18 U.S.C. § 1589 and 18 U.S.C. § 1590; these sections encompass legal terms such as, *inter alia,* forced labor, human trafficking, and slavery. *David* Rec. Doc. 1706 at ¶ 289-301. "The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.'" United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002) (quoting Torres v. Cnty. of Oakland, 758 F.2d 147, 151 (6th Cir. 1985); *See also* Lincoln Gen. Ins. Co. v. Valley Transp. Brokerage, Inc.,2002 U.S. Dist. LEXIS 28245(S.D. Tex.July 18, 2002) (quoting Torres 758 F.2d 147, 151 and Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir. 1983)). Ms. Burke herself admits in her deposition that any opinion she offered regarding whether the Plaintiffs were trafficking victims or suffered from a severe form of trafficking would be a legal conclusion.[22] Therefore, Ms. Burke must be excluded from offering an opinion as to whether the plaintiffs were trafficking victims, subject to forced labor, were slaves, and similar testimony which would involve terms with specialized meanings within the law versus the vernacular or academic literature.

---

[21] *See* Exhibit "A", at ¶ 26
[22] *See* Exhibit "B", Deposition of Florence Burke, p.  92:14-24.

## VII.  CONCLUSION

For the foregoing reasons, Ms. Burke should be excluded as an expert witness in this case and her report should be excluded from evidence. In addition to the many reasons given, this Court should carefully consider the misrepresentations made by Ms. Burke about her credentials and her attempts to conceal that she considered the work of Dr. Shelley in forming her opinions. The jury's task to weight the reliability of an expert's testimony is a difficult enough task without also having to weight the expert's candor.

In the alternative, Ms. Burke's testimony must be limited. Her testimony must be excluded where her opinions are based on either a credibility determination or an assumption of the veracity of Plaintiffs' statements as such testimony is no different than the role of the jury in weighting the credibility of witnesses and the evidence. Her testimony regarding interviews of Plaintiffs must be excluded as a product of an unreliable methodology. Her testimony must be excluded where her opinions speak to the mental health, wellbeing, or state of mind of the plaintiffs as she is not competent to testify as an expert in this area. Her testimony must also be excluded where it calls for a legal conclusion or uses terminology with specific legal meaning that differs from colloquial, vernacular, or academic usage.

Respectfully submitted,

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC

701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com
                And
Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:  (504) 304-0890
patricia@bollmanfirm.com

***Counsel for Signal International, L.L.C.
Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*
ERIN CASEY HANGARTNER