UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | |
|---|---|
| REJI SAMUEL, et al.,<br>    Plaintiffs | CIVIL ACTION NO: 1:13-cv 00323 |
| v. | DISTRICT JUDGE<br>MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al,<br>    Defendants | MAGISTRATE JUDGE<br>ZACK HAWTHORN |

# MOTION AND INCORPORATED MEMORANDUM TO EXCLUDE EXPERT WITNESS TESTIMONY ON BEHALF OF SACHIN DEWAN AND DEWAN CONSULTANTS PVT. LTD.

NOW INTO COURT, through undersigned counsel, come Sachin Dewan and Dewan Consultants Pvt. Ltd. (India) who hereby move to exclude the testimony of Louise Shelley, Signal International, LLC's proposed expert witness, for the following reasons:

## I.   Background

The parties in this case have hired certain so-called experts to support their claims and defenses. Signal International, LLC ("Signal") and plaintiffs' named a host of experts in various areas. Sachin Dewan and Dewan Consultants Pvt. Ltd. (India) ("Dewan Defendants") seek to exclude the expert testimony of Louise Shelley (Signal's expert in the area of human trafficking). As grounds therefor, the Dewan Defendants' contend that this proposed expert has failed to offer expert opinions that pass muster under Rule 702 of the Federal Rules of Civil Procedure and its applicable jurisprudence. This expert should therefore be excluded at the trial of this matter.

## II. Law and Argument

### A. Rule 702 and *Daubert/Kumho*

Rule 702 of the Federal Rules of Evidence provides that an expert witness "qualified … by knowledge, skill, experience, training or education," may testify when scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue. For the testimony to be admissible, Rule 702 requires that: (1) the testimony must be based on sufficient facts or data; (2) the testimony must be the product of reliable principles and methods; and (3) the witness must apply the principles and methods reliably to the facts of the case. Fed. R. Evid. 702. Rule 702 gives the district court considerable discretion to admit or exclude expert testimony. *General Electric Co. v. Joiner,* 522 U.S. 136, 138-139 (1997).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 (1993), the United States Supreme Court held that Rule 702 requires the district court to act as a "gatekeeper" to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." Subsequently, in *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999), the Court held that the relevant and reliable standard announced in *Daubert* for scientific expert testimony applied to all types of expert testimony.

The district court's gate-keeping function thus involves a two-part inquiry into reliability and relevance. First, the court must determine whether the proffered expert testimony is reliable. The proponent of the testimony bears the burden of establishing its reliability by a preponderance of the evidence. *Moore v. Ashland Chemical Inc.,* 151 F. 3d 269, 276 (5th Cir.1998). The reliability inquiry requires the court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *Daubert,* 509 U.S. at 590. The goal is to exclude expert

testimony based merely on subjective belief or unsupported speculation. *Id.* Furthermore, the United States Fifth Circuit Court of Appeals has repeatedly cautioned that expert witnesses are prohibited from offering legal conclusions and legal interpretations. *Askanase v. Fatjo,* 130 F.3d 657, 673 (5th Cir.1997) (finding that the trier of fact must decide whether certain actions were in accord with or contrary to law, and an expert may not "tell the trier of fact what to decide" or similarly give legal interpretations); *Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983) (observing that expert witnesses may neither tell the jury what result to reach nor provide legal conclusions).

   The *Daubert* Court set forth a list of non-exclusive factors that district courts may use in evaluating the reliability of expert testimony.  These factors include whether the expert's theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error or standards controlling its operation; and (4) is generally accepted in the relevant scientific community. *Id.* at 593-594.  Subsequently, in *Kumho*, the Court emphasized that the approach under *Daubert* is "flexible," and that "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  526 U.S. at 150.  The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

