**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**BEAUMONT DIVISION**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | CIVIL ACTION NO: |
| Plaintiffs | * | 1:13-cv-00323-MAC-ZJH |
| | * | |
| v. | * | DISTRICT JUDGE |
| | * | MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| | * | MAGISTRATE JUDGE |
| Defendants | * | ZACK HAWTHORN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MOTION OF SIGNAL DEFENDANTS FOR PARTIAL SUMMARY JUDGMENT

Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689

And

Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890

***Counsel for Signal International, L.L.C.***
***Signal International, Inc.,***
***Signal International Texas, G.P., and***
***Signal International Texas, L.P.***

## TABLE OF CONTENTS

I.   MOTION ................................................................................................................... 1

II.  ARGUMENT ............................................................................................................. 7

  A. Introduction ............................................................................................................. 7

  B. Statement of Undisputed Material Facts ................................................................. 7

      i.   Aby Raju ....................................................................................................... 8

      ii.  Raju Divakaran ............................................................................................ 9

      iii. Nayappullo Jayachandran ............................................................................ 10

      iv. Biju Perumpilly George ................................................................................ 11

  C. Trafficking ............................................................................................................... 12

      i.   TVPRA not Extraterritorial .......................................................................... 12

          a. Introduction .......................................................................................... 12

          b. Discussion ............................................................................................. 13

      ii.  The First Claim for Relief is Partially Impermissibly Retroactive .............. 18

      iii. No Evidence of Trafficking .......................................................................... 19

          a. Scienter ................................................................................................. 20

          b. The Undisputed, Material Evidence ..................................................... 24

          c. Financial Coercion ................................................................................ 27

  D. The Civil RICO claim .............................................................................................. 31

      i. The Structural Defect .................................................................................... 31

      ii. RICO is not Extraterritorial ......................................................................... 32

      iii.Kozminski ..................................................................................................... 34

a. Introduction ........................................................................................ 34

b. Discussion .......................................................................................... 35

iv. No Proof of Conspiracy ........................................................................ 38

v.  Section 1985 Claim Subject to Dismissal .............................................. 39

III.  CONCLUSION ......................................................................................... 40

<u>EXHIBITS:</u>

1. Adhikari v. Daoud & Partners, No. 09-1237, Doc. #617, p. 12-13 (S.D. Tex. Aug. 23, 2013)

2. Feb. 25, 2008 Resignations / Change of Status form of Raju Aby, SIGP001669

3. 2007 & 2008 W-2  Forms of Aby K. Raju, in globo

4. Feb. 25, 2008 Resignation / Change of Status form of  Raju Divarkarn, SIGP0012394.

5. 2007 & 2008 W-2 Forms of Raju Divakaran, in globo.

6. Mar. 3, 2008 Resignation / Change of Status form of Nayappulli Jayachandran, SIGP0018641.

7. 2007 & 2008 W-2 Foroms of Nayappulli Jayachandran, in globol

8. Apr. 27,2007 Resignation / Change of Status Form of Biju P. George, SIGP0014876

9. 2007 W-2 Form of Biju Perumpilly George.

10. June 6, 2007 Termination / Change of Status Form of  Santosh Kumar Rajendran Pillai, SIGP0019703

11.     207 W-2 Form of Santosh Kumar Rajendran Pillai, in globo.

12.     Sept. 6, 2014 Depositionof Aby K. Raju, in globo.

13.     Sept. 7, 2014 Deposition of Aby K. Raju, in globo.

14.     Sept. 5, 2014 Deposition of Aby K. Raju, in globo.

15.     Sept. 9, 2014 Deposition of Raju Divakaran, in globo.

16.     Sept. 10, 2014 Deposition of Raju Divakaran, in globo.

17.     Sept. 11, 2014 Deposition of Raju Divarkaran, in globo

18.     Aug. 23, 2014 Deposition of Nayappulli Jayachandran, in globo.

19.     Aug. 24, 2014 Deposition of Nayappulli Jayachandran, in globo

20.     Sept. 18, 2014 Deposition of Biju George, in globo.

21.     Sept. 16, 2014 Deposition of Biju George, in globo.

22.     Sept. 17, 2014 Depositionof Biju George.

23.     Transcript of Dan Rather Reports, Episode 637, p. 4.

# TABLE OF AUTHORITIES

**Cases**:

*Accord*: *Figueroa Ruiz v. Alegria*,
  896 F.2d 645, 650 (1st Cir. 1990) ........................................................................... 5

*Adhikari v. Daoud & Partners*,
  No. 09-1237, Doc. #617, p. 12-13 (S.D.Tex. Aug. 23, 2013) (Ellison, J.) ...................... passim

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 244, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......................................... passim

*Baiju v. United States DOL*,
  2014 U.S. Dist. LEXIS 12372, *60-61 (ED NY 1/31/14) ....................................... 36

*Beck v. Prupis*,
  529 U.S. 424, 501 n. 6, 120 S. Ct. 1608, 1614 n. 6, 146 L. Ed.2d 561 (2000) ....................... 38

*Bolton v. Tesoro Petroleum Corp.*,
  871 F.2d 1266, 1277-78 (5th Cir. 1989) ..................................................................... 5

*Bowen v. Massachusetts*,
  487 U.S. 879, 896, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) ........................................ 17, 29

*Calpetco 1981 v. Marshall Exploration, Inc.,*
  989 F.2d 1408, 1415 (5th Cir. 1993) ....................................................................... 4

*Cannata v. Catholic Diocese of Austin*,
  700 F.3d 169, 172 (5th Cir. 2012) ........................................................................... 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .......................................... 5, 26

*Clark v. Rozos*,
  543 U.S. 371, 381, 125 S. Ct. 716, 724, 160 L. Ed.2d 734 (2005) ...................................... 29

*Crowe v. Henry*, 43 F.3d 198, 205-06 (5th Cir. 1995) ............................................... 2, 31

*David v. Signal Int'l, L.L.C.*,
  2012 U.S. Dist. LEXIS 114247, *126 (E.D.La. Jan. 12, 2012) ........................................ passim

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) ................................................................................. 19

*Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*,
   899 F. Supp. 1443, 1449 (M.D.N.C. 1995) ............................................................. 37

*Kiobel v. Royal Dutch Petro. Co.*,
   -- U.S. --, 133 S. Ct. 1659, 1667-68, 185 L. Ed. 2d 671 (2013) ...................................... passim

*Landgraf v. USI Film Products*,
   511 U.S. 244, 266, 114 S. Ct. 1483, 1497, 128 L. Ed.2d 229 (1994) ............................... passim

*Landry v. Air Line Pilots Ass'n*,
   901 F.2d 404, 425 (5th Cir. 1990) ...................................................................... 30, 31

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) .................................... passim

*Morissette v. United States*,
   342 U.S. 246, 250-51, 96 L. Ed. 288, 72 S. Ct. 240 (1952) .................................... 21,22, 23, 24

*Rogers v. Tennessee*,
   532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed.2d 697 (2001) ............................................. 19

*Shackney* and *Zavala v. Wal Mart Stores, Inc.*,
   691 F.3d 527, 540-41 (3d Cir. 2012) ..................................................................... 36

**United States v. Akpan**,
   2010 U.S. App. LEXIS 19790, *2 (5th Cir. Sept. 23, 2010) ....................................... 38

*United States v. Bibbs*,
   564 F. 2d 1165, 1168 (CA5 1977) ....................................................................... 39

**United States v. Brown**,
   459 F.3d 509, 519 (5th Cir. 2006) ....................................................................... 38

**United States v. Davis**,
   752 F.2d 963, 969-70 (5th Cir. 1985) ................................................................. 38, 42

*United States v. Des Moines Navigation & Railway Co.*,
   142 U.S. 510, 544, 12 S. Ct. 308, 35 L. Ed. 1099 (1891) .......................................... 17, 29

**United States v. Diecidue**,
   603 F.2d 535, 546 (5th Cir. 1979) ....................................................................... 38

*United States v. Freeman*,
   434 F.3d 369, 376 (5th Cir. 2005) ........................................................................ 3

**United States v. Garza**,
   429 F.3d 165, 168-69 & n.1 (5th Cir. 2005) .......................................................... 38

*United States v. Harris,*
   701 F.2d 1095, 1100 (4th Cir. 1983) ............................................................ 39, 41

*United States v. Kozminski*,
   487 U.S. 931, 938-39, 945, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988).......................... passim

*United States v. Kung-Shou Ho*,
   311 F.3d 589, 605 (5th Cir. 2002) ..................................................................... 21

*United States v. Kuok*,
   671 F.3d 931, 940 (9th Cir. 2012) ................................................................. 15, 16

*United States v. Nnaji*,
   447 Fed. Appx. 558, 559 (5th Cir. 2011)............................................................. 28

*United States v. Manges*,
   110 F.3d 1162, 1173 (5th Cir. 1997) ................................................................. 38

*United States v. Phillips*,
   543 F.3d 1197, 1206 (10th Cir. 2008) ................................................................ 29

*United States v. Schackney*,
   333 F. 2d., at 487 ...................................................................................... 39

*Velez v. Sanchez*,
   693 F.3d 308, 325 (2nd Cir. 2012)....................................................... 13, 19, 24, 30

## Statutes

18 U.S.C. § 1583 ...................................................................................... 3, 8, 36

18 U.S.C. § 1584.................................................................................. 3, 8, 36, 37, 41

18 U.S.C. § 1589 ...................................................................................... passim

18 U.S.C. § 1589(c)(2)..................................................................................... 29

18 U.S.C. § 1590 .................................................................................................. passim

18 U.S.C. § 1592 .................................................................................................. passim

18 U.S.C. § 1592(a) ............................................................................................. 18, 42

18 U.S.C. § 1594(a) ................................................................................................... 18

18 U.S.C. § 1595 .................................................................................................. passim

18 U.S.C. § 1596 .................................................................................................. passim

18 U.S.C. § 1962(c) ..................................................................................... 2, 31, 32, 42

18 U.S.C. § 1962(d) ............................................................................................. passim

42 U.S.C.§ 1985 ................................................................................................... 3, 4, 8

## Other Authorities

1 Op. Atty. Gen. 57 ................................................................................................... 16

Clean Air Act ............................................................................................................ 21

Congressional Research Service .............................................................................. 16

Immigration and Nationality Act (8 U.S.C. 1101) ................................................... 13

Trafficking Victims Protection Act ............................................................. 8, 13 18, 34

Trafficking Victims Protection Reauthorization Act of 2003 ............................. passim

Victims of Trafficking and Violence Protection Act of 2000 ................................ 18, 19

William Wilberforce Act ...................................................................................... passim

## RULES

Fed. R. Civ. P. Rule 56 ....................................................................................... passim

Fed. R. Civ. P. Rule 56(a) ......................................................................................... 1

**MAY IT PLEASE THE COURT:**

## I.   <u>MOTION</u>

Defendants, Signal International, LLC ("LLC"), Signal International, Inc. ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal"), respectfully move, for the reasons stated more fully below, in accordance with Fed. R. Civ. P. 56(a), for the following partial summary judgments relative to the Complaint (Doc. #1):

1. With regard to the First Claim for Relief, Doc. #1, ¶¶ 286, *et seq*., asserting claims of forced labor and trafficking under the Trafficking Victims Protection Reauthorization Act of 2003 pursuant to 18 U.S.C. § 1595, with regard to which the Plaintiffs bear the burden of proof at trial, the trafficking claim should be dismissed via partial summary judgment on the ground that under the undisputed facts, the trafficking claim is unlawfully extraterritorial.

