# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

**************************************************

| | |
|---|---|
| **REJI SAMUEL, ET AL** * | **CIVIL ACTION NO:** |
| * | **No. 1:13-cv-00323** |
| **Plaintiffs** * | |
| * | **DISTRICT JUDGE** |
| **v.** * | **MARCIA A. CRONE** |
| * | |
| **SIGNAL INTERNATIONAL, LLC, et al,** * | **MAGISTRATE JUDGE** |
| * | **ZACK HAWTHORNE** |
| **Defendants** * | |

**************************************************

## MOTION OF SIGNAL FOR
## PARTIAL SUMMARY JUDGMENT AS TO LIABILITY
## OF DEFENDANTS MALVERN C. BURNETT, GULF COAST LAW CENTER, L.L.C.,
## AND THE LAW OFFICES OF MALVERN C. BURNETT, A.P.C.
## FOR MALPRACTICE AND BREACH OF FUDICIARY DUTY

Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell Hasenkampf, La. Bar No. 32870
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis. La. Bar No. 34669
Robert L. Keller, II, La Bar No. 35188
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com

broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com
rkeller@hanrylaw.com
and

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt,
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA 70185
Telephone: (504) 218-5887
Facsimile: (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

***Counsel for Signal International, L.L.C.,
Signal International, Inc.,
Signal International Texas, G.P. and
Signal International Texas, L.P.***

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................**Error! Bookmark not defined.**

II.   STANDARD OF REVIEW................................................................... 7

II.   ARGUMENT............................................................................................ 8

      A. Attorney-Client Relationship.......................................................... 11

      B. Negligent misrepresentation .............................................**Error! Bookmark not defined.**

      C. Loss Caused by that Negligence...................................................... 16

      D. Breach of Fiduciary Duty ................................................................ 16

II.   CONCLUSION ...................................................................................... 18

EXHIBITS:

1.    17 Nov 2009 Class Deposition of Malvern C. Burnett, v. 1, pp. 78-79.

2.    29 July 2014 Merits Deposition of Malvern C. Burnett, v. 1, pp. 112-113.

3.    Class Deposition Exhibit no. 516 ("Multilateral Business Agreement")

4.    Response of Burnett to Question No. 1 of Signal's Notice of Rule 30(b)(6) Deposition

5.    Class Deposition Exhibit 530 (05 Feb 2006 Approval of Labor Certification)

6.    Class Deposition Exhibit No. 537 (the "Global Agreement")

7.    29 July 2014 Burnett Merits Deposition, v. 1, p. 12

8.    29 July 2014 Burnett Merits Deposition, v. 1, p.12

9.    29 July 2014 Burnett Merits Deposition, v. 1, p. 40

10.   29 July 2014 Burnett Merits Deposition, v. 1, p. 71

11.   16 Oct 2014 Affidavit of Ronald W. Schnoor

12.     15 Oct 2014 Affidavit of Tracey A, Binion

13.     16 Oct 2014 Affidavit of William D. Bingle, Jr.

14.     29 July 2014 Burnett Merits Deposition, v. 1, p. 30

15.     29 July 2014 Burnett Merits Deposition, v. 1, pp. 47, 53, 56-57

16.     03 Aug 2006 H-2B visa applications for 91 Unnamed Welders

17.     18 Feb 2010 Deposition of Michael Pol, pp. 483-485

18.     29 July 2014 Burnett Merits Deposition, v. 1, pp. 58-59

19.     29 July 2014 Burnett Merits Deposition, v. 1, p. 60

20.     H-2B Extension Applications

21.     29 July 2014 Burnett Merits Deposition, v. 1, pp 61

22.     29 July 2014 Burnett Merits Deposition, v. 1, pp 63-64

23.     29 July 2014 Burnett Merits Deposition, v. 1, p. 71

24.     29 July 2014 Burnett Merits Deposition, v. 1, p. 71

25.     Affidavits of H-2B workers

26.     29 July 2014 Burnett Merits Deposition, v. 1, p. 76

27.     29 July 2014 Burnett Merits Deposition, v.1, p. 101

28.     29 July 2014 Burnett Merits Deposition, v. 1, pp. 102-104

29.     03 Dec 2007 Termination Letter addressed to Burnett

30.     Burnett's 10 Dec 2007 acknowledgment of termination

31.     30 July 2014 Burnett Merits Deposition, v. 2, pp. 91-92

# <u>TABLE OF AUTHORITIES</u>

**Cases**:

*Anderson v. Liberty Lobby, Inc.*
   407 U.S. 242, 248 (1986) ........................................................................................ 8

*Barnett v. Sethi*
   608 So.2d 1011, 1014 (La.App. 4 Cir., 1992) ......................................................... 10

*Belton v. Baehr*
   34 So.3d 903, 908 (La. App., 5th Cir. 2010) writ denied 36 So. 3d. 252 (La. 2010) ............... 10

*Cannata v. Catholic Diocese of Austin*
   700 F.3d 169, 172 (5th Cir. 2012) .......................................................................... 8

*Celotex Corp. v. Catrett*
   477 U.S. 317, 322 (1986) ........................................................................................ 8

*Costello v. Hardy*
   864 So.2d 129, 138 (La. 2004) ............................................................................... 10

*Crist v. Loyacono,*
   65 So.3d 837, 842 (Miss, 2011) ............................................................................. 14

