### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| REJI SAMUEL, et al | * | CIVIL ACTION NO: |
| Plaintiffs | * | 1:13-cv-00323-MAC-ZJH |
| | * | |
| v. | * | DISTRICT JUDGE |
| | * | MARCIA A. CRONE |
| SIGNAL INTERNATIONAL, LLC, et al, | * | |
| | * | MAGISTRATE JUDGE |
| Defendants | * | ZACK HAWTHORN |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM OF SIGNAL OPPOSING  MOTION
## OF PLAINTIFFS TO EXCLUDE TESTIMONY
## OF SIGNAL'S EXPERT DON STROBEL

Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com

And

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt (*Pro Hac Vice*)
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

***Counsel for Signal International, L.L.C.
Signal International, Inc.,
Signal International Texas, G.P., and
Signal International Texas, L.P.***

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

I.  INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ........................................................................................................................ 1

   a.  Mr. Strobel's Opinion is Relevant to Possible Claims ................................................ 1

   b.  Mr. Strobel is Qualified .............................................................................................. 1

   c.  Mr. Strobel Fits .......................................................................................................... 2

   d.  Mr. Strobel's Opinions ............................................................................................... 3

   e.  The Present Motion Should Be Denied ....................................................................... 4

   f.  Exhibits ....................................................................................................................... 4

   g.  Discussion ................................................................................................................... 5

      i.  Introduction ....................................................................................................... 5

      ii.  Plaintiffs Should Focus More on Substance ..................................................... 6

      iii.  Discretion is a Question of Fact in this Case ..................................................... 8

      iv.  Opinion Evidence Concerning Other Fact Questions ...................................... 10

      v.  Volume of Housing in the Town ...................................................................... 12

      vi.  Reliability and Seriously Substandard Housing ............................................. 12

         a.  Introduction ............................................................................................. 12

         b.  The Complaint Makes "Substandard" a Question of Fact ........................ 13

         c.  *Kumho*/Experience as Reliability ............................................................ 14

         d.  Mr. Strobel Wisely Relied on Contemporaneous Video Evidence .............. 16

III.  CONCLUSION ................................................................................................................. 18

**EXHIBITS**

**A.**   Expert Report and CV of Don Strobel

**B.**   Correspondence regarding planned dismantling of facility and video screenshots, *in globo*

**C.**   December 29, 2010 Correspondence from Darrell Allen, Assistant District Director, U.S. Department of Labor re OFCCP Compliance Evaluation of Signal International

# <u>TABLE OF AUTHORITIES</u>

**Page**

<u>Cases</u>

***Burleson v. Tex. Dep't of Criminal Justice*,**
   393 F.3d 577 (5 Cir. 2004) ...................................................................... 15

***Chellen v. John Pickle Co*.,**
   446 F. Supp. 2d 1247 (N.D. Okla., 2006) ............................................... 11

***Christopher v. SmithKline Beecham Corp*.,**
   -- U.S. --, 132 S. Ct. 2156, 183 L. Ed. 2d 153 (2012) ............................. 18

***Daubert v. Merrell Dow Pharm., Inc*.,**
   509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) ............................... passim

***Dearmond v. Wal-Mart La. LLC*,**
   335 Fed. Appx. 442 (5th Cir. 2009) ........................................................ 17

***Farmer v. DirectSat USA, LLC*,**
   2013 U.S. Dist. LEXIS 39912 (N.D.Ill. March 22, 2013) ........................ 10

***Johnson v. Big Lots Stores, Inc*.,**
   76 Fed. R. Evid. Serv. 372, 2008 U.S. Dist. LEXIS 35316 (E.D.La. April 29, 2008) ........ 2, 5, 8

***Kumho Tire Co. v. Carmichael*,**
   526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) ............................... passim

***Lackey v. SDT Waste and Debris Servs., LLC*,**
   No. 11-1087, 2014 U.S. Dist. LEXIS 108272  (E.D. La. Aug. 6, 2014) ................................. 10

***LecTec Corp. v. Chattem, Inc*.,**
   2011 U.S. Dist. LEXIS 156898 (E.D.Tex. Jan. 4, 2011) ......................... 17

***Mathis v. Exxon Corp*.,**
   302 F.3d 448 (5 Cir. 2002) ...................................................................... 15

***McDowell v. Atl. Sounding Co*.,**
   2012 U.S. Dist. LEXIS 65463 (E.D.La. May 10, 2012) ........................... 3, 4, 15, 16

*Mobil Exploration & Prod. v. A Z/Grant Int'l Co.*,
   1996 U.S. Dist. LEXIS 5567 (E.D. La., Apr. 18, 1996) ........................................................ 6

*Neal v. City of Hempstead*,
   2014 U.S. Dist. LEXIS 110367, 2014 WL 3907785 (S.D.Tex. Aug. 11, 2014)........................ 7

*Rushing v. Kansas City Southern Ry.*,
   185 F.3d 496.................................................................................................................................... 2

*Soler v. G. & U., Inc.*,
   833 F.2d 1104 (2nd Cir. 1987)................................................................................................... 13

*Southern Pacific Co. v. Joint Council Dining Car Employees*,
   165 F.2d 26 (C.A. 9) .................................................................................................................... 12

*Trist v. Child*,
   88 U.S. 441, 22 L. Ed. 623 (1874)............................................................................................ 12

*United States v. Moore. See United States v. Moore*,
   997 F.2d 55 (5th Cir. 1993)........................................................................................................... 6

*Walker v. WTM, Inc.*,
   2010 U.S. Dist. LEXIS 104455 (S.D.Miss. Sept. 30, 2010) .................................................... 18