   Second, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will thereby assist the trier of fact to understand the evidence, in other words, whether it is relevant. *Daubert,* 509 U.S. at 591.  *Daubert* described

this examination as a question of whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute. *Id.* (citing *United States v. Downing,* 753 F.2d 1224, 1242 (3rd Cir.1985)). Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Therefore, expert testimony is not relevant, and thus, inadmissible if it is not helpful. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine,* 898 F.2d 448, 450 (5th Cir.1990). "The Court in *Peters* ruled that it is within the discretion of the trial judge to decide "that the [fact-finder] could adeptly assess the situation using only their common experience and knowledge," and thus exclude expert testimony on that basis. If the expert's testimony brings no more to the finder of fact than the lawyers can offer in argument, the expert's opinions should be excluded. *In Re Midland Enterprises, Inc.,* 2002 WL 31780156 at *3 (E.D. La. Dec. 11, 2002). See also, *Daubert v. Merrell Dow Pharms. Inc.,* 43 F.3d 1311, 1321 n. 17 (9th Cir.1995) (finding that because expert testimony carries special dangers for the fact-finding process, courts must exclude it under Rules 702 and 403 "unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Id.* at 1321, n. 17.

B. **Expert Testimony of Louise Shelley**

In her expert report, Ms. Shelley makes blanket, unfounded assertions that the Dewan Defendants engaged in fraudulent conduct during in its recruitment effort for Signal and was a "human trafficker." The Dewan Defendants take enormous exception to Ms. Shelley's so-called expert opinions on this point.

4

Ms. Shelley states as follows in her report:[1]

12.     The recruiting activities of Dewan, Pol and Burnett began several years before there was any contact with Signal International. **If there was fraud committed by these three, as alleged in the complaints, this began in late 2003 in the pre-Katrina environment** and was not known to Signal when they signed the contract with the recruiters Global Resources, when Signal's testers travelled to India, or before the arrival of the workers. **Signal was deceived as well as the workers, as they were told that recruitment fees were $2,000 to 3,000 while the workers were charged a multiple of this.**

27.     The recruiter in India and his partners Michael Pol, Global Resources, and Malvern C. Burnett **might have engaged in deceptive promises,** but as the chronology presented by the plaintiffs in the third amended complaint, Signal was not part of any deceptive promises.

28.     . . . "[The] workers were not given 70 hours work, **as promised by Sachin Dewan.  This is deception by the recruiter but not by Signal.**

31.     . . . **There might have been misleading or deceptive statements from the recruiter but not from Signal.  As paragraph 46 of the Indian opinion suggests, Dewan Consultants were engaged in deceptive practices.**

64.     The Indian case on the suspension of Dewan Consulting's license was not issued by the highest court of India. It was issued a year after the case was initiated in the United States in which time American lawyers had ample time to submit evidence on behalf of the plaintiffs.  Since this case was not issued by the Supreme Court, it is still possible to provide further evidence and press charges against the company of Sachin Dewan.  In the absence of complaints from several workers, the Indian government suspended Sachin Dewan's license for a period of one year and 8 months.  If those seeking to fight trafficking of Indian guest workers were concerned about the trafficking problem, they should have used their legal expertise to 1) put Sachin Dewan, a person identified by the Indian government, as a trafficker permanently out of business 2) to seek damages within India against an individual identified by the Indian government as an individual who had intentionally deceived poor people.

The Indian case is not hard to follow and is easy to find in its entirety on the web. Therefore, with the quality of legal expertise in this case, it is surprising that all avenues have not been tried to find redress for the workers and to prevent future trafficking.  No further case in the last five years has been filed against Dewan Consulting in India since the decision of 2009.

The failure to try all efforts to prevent trafficking suggests that the focus of this case is not on the prevention of trafficking or finding relief for victims of

---

[1] The Louise Shelley's Expert Report is attached hereto as Exhibit A.

5

trafficking. Mr. Sachin Dewan is still continuing to recruit workers for exploitative work environments like Saudi Arabia.

The Dewan Defendants address the above statements in Ms. Shelley's report *in globo* because they all lack the same or similar essential requirements necessary to be a valid expert opinion under Rule 702, *Daubert*, and *Kumho*. As a preliminary matter, these assertions have no indicia of reliability whatsoever. The reasoning and methodology underlying Ms. Shelley's so-called opinions are non-existent. There is further no independent analysis provided by Ms. Shelley as to these alleged expert opinions, and there is nothing to support these opinions. The assertions made are nothing more than a regurgitation of facts alleged and materials Ms. Shelley reviewed to suit Signal's purposes. That's all. On this basis, alone, the portions of Ms. Shelley's report that cast much blame on the Dewan Defendants, as well as her testimony on this points, should be excluded.