2. With regard to the same claim for relief: the claim stated in Doc. #1, ¶ 188(c), as to § 1592, is subject to dismissal via partial summary judgment under the undisputed facts. There are two phases to this argument. First, the First Claim for Relief exceeds the scope of § 1595 as it existed when the facts in this case occurred, which is why the plaintiffs in this case were part of *David's* absent class. Prior to the 2008 Wilberforce Act, however, § 1595 did not include § 1592, which cannot otherwise be the source of a private cause or right of action. In this case, given § 1595's language and structure, § 1592 is therefore not actionable

1

under § 1595's umbrella. Since the offenses underlying § 1595 are criminal, the civil remedy must be judged on the basis of the same time period in order to avoid violating the *ex post facto* clause. Even if the Court concludes that this action represents a prospective application of § 1595, however, § 1592 still is not actionable. This is so because at all times pertinent hereto, § 1592 was not extraterritorial, whereas this case represents an effort, under the undisputed facts, to apply § 1592 extraterritorially.

3.  With regard to the same claim for relief, even if the Court concludes that the trafficking claim is territorial, the trafficking claim is subject to dismissal via partial summary judgment. With regard to Signal, there is no or insufficient evidence to render triable the *scienter* required by 18 U.S.C. § 1590.

4.  With regard to the Second Claim for Relief, the civil RICO claim, which the Plaintiffs bear the burden to prove at trial, all § 1962(c) claims are subject to dismissal via partial summary judgment. ***See*** 18 U.S.C. § 1962(c) ("It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity . . ."). These claims are, without exception, fatally defective, structurally, under Fifth Circuit jurisprudence. The Complaint violates the rule concerning distinguishing, with regard to § 1962(c), between the RICO person and the RICO enterprise. ***See Crowe v. Henry***, 43 F.3d 198, 205-06 (5th Cir. 1995).

5.  With regard to the same, Second claim for relief, partial summary judgment is warranted on the ground that under the undisputed facts, the predicate acts relating to mail and wire fraud, unlawful document-related practices under §

1592 and trafficking violate the rule against attempting to apply extraterritoriality a statute that is not extraterritorial, namely, § 1964(c).

6. With regard to the same claim for relief, partial summary judgment is specifically warranted, under the undisputed facts, with regard to 18 U.S.C. §§ 1583 and 1584, the predicate acts relating to involuntary servitude and slavery. It is undisputed that the Plaintiffs were free to leave Signal at any time. Hence, under *United States v. Kozminski*, 487 U.S. 931, 938-39, 945, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988), these claims are not triable. On the same basis, under the undisputed facts, the First Claim for Relief is equally subject to dismissal via partial summary judgment with regard to slavery and involuntary servitude, which are alleged to be a basis, also, for the trafficking claim. *See* Doc. #1, ¶ 188(a)-(b).

7. With regard, in the second claim for relief, to claims predicated on conspiracy, i.e., § 1962(d), all such claims are also subject to dismissal via partial summary judgment. There is no or insufficient evidence for the purposes of trial of the *scienter* required by 18 U.S.C. § 1962(d), relative to conspiracy, with regard to Signal. *See*, *e.g*., *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005) (conspiracy requires proof that "(1) two or more people agree[d] to pursue an unlawful objective, (2) the defendant [knew] about the unlawful objective and agree[d] to join the conspiracy, and (3) at least one member of the conspiracy commit[ted] an act in furtherance of the conspiracy's objective.").

8. The Fourth Claim for Relief under 42 U.S.C. § 1985 in Doc. #1, ¶¶ 255, *et seq*., is also subject to dismissal via partial summary judgment based on the

3

undisputed facts. Plaintiffs were, in fact, free to leave Signal whenever they wanted to and they knew this to be true, even if leaving would be in some sense financially painful. Therefore, the Plaintiffs cannot make out a violation of the Thirteenth Amendment in light of *Kozminski*, *supra*, at 938-39, 945. Contrary to the Complaint, moreover, § 1985(3) is a product of the Thirteenth Amendment and the Civil War era. Section 1985(3) does not "derive[] . . . from §§ 1589 & 1590 . . ." *David v. Signal Int'l, L.L.C.*, 2012 U.S. Dist. LEXIS 114247, *126 (E.D.La. Jan. 12, 2012). *Cf*. Doc. #1, ¶ 257 (characterizing §§ 1589 & 1590 as statutes "implementing and enforcing" § 1985).

This motion, coming from a movant who does not bear the burden of proof at trial,[1] furthers judicial economy, expressly complies with Rule 56(a), and resonates with the purposes of Rule 56(a) as the Fifth Circuit has described them. *See Calpetco 1981 v. Marshall Exploration, Inc.,* 989 F.2d 1408, 1415 (5th Cir. 1993) (discussing usefulness of partial summary judgment).[2]

---

[1] *See, e.g.*, *Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp.2d 613, 622-23 (N.D.Tex. 2007) (plaintiff bears burden of proof at trial on RICO claim); *Thurmond v. Compaq Computer Corp.*, 171 F. Supp.2d 667, 675 n. 16 (E.D.Tex. 2001) ("'for the plaintiff to prevail under RICO, he must prove by a preponderance of the evidence that the defendant's RICO violations were the 'proximate cause of injury.' PATTERN JURY INSTRUCTIONS (CIVIL) FIFTH CIRCUIT § 8.1 (9th ed. 1999); . . .") (citations omitted). *See also David, infra*, at *76 ("Of course, Plaintiffs are not prosecutors, they are civil litigants seeking to recover money damages under § 1595 for a violation of a criminal statute, § 1589. But § 1595 is a damages statute, not a statutory penalty provision that imposes a monetary sanction once *the plaintiff* establishes that the defendant has engaged in certain conduct.") (emphasis added).

[2] "Seven years have passed since the famous Supreme Court trilogy breathed life into the use of summary judgment. It has an important, and ever increasing, role in stemming the tide of explosive litigation, greatly congested dockets, increasing delay in claims being adjudicated, and spiraling -- indeed, unimaginable -- litigation costs. In short, it is one of the primary weapons in the Federal Rules of Civil Procedure arsenal, all of which are to 'be construed to secure the just, speedy, and inexpensive determination of every action.' Fed. R. Civ. P. 1." *See also Barker v. Norman*, 651 F.2d 1107, 1123 (5th Cir. 1981) (partial summary judgment promotes "a careful and meticulous analysis, first by the parties, but ultimately by the district court [which] will aid significantly in preventing the waste of private and judicial resources and time."). In *Calpetco*, the Fifth Circuit stressed that partial "[s]ummary judgment, pursuant to the simple procedures established by Rule 56, *serves, among other ways, to root out, narrow, and focus the issues, if not resolve them completely*." *See Calpetco, supra*, at 1415 (emphasis added).

Even though the entire action is not now subject to dismissal and Signal does not contend otherwise, a significant portion of the action is defective, especially with regard to its quasi-criminal aspects, i.e., §§ 1595 and 1964(c), based on *Anderson*, *infra*, at 252. This is true because, as *Anderson* explains, "the inquiry involved in ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial," *id*., and this means that the Court must be particularly sensitive to the fact that the claims to which this motion pertains are criminal statutes, which are, for example, especially territorial and especially statutes not to be applied retroactively in violation of the *ex post facto* clause. *See Landgraf*, *infra*, at 266-67 (*Ex Post Facto* Clause ensures individuals have fair warning about effect *of criminal statutes* and "'restricts governmental power by restraining arbitrary and potentially vindictive legislation.'") (citations omitted and emphasis added); *Bolton v. Tesoro Petroleum Corp*., 871 F.2d 1266, 1277-78 (5th Cir. 1989) (civil RICO case is "civil trial raising quasi-criminal allegations."). *Accord*: *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990) (civil RICO suit "quasi-criminal" in nature) (citation to earlier First Circuit opinion omitted).

Relative, for example, to Doc. #1's reliance on § 1962(d), this motion for partial summary judgment is in part an exercise, by Signal, of its unquestioned right under *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) to "point[] out to th[is] . . . court – that there is an absence of evidence to support the [Plaintiffs'] case" concerning the *scienter* underlying § 1962(d) with respect to Signal. *Id*.

In the balance of this brief, Signal refers both to deposition testimony and to the Complaint. Given that the plaintiffs unquestionably bear the burden of proof at trial with regard

to the claims to which this motion pertains, Signal has a right to rely on "the pleadings" in seeking summary judgment. *See Catrett*, *supra*, at 322.

To withstand summary judgment, plaintiffs must produce specific evidence to make a showing sufficient to establish the existence of every element essential to a theory of liability on which plaintiffs bear the burden of proof at trial. *Id*. Once Signal, for example, demonstrates the absence of a genuine issue of material fact as to an element, "[i]t is then up to the nonmoving party, going beyond the pleadings, [and] point to 'specific facts showing that there is a genuine issue for trial.'" *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (*quoting Catrett*, *supra*, at 324).

As is its right, Signal points out in the balance of this brief, from time to time, that the quasi-criminal liability theories that are the subject of this motion appear extraterritorial as a matter of law, given that the theories are so deeply contingent on proof of overseas events. *See*, *e.g*., Complaint, Doc. #1, ¶ 13 ("Plaintiffs . . . were recruited from India or the United Arab Emirates by Defendants at various times between 2006 and 2007."); ¶¶ 19-35 (allegations concerning overseas recruitment for work at Signal); Doc. #1-1 (RICO Fraud Chart, proving conclusively that quasi-criminal claims are overwhelmingly based on facts occurring overseas and that plaintiffs accordingly bear heavy burden to show that their quasi-criminal claims are not impermissibly extraterritorial). *See also*, *e.g*., *Adhikari v. Daoud & Partners*, No. 09-1237, Doc. #617, p. 12-13 (S.D.Tex. Aug. 23, 2013) (Ellison, J.) (holding that RICO is not extraterritorial, citing cases) (Exhibit 1). *See also Catrett*, *supra*, at 325 ("as we have explained,  the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.").

6

## II.   ARGUMENT

### A.   *Introduction*

This memorandum is divided into three, main sections. The first section consists of the Statement of Undisputed Material Facts, a section that constitutes an ideal prologue to the following discussion of the substantive reasons why partial summary judgment is warranted with regard to so many claims. The section after the Statement of Undisputed Material Facts is broadly the discussion of trafficking; this section is subdivided into separate subsections covering distinct defects within the trafficking claim, such as a defect with regard to retroactivity relative to the claim under § 1595. The section after that broadly examines, in a few subdivisions, various defects in the civil RICO claim. The last section before the Conclusion covers the claim under 42 U.S.C. § 1985, with regard to which, partial summary judgment is warranted.