*Department of Commerce v. U.S. House of Representatives*
   525 U.S. 316, 327 (1999) ................................................................................... 8, 11

*Indem. Co. v. Foster*
   528 So.2d 255, 284 (Miss. 1988) ........................................................................... 14

*Lane v. Oustalet*
   873 So.2d 92, 98 (Miss. 2004) ............................................................................... 14

*Leonard v. Reeves*
   82 So.3d 1250 (La.App. 1 Cir. 2012) ...................................................................... 10

*Louisiana State Bar Ass'n v. Drury*
   455 So.2d 1387, 1390 (La. 1984) ........................................................................... 13

*Scheffler v. Adams and Reese, LLP*
 950 So.2d at 651 (La. 2007)................................................................. 11

*Stanley v. Trinchard*
 500 F.3d 411, 421, 421 (5th Cir. 2007) ............................................. 10

*Teague v. St. Paul Fire and Marine Ins. Co.,*
 974 So.2d 1266, 1271 (La. 2008) ........................................................ 11

*Vinewood Capital LLC v. Dar Al-Maal Al-Islami Trust*
 2013 WL 5530539 (5th Cir. Oct. 8, 2013)......................................... 8, 13

**Other Authorities**

*American Bar Association, Model Rules of Professional Conduct*
 Rule 1.7 ...................................................................................... 11, 12

*Code of Federal Regulations*
 See 8 CFR §214.2(h)(1)(ii)(D)
 8 CFR §214.2(h)(1)(i); 8 CFR §214.1(a)(3)(ii)
 8 CFR § 214.2(h)(6)(ii)(B)
 8 CFR §214.2(h)(6)(iii)
 8 CRF § 214.2(h)(9)(iii)(B)(1)
 8 CFR § 2(h)(13)(iv)
 20 CFR § 656
 8 CFR §204.5(a) - (g)
 22 CFR §42.51, 22 CFR §42.32(c)
 22 CFR §42.61 - 42.73; 8 CFR §245.1(a)
 8 CFR §214.2(h)(16), (l)(16), (o)(13), (p)(15) ....................................8-9

*Federal Rules of Civil Procedure*
 *Rule 56(a)*................................................................................7, 10-11

*La. Const.*
 Art. II, §§ 1, 2................................................................................ 11

*Mississippi Rules of Professional Conduct*
 Rule 1.7 ...................................................................................... 14

**MAY IT PLEASE THE COURT:**

**<u>MOTION</u>**

Signal Defendants (hereinafter collectively "Signal"), respectfully move, for the reasons stated in the memorandum attached hereto, and for the reasons set forth in the statement of undisputed material facts attached hereto, in accordance with Fed. R. Civ. P. 56 and LR 56.1, for partial summary judgment as to liability against Malvern C. Burnett, Gulf Coast Law Center, L.L.C. and Law Offices of Malvern C. Burnett, APC (individually and collectively, "Burnett") concerning Signal's causes of action for Malpractice and Breach of Fiduciary Duty as set forth in Signal's Cross Claim in this action.

For the reasons stated in the memorandum attached hereto, there is genuine dispute as to any material fact and Signal is entitled to judgment as a matter of law.

## I.      <u>INTRODUCTION</u>

In 1996, Michael Pol ("Pol") owned International Marine and Industrial Services ("IMI"), a labor supply company.  Pol along with Sachin Dewan ('Dewan") and Malvern C. Burnett ("Burnett") recruited shipfitters and welders from India to come to work for IMI on H-2B visas where they were contracted out to work at Avondale Shipyards[1].  Some of the Signal International Defendants ("Signal") H-2B workers including, Kechuru Dhananjaya, worked at Avondale through IMI on an H-2B visa from January to September, 1997[2].

---

[1] See November 12, 2009 30(b)(6) deposition of Global Resources, Inc. given through its designated representative, Michael L. Pol, pp. 28, 40, and 44 ("11/12/09 Pol Deposition") (***Memorandum Exhibit A***).
[2] 03/10/10 Deposition of Kechuru Dhananjaya, pp. 17-26 (***Memorandum Exhibit B***).

In 2003, unbeknownst to Signal, Malvern C. Burnett, Gulf Coast Immigration Law Center, L.L.C. and the Law Offices of Malvern C. Burnett, A.P.C. (individually and collectively, "Burnett") was approached by his client, Dr. Kurella Rao ("Rao") about bringing shipyard workers from India to the United States[3].  Burnett advised Rao to petition for permanent residency (known as a "green card") through Rao's company Indo-Ameri Soft, LLC ("IAS").  In January, 2004, Burnett and Rao traveled to India and the UAE and along with Dewan recruited 162 workers for green cards in the United States ("IAS candidates")[4].  Although the amount the workers paid for the green card varied, it averaged about $15,000, and was to be paid in three installments.  The IAS  candidates were told they would  receive their green card in approximately 18 months[5].  However, the process took much longer than the promised 18 months[6].  In January, 2006, the first step of the process was finally complete and Rao went to India to collect the second installment[7].  Rao collected this installment even though he knew that IAS was no longer viable and thus not in a position to file for the second step of the process for the IAS candidates[8].