*Walling v. Alaska Pacific Consolidated Mining Co.*,
   152 F.2d 812 (C.A. 9) .................................................................................................................. 12

*Wallis v. Hornbeck Offshore Operators*,
   2014 U.S. Dist. LEXIS 105820 (E.D.La. Aug. 1, 2014)........................................... 4, 7, 12, 16

*Ways v. City of Lincoln*,
   206 F. Supp. 2d 978 (D.Neb. 2002) ............................................................................................ 8

*Wells v. State Farm Fire & Cas. Co.*,
   2013 U.S. Dist. LEXIS 161150 (E.D.La. Nov. 12, 2013, J.). .................................................. 18

## <u>Statutes</u>

29 C.F.R. § 531.31 ................................................................................................................... 12, 13

**Rules**

Fed. R. Evid. 701 ................................................................................................................ 2

Fed. R. Evid. 702 ................................................................................................... 2, 14, 15

Fed. R. Evid. 703 ................................................................................................... 2, 12, 17

**Treatises**

4 Weinstein's Federal Evidence § 702.02[6][a] ........................................................ 17

4 Weinstein's Federal Evidence § 704.04[1] ........................................................ 5, 7, 9

4 Weinstein's Federal Evidence § 704.04[2][b] .......................................................... 7

**MAY IT PLEASE THE COURT:**

## I.   INTRODUCTION

Defendants, Signal International, LLC ("LLC"), Signal International, Inc. ("Inc."), Signal International Texas, G.P. ("GP"), and Signal International Texas, L.P. ("LP") (hereinafter collectively "Signal"), respectfully oppose, for the reasons stated more fully below, Plaintiffs' Motion (Doc. #152) to Exclude Testimony from Signal's FLSA Expert, Don Strobel.

## II.   ARGUMENT

### a.   *Mr. Strobel's Opinion is Relevant to Possible Claims*

Plaintiffs seek exclusion of the expert testimony of Don Strobel ("Mr. Strobel"), Signal's expert on the Fair Labor Standards Act ("FLSA"), on the grounds of relevance, as the Complaint does not allege claims under the FLSA.  While it is true that *currently* no FLSA claim is pending in this case, that is due to the fact that the Court has not yet ruled on plaintiffs' motion for leave *to add* an FLSA claim (*see* Pls.' Mot. for Leave to File First Am. Compl., ECF No. 82).

Unsure that the Court will deny plaintiffs' motion, Signal has designated Mr. Strobel as its expert witness out of an over-abundance of caution.  Of course, should the Court grant plaintiffs' motion for leave to amend the Complaint, then the FLSA will certainly be at issue in this case (*see* Am. Compl. 51-54 ¶¶ 289-304, ECF No. 83.), and plaintiffs' motion to exclude on this ground will be moot.

### b.   *Mr. Strobel is Qualified*

As Exhibit A reflects, for more than three decades, Mr. Strobel was DOL Wage and Hour, which enforces FLSA. Mr. Strobel was for a decade an Investigator and for the next twenty years, the Assistant District Director. Thus, Mr. Strobel is qualified to help a jury understand the issues

that arise, in this case, under the Act and how to resolve them. *Cf*. *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 591-92, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (testimony of expert must "fit").[1]

As Exhibit A also proves, Mr. Strobel has often been accepted by federal courts as an expert in the FLSA field.

The Federal District Court for the Eastern District of Louisiana addressed the qualifications of a former Wage and Hour Division expert in an FLSA collective action known as *Johnson v. Big Lots Stores, Inc*., 76 Fed. R. Evid. Serv. 372, 2008 U.S. Dist. LEXIS 35316, *48 (E.D.La. April 29, 2008). Here, the court expressed the view that such experts are qualified, or at least marginally qualified, to offer opinion testimony of the kind Mr. Strobel proposes to provide in this case; other qualification questions go to weight.[2] This Court should conclude accordingly that Mr. Strobel is qualified.

### c.    *Mr. Strobel Fits*

The Amended Complaint alleges that Signal violated the Fair Labor Standards Act in a

---

[1] *See Daubert*, *supra*, at 591-92 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance. 'Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.' (Citations omitted). The consideration has been aptly described by Judge Becker as one of 'fit.' (Citation omitted). 'Fit' is not always obvious, and . . . validity for one purpose is not necessarily . . . validity for other, unrelated purposes. (Citation omitted). . . . Rule 702's 'helpfulness' standard requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility. That these requirements are embodied in Rule 702 is not surprising. Unlike an ordinary witness, *see* Rule 701, an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation. See Rules 702 and 703.").

[2] *Id*. ("questions about his experience 'go to his credibility, not to the threshold issue of his qualifications.' *Id*. *See also Rushing v. Kansas City Southern Ry.*, 185 F.3d 496 at 507 n.10 (explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination). Although Bremer is removed from working closely with the FLSA regulations, his two decades of experience with the Department of Labor 'reasonably indicate' that he qualifies as an expert, albeit marginally so.").

multitude of ways.  **See** Am. Compl. (Doc. #83), at ¶¶ 289, *et seq.* **See also id.**, at ¶¶ 297-298.[3]

Signal retained Mr. Strobel to assist Signal, as an expert witness, with regard to these claims.