The statements made by Ms. Shelley against the Dewan Defendants must also be excluded for equally as important reasons. For example, Ms. Shelley opines in paragraph 12 of her report that "if there was fraud committed by [Dewan, Burnett, and Pol], as alleged in the complaints, this began in late 2003 in the pre-Katrina environment," and that Signal did not know anything about it. This statement constitutes rank speculation as the true nature of the pertinent facts. The portion of this statement about, veiled as "if there was fraud," is nothing more than impermissible legal conclusion that the Dewan Defendants may have committed a fraud. Finally, this assertion bears absolutely no relevance to any of the material issues in this case. Any recruitment efforts undertaken by the Dewan Defendants several years prior to the Signal recruitment effort has absolutely no material bearing on the facts of this case.

Ms. Shelley renders opinions in Paragraphs 27, 28, and 31 which conclude that the Dewan Defendants engaged in a variety of deceptions aimed at the Signal job candidates. In

Paragraph 27, Ms. Shelley states that Dewan Defendants (and others) "may have engaged in deceptive practices." This is a blatantly impermissible legal conclusion and must be excluded on that basis alone. Similarly, Paragraph 28 suggests that Sachin Dewan promised Signal job candidates 70 hours per week of work, and that this was a deception on the part of the Dewan Defendants, not Signal. This opinion is not supported by the facts and evidence in this case, and it further constitutes the kind of legal conclusion prohibited by the Fifth Circuit. Similarly, in Paragraph 31, Ms. Shelley opines that the Dewan Defendants might have deceived the workers, but not Signal. Again, this opinion is not factually supported and it further represents an improper legal conclusion. All of these so-called expert opinions should therefore be excluded because they lack the *Daubert/Kumho* requirements and they will be of no assistance to the jury. In fact, these unfounded, conclusions will invade the province of the jury because it is up to the jury to decide these facts.

Finally, Paragraph 64 (which is set forth above, and will not be repeated here), as well as all references she makes to the proceeding in India in which Dewan Consultants recruitment license was suspended, is yet another example of an opinion that is not based on the facts and evidence in this case. That proceeding and the subsequent lawsuit brought by Dewan Consultants to challenge the summary suspension, is merely something Ms. Shelley reviewed and chose to believe as gospel. Ms. Shelley is not an expert in the recruitment of workers from India to companies located abroad, including the United States. She further is not an expert on civil or administrative legal proceedings in India. Her opinion in this regard, and all other opinions regarding this proceeding, is speculative and based on her own subjective belief as to validity of that proceeding and its relevance to the instant case. Further, Ms. Shelley's opinion assumes facts that very well may not constitute admissible evidence at trial, particularly without

any opinion about whether the Dewan Defendants were afforded the kind of due process and fairness in connection with that case in comparison with a similar case brought in the United States. Ms. Shelley's opinions in Paragraph 64 (and in other portions of her opinion) about the proceeding in India are extremely inflammatory inasmuch as she apparently concludes, **in this proceeding**, that additional legal action should be taken against Dewan Consultants, and that the parties in the instant case should have or should in the future instigate such action. This kind of opinion, which is based only on personal belief and rank speculation, and is extremely inflammatory, will most certainly usurp the role of the jury in deciding the facts of this case and in rendering its decision. This so-called expert opinion and any testimony concerning it should be excluded.

### III. Conclusion

For the foregoing reasons, the expert opinions of Louise Shelley as they pertain to the Dewan Defendants should be excluded.

Respectfully submitted;

/s/ *Stephen H. Shapiro*
Stephen H. Shapiro (#21076)
Attorney at Law
A Limited Liability Company
700 Camp Street
New Orleans, LA 70130
Telephone: (504) 309-8442
E-mail: steve@shapirolaw-nola.com

**Counsel for Sachin Dewan and Dewan Consultants Pvt. Ltd.**

## CERTIFICATE OF SERVICE

    I hereby certify that this Motion and Incorporated Memorandum to Exclude Expert Witness on Behalf of Sachin Dewan and Dewan Consultants Pvt. Ltd. has been served on all counsel of record by electronic transmission or on any viable unrepresented parties by means which this Court has deemed necessary and appropriate on this 17th day of October 2014.

                                            /s/ *Stephen H. Shapiro*
                                            Stephen H. Shapiro