### B.   *Statement of Undisputed Material Facts*

Signal begins with an enumeration of the key facts that it contends are both material and undisputed both for Rule 56 reasons and to comply with LR CV 56(a). These facts inform the substantive discussion that follows this section, with regard, for instance, to the disqualifying discrepancy between *United States v. Kozminski*, 487 U.S. 931, 938-39 & 945, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988) and the slavery and involuntary servitude claims, which are untenable in light of the testimony of the plaintiffs themselves. *Kozminski* announced the rule that individuals who are free to leave a condition, allegedly, of slavery, are not slaves, regardless of how personally painful the act of leaving may by and large be. Financial harm is plainly not enough, in *Kozminski's* view, to induce a violations of §§ 1583 and 1584, a fact speaking

7

directly to the reasons why the TVPA was later enacted and amended to explicitly embrace financial harm; an amendment, however, that occurred after this lawsuit, pivotally.

A brief summary of the Plaintiffs' compensation is a great place to begin. It helps demonstrate that there is not a *genuine* and plausible issue of material fact concerning trafficking. ***See Matsushita***, ***infra***.

| Plaintiff | Date Quit or Terminated | Compensation |
|---|---|---|
| Aby K. Raju | 2/25/08[3] | $61,684[4] |
| Raju Divakaran | 2/25/08[5] | $70,753[6] |
| Nayappulli Jayachandran | 3/3/08[7] | $60,130[8] |
| Biju Perumpilly George | 4/27/07[9] | $21,398[10] |
| Santosh Kumar Rajendran Pillai | 6/6/07[11] | $22,387[12] |

### i.   ___Aby Raju___

---

[3] Feb. 25, 2008 Resignation / Change of Status form of Raju Aby, SIGP001669, attached as Exhibit 2.
[4] 2007 & 2008 W-2 Forms of Aby K. Raju, attached in globo as Exhibit 3.
[5] Feb 25, 2008 Resignation / Change of Status form of Raju Divakaran, SIGP0012394, attached as Exhibit 4.
[6] 2007 & 2008 W-2 Forms of Raju Divakaran, attached in globo as Exhibit 5.
[7] Mar. 3, 2008 Resignation / Change of Status form of Nayappulli Jayachandran, SIGP0018641, attached as Exhibit 6.
[8] 2007 & 2008 W-2 Forms of Nayappulli Jayachandran, attached in globo as Exhibit 7.
[9] Apr. 27, 2007 Resignation / Change of Status form of Biju P. George, SIGP0014876, attached as Exhibit 8.
[10] 2007 W-2 Form of Biju Perumpilly George, attached as Exhibit 9.
[11] Jun 6, 2007 Termination / Change of Status form of Santosh Kumar Rajendran Pillai, SIGP0019703, attached as Exhibit 10.
[12] 2007 W-2 Form of Santosh Kumar Rajendran Pillai, attached as Exhibit 11.

Mr. Raju came to the United States in order to make money, and to make more money than he ever had before.[13]  He knew that he was traveling to the United States on an H-2B visa.[14]  Mr. Raju admits that he was free to leave the housing facilities whenever he wanted to.[15]  He knew that certain co-workers were able to take leave for up to a month.[16]  Mr. Raju took a vacation to Pennsylvania while he was working at Signal.[17]

Mr. Raju admits that no one at Signal used or threatened force against him.[18]  Indeed, the closest to a threat he received was when a general supervisor shouted and used abusive language when a machine was not working.[19]  He admits that no one touched him offensively.[20]  Mr. Raju explained his understanding of the "serious harm" that Signal could cause:  "When I was saying serious harm, I did not mean that they would beat me or kill me like that, but when they were saying serious harm, it is that, 'if you don't finish your work, that you would be sent back to India.'"[21]  Mr. Raju learned that he was free to quit Signal after he arrived, as the situation was different with his prior employment.[22]

Mr. Raju admits that he maintained possession of his passport the entire time he worked at Signal.[23]

ii.   _Raju Divakaran_

---

[13] Sep. 6, 2014 Deposition of Aby K. Raju, p. 191.  Cited Excerpts of the Sep. 6, 2014 Deposition of Mr. Pillai are attached _in globo_ as Exhibit 12.
[14] Sep. 7, 2014 Deposition of Aby K. Raju, pp. 349-50.  Cited Excerpts of the Sep. 7, 2014 Deposition of Mr. Pillai are attached _in globo_ as Exhibit 13.
[15] Sep. 5, 2014 Deposition of Aby K. Raju, p. 70.  Cited Excerpts of the Sep. 5, 2014 Deposition of Mr. Pillai are attached _in globo_ as Exhibit 14.
[16] Sep. 5, 2014 Deposition of Aby K. Raju, pp. 78-79, Ex. 14.
[17] Sep. 6, 2014 Deposition of Aby K. Raju, p. 203, Ex. 12.
[18] Sep. 6, 2014 Deposition of Aby K. Raju, pp. 215-16, Ex. 12.
[19] Sep. 6, 2014 Deposition of Aby K. Raju, pp. 216-17, Ex. 12.
[20] Sep. 5, 2014 Deposition of Aby K. Raju, p. 70, Ex. 14.
[21] Sep. 5, 2014 Deposition of Aby K. Raju, p. 68, Ex. 14.
[22] Sep. 6, 2014 Deposition of Aby K. Raju, p. 231, Ex. 12.
[23] Sep. 6, 2014 Deposition of Aby K. Raju, p. 246, Ex. 12.

Mr. Divakaran admits that he knew he could walk out of the housing facility at any time he wanted to.[24]  In fact, he took a leave of absence and never returned.[25]  No one used or threatened the use of force against Mr. Divakaran.[26]  Though the lawsuit alleges physical harm to Mr. Divakaran, he claims that "I don't remember saying anything anywhere that they had caused physical injuries to me."[27]  He did not read the housing agreement or employment agreement, but he was not forced to sign them.[28]  He knew that he was coming to Signal on an H-2B visa and that there was a chance he would not receive a green card.[29]

Mr. Divakaran maintained possession of his passport the entire time he worked at Signal.[30]

### iii.   *Nayappulli Jayachandran*

Mr. Jayachandran flatly admits that Signal did not force him to work against his will:

> Q. So you're not saying that Signal forced you to work against your will. You're saying that you have heard from others that they believe Signal forced them to work against their will.  Is that correct?
> A. That's correct.[31]

Mr. Jayachandran admits that he was free to leave the housing facility whenever he wanted to.[32]  Indeed, he states that "nobody said not to go anywhere when you are going out."[33]

---

[24] Sep. 9, 2014 Deposition of Raju Divakaran, p. 136.  Citations to the Sep. 9, 2014 Deposition of Mr. Divakaran are attached *in globo* as Exhibit 15.

[25] Feb 25, 2008 Resignation / Change of Status form of Raju Divakaran, SIGP0012394, Ex. 4.

[26] Sep. 10, 2014 Deposition of Raju Divakaran, pp. 201-202.  Cited Excerpts of the Sep. 10, 2014 Deposition of Mr. Divakaran are attached *in globo* as Exhibit 16.

[27] Sep. 10, 2014 Deposition of Raju Divakaran, p. 201-02, Ex. 16.

[28] Sep. 9, 2014 Deposition of Raju Divakaran, p. 65, Ex. 15.

[29] Sep. 11, 2014 Deposition of Raju Divakaran, p. 365, attached as Exhibit 17.

[30] Sep. 10, 2014 Deposition of Raju Divakaran, p. 229, Ex. 16.

[31] Aug. 23, 2014 Deposition of Nayappulli Jayachandran, p. 98. Cited Excerpts of the Aug. 23, 2014 Deposition of Mr. Jayachandran are attached *in globo* as Exhibit 18.

[32] Aug. 23, 2014 Deposition of Nayappulli Jayachandran, p. 68, Ex. 18.

[33] Aug. 23, 2014 Deposition of Nayappulli Jayachandran, pp. 102-03, Ex. 18.

Mr. Jayachandran never suffered any physical injuries while working at Signal.[34]   He took vacations and sick days when he wanted to or needed to.[35]   He always maintained possession of his passport while he was at Signal.[36]

### iv.   *Biju Perumpilly George*

Mr. George knew that he could quit Signal at any time.[37]   Of course, no one at Signal attempted to prevent Mr. George from leaving on the day he quit.[38]   He voluntarily quit Signal after about five months.[39]   He took a leave of absence to visit India and voluntarily returned to Signal.[40]  Mr. George admits that no one used physical force against him.[41]

Mr. George chose to pay the recruiting fees because he believed the investment was worth it, and he knew at the time that he would have to work for Signal for about three years before he could get a green card.[42]   He was part of a group of six people who had pitched in to purchase a Ford Explorer.[43]   He used the vehicle to take vacations in Houston and Dallas.[44]   No one from Signal personally threatened Mr. George with deportation, and Mr. George admits that he never saw any of the workers personally threatened with deportation.[45]  Mr. George admits that Signal only held his passport for a short amount of time and that he otherwise possessed it

---

[34] Aug. 23, 2014 Deposition of Nayappulli Jayachandran, p. 130, Ex. 18.
[35] Aug. 23, 2014 Deposition of Nayappulli Jayachandran, pp. 77-78 & 99-100, Ex. 18.
[36] Aug. 24, 2014 Deposition of Nayappulli Jayachandran, p. 222, attached as Exhibit 19.
[37] Sep. 18, 2014 Deposition of Biju P George, p. 333. Cited Excerpts of the Sep. 18, 2014 Deposition of Mr. George are attached *in globo* as Exhibit 20.
[38] Sep. 18, 2014 Deposition of Biju P George, p. 343, Ex. 20.
[39] Sep. 18, 2014 Deposition of Biju P George, pp. 293-94, Ex. 20.
[40] Sep. 16, 2014 Deposition of Biju P George, p. 74.  Cited Excerpts of the Sep. 16, 2014 Deposition of Mr. George are attached *in globo* as Exhibit 21.
[41] Sep. 16, 2014 Deposition of Biju P George, p. 121, Ex. 21.
[42] Sep. 16, 2014 Deposition of Biju P George, p. 45, Ex. 21.
[43] Sep 17, 2014 Deposition of Biju P George, pp. 299-300, Ex. 20.
[44] Sep. 17, 2014 Deposition of Biju P George, p. 348, Ex. 20.
[45] Sep. 16, 2014 Deposition of Biju P George, pp. 78-79, Ex. 21.

while at Signal.[46]  Indeed, he did not feel coerced even when Mr. Burnett temporarily possessed his passport in India.[47]

   **C.     *Trafficking***

      **i.      *TVPRA not Extraterritorial***

         **a.      *Introduction***

Signal turns now to its substantive arguments, beginning with the argument that partial summary judgment is warranted in accordance with Rule 56(a) under these facts with regard to the First Claim for Relief. This Claim invokes § 1595, the civil remedy for victims of trafficking and related offenses under the Trafficking Victims Protection Reauthorization Act of 2003. ***See*** Doc. #64, ¶ 288.