In 2004, while Sachin Dewan and Dewan Consultants PVT. LTD. (individually and collectively, "Dewan") was working with  Burnett, Dewan contacted Michael Pol, principal of Global Resources, Inc. ("Global") to see if he had any customers who would be interested in

---

[3] Deposition of Kurella Rao, pp. 13-14 (**_Memorandum Exhibit C_**).
[4] Response of Burnett to Question No. 1 of Signal's Notice of Rule 30(b)(6) Deposition (**_Memorandum Exhibit D_**).
[5] Deposition Exhibit Rao 5 given to candidates in January 2004 and states under "Terms and Condition For Program", "Duration for Completion of Process:  18 Months" (**_Memorandum Exhibit E_**).
[6] Deposition Exhibits Rao 7 and Rao 12 **_Memorandum Exhibit F_**).
[7] Deposition Exhibit Rao 4 (**_Memorandum Exhibit G_**).
[8] September 17, 2009 Deposition of Kurella Rao ("Rao Deposition"), pp. 170-171 (**_Memorandum Exhibit H_**).

sponsoring shipyard workers from India for permanent residency[9].  Thereafter, Burnett, Pol and Dewan entered into a written partnership to recruit Indian workers for permanent residency[10].  In furtherance of their business arrangement, Dewan, Pol and Burnett began recruiting shipyard workers for J&M Associates Inc. of Mississippi ("J&M candidates") and Intercoastal Repair Service, LLC ("IRS candidates").  Dewan, Pol, and Burnett processed applications for 162 J&M candidates and 89 IRS candidates[11].  Although told they would receive their green cards in 18 to 24 months, the J&M and IAS candidates were, in early 2006, finally notified that the first step of the process had been completed[12].  Although Dewan and Burnett met with J&M and IAS candidates and collected their money, Burnett did not move forward with the second part of the process which was the filing of the I-140 petitions[13].

In the spring of 2006, Pol approached Signal management about the possibility of providing foreign shipyard workers to supplement Signal's workforce[14].  Pol knew that Signal was in a unique position.  Signal had a substantial amount of work post-hurricanes Katrina and Rita because of the damage to rigs in the Gulf of Mexico.  Yet Signal was also experiencing a labor shortage because of the lack of housing around its shipyards due to the devastation from those hurricanes.

After being approached by Pol, Signal vetted the proposal by speaking with contacts at Avondale about its experience in 1996 with Burnett, Dewan and Pol through IMI[15].  Thereafter, Signal entered into an agreement with Global wherein shipyard workers would be provided to it

---

[9] 11/12/09 Deposition of Pol, p. 68 (***Memorandum Exhibit I***).
[10] Exhibit 445 ("Multilateral Business Agreement") (***Statement of Uncontested Facts ["Statement"] Exhibit 3***).
[11] Burnett response to questions 2 and 3 to Signal's Notice of Rule 30(b)(6) Deposition (***Statement Exhibit 4***).
[12] Class Deposition Exhibit 530 (***Statement Exhibit 5***).
[13] Burnett Class Deposition, v. 3, pp. 603-604 (***Memorandum Exhibit J***).
[14] Pol Deposition, 01/12/09, pp. 192-193 (***Memorandum Exhibit K***).
[15] Deposition of Ronald Schnoor, 30(b)(6) designee of Signal, 12/16/09, pp. 240-241 (***Memorandum Exhibit L***).

from India on an H-2B or I-140 "Permanent Residence" process[16].  Burnett was Signal's attorney as provided for in the Global Agreement[17].

As Burnett, Pol and Dewan began recruiting in India and the UAE for shipyard workers for Signal, the IAS, J&M and IRS workers who had been waiting for over two years for their green cards became quite aggressive with Burnett and Dewan.  They wanted to be sent to Signal on H-2B visas rather than wait in India for their green cards through IAS, J&M and IRS[18].  Although Burnett, Dewan and Pol had intended to use new candidates for Signal it became necessary for them to offer the opportunity to go to Signal to the IAS, J&M and IRS candidates[19].  Ultimately, over 200 of the 490 Indian workers whom Burnett, Dewan and Pol provided to Signal were IAS, J&M or IAS candidates[20].  In addition, some of the workers sent to Signal were recruited to work at Knights Marine (another client of Global) and at the last minute were told by Dewan that they would be working at Signal instead of Knights Marine[21].  Further, for those workers who were not IAS, J&M or IAS candidates, the cost of the H-2B visa for Signal went up after the first set of H-2B visas were approved by the consulate[22].  All of this was done without Signal's knowledge or consent[23].  Burnett did not inform Signal that many of the workers that arrived at Signal from India between October 2006 through February 2007, had

---

[16] Class Deposition Exhibit 537 (the "Global Agreement")(**Statement Exhibit 6**).

[17] Burnett Merits Deposition, v. 1, p. 12 (**Statement Exhibit 7**); Global Agreement, Para. 3 (**Statement Exhibit 6**).

[18] Class Deposition Exhibit 482 (Burnett writes, I experienced firsthand the venting of frustration by IAS (and J&M) candidates firsthand and outright aggression towards Sachin during my recent trip to India and Dubai.") (**Memorandum Exhibit M**); Dewan Class Deposition, pp. 631-633 (**Memorandum Exhibit N**).

[19] Class Deposition Exhibits 482 (**Memorandum Exhibit M**) and 483 (**Memorandum Exhibit O**); see also Dewan Deposition, pp. 641-642, and 679 (**Memorandum Exhibit P**); Pol Deposition, pp. 483-485 (**Memorandum Exhibit Q**).