As a result of long experience, Mr. Strobel is well positioned to help the jury understand the disputes they need to resolve. As an expert witness regarding some of the fact issues that are mixed with questions of FLSA liability, Mr. Strobel should be allowed to testify to the jury and help it with any FLSA claim brought by plaintiffs. Jurors will welcome the help. **Cf**. **McDowell v. Atl. Sounding Co.**, 2012 U.S. Dist. LEXIS 65463, *5-6 (E.D.La. May 10, 2012) ("Mr. Borison's specialized knowledge and experience in the area of marine safety will help shed light on these issues. Thus, the opinions contained within Mr. Borison's report will assist the Court in its role as trier of fact. Therefore, Mr. Borison's report meets the two-pronged test from <u>Daubert</u> for the admissibility of expert testimony.").

### d.    <u>Mr. Strobel's Opinions</u>

Mr. Strobel's report, attached hereto as Exhibit A, sets forth the opinions that Mr. Strobel will be called to offer; he addresses three FLSA issues:

---

[3] "**297**. Defendant Signal violated 29 U.S.C. § 206 by failing to pay Plaintiffs and others similarly situated the applicable minimum wage for every compensable hour of labor they performed. **298**. The violations of the FLSA minimum wage requirement set forth in the preceding paragraph resulted from Defendant Signal's unlawful deductions from the wages of Plaintiffs including, inter alia: a. Expenses and fees for point-of-hire travel, visa and other immigration-related matters, and recruitment, all of which were services furnished primarily for the benefit or convenience of Defendant Signal. These expenses and fees also were services furnished in violation of federal, state, or local law, including, inter alia, the TVPA and the RICO as set forth supra including in  157.  b. Tools of the trade that were furnished primarily for the benefit or convenience of Defendant Signal as set forth in ¶ 158 *supra*. c. Housing furnished primarily for the benefit or convenience of Defendant Signal. The conditions and overcrowding of the housing also violated federal, state, and/or local law, including, *inter alia*, the OSHA as set forth *supra*, including in ¶¶ 140-153. d. Board furnished primarily for the benefit or convenience of Defendant Signal. Upon information and belief, Defendant Signal did not obtain the required permit(s) to furnish the board at their Texas man camp, and the condition and sanitation of the board further violated federal, state, and/or local law including, *inter alia*, the U.S. Food and Drug Administration Food Code, as adopted and modified by Texas Food Establishment Rules, as set forth in ¶¶ 105-152, *supra*."

1.   Certain bonuses were discretionary. He shows how and why the bonuses factor into evaluating the manner in which the Plaintiffs were paid and whether those payments satisfied the Act.

2.   Deductions for housing and accommodations were reasonable from the Act's vantage point.

3.   It would be wrong to conclude that Signal's deductions for housing and accommodations were violative of the FLSA based on seriously substandard housing.

*See* Exhibit A, attached hereto.

### e.   *The Present Motion Should Be Denied*

The present motion should therefore be denied. ***See McDowell***, ***supra***. Mr. Strobel is qualified. Mr. Strobel is helpful. Mr. Strobel is reliable. Mr. Strobel is everything he needs to be enough to testify as an expert witness on the issues specified before. ***Id***. ***See also Wallis v. Hornbeck Offshore Operators***, 2014 U.S. Dist. LEXIS 105820, \*3-\*4 (E.D.La. Aug. 1, 2014).[4]

### f.   *Exhibits*

The exhibits to this brief are:

1.   Exhibit A, Mr. Strobel's report, including his CV.

2.   Exhibit B, Correspondence regarding the planed dismantling of facility and video screenshots, *in globo*.

---

[4] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact. Thus, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable. 'It is the role of the adversarial system, not the court, to highlight weak evidence.'" ***Id***. (internal citations omitted).

3. Exhibit C, December 29, 2010, Correspondence from Darrell Allen, Assistant District Director, U.S. Department of Labor re: OFCCP Compliance Evaluation of Signal International.

g.     **_Discussion_**

i.     **_Introduction_**

In Doc. #152, Plaintiffs seek to exclude the testimony of Mr. Strobel—who has testified as an expert witness in multiple federal courts—on the ground that his proposed, opinion testimony consists almost entirely of impermissible legal conclusions. This position lacks merit for the following reasons.

First, the language of Mr. Strobel's report is, to an expectable degree, a function of the language of the field, a field pervasively regulated by Congress and Wage and Hour. The FLSA is innately complex and technical. The Court should accordingly be flexible in admitting opinion testimony about the Act. **_See Kumho_**, **_supra_** (when non-scientists are subject of motion to exclude, Court should approach flexibly the question of whether Rules of Evidence appear satisfied). **_Cf._** **_Johnson_**, **_supra_**, at *32-*33.[5]

Some degree of overlap with legal concepts is unavoidable. **_Cf._** 4 Weinstein's Federal Evidence § 704.04[1] (Lexis 2014) ("Although 'matters of law' are generally inappropriate subjects for expert testimony, there may be 'instances in rare, highly complex and technical matters

---

[5] "Plaintiffs argue that Big Lots' profit motive is irrelevant to whether it willfully misclassified the assistant manager position as an exempt executive employee. Plaintiffs correctly state the legal standard for determining whether an employer willfully violated the FLSA. (Citation omitted). . . . [I]n order to find that an employer willfully violated the FLSA, the plaintiff must show that 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [**FLSA**].' (Citations omitted). Willfulness in this context, the Supreme Court explained, is conduct that is 'not merely negligent' but instead closer to the word's ordinary meaning: 'voluntary,' 'deliberate,' and 'intentional.' _Id._" **_Id_**.

where a trial judge, utilizing limited and controlled mechanisms, and as a matter of trial management, permits some testimony seemingly at variance with the general rule.'").