To support this claim, the Plaintiffs specifically invoke § 1589, forced labor, and § 1590, trafficking with regard to peonage, slavery, involuntary servitude or forced labor. ***See id***., at ¶¶ 286, *et seq.*

Signal is entitled to judgment as a matter of law on the trafficking claim under § 1590. At all times pertinent hereto, § 1590 was not extraterritorial. Yet the Complaint proves overwhelmingly, such as through the RICO Fraud Chart, that the trafficking claim is significantly extraterritorial, factually.[48]

---

[46] Sep. 18, 2014 Deposition of Biju P George, p. 337, Ex. 20.

[47] Sep. 17, 2014 Deposition of Biju P George, pp. 219-20, attached as Exhibit 22.

[48] ***Compare*** Doc. #1, ¶ 294 ("294. Defendant Signal, Recruiter Defendants, and Legal Facilitator Defendants knowingly recruited, transported, harbored, provided, and/or obtained the Plaintiffs so as to obtain their labor and services in violation of laws prohibiting peonage, slavery, involuntary servitude, and forced labor within the meaning of the provisions of the Trafficking Victims Protection Act, 18 U.S.C. § 1590 (TVPA).") to Doc. #1, ¶ 177 ("Plaintiffs entered the United States on H-2B guestworker visas, issued by the U. S. Government on the basis of false statements made by Defendant Signal and the Legal facilitator Defendants, in late 2006 and early 2007 for the purposes of working for Defendant at its Orange, Texas facility."). In addition, in this context, ***Catrett***, explicitly authorizes this use of the pleadings. ***See Catrett***, ***supra***, at 322. However, to the degree that the First Claim for Relief alleges a claim for forced labor that is restricted ***entirely*** to conduct occurring within the United States, that claim is not the target of this motion.

Signal is now pointing out to this Court that under the allegations of the action as overwhelmingly evidenced, for example, by the RICO Fraud Chart, there is an absence of evidence to support the case of the Plaintiffs relative to trafficking. This is true because the Plaintiffs cannot establish factually that the claim is not fatally extraterritorial.

### b.       *Discussion*

In December 2008, Congress passed the William Wilberforce Act to amend the trafficking and related laws in the Criminal Code. Congress added § 1596 to Chapter 77 of Title 18. Section 1596 expressly declared the laws specified in § 1596, including § 1590, extraterritorial. *See* 18 U.S.C. § 1596 (Lexis 2014).[49]

From this amendment, this Court should conclude, as did the Court in *Adhikari*, *infra*, that § 1590 was not previously extraterritorial; nor can this matter be salvaged by arguing that § 1596 is retroactive; it is not. *Adhikari v. Daoud & Partners*, 995 F. Supp.2d 831, 838 (S.D.Tex. 2014) (Ellison, J.) (so holding in case alleging, *inter alia*, TVPRA and civil RICO claims on behalf of foreign nationals recruited abroad by KBR to work on U.S. military bases in Iraq; plaintiffs argued that bases were extension of American soil under Military Extraterritorial Jurisdiction Act).

In the class certification decision, the first court expressly found that the William Wilberforce Act, the 2008 amendments to Chapter 77 of the Criminal Code, was not retroactive as to §§ 1595, 1589 and 1590, respectively. *See David v. Signal Int'l, L.L.C.*, 2012 U.S. Dist. LEXIS 114247, *61 n. 32, *64 n. 33 and *80 n. 38 (E.D.La. Jan. 12. 2012). *See also Velez v.*

---

[49] "§ 1596. Additional jurisdiction in certain trafficking offenses: (a) In general. In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 [18 USCS § 1581, 1583, 1584, 1589, 1590, or 1591] if -- (1) an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); . . ." *Id*.

*Sanchez*, 693 F.3d 308, 325 (2nd Cir. 2012) (implying that Second Circuit would hold that § 1596 is not retroactive because Congress did not declare it retroactive explicitly and because § 1596 is substantive, i.e., language that "increases a party's liability for previously occurring conduct."). This Court should therefore have no difficulty concluding that 18 U.S.C. § 1596 is also not retroactive relative to § 1590's extraterritorial scope.

Returning to the question of extraterritoriality, the Court in ***Adhikari*** said, "the TVPRA would ***not*** have applied extraterritorially prior to the passage of Section 1596. . . . [T]he TVPRA was silent with regards (sic) to extraterritoriality prior to Section 1596. The Supreme Court held that '[w]hen a statute gives no clear indication of an extraterritorial application, it has none.'" ***Adhikari***, ***supra***, at 835, ***citing Kiobel***, ***infra***.

Judge Ellison admitted that he had initially made an error in thinking about the retroactivity of § 1596, stating: "The Court [previously] held that *Kiobel* mandated the dismissal of Plaintiffs' ATS and RICO claims, but did not affect Plaintiffs' TVPRA claim. (Doc. No. 614 at 11-16.) Unlike the ATS or RICO, the TVPR includes express extraterritorial language in Section 1596. Since the Court had previously determined that Section 1596 could be applied retroactively to KBR's actions, the claim was unaffected by *Kiobel's* holding. (Doc. No. 614 at 16.) The Court therefore denied KBR's Motion for Summary Judgment on Plaintiffs' TVPRA claim. Upon further reflection, the Court now determines that this holding was in error." ***Id***.

This reasoning defeats the trafficking portion of the First Claim for Relief. The trafficking claim is unlawfully extraterritorial because the claim "***alleges conduct outside of the United States prior to the enactment of Section 1596***, . . ." ***See Adhikari***, ***supra***, at 840

14

(emphasis added). *See also* Doc. #1, ¶ 188(c) (alluding to recruitment process occurring abroad); ¶¶ 19-35 (each Plaintiff states in Complaint that he was recruited overseas).[50]

To avoid dismissal, in *Adhikari*, plaintiffs urged that their claims were territorial because the plaintiffs were effectively working on American soil. *See id.*, at 837 (argument made under Military Extraterritorial   Jurisdiction Act relative to persons "'while employed by or accompanying the Armed Forces outside the United States.'") (citation omitted). Judge Ellison rejected this "murky" argument. *Id*.

Plaintiffs will oppose this argument fiercely, insisting that this case is territorial because the plaintiffs eventually worked in the United States. This does not solve the problem, however. Implicit in the argument of the Plaintiffs is the concession that factually, the claim is predicated on extraterritorial events, significant events, from a claim standpoint. But for the extraterritorial element, for instance, there would be no claim.

Judge Ellison faced such an argument from plaintiffs in *Adhikari* and rejected it. And the plaintiffs constantly forget, when they make their territoriality argument, that the Court is dealing with a criminal statute. *See*, *e.g.*, *Kiobel v. Royal Dutch Petro. Co.*, -- U.S. --, 133 S. Ct. 1659, 1667-68, 185 L. Ed. 2d 671 (2013);[51] Congressional Research Service, C. Doyle, *The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions*, p. 11 (Jan. 29, 2009) (by ancient custom, "[c]riminal jurisdiction is usually territorial. The law of the place determines what is criminal . . .").

---

[50] Below, Signal will address the RICO implications of this fact.

[51] "Petitioners also point to a 1795 opinion authored by Attorney General William Bradford. *See* Breach of Neutrality, 1 Op. Atty. Gen. 57. In 1794, in the midst of war between France and Great Britain, and notwithstanding the American official policy of neutrality, several U.S. citizens joined a French privateer fleet and attacked and plundered the British colony of Sierra Leone. In response to a protest from the British Ambassador, Attorney General Bradford responded as follows: 'So far . . . as the transactions complained of *originated or took place in* a foreign country, they are not within the cognizance of our courts; nor can the actors be legally prosecuted or punished for them by the United States.'" *Id*. (emphasis added).

With regard to extraterritoriality, it is pivotal that the plaintiffs have no intention of pursuing their trafficking claim without referring *extensively* to events that occurred outside of the United States. After reading *Adhikari* and other authority, *see*, *e.g.*, *United States v. Kuok*, 671 F.3d 931, 940 (9th Cir. 2012), discussed below, this Court should find it dispositive that the trafficking claim indisputably depends on conduct outside of the United States. On this point, Jude Ellison wrote:

> Bound by *Morrison* and *Kiobel*, this Court holds that the TVPRA would not have been applied extraterritorially prior to the passage of Section 1596. The conferral of extraterritorial jurisdiction in Section 1596 wrought a substantive change in the law, and cannot be applied retroactively. Plaintiffs' TVPRA claim, *which alleges conduct outside of the United States prior to the enactment of Section 1596*, must be dismissed. KBR's Supplemental Motion for Summary Judgment is hereby GRANTED as to the TVPRA claim.

*See Adhikari*, *supra*, at 840 (emphasis added).

Plaintiffs will effectively assert, as the plaintiffs in *Adhikari* did, that § 1596 was actually unnecessary. They will argue that § 1590 was already extraterritorial, or already sufficiently extraterritorial, to address this transnational claim, irrespective of § 1596. *Cf*. *Adhikari*, *supra*, at 836 ("Plaintiffs point to the 'Purposes and Findings' of the TVPRA to argue that 'Congress was not legislating with inherently domestic concerns in mind.'").

Judge Ellison concluded that this argument lacked merit. "According to the presumption against extraterritoriality," he said, "the Court must assume that Congress intended Sections 1589 and 1590 to be *purely* national solutions." *See id*., at 836-37 (emphasis added).

The opinion of the Ninth Circuit in *United States v. Kuok*, *supra*, further illustrates why the imminent argument of the plaintiffs must be rejected. In *Kuok*, a criminal case, "[t]he government argue[d] that Kuok's case, because it involve[d] conduct that occurred in part in the

United States, d[id] not invoke extraterritorial jurisdiction at all, arguing that the issue of 'extraterritorial jurisdiction' arises only if no part of the offense occurred in the United States." *See Kuok*, *supra*, at 940. In response, the Ninth Circuit remarked: "The government's argument would render subsection (f) a nullity. If the government were correct that subsection (f) can only be invoked in cases that involve conduct taking place entirely outside of the United States, *the second part of subsection (f)(1) would be meaningless*, and proscribe no possible set of conduct." *Id*. (emphasis added).

The Court is not permitted to attribute to Congress an intent to legislate meaninglessly. To the contrary, Congress is presumed to know the law. It therefore knew about the law on extraterritoriality when it enacted § 1596. *See Bowen v. Massachusetts*, 487 U.S. 879, 896, 108 S. Ct. 2722, 101 L. Ed. 2d 749 (1988) ("Congress understands the state of existing law when it legislates, *see*, *e. g*., *Cannon v. University of Chicago*, 441 U.S. 677, 696-697 (1979)."); *United States v. Des Moines Navigation & Railway Co*., 142 U.S. 510, 544, 12 S. Ct. 308, 35 L. Ed. 1099 (1891) ("It is conclusively presumed that a legislature acts with full knowledge, and in good faith.").