[20] Burnett's Responses to Questions No. 4 and No. 5 to Signal's Notice of Rule 30(b)(6) Deposition (**Memorandum Exhibit R**).

[21] Pol Deposition, pp. 188-191 (**Memorandum Exhibit S**), Dewan Deposition, pp. 397-399 (**Memorandum Exhibit T**).

[22] Pol Deposition, pp. 254-261 (**Memorandum Exhibit U**); Burnett Merits Deposition, v. 1, pp. 136-137 (**Memorandum Exhibit V**).

[23] Class Deposition Exhibit 478 (Dewan emails Burnett a list of selected candidates and which contains as a heading to the email, "**This list is confidential, DO NOT forward this to Signal**") (**Memorandum Exhibit W**).

more than two years earlier, before any of them had ever heard of Signal, been promised and had paid for a green card which they expected to receive within two years[24].

Signal and Burnett began an attorney-client relationship in the first half of 2006[25].  As such, Burnett owed Burnett a duty of loyalty[26].  At the same time, in addition to his involvement in the Multilateral Business Agreement, Burnett also represented J&M[27].  At the time, Burnett did not consult with Signal as to the conflict in any meaningful manner, orally or in writing, including, among other issues, that the H-2B process for Signal and I-140 permanent resident process for J&M, etc. could not be pursued at the same time[28].  Signal did not give its knowing and informed consent to the potential or actual conflict with Burnett's representation of J&M, IAS, IRS, nor his participation in the Multilateral Business Agreement, or otherwise waive the potential or actual conflict in writing[29].  Without so informing Signal, Burnett, in connection with Pol and Dewan, sent workers who had a certified PERM through J&M, IAS, and IRS to go to Signal on H-2B visas[30].  Burnett also did not disclose that these recruits were sent to Signal on H-2B visas because of the recruits' dissatisfaction and frustration in having waited so long for their green cards[31].

---

[24] Burnett Merits Deposition, v. 1, p. 71 (**Statement Exhibit 10**); Affidavit of Ronald W. Schnoor (**Statement Exhibit 11**)
[25] November 17, 2009 Deposition of Malvern C. Burnett, v. 1, pp. 78-79 (**Statement Exhibit 1**).
[26] Burnett Merits Deposition, v. 1, p.12 (**Statement Exhibit 8**); Global Agreement (**Statement Exhibit 6**), Para.3.
[27] Burnett Merits Deposition, v. 1, p. 40 (**Statement Exhibit 9**).
[28] Burnett Merits Deposition, v. 1, p. 30 (**Statement Exhibit 14**); Affidavits of Tracey Binion (**Statement Exhibit 12**), Ronald W. Schnoor (**Statement Exhibit 11**), and William D. Bingle, Jr. (**Statement Exhibit 13**)
[29] Burnett Merits Deposition, v. 1, p. 30 (**Statement Exhibit 14**); Affidavits of Tracey Binion (**Statement Exhibit 12**); Ronald W. Schnoor (**Statement Exhibit 11**), and William D. Bingle, Jr. (**Statement Exhibit 13**).
[30] Burnett Merits Deposition, v. 1, pp. 47, 53, 56-57 (**Statement Exhibit 15**).
[31] Burnett Merits Deposition, v. 1, pp. 58-59 (**Statement Exhibit 18**); Class Deposition Exhibits 482 (**Memorandum Exhibit M**) and Class Deposition Exhibit 483 (**Memorandum Exhibit O**).

Burnett filed the H-2B visa applications on or about August 4, 2006[32].   Burnett was very experienced with the H-2B process, having been processing such visas for clients for ten (10) years[33].   At that time, IAS, J&M, and Zito had not abandoned the green card process for some of the beneficiaries who would come to Signal on an H-2B visa.

In July 2007, Burnett filed H-2B visa extension petitions on behalf of Signal for beneficiaries who were currently working at Signal and on or about the same time also filed I-140 petitions for J&M for some of the same beneficiaries who were then currently working at Signal[34].   As an experienced immigration attorney, Burnett knew or should have known that the concurrent filing of an H-2B visa application and an I-140 petition for the same beneficiary can, on its own, be sufficient for the denial of an H-2B visa[35].   When filing the I-140 petition for a beneficiary of J&M who was also in Signal's H-2B extension petition, Burnett did not list their address at Signal, nor did he disclose their current H-2B status in the United States[36].   Despite acknowledging that the employers with certified PERMs for beneficiaries working at Signal under H-2B visas might complete the green card process for those beneficiaries, which would then require that the beneficiary go to work for that green card sponsor, Burnett did not feel that it was important to make Signal aware that some of its H-2B beneficiaries had certified PERMs for other employers[37].