### ii. *Plaintiffs Should Focus More on Substance*

Moreover, Plaintiffs fail to focus properly on the substance of Mr. Strobel's opinions. Mr. Strobel's report offers opinions, not in legal terms, but using plain language: for example, bonuses were not "promised" to employees but rather "decided by the employer."

In this case, Mr. Strobel offers the opinion that the wage deductions for housing were "reasonable." The test the law establishes, however, is one of reasonableness. Therefore, such opinion "fits." In addition, the question of fact that the jury must resolve is this one. It is difficult if not impossible for an expert to address this subject under the Act without resorting to a reference to reasonableness. The Fifth Circuit understands the problem and is sympathetic, as Judge Weinstein advises. *Id*.

The Fifth Circuit encountered a similar problem in a tax case, *United States v. Moore*. *See United States v. Moore*, 997 F.2d 55, 58-59 (5th Cir. 1993). There, it permitted analogous opinion testimony on a legal question. The Fifth Circuit endorsed a decision to allow an Internal Revenue Service expert to testify that the defendant's conduct was "willful," as long as this was done without commenting on the defendant's specific intent.

Multiple district courts have issued similar rulings when facing similar problems. *See*, *e.g.*, *Mobil Exploration & Prod. v. A Z/Grant Int'l Co.*, 1996 U.S. Dist. LEXIS 5567 at **5-7 (E.D. La., Apr. 18, 1996) (admitting expert testimony on whether labeling decision was consistent with federal regulations but precluding expert testimony on whether decision violated contract or caused damage).

Directly on point is **Neal v. City of Hempstead**, 2014 U.S. Dist. LEXIS 110367, 2014 WL 3907785 at **15-16 (S.D.Tex. Aug. 11, 2014). Here, in what appears to be a § 1983 case, the Court permitted an expert to testify to the reasonableness of an officer's actions and on what a properly trained officer might do while precluding testimony on whether the officer's behavior was objectively reasonable under the Fourth Amendment.

Federal judges admit expert testimony couched in "words that do not have specialized legal meaning." **See** 4 Weinstein's Federal Evidence, **supra**, at § 704.04[1].[6] Signal maintains that Mr. Strobel falls into this category.

In the final analysis, the Court should err on the side of admission. **See Wallis**, **supra**, 2014 U.S. Dist. LEXIS 105820, at *3-*4.[7]

Having reviewed Plaintiffs' payroll documents, for example, including individual employment contracts and documentation of Signal management's determinations on the awarding of bonuses, Mr. Strobel sets forth these opinions: (a) plaintiffs' contracts "cover wages to be paid but do not contain any references of bonuses to be paid"; (b) "the final decision to pay or not pay the bonuses was discretionary by management"; and (c) these policies fit within the meaning of "discretionary"—a term of art that this case must confront as a result of the count in the Complaint invoking the FLSA. **See Ways v. City of Lincoln**, 206 F. Supp. 2d 978, 991 (D.Neb.

---

[6] **See also id**., at § 704.04[2][b] ("It is not always clear whether an opinion constitutes an inadmissible legal conclusion when the testimony concerns words that have both legal significance, and a common meaning. . . . Whether a questionable statement is admissible will depend on how much the court fears the confusion that could arise when the witness conveys different information to lawyers than to jurors. . . . Opinion testimony using legal terms may be admissible if there is no conflict between the legal definition and the meaning of the term in common usage.") (Footnotes omitted).

[7] "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact. Thus, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.' The Court is not concerned with whether the opinion is correct, but whether the preponderance of the evidence establishes that the opinion is reliable. 'It is the role of the adversarial system, not the court, to highlight weak evidence.'" **Id**. (internal citations omitted).

2002) ("expert testimony that purports to explain *the legal meaning of a term* is forbidden . . . but testimony *defining a term of art as it is used within a given field may be allowed*" and that "testimony that *a specific item or event fits within the meaning of a statutory term* may be admissible . . . even if it embraces an 'ultimate issue'") (emphasis in original).

### iii.    Discretion is a Question of Fact in this Case

Employers who fall under the jurisdiction of the Department of Labor with regard to the FLSA are regulated heavily. ***See Johnson***, ***supra***. Linguistically, Mr. Strobel's report inevitably reflects this truism. A certain degree of overlap between the language of the field, and the language of an expert *in* the field, is to be expected and is unavoidable.

Just so, in relevant part, the Amended Complaint alleges the following relative to the FLSA Count, the Eighth Claim for Relief, ¶¶ 289, *et seq*., factually:

> 158. During the first two weeks of employing Plaintiffs in the United States, Defendant Signal deducted approximately $100 to $200 each week from Plaintiffs' checks for job-related tool kits which Signal required Plaintiffs to purchase from Signal.
> 290. Over the course of their employment at Defendant Signal, Plaintiffs were routinely awarded a fifty cent per hour "safety bonus" for workweeks when they were not written up for violations of Defendant Signal's safety rules.
> 291. The safety bonus Defendant Signal paid the Plaintiffs was in addition to their regular hourly wage.
> 292. Upon information and belief, the safety bonus ***was non-discretionary*** with respect both to the decision to pay the bonus and to the amount of the bonus.
> 293. Defendant Signal paid the safety bonus to the Plaintiffs pursuant to a prior agreement or promise causing the Plaintiffs to expect the bonus payments regularly if they met the required safety criteria.
> 294. During workweeks when the Plaintiffs worked more than 40 hours, Defendant Signal did not pay one and one-half times the amount of the safety bonus for all overtime hours worked.