Section 1596 plainly addresses Congress' intention more clearly with regard to extraterritoriality relative to Chapter 77 than Congress did before. Under the rule of lenity and other rules relating to criminal statutes discussed below in more detail, this Court is required to assume, as did Judge Ellison, that prior to § 1596, § 1590 was "purely" domestic. *Cf. Adhikari*, *supra*, at 835 (in *Kiobel*, "[t]he Supreme Court held that 'w]hen a statute gives no *clear* indication of an extraterritorial application, it has none.'"). This settles the matter. Section 1590 was not extraterritorial when the facts in this case occurred.

17

In summary, partial summary judgment should be rendered in Signal's favor relative to trafficking with respect to the First Claim for Relief because at all times pertinent hereto, § 1590 did not "clearly" indicate that the statute was extraterritorial in scope and the allegations of the Complaint make it abundantly clear that the claim is extraterritorial. *See Adhikari*, *supra*, at 835 (quoting *Kiobel*).

### ii.   The First Claim for Relief is Partially Impermissibly Retroactive

Next, Signal is entitled to partial summary judgment relative to the First Claim for Relief on account of the claim's overbreadth. *See* Doc. #1, ¶ 181 (invoking § 1595 as basis for First Claim for Relief). Section 1595 did not authorize a private right of action for violations of §§ 1592 or 1594 prior to the effective date of the Wilberforce Act. *See* Complaint, at ¶ 295(c)-(d) (referring in First Claim for Relief based on § 1595 to §§ 1592(a) (unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor) and 1594(a) (general provisions proscribing attempts and conspiracy).

The Victims of Trafficking and Violence Protection Act of 2000 did not contain a civil remedy. Section 1595, the civil remedy for some Chapter 77 offenses, was added in 2003 by the Trafficking Victims Protection Reauthorization Act of 2003, 117 Stat. 2875. When § 1595 was originally enacted, however, it was confined to three criminal offenses: forced labor, trafficking and trafficking in relation to sex crime. *See* 18 U.S.C. § 1595 (Lexis 2014), History, 117 Stat. 2878.[52] The William Wilberforce Act then amended § 1595 to encompass *every* statute in Chapter 77, a substantive change.[53]

---

[52] As originally enacted, the civil remedy read: "Sec. 1595. Civil remedy (a) An individual who is a victim of *a violation of section 1589, 1590, or 1591 of this chapter* may bring a civil action against the perpetrator in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. (b)(1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the

The non-retroactivity of the Wilberforce Act has already been covered. *See David*, *supra*, at *61 n. 32, *64 n. 33 and *80 n. 38. *See also Velez*, *supra*; *Adhikari*, *supra*. Parts of the First Claim for Relief are thus defective. *See* Doc. #1, ¶ 18 ("Plaintiffs were former putative class members in . . . *David* . . ."); *David*, No. 08-1220 (E.D.La.), Doc. #1 (showing action filed 3/7/08).[54]

Space in this brief is limited. Signal will not relitigate the retroactivity dispute the parties litigated in 2011.[55] Therefore, *pro tanto*, as to criminal offenses other than forced labor and trafficking – sex crime is not, in this action, alleged -- this Court should dismiss the First Claim for Relief via partial summary judgment.

### iii.   *No Evidence of Trafficking*

To close out the section of this brief concerning trafficking, Signal presents a "no evidence" argument; Signal now "point[s] out" to this Court "that there is an absence of evidence

---

same occurrence in which the claimant is the victim. (2) In this subsection, a 'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court." *Id*.

[53] *See* 18 U.S.C. § 1595 (Lexis 2014) ("§ 1595. Civil remedy (a) An individual who is a victim *of a violation of this chapter* [18 USCS §§ 1581 et seq.] may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [18 USCS §§ 1581 et seq.]) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees. (b) (1) Any civil action filed under this section shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim. (2) In this subsection, a 'criminal action' includes investigation and prosecution and is pending until final adjudication in the trial court. (c) No action may be maintained under this section unless it is commenced not later than 10 years after the cause of action arose.") (emphasis added).

[54] *See Landgraf v. USI Film Products*, 511 U.S. 244, 266, 114 S. Ct. 1483, 1497, 128 L. Ed.2d 229 (1994) ("The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation.") (footnote discussing U. S. Const. Art. I omitted); *Rogers v. Tennessee*, 532 U.S. 451, 121 S. Ct. 1693, 149 L. Ed.2d 697 (2001) (discussing differences between limitations imposed on lawmaker by *ex post facto* clause and retroactivity analysis applicable to judicial decisions under due process clause, recognizing that limitations on lawmaker under *ex post facto* clause are stricter than those on common law court).

[55] *See David*, *supra*, at *61 n. 32 (2008 amendments not retroactive to § 1595); *see id*., at *64 n. 33 (nor retroactive concerning § 1589); and *see id*., at *80 n. 38 (nor retroactive concerning § 1590). *Cf. Ditullio v. Boehm*, 662 F.3d 1091 (9th Cir. 2011) (deciding that § 1595 did not apply retroactively to encompass conduct that occurred prior to the statute's original creation in 2003 despite plaintiff's continuing violation argument).

to support" the case of the Plaintiffs with regard to the scienter required by § 1590 at all times pertinent to this action. *See Catrett*, *supra*, at 325.

Under the Victims of Trafficking and Violence Protection Act of 2000, 114 Stat. 1464 – the 2003 Act did not alter § 1590 and though the Wilberforce Act rewrote § 1590, this Court has already decided that those alterations are not retroactive – § 1590 read:

> Whoever **knowingly** recruits, harbors, transports, provides, or obtains by any means, any person *for* labor or services in violation of this chapter shall be fined under this title or imprisoned not more than 20 years, or both. If death results from the violation of this section, or if the violation includes kidnapping or an attempt to kidnap, aggravated sexual abuse, or the attempt to commit aggravated sexual abuse, or an attempt to kill, the defendant shall be fined under this title or imprisoned for any term of years or life, or both.

*See* 114 Stat. 1464 (emphasis added).

In simple terms, these plaintiffs have no evidence with which to prove, and they cannot prove, that they were trafficked by Signal. Section 1590 by its terms requires proof that Signal recruited the plaintiffs abroad and transported them to the United States "knowing," *ab initio*, that they were recruited and transported "*for*" the purposes of unlawfully obtained labor. The *scienter* these Plaintiffs have no evidence to prove is that Signal always subjectively intended to convert the recruited individuals into involuntary, slave-like, forced laborers, once they arrived in the United States, seemingly lawfully, on the basis of H-2B visas. Factually, Plaintiffs have marshaled no evidence relative to the required *scienter*. This entire claim turns, instead, on the contention that the *scienter* the statute requires may be inferred as to Signal. This motion challenges that assertion.

### a.     Scienter

20

Beginning with what constitutes proof of *scienter* with regard to trafficking, § 1590 explicitly turns on a knowledge standard. The specific intent the statutes demands is proof of recruiting and obtaining and transporting "for" the purpose, generally speaking, of subsequent theft of labor. This structure proves conclusively, logically, that § 1590 requires proof of premeditation.

Generally, "'[t]he knowledge requisite to knowing violation of a statute is factual knowledge as distinguished from knowledge of the law.'" ***United States v. Kung-Shou Ho***, 311 F.3d 589, 605 (5th Cir. 2002) (prosecution for violation of the Clean Air Act with respect to asbestos) (footnote omitted). In the ***Bryan*** opinion on which the Fifth Circuit relied in ***Ho***, Justice Stevens wrote that "'knowingly' does not ***necessarily*** have any reference to a culpable state of mind or to knowledge of the law." ***See Bryan v. United States***, 524 U.S. 184, 192, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998). Here, however, the structure of § 1590 unquestionably requires proof of the specific intent associated with premeditated crime. The specific *scienter* required is proof of the intent to traffic for the purpose of subsequently purloining the labor of the recruits. Signal's position, stated as emphatically as Signal can, is that § 1590 required, requires, proof of a quite specific intent, which is premeditation and forethought: what is required is proof that the recruits are being recruited for an unlawful form of labor, labor acquired through threats, for example, of serious harm.

A leading if not seminal United States Supreme Court opinion on the issue of specific intent in the sense Signal means is ***Morissette***,[56] which was the prosecution of a fruit peddler for

---

[56] ***See Morissette v. United States***, 342 U.S. 246, 250-51, 96 L. Ed. 288, 72 S. Ct. 240 (1952) ("The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. (Footnote omitted). A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I

conversion, an opinion Justice Stevens characterized in ***Bryan*** as an exegesis on the "translation of the terms *mens rea* and *actus reus . . .*" ***See Bryan***, ***supra***, 524 U.S. at 193 n. 16, referring to ***Morissette***, ***supra***, at 251.

Morissette, a fruit peddler, hunted property he did not know was used by the military as a firing range. Morissette encountered, on the property, spent shell casings. Assuming them abandoned, he scrounged them up and sold them. When the authorities started investigating Morissette voluntarily stepped forward. He proved naïve. He was charged with the crime of conversion. "Morissette was convicted and sentenced to imprisonment for two months or to pay a fine of $ 200. The Court of Appeals affirmed, one judge dissenting." ***See id***., at 248 (footnote omitted).

The ***Morissette*** Court remarked: "This would have remained a profoundly insignificant case to all except its immediate parties had it not been so tried and submitted to the jury as to raise questions both fundamental and far-reaching in federal criminal law, for which reason we granted certiorari." ***See id***., at 247 (footnote omitted).

The case ascended to the Supreme Court because the appellate court construed the statute as "creat[ing] several separate and distinct offenses, one being knowing conversion of government property. ***The court ruled that this particular offense requires no element of criminal intent***. This conclusion was thought to be required by the failure of Congress to express such a requisite and this Court's decisions . . ." ***See id***., at 249-50 (citations omitted).

---

didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. (Footnote omitted). Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.' (Footnote omitted). Common-law commentators of the Nineteenth Century early pronounced the same principle, (footnote omitted) although a few exceptions not relevant to our present problem came to be recognized.'" (Footnote omitted).

The Supreme Court reversed. "We think presumptive intent has no place," said the Court, "in this case. . . . [T]his presumption . . . conflict[ed] with the overriding presumption of innocence with which the law endows the accused and which extends to every element of the crime. . . . Even congressional power to facilitate convictions by substituting presumptions for proof is not without limit." *See id*., at 275 (footnote omitted).

*Morissette* continued: "[T]he central thought that wrongdoing must be conscious to be criminal is emphasized by the variety, disparity and confusion of the[] definitions of the requisite but elusive mental element. . . .   [C]ourts of various jurisdictions, . . . for the purposes of different offenses, have devised working formulae, if not scientific ones, for the instruction of juries around such terms as 'felonious intent,' 'criminal intent,' 'malice aforethought,' 'guilty knowledge,' 'fraudulent intent,' 'wilfulness,' '*scienter*,' to denote guilty knowledge, or '*mens rea*,' to signify an evil purpose or mental culpability. By use or combination of these various tokens, they have sought to protect those who were not blameworthy in mind from conviction of infamous common-law crimes." *See id*., at 251-52.