Without receiving knowing and informed consent from Signal, and without so notifying Signal in writing, Burnett filed I-140 petitions for workers who were beneficiaries of other

---

[32] Affidavit of Tracey A, Binion (*Statement Exhibit 12*); H-2B visa applications (*Statement Exhibit 16*).
[33] Burnett Merits Deposition, v. 1, pp. 112-113 (*Statement Exhibit 2*).
[34] Burnett Merits Deposition, v. 1, p. 60 (*Statement Exhibit 19*); Affidavit of Tracey Binion (*Statement Exhibit 12*); H-2B Extension Applications (*Statement Exhibit 20*); H2-B and I-140 receipts attached *in globo* (*Statement Exhibit 20*).
[35] Affidavit of Enrique Gonzalez (*Statement Exhibit 25*).
[36] Burnett Merits Deposition, v. 1, pp 63-64 (*Statement Exhibit 22*); Decision of USCIS (*Memorandum Exhibit X*).
[37] Burnett Merits Deposition, v. 1, p. 71 (*Statement Exhibit 23*).

employers' certified PERMs at the same time they were working at Signal on an H-2B visa[38]. Further, in this regard, Burnett acknowledged having concerns about I-485's being filed on behalf of J&M beneficiaries working at Signal so he arranged for Ram Cheerath, another immigration attorney, to file the I-485 petitions for those workers.   His concern was that there were workers working at Signal who would potentially get work authorization as a result of the filing of the I-485 and that would allow them to freely leave Signal and go to work for J&M or to seek other employment opportunities.   These concerns were because this would be a direct result of the filing of the I-485 adjustment application for another employer that Burnett represented for the same beneficiaries he represented for Signal.     Despite these acknowledged concerns, Burnett did not notify Signal of the potential conflict[39].

This conflict was, of course, of great significance to Signal.   When Signal learned in December 2007 that Burnett was also representing J&M with respect to the same workers for permanent visas, Signal terminated its attorney-client relationship with Burnett[40].   As it turned out, Signal's concerns were not imaginary or far-fetched; a significant number of its H-2B workers left its employ to go to work for J&M as a direct result of the work Burnett did on behalf of J&M[41].

## II.      STANDARD OF REVIEW

---

[38] Burnett Merits Deposition, v. 1, p. 76 (***Statement Exhibit 26***).

[39] Burnett Merits Deposition, v. 1, pp. 102-104 (***Statement Exhibit 28***).

[40] Burnett Merits Deposition, v. 2, pp. 91-92 (***Statement Exhibit 31***); Termination Letter dated December 3, 2007 (***Statement Exhibit 29***), acknowledged December 10, 2007 (**Statement Exhibit 30**); Affidavit of Tracey A. Binion, (***Statement Exhibit 12***); Affidavit of Ronald W. Schnoor (***Statement Exhibit 11***).

[41] Burnett Merits Deposition, v.1, p. 101 (***Statement Exhibit 27***); Affidavit of Tracey A. Binion (***Statement Exhibit 12***); Affidavits of Seebu Ukken Jose, para. 23-30; Sojan Paul Kaliyandan, para. 23-31; Kunhikrishnan Kaniyamkulamveetil, para. 22-30; Mundappilly Shabeer, para. 22-31; Boban Peruvelil Joseph, para. 22-31; Alexander J. Sresadanam, para. 23-30; and Jose Azhchangadan Baby, para. 22-29 (globally, ***Memorandum Exhibit Y***); Deposition of Sojan Paul Kaliyandan, v. 1, p. 117, v. 2, pp. 313-314, 317 (**Memorandum Exhibit Z**).

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is to be rendered forthwith when one party is unable to show a genuine issue as to a material fact on which that party will bear the burden of proof at trial. *Department of Commerce v. U.S. House of Representatives,* 525 U.S. 316, 327 (1999).  The moving party bears the initial burden of establishing there is no genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 407 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of fact exists only when the evidence before the court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party.  There must be evidence upon which a jury could reasonably find in the non-moving party's favor.  *Anderson,* at 248-252.

The responding party cannot point to mere allegations or denials contained in the pleadings.  It is not enough for the non-moving party to produce a mere "scintilla" of evidence. Anderson, at 251.  Instead, the responding party must set forth, by affidavit or other admissible evidence, specific facts demonstrating the existence of an actual fact for trial.  *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (*quoting Celotex Corp.*, at 324). Moreover, "A party's uncorroborated self-serving testimony cannot prevent summary judgment, particularly if the overwhelming documentary evidence supports the opposite scenario." *Vinewood Capital LLC v. Dar Al-Maal Al-Islami Trust*, 2013 WL 5530539 (5th Cir. Oct. 8, 2013).

## III.    ARGUMENT

This matter involves discussion of very specific immigration terms and forms.  For convenience, the terms and forms will be discussed here:

An **H-2B visa** is a temporary non-immigrant employer sponsored visa.  See 8 CFR §214.2(h)(1)(ii)(D).  Beneficiaries of an H-2B visa must work for the employer petitioner and must return to their native country upon termination of the visa.  See 8 CFR §214.2(h)(1)(i); 8 CFR §214.1(a)(3)(ii).  H-2B visas are short term visas, initially no more than a year in duration, and even if extended, an H-2B beneficiary may not work more than 36 months in the United States before they must leave the United States.  See 8 CFR § 214.2(h)(6)(ii)(B); 8 CFR §214.2(h)(6)(iii); 8 CRF § 214.2(h)(9)(iii)(B)(1); 8 CFR § 2(h)(13)(iv).  (Note that the H-2B regulations were substantially revised in January, 2009 therefore, to understand the requirements of the H-2B visa at the time these events took place, one must look at the 2006 federal regulations).

The employment based green card process is a three step process.  The first step requires that an **ETA 9089 ("PERM")** be filed with the Department of Labor and certified. 20 CFR § 656 *et seq*.  The second step requires the filing of an **I-140** with the United States Citizenship and Immigration Services.  8 CFR §204.5(a) - (g).  The third step differs depending on whether the beneficiary of the PERM and I-140 is in the United States or a foreign country when a green card becomes available for them in the quota.  22 CFR §42.51.  If the beneficiary is in a foreign country they process through the consulate and receive **permanent resident status** (or a "**green card**" as it is commonly known).  See 22 CFR §42.32(c); 22 CFR §42.61 - 42.73.  If the beneficiary is lawfully in the United States they file an **I-485 (Application for Adjustment of**

**Status**).  The approval of an I-485 results in the applicant receiving lawful permanent resident status.  8 CFR §245.1(a).