***See*** Doc. #83, ¶¶ 158, 290-294.

In setting forth their damages claim under the Eighth Claim for Relief in legal, FLSA terms, Plaintiffs then allege, in relevant part:

> 300. The violations of the FLSA overtime requirement set forth in the preceding paragraph resulted from, *inter alia*: a. Defendant Signal's failure to pay one and one-half the regular rate of pay for overtime hours during workweeks when Plaintiffs received a safety bonus premium, as set forth in ¶¶ 289-293, *supra*.

*See* Doc. #83, ¶ 300.

In this manner, Doc. #83 proves persuasively that it will be impossible for the Plaintiffs to present their claim, above, to this jury without addressing their contention that Signal did ***not*** have the discretion to withhold safety bonus.

It is unjust to allow the Plaintiffs to prosecute this claim under the FLSA without affording Signal the right to assist this jury with the nature of the claim. To understand this evidence and these concepts, Signal must be able to address its discretion. Critically, under Rule 704, federal law does not require the Court to refuse this common sense right to Signal. To the contrary, as pointed out before, the leading treatise on this subject acknowledges the Court's power to rule that the technical nature of this subject demands flexibility. *See* 4 Weinstein's Federal Evidence, ***supra***, at § 704.04[1] (though matters of law are generally inappropriate subjects for expert testimony, there may be instances in highly complex and technical matters where trial judge as matter of trial management may permits some testimony analogous to legal concepts).

The jury will plainly require help regarding discretion and whether Signal possessed it. It is not reasonable, under these circumstances, to ask Signal to avoid the term. Therefore, opinion testimony about discretion is admissible. *Id*. Signal can mold the testimony to avoid too much emphasis on legal terminology, quintessential subject-matter for conference with and guidance from the Court.  But Mr. Strobel should be permitted to address discretion as an opinion witness, subject to the Court's control. *Id*.

### iv.     *Opinion Evidence Concerning Other Fact Questions*

Likewise, Mr. Strobel opines that "the payroll deductions of $35.00 per day for the employer providing housing" were "reasonable" in the industry in light of the amenities offered and immediate housing needs of the Gulf Coast region following the hurricanes.

Further, he states that the payroll deductions did "not cover the employer's actual costs" for the housing offered.

Finally, Mr. Strobel states that he saw no conditions in Signal's housing facility that "would be anywhere close" to fitting within the meaning of the statutory term "seriously substandard." Rather than focus on the substance of the opinions in Mr. Strobel's report, plaintiffs instead seize on one statement in the "Purpose" section to dismiss as legal drivel, the entirety of the report, i.e., that he sought "to determine the compliance status" of Signal's Pascagoula, Mississippi, and Orange, Texas, operations.

When examined with care, however, Mr. Strobel's opinions fall short of legal conclusions. They are a far cry from those disallowed by Fifth Circuit courts in the opinions referenced above.

And although, as plaintiffs point out, Mr. Strobel's opinions were excluded in a prior case before the Eastern District of Louisiana on the ground of being too conclusory, those opinions were markedly distinguishable. In *Lackey*, the Plaintiffs retained Mr. Strobel. On their behalf, Mr. Strobel offered an expert report, concluding that the defendants had "'willfully violated the FLSA.'" *See Lackey v. SDT Waste and Debris Servs., LLC*, No. 11-1087, 2014 U.S. Dist. LEXIS 108272, at \*21-23 (E.D. La. Aug. 6, 2014) (noting that the opinions were "precisely the ultimate factual determinations to be made by the jury"). That terminology does not appear in this case.

Likewise, in *Farmer v. DirectSat USA, LLC*, 2013 U.S. Dist. LEXIS 39912, \*26-27 (N.D.Ill. March 22, 2013), the Court ruled inadmissible the proposed expert testimony of another

ex-Wage and Hour Division consultant who proposed to testify that "'[m]y review and analysis of the records and documents in this case discloses that violations of the FLSA have occurred.' (Becker Report 3, 12, 13.) Becker also concludes that 'no overtime exemptions [from FLSA requirements] could be applied' to DirectSat employees."

The Court concluded, "[t]hese are legal conclusions that are inappropriate for expert testimony." *Id*.

Mr. Strobel's opinions are not stated in those terms.

In addition, in a fairly notorious case somewhat like the present one that was tried to the bench and decided in favor of the Indian employees, *i.e*., *Chellen v. John Pickle Co*., 446 F. Supp. 2d 1247 (N.D. Okla., 2006),[8] the Court received testimony from an expert for the EEOC as to the FLSA. The expert testified on the subject of offsets for housing and whether they were authorized by the FLSA. *See id*. at 1257.[9]

*Chellen* should convince this Court that Mr. Strobel's proposed testimony is thus admissible. If the EEOC can offer expert testimony that an employer violated the FLSA relative to Indian guestworkers with regard to supplied housing, surely the employer in such a case has a right to equivalent expert testimony.

---

[8] From the series of reported cases to which this litigation gave rise, one learns that *Chellen*, which was based, when it was still in business, in Oklahoma, designed and fabricated products for use in the petrochemical and power industries. These were custom-made products corresponding to four areas: pressure vessel, structural, production equipment, and special products.

[9] "The EEOC's expert witness testified that offsets for housing against FLSA wages are allowed to an employer where the benefit is primarily to the employee as opposed to the employer. If allowed, an offset for housing is calculated as (a) the cost of the structure divided by the number of employees; (b) the fair value of the housing; or (c) the reasonable value charged by the employer. Ph. II Tr. at 926. However, the expert concluded that the costs for housing provided by defendants to the *Chellen* plaintiffs should not offset the minimum and overtime wages owed. He reasoned that: living conditions in the dormitory were sub-standard; the *Chellen* plaintiffs did not use the facility voluntarily; and the defendants used an arbitrary 'rental' cost in calculating what they argued was a fair market value for the housing. Ph. II Tr. at 924-28. The Court finds that JPC and John Pickle are not entitled to an offset for housing." *Id*.