Eventually, as to the statute's requirement that conversion be knowing, Justice Jackson wrote, *see id*., at 270-71: "He must have had knowledge of the facts, though not necessarily the law, that made the taking a conversion. ***In the case before us, whether the mental element that Congress required be spoken of as knowledge or as intent, would not seem to alter its bearing on guilt***. For it is not apparent how Morissette could have knowingly or intentionally converted property that he did not know could be converted, as would be the case if it was in fact abandoned or if he truly believed it to be abandoned and unwanted property."

Turning to § 1590 in light of these authorities, "the mental element that Congress required . . . as knowledge" was the intent to recruit and obtain and transport the recruits "for"

the purpose of, with the premeditated intention to, transform the individuals into involuntary servants and forced laborers. And this is the *scienter* the Plaintiffs cannot prove sufficiently to withstand summary judgment.[57]

### b.   The Undisputed, Material Evidence

In the language of ***Matsushita v. Zenith***, to withstand summary judgment, Plaintiffs must show that "the issue of fact," which is trafficking at this juncture, is "'genuine.'" ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.***, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). In this case, with regard to trafficking, it is not. Furthermore, and this is the language for which ***Matsushita*** is most celebrated, the theory of this case with regard to the crime of trafficking is highly implausible, too implausible to withstand this motion.

With regard to Signal, "the absence of any plausible motive to engage in the conduct charged," which is entering a conspiracy to engage with others in the crime of trafficking relative to H-2B workers, who are by definition individuals recruited abroad with the consent of Congress as temporary labor, "is highly relevant to whether a 'genuine issue for trial' exists within the meaning of Rule 56[]. Lack of motive bears on the range of permissible conclusions that might be drawn from ambiguous evidence: if [Signal] had no rational economic motive to conspire, and if [Signal's] conduct is consistent with other, equally plausible explanations, the conduct" of going abroad to recruit temporary labor "does not give rise to an inference of conspiracy." ***See Matsushita***, *supra*, at 596-97.

---

[57] ***Cf*. *Velez v. Sanchez*, *supra*, at 321 (2nd Cir. 2012) (rejecting claim under, *inter alia*, Alien Tort Statute, Court observed that under international norms, pure economic necessity is not alone enough to imply forced labor, circumstances must reveal as well "'severe violation of human rights ***and restriction of human freedom***." In no way does this record provide these attributes, factually, with regard to Signal. This case os accordingly ripe for summary judgment as to trafficking.

"In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *See id.*, at 586-87. With regard to trafficking, there is no such issue for trial because the Plaintiffs have testified that they were free to leave and were well compensated for their labor, undisputed facts negating the inference that Signal consciously and knowingly transported these individuals to the United States in order to convert them into slave labor.

In short, the requisite inferences are not justifiable, nor "plausible," and not genuinely in dispute, and partial summary judgment should therefore be rendered in Signal's favor on the charge of trafficking on the ground that the relevant facts are not in "genuine" dispute and Signal is therefore entitled to judgment as a matter of law, for without proof of the necessary *scienter*, the claim of trafficking falls by virtue of the fact that the plaintiffs bear the burden of proving such *scienter* to succeed under § 1595. The freedom the plaintiffs exercised during their time at Signal is irreconcilable with the inference that these individuals were trafficked; just as the trafficking allegation is irreconcilable with the undisputed fact that these individuals arrived in the United States, not in some clandestine or dark way but openly, on the basis of lawful, at least seemingly, H-2B visas, visas inherently designed to authorize the visa holder to provide labor in return for wages, which were in this case, there is no dispute, real wages.

Thus, for Signal, partial summary judgment is warranted. *See Anderson*, *infra*, at 255.

The seminal, legal prism for considering the facts discussed before, relative to summary judgment, is *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 244, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). *Anderson*, which was a defamation case raising a question as to the role of the *Sullivan* standard in summary judgment analysis, *id*., famously stressed that the summary

25

judgment "inquiry . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *See id*., at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the nonmovant is to be believed, and all *justifiable* inferences are to be drawn in his favor. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial." *See id*., at 255 (emphasis added).

But nevertheless, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' . . . Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Celotex Corp. v. Catrett*, *supra*, at 327.

Turning to facts that are not in "genuine" dispute and that do *not* justify an inference of the required *scienter*, *see Anderson*, *supra*; facts that are not a plausible basis for inferring the existence of a trafficking conspiracy into which Signal entered, *see Matsushita*, *supra*: the facts discussed before prove clearly and convincingly that the Plaintiffs had considerable freedom of

movement and were free to leave Signal, and knew this to be so. They felt, they allege, trapped by debt incurred in India during the recruiting process, but they concede receiving real wages – perhaps they feel they should have received more, but they still received real wages. *Cf*. *David*, *supra*, at *65-*76, discussing *United States v. Kozminski*, 487 U.S. 931, 108 S. Ct. 2751, 101 L. Ed. 2d 788 (1988) (those free, regardless of difficulty, to leave place of employment not involved in involuntary servitude).

The wage and freedom of movement facts negate with regard to trafficking, any inference of the requisite intent, in Signal's case. The undisputed facts leave no room for a "justifiable" inference that Signal premeditated forced or coerced labor. *Cf*. *Matsushita*, *supra*. Summary judgment should be rendered accordingly.

### c. *Financial Coercion*

Momentarily, Signal will discuss its contention that its constitutional rights under the *ex post facto* clause would be violated by this Court's acceptance of the contention that forced labor and financial harm are, in this case, linked. *See Landgraf*, *supra*. First, however, some context is in order.

The context is Signal's expectation that the Plaintiffs will soon argue, to persuade the Court that their trafficking claim is, in fact, triable, that Signal knowingly engaged in a scheme to plunge the plaintiffs, in India, into debt bondage, bondage for trafficking purposes. The argument posits that Signal plunged the Plaintiffs into debt bondage to facilitate a theft of labor from them when they arrived in the United States. The theory is that debt coerced a guest worker into laboring against his will. Signal expects the Plaintiffs to argue, on the basis of this theory, that the trafficking claim is plainly triable.

Needless to say, however, there is no direct evidence of this alleged *scienter* and scheme with regard to Signal; there is no confession. The necessary *scienter* and scheme is, once again, in short, to be inferred from evidence the Plaintiffs contend they have marshaled. Their case, however, is entirely circumstantial.

Once again, however, on the basis of the conjunction of **Anderson**, **Catrett** and **Matsushita**, the conclusions this Court should draw relative to partial summary judgment are the converse of what the Plaintiffs pray.

The criminal, trafficking claim – it should never be forgotten that the claim is one concerning criminal misconduct, a matter terribly relevant to **Anderson's** substance – is implausible pursuant to **Matsushita** and insufficient under **Catrett**, given the absence of "specific facts," in sufficient either quantity or quality, **see Catrett**, **supra**, at 324, to satisfy -- through § 1595 -- § 1590 -- given **Anderson's** test concerning the "substantive evidentiary standard of proof." **See Anderson**, **supra**, at 252.

In this analysis, there is a critical, further ingredient, one implicating Signal's constitutional right not to be injured by a violation of the Constitution's *ex post facto* clause. **See Landgraf**, **supra**, at 266-67 (*Ex Post Facto* Clause ensures individuals have fair warning about effect of criminal statutes and "'restricts governmental power by restraining arbitrary and potentially vindictive legislation.'") (citations omitted).

The critical ingredient is that § 1589 did not encompass financial harm until the Wilberforce Act. **See** 18 U.S.C. § 1589(c)(2) (Lexis 2014), History.[58] Though the statute referred

---

[58] It should be recalled, as Signal demonstrated earlier, that **David** expressly decided that the 2008 amendments to § 1589 are not retroactive to this action.

to the threat of "serious harm" at the time of initial enactment, not until late in 2008 did the concept of forced labor equate serious harm to financial harm. *Id*.

Therefore, subjecting Signal to a forced labor theory based on financial harm represents an unconstitutional, retroactive application of the Wilberforce Act. *See id.*, at History, 114 Stat. 1486. Signal objects to this effect on constitutional grounds. *See Landgraf*, *supra*.

Plaintiffs are likely to urge that Signal presents a distinction without a difference. They will contend that psychological coercion embraces financial coercion whether or not § 1589 referred to financial harm explicitly prior to Wilberforce. *Cf*. *United States v. Nnaji*, 447 Fed. Appx. 558, 559 (5th Cir. 2011) (holding that under original version of § 1589, "[s]erious harm can include psychological coercion.").

There are several flaws in this argument. The first flaw is one Signal has already discussed, namely, attributing to Congress an intention to legislate unnecessarily. As Signal demonstrated earlier, courts are forbidden to presume that Congress acted for no reason. *See Bowen*, *supra*, at 896 ("Congress understands the state of existing law when it legislates . . ."); *Des Moines Navigation & Railway Co*., *supra*, 142 U.S. at 544 ("It is conclusively presumed that a legislature acts with full knowledge, and in good faith.").

At a minimum, under the authorities discussed above, the Court must assume that Congress amended § 1589 with regard to financial harm to cure an ambiguity. But this insight

reveals that doing what the Plaintiffs want violates the plain language rule,[59] violates the rule of lenity,[60] and violates the doctrine of constitutional avoidance.[61]

Under *Anderson*, this jury cannot be charged, consistently with Signal's constitutional rights, to factor financial harm into their "serious harm" calculus. This Court should therefore, on partial summary judgment, decide that a trafficking claim in this case cannot be tried on the basis of a financial harm strategy and dismiss the claim. *See Anderson*, *supra*, at 252.

The Court should disagree with another District Court opinion on this issue, one that in no way binds this Court, namely, *Tanedo v. E. Baton Rouge Parish School Bd.*, 2011 U.S. Dist. LEXIS 152329, *7-*14 (C.D.Cal. Dec. 12, 2011).

This case decided this issue as the plaintiffs would want it decided. *Tanedo* concluded that serious harm coercion can be predicated on financial harm under the original version of § 1589. *Id*. However, Signal contends that this outcome was the product of the District Judge's application of a Ninth Circuit opinion, *Dann*, by which the Judge felt bound. *Id*. Signal urges this Court to pay more attention, for example, to *Velez*, *supra*, at 321, which stressed that under international norms, "'situations of pure economic necessity'" are not enough to imply forced labor. (Citation omitted).

---

[59] Interpretation of § 1589 is an exercise in statutory interpretation, which must begin with the language of the statute itself. *See* 18 U.S.C. § 1589 (West Supp. 2006); *Bourlesan v. Aramco*, 857 F.2d 1014, 1018-1019 (5th Cir. 1988), *adopted on en banc rehearing*, *cert*. *granted*, *aff'd* (statutory language ordinarily regarded as conclusive unless ambiguous); *United States v. Phillips*, 543 F.3d 1197, 1206 (10th Cir. 2008) (statutory language must be consulted first).