The H-2B visa is a nonimmigrant visa which allows for only a temporary stay in the United States and not the intent to stay permanently.  In order for a nonimmigrant visa to be favorably adjudicated, the applicant bears the burden of having to prove that he has a residence abroad that he has no intention of abandoning and has no intention of remaining in the United States. 8 CFR §214.2(h)(16), (l)(16), (o)(13), (p)(15).  An  I-140 is a Petition for Immigration Worker, which if approved, allows the worker to either file an I-485, Application for Adjustment of Status in the United States or consular process for permanent resident status abroad. Permanent resident status results in the issuance of a United States Permanent Resident Card commonly referred to as a green card.  Therefore, it logically follows that an issue arises when a foreign national is the beneficiary of an I-140 *immigrant* petition process by one company, but is working for another company in H-2B *nonimmigrant* status, or, who has an H-2B *nonimmigrant* extension petition pending.

Burnett is licensed to practice law in Louisiana and Mississippi.  Typically, the threshold question for the Court would be to determine whether Louisiana or Mississippi law applies. Signal contends that since virtually all of the legal services performed by Burnett were done out of his New Orleans, Louisiana office, that Louisiana law should apply.  But, as will be demonstrated in the discussion of the law below, regardless of whether Louisiana or Mississippi law is chosen, Signal is entitled to judgment as to malpractice and breach of fiduciary duty as a matter of either Louisiana or Mississippi law.

16

Under Louisiana law, a plaintiff asserting a legal malpractice claim must prove "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence. *Stanley v. Trinchard*, 500 F.3d 411, 421, 421 (5th Cir. 2007); see also *Costello v. Hardy*, 864 So.2d 129, 138 (La. 2004); *Barnett v. Sethi*, 608 So.2d 1011, 1014 (La.App. 4 Cir., 1992); *Leonard v. Reeves*, 82 So.3d 1250 (La.App. 1 Cir. 2012).   Basically, "any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties" constitutes malpractice. *Belton v. Baehr*, 34 So.3d 903, 908 (La. App., 5th Cir. 2010), writ denied 36 So. 3d. 252 (La. 2010).  In the instant case, Signal easily satisfies all the requirements and is entitled to judgment as a matter of law.  *Department of Commerce* at 329; F.R.C.P. 56(a).

The initial analysis under Mississippi law is basically the same, with the only difference that the client must give its knowing and informed consent to the conflict after consultation which is required to include an explanation of the implications of the adverse representation and the advantages and risks involved.  As will be discussed below, Signal is equally entitled to a judgment as a matter of law under Mississippi law.

**a.**    **Attorney-Client Relationship.**    There is no genuine issue, under either Louisiana or Mississippi law, that, at all relevant times, an attorney-client relationship existed between Burnett and Signal.  Burnett has acknowledged it on multiple occasions.  See Deposition of Malvern C. Burnett taken November 17, 2009, v. 1, pp.78-79 (Statement Exhibit 1); Burnett Merits Deposition, v. 1, p. 12 (Statement Exhibit 7).

**b.**    **Negligent misrepresentation.**    The professional conduct of an attorney in Louisiana is bound by the Rules of Professional Conduct ("RPC"), adopted by the Louisiana Supreme Court pursuant to its exclusive and plenary power to regulate the practice of law.

17

*Teague v. St. Paul Fire and Marine Ins. Co.,* 974 So.2d 1266, 1271 (La. 2008), citing La. Const. Art. II, §§ 1, 2; see also *Scheffler v. Adams and Reese, LLP,* 950 So.2d at 651 (La. 2007).  Under the RPC, "A lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  RPC, Rule 1.7.  A concurrent conflict of interest exists if the representation of one client will be directly adverse to another client.

In the Instant Case, there are a number of examples of Burnett's representation being marred by a concurrent conflict of interest.  First, at the same time Burnett began his representation of Signal, he was representing J&M Associates, Inc. of Mississippi ("J&M").  Burnett Merits Deposition, v. 1, p. 40 (Statement Exhibit 9).  He was representing both with the acquisition of skilled labor from India.  At all relevant times, J&M was in the business of providing subcontract labor to shipyards, occasionally to Signal; at the same time that Signal was utilizing Burnett's services to help it acquire skilled labor directly from India, while there was a shortage of such labor in the Mississippi and Texas areas resulting from the devastation caused by hurricanes Katrina and Rita.  Affidavit of Tracey Binion (Statement Exhibit 12).