The law can no more be a respecter of persons with regard to expert evidence than it can otherwise. *See Trist v. Child*, 88 U.S. 441, 453, 22 L. Ed. 623 (1874) ("The law is no respecter of persons.").

### v.     *Volume of Housing in the Town*

Plaintiffs are very upset that Mr. Strobel's opinion with regard to payroll deductions refers to a serious shortage, in the towns, of housing, in both locations. See Exhibit A, at p. 4. Signal did not hire Mr. Strobel to establish this point as a factual matter.

Still, as an expert, Mr. Strobel is allowed, as the Court knows, to rely on what other witnesses, including experts, have said about a fact, "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject . . ." *See* Fed. R. Evid. 703 (Lexis 2014). Mr. Strobel can deal with this foundation on cross if this becomes an issue at trial. But this is not a basis for excluding him. *See Wallis*, *supra*.

### vi.    *Reliability and Seriously Substandard Housing*

#### a.     *Introduction*

Plaintiffs urge the Court to preclude opinion testimony from Mr. Strobel on the issue of whether the Plaintiffs were provided with seriously substandard housing.[10] As a matter of law, with regard to the FLSA, Signal may not deduct, from wages, sums associated with the cost of

---

[10] When Mr. Strobel referred to the relevant regulation in his report, a typo arose. Mr. Strobel referred to 29 C.F.R. § 531.35 but meant § 531.31. *See* Exhibit A, p. 4-5. The regulation reads: "'Customarily' furnished. The reasonable cost of board, lodging, or other facilities may be considered as part of the wage paid an employee only where 'customarily' furnished to the employee. Where such facilities are 'furnished' to the employee, it will be considered a sufficient satisfaction of this requirement if the facilities are furnished regularly by the employer to his employees or if the same or similar facilities are customarily furnished by other employees engaged in the same or similar trade, business, or occupation in the same or similar communities. *See Walling v. Alaska Pacific Consolidated Mining Co.*, 152 F.2d 812 (C.A. 9), *cert. denied*, 327 U.S. 803; *Southern Pacific Co. v. Joint Council Dining Car Employees,* 165 F.2d 26 (C.A. 9) 7 W.H. Cases 536. Facilities furnished in violation of any Federal, State, or local law, ordinance or prohibition will not be considered facilities 'customarily' furnished." ***See*** http://www.gpo.gov/fdsys/pkg/CFR-2012-title29-vol3/xml/CFR-2012-title29-vol3-sec531-31.xml.

"seriously substandard" housing. *See* Exhibit A, p. 5. ***See also Soler v. G. & U., Inc.***, 833 F.2d 1104, 1110-11 (2nd Cir. 1987).[11]

Plaintiffs base their request for the exclusion of this opinion testimony on two pillars: first, they contend that the opinion intrudes on the province of the Court. Second, Plaintiffs maintain that such opinion is unreliable, both innately and as a consequence of Mr. Strobel's reliance on video.

### b.    *The Complaint Makes "Substandard" a Question of Fact*

This opinion is not a legal one. To the contrary, ironically, the Amended Complaint itself negates the contention that Mr. Strobel's opinion constitutes testimony concerning a point of law. It does this by explicitly labeling substandardness a matter of fact. In connection with the FLSA Claim, the factual portion of Doc. #83 alleges:

> Defendant Signal deducted labor camp fees of approximately $35 per day ($245 per week, or approximately $1,050 per month) from Plaintiffs' paychecks for these ***substandard*** accommodations and meals.

*See* Doc. #83, ¶ 152 (emphasis added).

In association with this allegation of fact, the FLSA portion of the Amended Complaint then alleges, in relevant part: "The violations of the FLSA minimum wage requirement set forth in the preceding paragraph resulted from Defendant Signal's unlawful deductions from the wages of Plaintiffs including, *inter alia*: . . . c. Housing furnished primarily for the benefit or convenience of Defendant Signal. ***The conditions*** and overcrowding of the housing also violated federal, state,

---

[11] ". . . the on-site housing provided comradeship to many who did not speak English; and, to the extent that the housing was shown to be substandard, the Administrator limited the amounts the growers could credit for such housing against the workers' wages." *Id*. (Footnote 8 omitted).  The text of footnote 8 reads: "This is consistent with 29 C.F.R. § 531.31, which states that facilities furnished in violation of any Federal, State, or local law, ordinance or prohibition will not be considered facilities 'customarily' furnished."

and/or local law, including, *inter alia*, the OSHA as set forth *supra*, including in ¶¶ 140-153." ***See***
Doc. #83, at ¶ 298(c) (emphasis added).      It is thus apparent that to recover damages from
Signal under the FLSA as a consequence of the allegedly "substandard" "condition[]" of the
housing for which Signal implemented deductions from wages, Plaintiffs will beseech the jury to
find ***factually*** that the housing was "substandard." This is a term they themselves use, factually, to
characterize the housing provided by Signal, in the factual portion of Doc. #83.

There cannot be one standard, with regard to what is fact and what is law, for Plaintiffs and
a different standard for Signal. The law is no respecter of persons. Plaintiffs will present
substandard as a question of fact. Doc. #83 is dispositive on this point on its face. Signal has a
corresponding right to deal with "substandard" as a fact question through Mr. Strobel, who
therefore does not encroach impermissibly on the province of the Court.