[60] *See U.S. v. Kozminski*, 487 U.S. 931, 951, 108 S. Ct. 2751, 2763, 101 L. Ed.2d 788 (1988) (involuntary servitude claim requires proof of compulsion of services by use or threatened use of physical or legal coercion) (". . . we adhere to the time-honored interpretive guideline that uncertainty concerning the ambit of criminal statutes should be construed in favor of *lenity*.").

[61] This is a reference to the doctrine that courts must avoid interpreting a statute in a way that highlights problems of unconstitutionality, such as with regard to "as applied" vagueness. *See Clark v. Rozos*, 543 U.S. 371, 381, 125 S. Ct. 716, 724, 160 L. Ed.2d 734 (2005); *Kozminski*, *supra*, at 952 ("The purposes underlying the rule of lenity -- to promote fair notice to those subject to the criminal laws, to minimize the risk of selective or arbitrary enforcement, and to maintain the proper balance between Congress, prosecutors, and courts -- are certainly served by its application in this case."). Outside of the First Amendment, vagueness challenges are "as applied."

In summary, even if this Court concludes that the trafficking claim in this matter is territorial, this Court should still dismiss the claim for trafficking on the basis of *Catrett*, *Anderson* and *Matsushita*, reasoning that there is no evidence to support the claim that Signal formed the *scienter* required for trafficking. The existing evidence is to the contrary. No rational jury could conclude that Signal trafficked under the undisputed facts. Summary judgment should therefore be granted as to the trafficking claim. *See Matsushita*, *supra*.

### D.    The Civil RICO claim

#### i.    The Structural Defect

As stated before, under *Crowe v. Henry*, *supra*, at 205-06 (5th Cir. 1995) and *Crowe's* precursors and progeny, this matter is now ripe for the dismissal of all civil RICO claims in Doc. #1 premised on § 1962(c). *See* Doc. #1, ¶¶ 201 (invoking 1962(c) with regard to RICO Enterprise I) and 208 (invoking 1962(c) with regard to RICO Enterprise II). *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 425 (5th Cir. 1990).

The Fifth Circuit has explained why the civil RICO claims in Doc. #1 premised on § 1962(c) claim are invalid. "Because of the structure of [RICO], th[e] Court has held that the RICO person [i.e., usually, the defendant] and the RICO enterprise must be distinct." *See Crowe*, *supra*, at 205. "[A] RICO person cannot employ or associate with [it]self under this subsection." *See id.*, at 206. Crucially, the Complaint alleges both that Signal is a RICO "person," *see* Doc. #1, ¶ 195, and that Signal was a "member" of all RICO Enterprises alleged in the Second Claim for Relief, the civil RICO claim. *See* Doc. #1, ¶¶ 198, 201, 202, 203, 205, 206, 208, 209 and 210. *Cf*. *Crowe*, *supra*, at 206 ("In this case, Crowe has alleged that Henry is both the RICO person and *a member* of the Crowe/Henry association-in-fact. This Court has found, though, that a RICO person cannot employ or associate with himself under this subsection.") (Emphasis

31

added). *See also Landry*, *supra*, 901 F.2d at 425 (RICO person ordinarily synonymous with "defendant").

Therefore, as a matter of law, the § 1962(c) theory is structurally defective and invalid as a matter of law. *See*, *e.g.*, *Landry*, *supra*, 901 F.2d at 425 ("Under this theory, [Signal] cannot be a RICO person – or defendant – for the § 1962(c) violation because in such a situation, 'the 'person' and the 'enterprise' must be distinct.'"). (Citation omitted). Partial summary judgment should be rendered accordingly.

### ii.     RICO is not Extraterritorial

Next, as indicated before, the RICO statute is not extraterritorial. *See Adhikari v. Daoud & Partners*, No. 09-1237, Doc. #617, p. 12-13 (S.D.Tex. Aug. 23, 2013) (RICO not extraterritorial, citing cases) (attached as Exhibit 1). Signal will not belabor this discussion.

It is impractical for Signal to quote all of the paragraphs of the Complaint and of the RICO Fraud Chart that show clearly and convincingly that the civil RICO claims of the plaintiffs based on predicate acts relating to mail and wire fraud, unlawful document-related practices under § 1592 and trafficking are impermissibly extraterritorial, as evidenced, for example, by the allegations of the Complaint in which the Plaintiffs explicitly state that they were recruited abroad, i.e., Doc. #1, ¶¶ 19-35.

However, the allegations of ¶¶ 1-6 of Doc. #1 plainly reveal the extraterritorial character of much of the case, and the fact is that this Court has just effectively written, Signal contends, that it recognizes that this part of the case, the fraud and trafficking part, is extraterritorial.

Such is the thrust of the following portion of the Court's October 15, 2014, Memorandum Opinion in this case (Doc. #149) granting in part and denying in part, Signal's motion to compel.

On page three (3) of Doc. #149, the Court writes (citations omitted): "The Plaintiffs assert that Signal, along with several other defendants, **lured them into this country** with **the false promise** that if they adequately performed work for Signal, that this could be a pathway to 'legal and permanent work-based immigration to the United States . . . .' Based on these allegedly false promises and misleading statements, the Plaintiffs paid significant sums of money to obtain work papers and visas to come to the United States."

To Signal, this passage is tantamount to a statement by the Court that the fraud and trafficking claims in the civil RICO case, i.e., the Second Claim for Relief in Doc. #1, are extraterritorial, or significantly extraterritorial, and that the pivotal question is thus one of law alone, namely, one of Congressional intent with regard to the territorial scope of § 1964(c). **See** Exhibit 1.

The Southern District of Texas decided this issue in Signal's favor and Signal urges this Court to do the same **with regard to the qualifying predicate acts**, i.e., mail and wire fraud, unlawful document-related practices under § 1592 and trafficking. **Id**. These are the claims that are extraterritorial. For example, § 1592 is not extraterritorial.[62] **See** Doc. #64, ¶¶ 202(e) & 209(e) (invoking § 1592 as predicate act). Since the underlying offenses were not extraterritorial prior to December 2008 for the reasons stated in this brief, it follows that this associated, § 1592 offense is likewise not extraterritorial.

---

[62] At all times pertinent hereto, § 1592 stated: "(a) Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person -- (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a); (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000, shall be fined under this title or imprisoned . . . (b) Subsection (a) does not apply to the conduct of a person who is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000, if that conduct is caused by, or incident to, that trafficking." **See** 18 U.S.C. § 1592 (Lexis 2014), History, 114 Stat. 1464, i.e., TVPA.

Signal has previously shown that the predicate act based on trafficking is invalid based on its unlawful extraterritoriality. *See* Doc. #1, ¶¶ 202(d) & 209(d) (alleging trafficking predicate action with regard to Second Claim for Relief).

For the reasons discussed both before and here, the civil RICO claim should be dismissed *pro tanto*, based on the theory's often unlawful, extraterritorial nature with regard to (1) mail and wire fraud; (2) trafficking and (3) unlawful document-related practices under § 1592. *See* Exhibit 23. The Court recognizes that much of the case is extraterritorial. *See* Doc. #149, p. 3. To date, the Court has had neither the need nor the occasion, though the need has now arisen squarely, to address the purely legal question of whether the Chapter 77 offenses on which this action depends, and § 1964(c), are extraterritorial. Judge Allison's analysis is correct and should be emulated.

### iii.    *Kozminski*

#### a.    *Introduction*

Signal also seeks partial summary judgment on the claims alleging violations of 18 U.S.C. §§ 1583, 1584 and implicitly, the Thirteenth Amendment. *See* Doc. #1 (civil RICO), ¶¶ 211-213.

Plaintiffs also allege involuntary servitude and slavery under §§ 1583 & 1584 in connection with their First Claim for Relief (TVPRA). *See* Doc. #1, ¶ 188.

Plaintiffs, however, with regard to these claims, are unable to satisfy their evidentiary burden relative to *United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L. Ed. 2d 788 (1988).  *See also Anderson*, *supra*. Accordingly, these claims should be dismissed via partial summary judgment in both contexts.

Again, the Statement of Undisputed Facts above demonstrates that the Plaintiffs recognized that they could have left Signal physically if they had chosen to. Under *Kozminski*, *supra*, the claims of slavery and involuntary servitude are therefore insupportable. *See Kozminski*, *supra*, at 950 ("In short, we agree with Judge Friendly's observation that '[t]he most ardent believer in civil rights legislation might not think that cause would be advanced by permitting the awful machinery of the criminal law to be brought into play whenever an employee asserts that his will to quit has been subdued by a threat which seriously affects his future welfare but as to which he still has a choice, however painful.' *United States v. Schackney*, 333 F. 2d., at 487.").

### b.      Discussion

Plaintiffs and their representatives have put forth different theories of involuntary servitude but none of them satisfy the definition of involuntary servitude discussed by the Supreme Court in *Kozminski*. Plaintiffs insist that the third-party debt incurred by H-2B workers created conditions of involuntary servitude that rendered them vulnerable to exploitation.[63]

*Kozminski* negated this formulation of coercion. *Kozminski* held that an individual who can walk away from the allegedly involuntary condition is not a victim of the aforementioned offenses, "however painful" walking away would be.

As indicated before, for example, Plaintiffs attack the guest worker framework by arguing that "[t]he H-2 guestworker system also can be viewed as a modern-day system of

---

[63] *See* Transcripts of Dan Rather Reports, Episode 637, p. 4, attached hereto as Exhibit 23.

indentured servitude."[64] Plaintiffs and their representatives have relied on their involuntary servitude allegations to mount an attack on the H-2B concept.[65]

Signal is confident the Court agrees that it is not the province of this Court to judge the wisdom of Congress' guestworker policy. Signal will not, in this document, debate the wisdom of foreign guestworkers. Congress has decided that question as a matter of public policy.

Signal is solely focused on dismissing, by partial summary judgment, plaintiffs who cannot satisfy their burden of production with regard to *Kozminski* to withstand summary judgment. It is undisputed that the plaintiffs were free to leave Signal. Obviously, the Plaintiffs testify that it would have been exceedingly difficult for them to leave Signal for financial reasons, but *Kozminski*, which controls the civil RICO claims predicated on §§ 1583 and 1584, has decided this issue against the Plaintiffs. *See Kozminski*, *supra*, at 950. The civil RICO claims predicated on involuntary servitude and slavery must accordingly be dismissed.

Furthermore, where a guest worker is authorized to work in the United States only for one employer under an H-2B visa, "threats of deportation do not constitute holding an employee in involuntary servitude under 18 U.S.C. § 1584." *Baiju v. United States DOL*, 2014 U.S. Dist. LEXIS 12372, *60-61 (ED NY 1/31/14), *citing Shackney* and *Zavala v. Wal Mart Stores, Inc.*, 691 F.3d 527, 540-41 (3d Cir. 2012).

---

[64] *Close to Slavery: Guestworker Programs in the United States*, Southern Poverty Law Center, p. 2, *available at* www.splc.org.