A second example of negligent representation is equally obvious.  On or about summer 2007, at effectively the same time, Burnett filed I-140 petitions for J&M and H-2B extension petitions for Signal for many of the same beneficiaries who were, at the time, working for Signal.  Burnett Merits Deposition, v. 1, p. 60 (Statement Exhibit 19); H-2b and I-140 receipts in globo (Statement Exhibit 20).  Although, as matter of law, Burnett clearly cannot satisfy the exception, it is proper to note RPC 1.7(b) does provide an exception to the preclusion of representation when a concurrent conflict of interest arises,  "Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:  (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation

18

to each affected client;  (2) the representation is not prohibited by law;  (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing. *RPC 1.7.*

Although there might be a genuine issue as to whether Burnett could satisfy requirements (2) and (3), any suggestion that Burnett could satisfy all four provision of this four pronged test is without merit.  As to requirement (1), when asked why he did not believe that the filing a petition for two different companies at the same time for the same beneficiaries did not create a significant risk that his representation of Signal would not be materially limited by his responsibilities to J&M, his response was "Because I didn't."  This conclusory response does nothing to create a genuine issue of material fact, particularly in view of the lack of documentary evidence. *Vinewood Capital LLC.*  Additionally, and perhaps even more importantly, as to requirement (4), Signal never gave its "informed consent" nor was anything confirmed in writing.  Affidavits of Tracey A. Binion (Statement Exhibit 12), Ronald W. Schnoor (Statement Exhibit 11), and William D. Bingle, Jr.(Statement Exhibit 13).  Indeed, Burnett never even advised Signal in writing that the H-2B and I-140 permanent resident process could not be pursued at the same time for the same beneficiary without jeopardizing the H-2B status of the beneficiary.  Burnett Merits Deposition, v. 1, p. 30 (Statement Exhibit 14).

"Whereas a potential conflict does not per se preclude representation, an *undisclosed* conflict is impermissible and violative of the Code even if no conflict actually arises." *Louisiana State Bar Ass'n v. Drury*, 455 So.2d 1387, 1390 (La. 1984).  Even if Burnett's view that the above did not create an actual conflict is somehow deemed meritorious, there can be no genuine issue that it created

a potential conflict and was not properly disclosed to Signal and, consequently, Burnett's actions were, therefore, legally impermissible and violative of the RPC.

In addition, it is undisputed that Burnett did not advise Signal in writing of any potential conflict of interest with respect to his representation of Signal and either J&M, IAS, or IRS. Affidavits of Tracy A. Binion (Statement Exhibit 12), Ronald W. Schnoor (Statement Exhibit 11), and William D. Bingle, Jr. (Statement Exhibit 13). He also did not feel it important to make Signal aware that some of its H-2B beneficiaries had certified PERMs for these same employers. Burnett Merits Deposition, v. 1, p. 71 (Statement Exhibit 24).

Further, Burnett acknowledged having concerns about I-485's being filed on behalf of J&M I-140 beneficiaries who were working at Signal on H-2B visas. Because of this concern, he arranged for Ram Cheerath, another immigration attorney, to file the I-485 petitions for those workers. His concern was that these workers were working at Signal and would get employment authorization that would allow them to freely leave Signal and go to work for J&M or to seek other employment opportunities. Employment authorization would be a direct benefit of the filing of the I-485 adjustment application so he arranged for another attorney to file the applications. Burnett Merits Deposition, v. 1, pp. 99-101 (Statement Exhibit 27). No matter how that is now spun, or what words are now used, there is no **genuine** issue that Burnett having another attorney file the I-485's was anything but an acknowledgement of a potential conflict of interest.

The professional conduct of a lawyer in Mississippi is governed by the Mississippi Rules of Professional Conduct ("MRPC"). The rules were adopted by the Supreme Court of Mississippi on November 3, 2005. The MRPC is substantially similar to the RPC, with exception to be discussed below. To prove a malpractice action in Mississippi, plaintiff must establish: (1) the existence of an attorney-client relation (see relevant discussion above) and (2) the acts constituting a violation of the

attorney's fiduciary duty.  *Crist v. Loyacono*, 65 So.3d 837, 842 (Miss, 2011); see also *Lane v. Oustalet*, 873 So.2d 92, 98 (Miss. 2004); *Indem. Co. v. Foster*, 528 So.2d 255, 284 (Miss. 1988). MRPC requires that a lawyer may not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless the lawyer reasonably believes:  (1) the representation will not be adversely effected; and (2) the client has given knowing and informed consent after consultation. The consultation shall include explanation of the implications of the representation and the advantages and risks involved.  MRPC Rule 1.7.

There is no genuine issue that suggest consultation or consent ever occurred.  In all of his depositions, Burnett has not pointed to one document that demonstrates any consultation or any form of informed consent by Signal.  All Burnett has provided in opposition is his own self-serving statements that he told John Sanders from Signal but he cannot say whether he told Mr. Sanders that labor certification application had been filed by other companies for the workers who were to be sent to Signal on H-2B visas, and he talked to others individuals at Signal but cannot to whom he spoke. Burnett Class Deposition, v. 2, pp. 508-514 (Memorandum Exhibit AA); Burnett Merits Deposition, v. 1, p. 30 (Statement Exhibit 14);   More importantly, by his own admission, Burnett could not possibly have explained the implications of the adverse representation and the advantages and risks involved, as required by MRPC Rule 1.7, because he did not acknowledge that these conflicts existed.  He repeatedly testified, as to many conflicts and potential conflicts, that he did not see it as a conflict or potential conflict.  It would be impossible for Burnett to explain the implications, risks, or advantages of conflicts or potential conflicts when he did not perceive them.  See, for example, Burnett Merits Deposition, v. 1, pp. 61, 102-104 (Statement Exhibits 21 and 27).