### c.    *Kumho/Experience as Reliability*

The other accusation the Plaintiffs proffer against Mr. Strobel is that he proposes to testify
to opinion concerning the housing unreliably. The answer to this charge is a prototypical one for a
federal court, as ***Kumho*** illustrates; and this Court relies on ***Kumho*** with some frequency.[12]

***Kumho*** illustrates that Mr. Strobel's decades of Wage and Hour experience may well equip
with the years of knowledge and experience needed to address "substandardness" reliably. The
pivotal factor is one he confronts in his report. It is that as a DOL enforcement officer, he addressed

---

[12] "This case requires us to decide how *Daubert* applies to the testimony of engineers ***and other experts who are not
scientists***. We conclude that *Daubert's* general holding -- setting forth the trial judge's general 'gatekeeping'
obligation -- applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical'
and 'other specialized' knowledge. *See* Fed. Rule Evid. 702. We also conclude that a trial court may consider one or
more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's
reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert's* list of specific factors
neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the
same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability
determination." ***See*** *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-142, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)
(emphasis added).

this very issue from time to time. *See* Exhibit A, at p. 5 ("And, it has been my experience when I was with the Wage and Hour Division . . . that he agency would not disallow a reasonable deduction even if the housing facility had some violations that were not 'seriously substandard.'"). *See also McDowell v. Atl. Sounding Co.*, *supra*, 2012 U.S. Dist. LEXIS 65463, at *3-4.[13]

The Court should consider further that there is no evidence whatever that the DOL deemed the charge the Plaintiffs level at Signal housing-wise true.

In this sense, the question was thoroughly testable. There is no evidence, however, that the DOL was ever challenged by the Plaintiffs or their allies and acolytes to test the postulate the Plaintiffs now advance. The DOL has looked at Signal over the years, as Exhibit C reflects.  This Court should therefore conclude that there is a sense in which this *Daubert* variable, which is usually associated with the hard sciences, favors Signal.

In addition, experientially, the thrust of Mr. Strobel's report is that Wage and Hour would not have considered the allegation of the Plaintiffs with regard to substandard housing credible or persuasive. The available evidence preponderates in favor of the view, therefore, that Mr. Strobel's view is the more generally accepted one. His view is thus reliable. This second *Daubert* factor accordingly favors Signal.

---

[13] "The Federal Rules of Evidence govern defendants' motion to exclude the reports and testimony of plaintiff's experts. *See Mathis v. Exxon Corp*., 302 F.3d 448, 459 (5 Cir. 2002). Rule 702 provides: 'If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.' This rule applies not only to testimony based on scientific knowledge, but also to testimony of engineers and other experts that is based on technical or specialized knowledge. *See Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 58 (5 Cir. 2004)4; *see also Kumho Tire Co.,* 526 U.S. at 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). This rule requires the trial court to act as a 'gatekeeper,' tasked with making a preliminary assessment to 'determine whether the expert testimony is both reliable and relevant.' *See Burleson*, 393 F. 3d at 584; *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)." *Id*.

Obviously, *Kumho* stands for the proposition that Mr. Strobel's failure to cite to peer-reviewed literature is forgivable. Mr. Strobel is not from the hard sciences. Just as safety expert Borison in *McDowell* did, Mr. Strobel rather falls squarely within the flexible framework to which *Kumho* alluded for non-scientists. *Cf*. *McDowell*, *supra*, at *5-6 (touching safety expert's ability to testify as expert).[14]

On direct, Signal will elicit testimony from Mr. Strobel concerning his experience with this issue at Wage and Hour. It will also elicit evidence on how his office examined serious, alleged housing deficiencies.

Coupled with the record that shows that the DOL did not cite Signal for the deficiency the Plaintiffs pin their lawsuit on, there are indicia of reliability in this case sufficient to reaffirm Mr. Strobel's right to testify on housing. *See McDowell*, *supra*. Under *Kumho*, the Court should approach Mr. Strobel pragmatically and flexibly, just as it did Mr. Borison in *McDowell*.

As this Court stressed in *Wallis*, the Plaintiffs can pursue their many objections to the soundness of Mr. Strobel's opinions, with regard to reliability, for example, on cross.

### d.   Mr. Strobel Wisely Relied on Contemporaneous Video Evidence

Plaintiffs also take Mr. Strobel to serious task for relying on video evidence. *See* Doc.

---

[14] "With respect to Mr. Borison's report, the Court finds that the opinions contained within his report are reliable and relevant. Mr. Borison claims to be an expert in the area of marine and offshore safety, and in the interpretation and application of the relevant regulations and standards, with years of experience in the field and in providing expert testimony on issues of marine safety, as well as access to manuals and guides on marine safety and industry standards. Neither the safe operation of a pneumatic impact wrench (including which parts of the tool are necessary and which are not), nor the safety issues or industry standards implicated by an operation like the one undertaken by plaintiff, are 'common sense' issues with which the Court is readily familiar, and Mr. Borison's specialized knowledge and experience in the area of marine safety will help shed light on these issues. Thus, the opinions contained within Mr. Borison's report will assist the Court in its role as trier of fact. Therefore, Mr. Borison's report meets the two-pronged test from *Daubert* for the admissibility of expert testimony. This is a bench trial, and the Court can make determinations as to Mr. Borison's credibility as an expert witness, and assign due weight to his testimony, when he testifies before the Court at trial." *Id.* (internal citation omitted).

#152, at pp. 3-4. This criticism is without merit.