[65] *See, e.g.*, Joint Submission of New Orleans Workers' Center for Racial Justice and AFL-CIO in Response to U.S. Dep't of State Request for Information for the 2010 Trafficking in Persons Report, pp. 1-2 & 7-9 (arguing that the H2-B system creates a legalized system and structure for employers to exploit their workers and citing the allegations of involuntary servitude in *David v. Signal*), *available at* http://www.ituc-csi.org/afl-cio-submits-comments-to-the?lang=en; May 17, 2011 National Guestworker Alliance Comments on Proposed DOL Rulemaking, pp. 3-5 (criticizing H-2B regulatory scheme and citing *David v. Signal*), *available at* http://www.guestworkeralliance.org/wp-content/uploads/2011/05/NGA-Comments-H-2B-NPRM-5.17.2011.pdf.

*Shackney* reasoned: "we see no basis for concluding that because [§ 1584] can be satisfied by a credible threat of imprisonment, it should also be considered satisfied by a threat to have the employee sent back to the country of his origin, at least absent circumstances which would make such deportation equivalent to imprisonment or worse." *See id*., at 486. Thus, when an at-will H-2B employee engages in conduct warranting, potentially, termination, a warning that deportation might ensue is not equivalent to "legal coercion." *See United States v. Harris,* 701 F.2d 1095, 1100 (4th Cir. 1983) ("It is clear that a mere reminder by the employer that the consequences of leaving will be exceedingly bad (*e.g.*, deportation) is not enough").

In addition to the elements of the use or threatened use of physical or legal coercion, an involuntary servitude determination requires a causal connection between what the defendant did, what the victim did, and why the victim did it. *See Kozminski*, 487 U.S. at 952; *see also David, supra*, 2012 U.S. Dist. LEXIS 114247, at *69-*70.[66]

As *Kozminski* so famously and so pivotally stressed, "when the employee has a choice, even though it is a painful one, there is no involuntary servitude." *Watson v. Graves*, 909 F.2d 1549, 1552 (5th Cir. 1990) (holding that plaintiffs' ability to choose whether to work outside of jail for $20 a day or remain inside and earn $0 was fatal to their claims of involuntary servitude).

"A showing of compulsion is thus a prerequisite to proof of involuntary servitude." *Id.*; *see also Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 899 F. Supp. 1443,

---

[66] "In other words, the issue is whether the victim was coerced by physical force or legal coercion into providing labor involuntarily. Nothing about *Kozminski* even remotely suggests that a finding of involuntary servitude or forced labor could be premised solely on the defendant's conduct and the fact that the victim did in fact work for the defendant, while ignoring the issue of causation. *Kozminski* clearly suggests that a determination of involuntary servitude or forced labor requires a causal connection between what the defendant did, what the victim did, and why the victim did it. In other words, the forced labor analysis cannot be confined solely to the defendant's conduct but necessarily must take into account the particular victim's vulnerabilities." *Id*. (internal citations and footnote omitted).

1449 (M.D.N.C. 1995) (rejecting comparison between requirement that student volunteer to do something public-spirited with great purpose of "that charter of freedom").

Here, Plaintiffs, who earned wages that they themselves testified were significant, who had employer-sponsored healthcare, who took vacations, and who could quit -- and did – trivialize the Thirteenth Amendment by ludicrously, under the circumstances, alleging that they labored involuntarily. Partial summary judgment is accordingly both necessary and just.

### iv.    No Proof of Conspiracy

A further basis for dismissal concerns the civil RICO conspiracy claim, i.e., the § 1962(d) claim,[67] which characterizes the Second Claim for Relief. *See* Doc. #1, ¶¶ 201 & 208.

Signal will not belabor this argument.  Plaintiffs lack the evidence required to establish a triable issue concerning the *scienter* § 1962(d) requires under countless federal authorities. For example, mail and wire fraud require "'specific intent to defraud, i.e., a conscious knowing intent to defraud.'"[68] After months of discovery, Plaintiffs have marshaled no or insufficient evidence to establish the existence of the *mens rea* § 1962(d) requires. This Court should render partial

---

[67] Section 1962 proscribes racketeering activity, an offense specified in or by subparagraphs (a)-(c). Section 1962 proscribes a conspiracy to engage in racketeering; the statute reads: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." *See* 18 U.S.C. § 1962(d) (Lexis 2014).

[68] *See United States v. Brown*, *supra*, at 519 (internal quotation marks and citation omitted); ***United States v. Garza***, *supra*, at 168-69 & n.1 (for mail fraud, ". . . the defendant must have acted with intent to defraud. *See United States v. Manges*, 110 F.3d 1162, 1173 (5th Cir. 1997) ["Conspiracy to commit mail fraud requires at least the level of intent necessary for mail fraud itself."]. *See also Salinas v. U.S.*, *supra*, 522 U.S. at 63 (partners in criminal plan must agree to pursue same ***criminal*** objective; *scienter* required is agreement that one or more partners will engage in conduct that constitutes the crime); ***Beck v. Prupis***, *supra*, 529 U.S. at 501 n. 6 ("We have turned to the common law of criminal conspiracy to define what constitutes a violation of § 1962(d), *see Salinas*, . . ."); ***United States v. Akpan***, *supra*, 2010 U.S. App. LEXIS 19790, at *2 (when fraud is object of conspiracy Government must prove that defendant acted with intent to defraud); ***United States v. Davis***, *supra*, at 969-70 (federal mail fraud statute proscribes "any scheme to defraud in which the mails are used;" mail fraud requires proof of three elements beyond a reasonable doubt: (1) defendant's participation in some scheme or artifice to defraud; (2) use of the mails "caused by" defendant or someone associated with scheme; and (3) use of mails for purpose of executing scheme); ***United States v. Diecidue***, *supra*, at 546 ("'Conspiracy' incorporates willfulness and specific intent.") (Citations omitted).

summary judgment accordingly, dismissing all claims in the Second Claim for Relief predicated on a racketeering conspiracy as to Signal.

*v.*        ***Section 1985 Claim Subject to Dismissal***

The Fourth Claim for Relief in Doc. #1, ¶¶ 255, *et seq*., under 42 U.S.C. § 1985, is invalid and should be dismissed via partial summary judgment. There is no genuine of issue of material fact concerning the truth that the plaintiffs knew they were free to leave Signal whenever they wanted to, even if leaving was in some sense painful, as the Statement of Undisputed Material Facts demonstrates. Therefore, the Plaintiffs cannot make out a violation of the Thirteenth Amendment, which invalidates the claim. ***See Kozminski***, *supra*.

Contrary to the Complaint, *see* Doc. #1, ¶ 257 (characterizing §§ 1589 & 1590 as statutes "implementing and enforcing" § 1985), § 1985(3) in no way "derives . . . from §§ 1589 & 1590 . . ." ***David v. Signal Int'l, L.L.C.***, *supra*, 2012 U.S. Dist. LEXIS 114247, at *126. This claim should be dismissed in its entirety under the undisputed facts because under those facts, Signal is entitled to judgment as a matter of law.

Plaintiffs cannot make a showing sufficient to establish that they possess proof of an element essential to their success under § 1985, proof that they were forced to render service to Signal involuntarily, within the meaning of the law. ***See Kozminski***, *supra*, at 945 ("we therefore give effect to congressional intent by construing 'involuntary servitude' in a way consistent with the understanding of the Thirteenth Amendment that prevailed at the time of § 1584's enactment. *See United States v. Shackney*, 333 F. 2d 475 (CA2 1964) (Friendly, J.)."). ***See also id***., at 938-39 ("Writing for the Second Circuit in *United States v. Shackney*, *supra*, Judge Friendly reasoned that 'a holding in involuntary servitude means to us action by the master causing the servant to have, or to believe ***he has, no way to avoid continued service or confinement***, . . . ***not a***

39

*situation where the servant knows he has a choice between continued service and freedom, even if the master has led him to believe that the choice may entail consequences that are exceedingly bad.*' *Id.*, at 486. Accordingly, Judge Friendly concluded that § 1584 prohibits only 'service compelled by law, by force or by the threat of continued confinement of some sort.' *Id.*, at 487. *See also United States v. Harris*, 701 F. 2d 1095, 1100 (CA4 1983) (involuntary servitude exists under § 241 and § 1584 where labor is coerced by 'threat of violence or confinement, backed sufficiently by deeds.'); *United States v. Bibbs*, 564 F. 2d 1165, 1168 (CA5 1977) (involuntary servitude exists under § 1584 where the defendant places the victim 'in such fear of physical harm that the victim is afraid to leave'). The Ninth Circuit, in contrast, has not limited the reach of § 1584 to cases involving physical force or legal sanction, but has concluded that '[a] holding in involuntary servitude occurs when an individual coerces another into his service by improper or wrongful conduct that is intended to cause, and does cause, the other person to believe that he or she has no alternative but to perform labor.' *United States v. Mussry*, 726 F. 2d 1448, 1453 (1984).") (emphasis added).

## III.   <u>CONCLUSION</u>

In conclusion, the Court should issue a host of partial summary judgments in Signal's favor. First, the trafficking claim should be dismissed from the First Claim for Relief as well as the Second one. Second, the First Claim for Relief exceeds the scope of § 1595 as it existed in March of 2008 and therefore, from that claim, the theories of liability that are based on 18 U.S.C. §§ 1592(a) and 1594(a) should be dismissed. Third, even if the Court concludes that the trafficking claim is territorial for the purposes of § 1595, the trafficking claim should nevertheless be dismissed via partial summary judgment on the ground that there is no evidence or insufficient evidence, with regard to Signal, of the *scienter* required by 18 U.S.C. § 1590.

Fourth, with regard to the Second Claim for Relief, which is the civil RICO claim, all claims therein made on the basis of § 1962(c) should be dismissed. Fifth, with regard to the same claim for relief, partial summary judgment is warranted on the ground that under the undisputed facts, much of the civil RICO claim, under § 1964(c), violates the rule against extraterritoriality. Sixth, from the First and Second Claims for Relief, on the ground that it is undisputed that the Plaintiffs were free to leave Signal at any time, the slavery and involuntary servitude theories should be dismissed. Seventh, with regard, in the second claim for relief, to the claims predicated on conspiracy, i.e., § 1962(d), these claims should be dismissed via partial summary judgment on the ground that there is no evidence, or insufficient evidence, with regard to Signal, of the *scienter* required by 18 U.S.C. § 1962(d), relative to conspiracy. Eighth, the Fourth Claim for Relief, under 42 U.S.C. § 1985, is invalid and should be dismissed via partial summary judgment. There is no genuine of issue of material fact concerning the freedom of the plaintiffs to leave the plant site. They were therefore neither slaves nor involuntary servants and therefore, the § 1985 claim is not triable.

Respectfully submitted this 17th day of October, 2014.

Respectfully submitted,

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC

41

701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com
                And
Patricia A. Bollman, La. Bar 17563
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890
patricia@bollmanfirm.com

**_Counsel for Signal International, L.L.C._**
**_Signal International, Inc.,_**
**_Signal International Texas, G.P., and_**
**_Signal International Texas, L.P._**

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

_/s/ Erin Casey Hangartner_

42

ERIN CASEY HANGARTNER