Even if such a consultation and such consent was alleged to have occurred, Signal would nonetheless be entitled to judgment as a matter of law.  The Comment to Rule 1.7, after acknowledging that in some cases a client may consent to representation notwithstanding the conflict, "However, as indicated in paragraph (a)(1) with respect to representation directly adverse to a client, and paragraph (b)(1) with respect to material limitations on that representation of a client, when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such an agreement or provide representation on the basis of the client's consent."  Comment to Mississippi Rule 1.7 entitled Conflict of Interest:  General Rule.  As discussed above, if Burnett had, in fact, been disinterested, there is no genuine issue that he would not have represented both J&M and Signal with respect to the same workers in this matter because the filing of the I-140 petition for J&M could adversely affect the H-2B extensions for Signal.

### c.      Loss Caused by that Negligence

As movant is merely seeking a summary judgment as to liability, the specifics and amount of damages will not be discussed herein.  However, there can be no genuine issue that actual damages were caused by Burnett's Malpractice and Breach of Fiduciary Duty.  It cannot be disputed that some of Signal's H-2B workers left Signal's employ to work for J&M, which transfer would not have been possible but for Burnett's legal services provided to J&M.  Burnett Merits Deposition, v. 1, p. 101 (Statement Exhibit 27); Affidavit of Tracey Binion (Statement Exhibit 12); Affidavits of H-2B workers (Memorandum Exhibit Y).

Additionally, Signal was clearly damaged by Burnett's failure to properly inform Signal that many of its H-2B workers had been clients of Burnett for two years or more and had been promised to have received a green card even before traveling to the United States.  From the

moment the workers arrived, they were asking about their green cards.  The workers' frustration

at having not received promised green cards was evident in their interactions with Signal from

the beginning but Signal could not have known the issue because Burnett failure to properly

consult with it about the means by which Signal's objectives were to be accomplished. RPC 1.4.

Signal wanted skilled, not angry, frustrated, and deceived workers.  Affidavit of Ronald Schnoor.

In this regard, it was up to Signal to decide if it wanted workers who had paid significant sums of

money for recruiting fees and been promised green cards two years earlier, not Burnett.  There is

no genuine issue that Burnett failed to promptly inform Signal of any decision or circumstance

with respect to which client's informed consent was required by the rules RPC 1.4.

### B.      Breach of Fiduciary Duty

The relationship between and attorney and his client is frequently characterized as a

fiduciary relationship. *Schlesigner v. Herzog*, 672 So.2d 701 (La.App. 4 Cir. 1996).  See also

*Plaquemines Parish Com. Council v. Delta Development Co., Inc.*, 502 So.2d 1034, 1040 (La.

1987).  The duty imposed on a fiduciary embraces the obligation to render a full and fair

disclosure to the beneficiary of all facts which materially affect his rights and interest.

*Soderquist v. Kramer*, 595 So.2d 825 (La.App. 2 Cir. 1992).

"Louisiana law recognizes that an attorney's paramount duty is, and must be, to his

client." *Belton v. Baehr*, 34 So.2d 903 (La.App. 5 Cir. 2010), writ denied 36 So.3d 252 (La.

2010).  This fiduciary duty obligates the attorney to exercise at least that degree of care, skill,

and diligence exercised by prudent attorneys practicing in his community of locality.  Though he

is not required to exercise perfect judgment in every instance, his license to practice and his

contract for employment hold out to his client that he possesses certain minimal skills,

knowledge, and abilities. It so follows that "any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties" constitutes malpractice. The law leaves no uncertainty in defining the character of duty which an attorney owes to his client. The relation of attorney and client is more than a contract. It super-induces a trust status of the highest order and devolves upon the attorney the imperative duty of dealing with the client only on the basis of the strictest fidelity and honor. *Belton* at 908-909.

Mississippi law is in agreement. Breach of the duty of loyalty is a species of malpractice. *Tyson v. Moore*, 613 So.2d 817, 823 (Miss. 1992); see also *Hartford Acc. & Indem. Co. v. Foster,* 528 So.2d 255, 268 (Miss. 1988). The breach is characterized as "constructive" fraud because proof of intent is irrelevant and thus the elements of actual fraud, duress, or coercion do not enter into the analysis. *Tyson* at 823, citing *Gwin v. Fountain*, 159 Miss. 619,645-46, 126 So. 18, 22 (1930)(attorney's moral turpitude not an indispensable element of fraud). Because a breach of loyalty injures both the client's interests and the legal profession's integrity, the gravity of the harm cannot be cured by good faith. *Tyson* at 823, Mallen & Smith, Legal Malpractice, supra, at § 11.3 (3d ed. 1989).

The discussion above as to malpractice applies directly to Burnett's breach of duty of loyalty to Signal.

## IV.   <u>CONCLUSION</u>

Signal is entitled to partial summary judgment as to liability for these reasons and for reasons stated in other briefs Signal has presented to this Court. Signal prays for Order accordingly.

Respectfully submitted:

*/s/ Erin Casey Hangartner*
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell Hasenkampf, La. Bar No. 32870
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis. La. Bar No. 34669
Robert L. Keller, II, La Bar No. 35188
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com
rkeller@hanrylaw.com
and

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt,
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA 70185
Telephone: (504) 218-5887
Facsimile: (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

***Counsel for Signal International, L.L.C.,***
***Signal International, Inc.,***
***Signal International Texas, G.P. and***
***Signal International Texas, L.P.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of October, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/Erin Casey Hangartner*