As Exhibit B *in globo* attached hereto shows, the video evidence, to a not insignificant degree, was created jointly; furthermore, the video was contemporaneous and hence a plus on the reliability scale.

The Court has the leeway to consider anything it deems appropriate to resolve the present motion.[15]

Exhibit B attached hereto *in globo* addresses this criticism. The Exhibit refers to a discussion of the fact that the facility was in 2008 being dismantled. Exhibit B consists of letters from Signal to other counsel and in some cases from other counsel to Signal from April to June of 2008 concerning the planned dismantling, in both places, of the facility. There was thus a need to preserve the evidence and avoid any charge of spoliation.

In Exhibit B, there are e-mails from opposing counsel concerning the fact that they were bringing videographers. There are, in Exhibit B, also screenshots from the video – May is Texas and June Pascagoula – showing that the video was created in 2008. The video is therefore contemporaneous. The video thus enhances the reliability of Mr. Strobel's effort, not the other way around.

Rule 703 is satisfied when "[a]n expert . . . base[s] an opinion on facts or data . . . that the expert has been made aware of," and accordingly, courts in the Fifth Circuit have held that expert opinions based on photographic evidence can be reliable and admissible. ***See LecTec Corp. v. Chattem, Inc.***, 2011 U.S. Dist. LEXIS 156898, at **4, **9 (E.D.Tex. Jan. 4, 2011) (expert's

---

[15] ***See Kumho***, 526 U.S. at 152 ("we conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."); ***Dearmond v. Wal-Mart La. LLC***, 335 Fed. Appx. 442, 445 (5th Cir. 2009) (quoting ***Kumho*** concerning "leeway" granted trial court to decide how to evaluate reliability of expert testimony); 4 Weinstein's Federal Evidence § 702.02[6][a] (Lexis 2014) (court authorized to consult "information in pretrial disclosures pursuant to Civil . . . Rules of Procedure.").

reliance on photographs of gel penetration depth measurement, and not first-hand measurements, judged sufficient where "the methodology for analyzing photographs . . . can be tested at trial, particularly because the photos as issue will be available for the jury to examine."); ***Walker v. WTM, Inc.***, 2010 U.S. Dist. LEXIS 104455, at **13 (S.D.Miss. Sept. 30, 2010) (denying motion to exclude expert opinion based on expert's reliance on photographs holding "opinions of the expert may present fertile grounds for cross-examination but they are not excludable under the law").

Similarly, this Court has held that "quarrels . . . with the scope of the facts [the expert] considered, and therefore the completeness of the [expert opinion] formed, go to the weight, not the admissibility of [that] testimony." ***Wells v. State Farm Fire & Cas. Co.***, 2013 U.S. Dist. LEXIS 161150, *3-*4 (E.D.La. Nov. 12, 2013, J.).

## III.   <u>CONCLUSION</u>

With regard to what fairness and justice require from a Court facing a ***Daubert*** motion as to a complex and technical issue, an analogy should be drawn to the maxim that the regulated are, as a matter of constitutional law, entitled to fair warning with regard to prohibited conduct. ***See Christopher v. SmithKline Beecham Corp***., -- U.S. --, 132 S. Ct. 2156, 2167, 183 L. Ed. 2d 153 (2012) ("agencies should provide regulated parties 'fair warning of the conduct [a regulation] prohibits or requires.' (Citation and footnote omitted and brackets in original). Indeed, [not doing so] would result in precisely the kind of 'unfair surprise' against which our cases have long warned.") (citations omitted).

Robbing an expert of the right to use the language of the field when the field is this technical and this arcane is unjust. For all these reasons, the present motion should be denied. It should be denied because, with regard to Mr. Strobel, ***Kumho*** recommends flexibility and pragmatism. Signal prays for order accordingly.

Respectfully submitted,


*/s/ Erin Casey Hangartner*
Erin Casey Hangartner, La. Bar No. 24768
Alan Dean Weinberger, La. Bar No. 13331
Hal D. Ungar, La. Bar No. 31344
Elham R. Rabbani, La. Bar No. 33322
Brian C. Roux, La. Bar No. 35298
Lance R. Rydberg, La. Bar No. 02089
Mitchell P. Hasenkampf, La. Bar No. 32870
Robert L. Keller III, La. Bar No. 35188
Kevin P. Maney, La. Bar No. 33956
Lauren Masur Davis, La. Bar No. 34669
HANGARTNER RYDBERG & TERRELL, LLC
701 Poydras Street, Suite 310
New Orleans, LA 70139
Telephone: (504) 522-5690
Facsimile:  (504) 522-5689
ehangartner@hanrylaw.com
aweinberger@hanrylaw.com
hungar@hanrylaw.com
erabbani@hanrylaw.com
broux@hanrylaw.com
lrydberg@hanrylaw.com
mhasenkampf@hanrylaw.com
rkeller@hanrylaw.com
kmaney@hanrylaw.com
lmasur@hanrylaw.com


And

19

Patricia A. Bollman, La. Bar 17563
James L. Cornblatt (*Pro Hac Vice*)
A Professional Law Corporation
Post Office Box 13707
New Orleans, LA   70185
Telephone:  (504) 218-5887
Facsimile:   (504) 304-0890
patricia@bollmanfirm.com
cornblatt25@gmail.com

***Counsel for Signal International, L.L.C.***
***Signal International, Inc.,***
***Signal International Texas, G.P., and***
***Signal International Texas, L.P.***

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2014, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to non-CM/ECF participants.

*/s/ Erin Casey Hangartner*
ERIN CASEY HANGARTNER

20