**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | |
|---|---|
| REJI SAMUEL, ATHA MOHAMMAD ABDUL, KESAVARAO BUNDANKAYALA, RAJU DIVAKARAN, BIJU PERUMPILLY GEORGE, KRISHNA GONTHINA, NAYAPPULLI JAYACHANDRAN, GALLA VENKATA RAMA KRISHNA, SAMUEL JOSE KUMRUMTHODATHIL, LOHITHAKSHAN MADAMPET, JOHNY MANDY MATHAI, BELTHAZAR PETER, MOHANAN BALAKRISHNA PILLAI, SANTHOSH KUMAR RAJENDRAN PILLAI, ABY KARICKATHARA RAJU, SUMESH PORAMBATHUPARAMBIL SUBRAMANIAN, and CHANDRAN SHAJU THANISSERY, <br><br>        Plaintiffs, <br>v. <br><br>SIGNAL INTERNATIONAL L.L.C., SIGNAL INTERNATIONAL, INC., SIGNAL INTERNATIONAL TEXAS, G.P., SIGNAL INTERNATIONAL TEXAS, L.P., MALVERN C. BURNETT, GULF COAST IMMIGRATION LAW CENTER, L.L.C., LAW OFFICES OF MALVERN C. BURNETT, A.P.C., GLOBAL RESOURCES, INC., MICHAEL POL, SACHIN DEWAN, and DEWAN CONSULTANTS PVT. LTD. (a/k/a MEDTECH CONSULTANTS), <br><br>        Defendants. | CIVIL ACTION NO.: 1:13-cv-00323-MAC-ZJH |

**SAMUEL PLAINTIFFS' RESPONSE IN OPPOSITION TO SIGNAL DEFENDANTS'
MOTION IN LIMINE TO EXCLUDE/LIMIT TESTIMONY OF FLORENCE BURKE**

| | |
|---|---|
| KILPATRICK TOWNSEND & <br> STOCKTON, LLP <br>1100 Peachtree Street, Suite 2800 <br>Atlanta, GA 30309-4528 <br>Telephone: (404) 815-6500 <br>Facsimile: (404)-815-6555 <br>bboice@kilpatricktownsend.com <br>bcorgan@kilpatricktownsend.com <br>spangborn@kilpatricktownsend.com <br>sramsey@kilpatricktownsend.com <br>hheindel@kilpatricktownsend.com | William H. Boice <br>Georgia Bar No. 065725 <br>Brian G. Corgan (*Pro Hac Vice*) <br>Georgia Bar No. 187700 <br>Susan W. Pangborn (*Pro Hac Vice*) <br>Georgia Bar No. 735027; CA Bar No. 282533 <br>Shane G. Ramsey (*Pro Hac Vice*) <br>Georgia Bar No. 940547 <br>Heather L. Heindel (*Pro Hac Vice*) <br>Georgia Bar No. 285204 <br>*Remaining Counsel Listed on Signature Page* |

Attorneys for Plaintiffs

Plaintiffs Reji Samuel, et al. ("Plaintiffs") hereby file this their response in opposition to the Signal Defendants' Motion in Limine to Exclude/Limit Testimony of Florence Burke (Doc. No. 161) (the "Motion"), and in support thereof, show the Court as follows:

## I.    INTRODUCTION

Florence Burke is an expert on labor trafficking. She possesses nearly two decades' experience in the field and has firsthand accounts of most of the cases of human trafficking in the United States today. Furthermore, she conducts training for law enforcement officers, foreign officials and other entities, and has been extensively honored for her work on the subject. The Motion does not, and could not, dispute these facts. Ms. Burke is qualified as an expert on labor trafficking by her knowledge, skill, experience and training.

There are two overarching purposes of Ms. Burke's testimony in this case. The first is to provide the trier of fact with background information on the H-2B guestworker visa program and on human trafficking in general. (*See* Expert Report of Florence Burke, 7-12.[1]) The second is to demonstrate to the fact-finder that the facts and circumstances of this case as alleged by the Plaintiffs fit within the typical pattern of human trafficking. Because trafficking in the 21st Century is often more subtle than the chains of slavery in previous centuries, Ms. Burke's testimony on this subject will assist the trier of fact to understand this more nuanced – but still unlawful – form of trafficking. In Section III of her report, titled "Summary of Opinions," Ms. Burke states that "it is my opinion that the Plaintiffs in this case had similar experiences to other trafficking schemes with recognizable fact patterns." (*See* Report, 6.)

Ms. Burke's anticipated testimony further satisfies each and every requirement of Rule 702 of the Federal Rules of Evidence. In particular, Ms. Burke has extensive specialized

---

[1] Ms. Burke's expert report in the above-captioned case is referred to herein as the "Report." A copy of the Report is attached hereto as <u>Exhibit A</u>.

knowledge in an area – labor trafficking – with which a layman has only superficial, if any, understanding. As reference above, her testimony will therefore help the jury to comprehend the evidence presented in this case. Ms. Burke's opinions also rest on a solid foundation of facts and data accumulated over her years as an expert in the field and derived from plaintiff interviews and Plaintiffs' sworn declarations. Finally, Ms. Burke's expert opinions are the product of reliable principles and methods applied in a reliable manner to the facts of this case. In particular, her Report identifies common features of trafficking schemes with recognizable fact patterns and opines on how the facts of this case mirror that pattern. Because her testimony meets each requirement under Rule 702, Ms. Burke's testimony should be admitted and Signal's[2] Motion should be denied.

The foregoing notwithstanding, Signal seeks to limit or exclude Ms. Burke's testimony based upon allegations that it (a) is based on credibility determinations or assumptions regarding certain plaintiffs' statements; (b) is based upon unreliable methodology; (c) speaks to the mental health of Plaintiffs; and (d) calls for legal conclusions. As described below, however, Ms. Burke assumes the truth of Plaintiffs' statements and therefore does not make credibility determinations; uses reliable methodology; will opine not on individual Plaintiff's mental health, but instead on how trafficking schemes like this one affect the mental health of workers such as Plaintiffs; and does not assert legal conclusions. The Motion should accordingly be denied.

---

[2] "Signal" refers collectively to Defendants Signal International, L.L.C., Signal International, Inc., Signal International Texas, G.P., and Signal International Texas, L.P.

## II. ARGUMENT

### A. Ms. Burke's Testimony Satisfies the Standard under Federal Rule of Evidence 702.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *DAC Surgical Partners, P.A. v. United Healthcare Servs., Inc.*, No. 11-cv-01355, 2014 WL 4684834, at *1 (S.D. Tex. July 31, 2014). It applies to "scientific" testimony, as well as to "technical or specialized expert testimony." *Id.* at *1 (citing *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141 (1999)); *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000). Before expert testimony can be admitted, the proponent of the testimony must establish all elements of admissibility under Rule 702 by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Rule 702 first requires that the Court qualify the witness as an expert "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Ms. Burke qualifies, apparently without objection, based on her knowledge, skill, experience and training in the field of labor trafficking. Once qualified as an expert, the witness may testify if:

> (a) [T]he expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* The reliability inquiry under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), must remain flexible, as the means for assessing reliability may depend "on the nature of the issue, the expert's particular expertise, and the subject of [her] testimony." *Kumho Tire Co*, 526 U.S. at 150.

As set forth above, Ms. Burke possesses a wealth of specialized knowledge regarding labor trafficking that will help jurors understand schemes such as this one and their effect on

3

trafficked workers. Moreover, Ms. Burke's opinion rests on data acquired during her years of working with, teaching and researching labor trafficking, as well as facts specific to this case. Finally, Ms. Burke has employed reliable methods to the facts of this case in a reliable manner. Specifically, she details key features of trafficking schemes with recognizable patterns and offers her analysis regarding how the facts of this case fit this pattern. Ms. Burke's Report and testimony thus satisfy every requirement of Rule 702.[3]

### B. Signal Fails to Establish that Ms. Burke's Testimony Should be Limited or Excluded.

As described above, Signal alleges four primary bases for excluding or limiting Ms. Burke's testimony at trial. In its concluding section, Signal also cites an alleged lack of "candor" on the part of Ms. Burke as a basis for exclusion. Each of these issues will be discussed in turn.

> 1. *Ms. Burke Does Not Opine on Witness Credibility, and Questions Relating to the Underlying Factual Assumptions of Ms. Burke's Opinions Should Be Left to the Finder of Fact.*

Ms. Burke does not opine – and is not offering to opine – as to the accuracy or credibility of the Plaintiffs in their depositions and declarations. Neither has Ms. Burke usurped the province of the jury as the trier of fact. Ms. Burke merely relies upon the Plaintiffs' declarations and statements in interviews in forming her opinions, a practice that is common among experts and accepted in the Fifth Circuit. Furthermore, any dispute concerning the bases and sources of her opinions should be left for the consideration of the jury.

---

[3] Signal has challenged only certain of the requirements of Rule 702 for admission of Ms. Burke's expert testimony. Plaintiffs thus conclude that Signal does not take exception to the remaining such requirements. Accordingly, and in an effort not to burden the Court with a discussion of undisputed legal issues, Plaintiffs will address in detail in this Response only those provisions of Rule 702 that Signal alleges to be implicated by Ms. Burke's testimony.

4

Ms. Burke stated clearly in her deposition testimony,[4] that in preparing her Report she assumed the veracity of the statements made by the Plaintiffs:

> A: When I am interviewing plaintiffs for a case such as this I am asked to assume the veracity of the plaintiffs as reflected in the documents provided to me and in my interviews.
>
> Q: So just to clarify, you are saying that you assume the veracity of what the plaintiffs tell you; is that correct?
>
> A: Yes.

(Burke Dep. 50:7-15, Sept. 25, 2014; *see also id.* at 51:24 – 52:3; 96:6-13; 106:20 – 107:3 (similar statements.))[5] By employing this approach, contrary to allegations in the Motion, she expressly *did not* make a determination as to the Plaintiffs' credibility:

> Q: Let me probe that a little bit further. Am I correct that you stated several times that you have not evaluated the credibility, you were not asked to evaluate the credibility of these witnesses; is that correct?
>
> A: Yes.
>
> Q: You didn't make an independent evaluation of their credibility until I asked you to, is that correct?
>
> A: You asked me if I found them to be credible. I am not evaluating their credibility as part of my interview or my report.

(*Id.* at 49:7-20.)

---

[4] Ms. Burke was deposed by oral examination on September 25, 2014 (the "Deposition"). A copy of the transcript of the Deposition is attached hereto as <u>Exhibit B</u>.

[5] Plaintiffs also note that, although the Motion focuses on oral statements by certain plaintiffs, Ms. Burke further reviewed redacted declarations made under penalty of perjury by the majority of the Plaintiffs, as well as the complaint and other information specific to this case. (*See* Report, Ex. 2.) She also reviewed a wealth of sources regarding labor trafficking generally. To the extent Signal's arguments concerning credibility determinations and assumptions seek to question the basis of Ms. Burke's opinions in sufficient facts or data, they must fail.

Courts within the Fifth Circuit have held that experts may properly rely on one version of disputed facts. *Arnold v. Canal Barge Co.,* No. 13-4966, 2014 WL 2465313, at *2 (E.D. La. June 2, 2014) ("[E]xperts may rely on one version of a disputed fact, and 'reliable expert testimony often involves estimation and reasonable inferences from a sometimes incomplete record.'") (quoting *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515-16 (5th Cir. 2013)). The advisory committee notes to the Federal Rules of Civil Procedure further contemplate that experts may "assume the truth of certain testimony or evidence...." *See* Fed. R. Civ. P. 26 advisory committee's note. Moreover, experts commonly and reasonably rely on deposition testimony, declarations, and affidavits in forming their opinions, and such sources are generally considered "sufficiently reliable bases" within the Fifth Circuit and elsewhere. *Metrejean v. REC Marine Logistics, LLC*, No. 08-5049, 2009 WL 3062622, at *3 (E.D. La. Sept. 21, 2009); *see also Dana Corp. v. Am. Standard, Inc.*, 866 F. Supp. 1481, 1501 (N.D. Ind. 1994) (stating that the expert "based his opinions on his understanding of what various depositions reported, and he may do that under Rule 703").

Indeed, so long as an expert does not simply "parrot" statements without analysis or application of her expertise, reliance on testimony or other similar sources in forming an opinion is both commonplace and permitted. *See*, *e.g.*, *Chesapeake La., L.P. v. Innovative Wellsite Sys., Inc.*, No. 12–2963, 2014 WL 4388256, at *1-2 (W.D. La. Sept. 5, 2014) (permitting the use of deposition testimony in an expert opinion because the expert applied his expertise to the facts gleaned from the deposition testimony to reach his opinion, rather than merely "parroting" the testimony). In this case, Ms. Burke discusses the facts as alleged by the Plaintiffs, but goes far beyond simply regurgitating them. Ms. Burke instead relates the facts alleged by the Plaintiffs to her fifteen years of experience working with human trafficking victims to form her opinion that

they fit the pattern of a typical human trafficking scheme. As Ms. Burke states in her Report, "[h]aving considered Plaintiffs' accounts of their experiences, it is my opinion that many of the trafficking factors identified above were present in Defendants' conduct towards them…." (Report, 12.)

Signal devotes several paragraphs of its Motion to *Elat v. Ngoubene*, a case in which Ms. Burke was proffered as an expert. 993 F. Supp. 2d 497 (D. Md. 2014). In *Elat*, the United States District Court for the District of Maryland held that portions of Ms. Burke's proffered opinion in that case were inadmissible, though others were admitted. *See Elat*, 993 F. Supp. 2d at 514-17. In reaching its holding, the *Elat* court recounted deposition testimony given by Ms. Burke that "she believed what [the plaintiff] told [her] about th[e] events and [she] did not believe what . . . [the defendant] said about those events." *Id.* at 513 (internal quotation marks omitted). Ms. Burke had also testified at her deposition in that case that she was a good interviewer who "know[s] by and large when a story holds together, and when it does not," and that as a result, she was "able to determine" if she was being told the truth. *Id.* at 513. The court then stated that "Ms. Burke's explanation of her methodology and the opinions she bases on it demonstrate that her evaluation of the truthfulness of Plaintiff's version of the underlying events as compared to the Defendants' is little different from the way that juries themselves determine credibility from conflicting testimony." *Id.* at 513-14. Based on this analysis, the court held that some of the opinions Ms. Burke sought to offer at trial were inadmissible. *Id.* at 514.

The court's opinion in *Elat* is inapposite to the facts of this case. As she stated repeatedly in her Deposition, Ms. Burke did not make the types of credibility determinations that the court in *Elat* found improper. (*See* Burke Dep. 45:1-52:3.) Ms. Burke merely assumed the truth of plaintiffs' statements for the purposes of rendering her opinion, (*See id.* at 50:7-15.), which she is

7

permitted to do.  Though Signal argues that assuming the truth of a witness's statements for the purposes of rendering an opinion, as Ms. Burke did, is "functionally identical" to impermissibly making her own credibility determinations, this proposition is directly contrary to both logic and relevant case law from within the Fifth Circuit. *See*, *e.g.*, *Arnold*, 2014 WL 2465313, at *2.

To the extent that Signal disputes the veracity of the facts that Ms. Burke assumed to be true, it is free to challenge them at trial.  *See Wallis v. Hornbeck Offshore Operators*, No. 12-536, 2014 WL 3809743, at *1 (E.D. La. Aug. 1, 2014) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight of the evidence rather than its admissibility, and should be left for the finder of fact."); *see also V & S Ice Mach. Co. v. Eastex Poultry Co.*, 437 F.2d 422, 426 (5th Cir. 1971) ("[T]he credit and weight to be assigned to expert testimony are matters entrusted to the sound discretion of the trier of fact.").  As the Supreme Court stated in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" is how one appropriately attacks admissible evidence. 509 U.S. at 596.

> 2. *Ms. Burke's Interview Process was Reliable and Questions Relating to the Bases and Sources of Ms. Burke's Opinions Should Be Left to the Finder of Fact.*

Signal next argues, with no meaningful citations, that Ms. Burke's interview process was unreliable.  As a general matter, the "number of sources on which an expert may reasonably rely is virtually infinite, and such sources include interviews . . . ." *Hecker v. Bay Towing Corp.*, No. 04-1981, 2006 WL 6153347, at *2 (E.D. La. Feb. 8, 2006) (finding that an expert could testify as to a telephone conversation with the plaintiff's neuropsychiatrist) (internal quotation marks omitted).  A number of cases have held that "interviews . . . can be a reliable source of data upon which to base expert opinion," even if not highly focused or systematic. *In re Sulfuric Acid*

8

*Antitrust Litig.*, 235 F.R.D. 646, 656 (N.D. Ill. 2006); *see also 3600 Mich. Co. v. Infra-Metals, Co.*, No. 07-367, 2011 WL 8991, at *5 (N.D. Ind. Jan. 3, 2011) (stating that a number of cases have held that "interviews can be a reliable source of data upon which to base expert opinion, so long as such data is reasonably relied upon by experts in the relevant field") (citing *United States v. Lundy*, 809 F.2d 392, 395-96 (7th Cir. 1987))).

Signal's argument regarding Ms. Burke's interviews first takes issue with the process of choosing the Plaintiffs to be interviewed. The process for selecting interviewees for Ms. Burke, however, was primarily a matter of scheduling. (*See* Burke Dep. 20:21-22.) But regardless of how plaintiffs were identified to be interviewed, the interview process, and Ms. Burke's methodology as a whole, was reliable and based upon sufficient facts and data. *See In re Titanium Dioxide Antitrust Litig.*, No. 10-0318, 2013 WL 1855980, at *9 (D. Md. May 1, 2013) ("While the Defendants may draw attention to the thoroughness of [the expert's] review of the record, and emphasize that [the expert] looked only to the portions of the record that Plaintiffs' counsel selected, these facts do not call into question the reliability of [the expert's] methodology.").

Signal also takes issue with Ms. Burke's conducting her interviews by telephone and with her note-taking practices, but neither the telephone interviews nor the note-taking practices lessen the reliability of her methods. In an interview in which demeanor and credibility are not being weighed and statements are being assumed true, as they were in this case, it is irrelevant whether the conversation takes place in person or over the phone. Indeed, at least one court within the Fifth Circuit has permitted an expert to rely on interviews that the expert did not even conduct himself, let alone over the phone. *Houston Police Officers' Union v. City of Houston Police Dep't*, No. H-00-2184, 2001 WL 36103817, at *2 (S.D. Tex. Sept. 26, 2001) (stating that

9

the expert relied on a "handwritten summation prepared by members of his staff, . . . and did not personally interview the interviewees"). Furthermore, Signal provides no argument beyond the assessment of demeanor as to why telephone interviews are unreliable. Finally, arguments regarding the interviews are merely arguments regarding the bases and sources of Ms. Burke's testimony, and therefore go to the weight of the testimony rather than its admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (citing U*nited States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty.*, 80 F.3d 1074, 1077 (5th Cir. 1996)). If Signal disputes the quality or quantity of facts upon which Ms. Burke's opinions are based, its remedy is cross-examination and presentation of contrary evidence.

> 3. *Ms. Burke Does Not Offer an Opinion as to the Mental State of the Plaintiffs and Is Permitted to Testify as to How Known Trafficking Schemes Affect Workers Like the Plaintiffs.*

Signal next argues that, because "Ms. Burke is not a licensed therapist and has no professional licenses", she may not offer opinions regarding the "mental health, wellbeing, or state of the Plaintiffs." (Mot. at 9.[6]) But Ms. Burke is not offering opinions on the actual mental health, wellbeing, or state of mind of particular Plaintiffs. Nor does she purport to be a licensed therapist, a psychologist or an expert on mental health. Ms. Burke is a labor trafficking expert, and as such, is eminently qualified to testify as to how trafficking schemes like this one affect workers in positions similar to the Plaintiffs. Her testimony on this issue will help the jury to understand both the dynamics and effects of labor trafficking on the Plaintiffs.

---

[6] Signal does not actually identify the portion of Rule 702 that it considers to be violated by permitting Ms. Burke to testify as to the "mental health, wellbeing, or state of the Plaintiffs." Based upon the content of this section of the Motion, Plaintiffs believe Signal to be raising an objection to Ms. Burke's qualification as an expert on this issue, and analyze the objection accordingly.

10

For instance, when Ms. Burke opines that the Plaintiffs experienced a climate of fear or a mental health effect as a result of their experiences, she is not asserting that she finds their statements to have been credible or offering a diagnosis of the Plaintiff(s). Plaintiffs themselves can and likely will describe the mental and physical effects that being trafficked had on them. Ms. Burke will instead be drawing on her vast experience to speak to the effect that aspects of trafficking patterns similar to the Signal scheme have on workers like Plaintiffs:

> I will discuss similarities between [other similar cases of human trafficking] and this one in order to illustrate behavior patterns of the workers…. I have interviewed [numerous types of trafficked workers] and all have described a similar climate of fear … [T]he commonalities are in the dynamics of the exploitation and the effect on the workers.

(Report, 19-20; *see also id.* at 6 ("[I]t is my opinion that the Plaintiffs in this case had similar experiences to other trafficking schemes with recognizable fact patterns."))

In *Elat*, the court distinguished between the opinions of Ms. Burke that related solely to the patterns and effects of human trafficking, and those that related more to the mental state of the Plaintiffs. 993 F. Supp. 2d at 515-17. Ms. Burke's opinions in this case are in line with the former – which the court admitted, on the basis that the testimony would be helpful to a jury. *Id.* at 514. The testimony in *Elat* that the court admitted, like the testimony here, related to: "the patterns of coercion and threats that are typically present in situations involving the exploitation of foreign workers"; "the effects that lack of familiarity with United States laws, customs, and norms, little or no access to information or support outside the employer's family, and physical isolation have on the behavior of migrant workers"; and "how it is common for traffickers to exert control and foster dependency in a variety of ways that are both subtle and overt." *Id.* Because Ms. Burke is not offering opinions on the mental state of the Plaintiffs, but rather on the

11

broader impact of human trafficking on Plaintiffs and others similarly situated, Signal's Motion should be denied.

    4.    *Ms. Burke's Testimony Does Not and Will Not Take the Form of Legal Conclusions.*

Ms. Burke's testimony does not and will not offer legal conclusions. It instead offers insights into how the scheme perpetrated by Signal and its co-Defendants compares to other trafficking schemes with recognizable fact patterns.

Rule 704 provides that an "opinion is not objectionable just because it embraces an ultimate issue." This rule does not give experts the authority to opine on legal conclusions, and Ms. Burke has not done so here. The question of determining whether a statement is permissible or impermissible on this basis "is not a facile one," as it is largely a question of whether the opinion is appropriately fact-bound and avoids legal terms of art. *See Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) (distinguishing, as an example, between a question about "capacity to make a will" and "sufficient mental capacity to know the nature and extent of his property . . . and to formulate a rational scheme of distribution"); *United States v. Milton*, 555 F.2d 1198, 1204 (5th Cir. 1977) (finding that characterizing certain transactions as "lay-offs" was permissible).

Certain courts have determined that the appropriate analysis is whether the term utilized by the expert has a "specialized meaning in law that is different from its meaning in popular vernacular." *United States v. St. Bernard Parish*, No. 12-321, 2013 WL 1563242, at *5 (E.D. La. Apr. 12, 2013) (noting that "a legal conclusion is at issue in determining whether there has been discrimination because the term 'discrimination' has a specialized meaning in law"). In this vein, Signal argues that opinion testimony such as Ms. Burke's contains legal conclusions if

"the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." (Mot., 10.) Under this approach, evaluating a witness's use of a contested term is a two-step process: First, does the term have a recognized legal meaning? And, second, is the vernacular meaning separate, distinct and specialized from that legal meaning?

Signal's Motion addresses only the first of these two steps. In particular, Signal references terms such as "forced labor, human trafficking and slavery" as being found in certain statutes. (*See id.*) But the Motion fails to allege that the vernacular meanings differ from the legal meanings of the terms. Indeed, despite the presence of those terms in various statutes, the terms "forced labor," "human trafficking," and "slavery" all have legal meanings that are substantially similar, if not identical, to their vernacular meanings. The *Elat* court agreed, stating that "nothing in the submissions filed by Plaintiff or the Defendants, nor my own research, suggests that 'human trafficking' has a meaning other than its colloquial meaning…." *Elat*, 993 F. Supp. 2d at 513. Ms. Burke's use of those terms, given their vernacular meanings, does not turn her permissible expert opinions into impermissible legal conclusions. Accordingly, Signal's motion to exclude her testimony should be denied.

        5.    *Signal's Unfounded Attacks on Ms. Burke's "Candor" Go To the Weight, Rather Than the Admissibility, of Ms. Burke's Testimony.*

Signal finally alleges that Ms. Burke has demonstrated a lack of candor by "misrepresent[ing] her credentials" and "lack[ing] familiarity with her materials considered." (Mot., 2-3.) Given that Signal concedes Ms. Burke is qualified as a trafficking expert, the alleged issue of her candor, if relevant at all, goes to the weight rather than the admissibility of

13

her testimony. Out of an abundance of caution, however, Plaintiffs will briefly address the matter herein.

Signal first alleges that Ms. Burke has misrepresented her credentials by stating she had completed coursework in a clinical psychology Ph.D. program and was a licensed therapist. As to the first issue, Ms. Burke completed the courses in the program that she set out to take and therefore believed the representation in her Report to be accurate. (*See* Burke Dep. 27:23 – 28:5.) Ms. Burke did not intend to implicate any other meaning for the phrase, "complet[ing] coursework." (*Id.*) Furthermore, the reference in Ms. Burke's Report to her being a licensed therapist was inadvertently taken from a text she prepared while a licensed therapist. Ms. Burke is not masquerading as a licensed therapist; she openly stated in her Deposition and prior expert engagements that she was not licensed. (*See id.* at 24:10-15 ("My license is not current …. I am not currently a practicing therapist…."); 175:17 – 176:5 (discussing statements in *Elat* opinion that Ms. Burke was neither a licensed psychologist, nor a licensed therapist).)

Signal next alleges that Ms. Burke is unfamiliar with her materials considered. As the basis for this allegation, Signal cites the absence, in Ms. Burke's *David* report, of a work cited in her *Samuel* and *Joseph* reports that was authored by Signal's trafficking expert. But Plaintiffs are not seeking admission of Ms. Burke's testimony in the *David* case. What Ms. Burke has or has not listed on her expert report in that case is not relevant here. Beyond the dispute as to Ms. Burke's decision not to cite this work in her *David* report, Signal cites no basis for the allegation that Ms. Burke did not consider it in *Samuel*. On the contrary, as discussed in her Deposition, Ms. Burke is familiar with and able to discuss the work, but simply did not find it overwhelmingly informative. (*See id.* at 40:5 – 41:9.)

As a final matter, even were the Court to find that Signal had raised a valid objection to some portion of Ms. Burke's anticipated testimony – and Signal has not – Plaintiffs submit that such objection would constitute grounds only for limiting the scope of such testimony, rather than excluding it entirely. *See*, *e.g.*, *Elat*, 993 F. Supp. 2d at 514-17 (excluding Ms. Burke's testimony only in part).

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (a) deny the Motion, (b) permit Ms. Burke to testify as an expert at trial and (c) grant such further relief as is just and proper under the circumstances.

DATED: November 3, 2014            Respectfully Submitted,

| | |
|---|---|
| KILPATRICK TOWNSEND & STOCKTON, LLP<br>bboice@kilpatricktownsend.com<br>bcorgan@kilpatricktownsend.com<br>spangborn@kilpatricktownsend.com<br>sramsey@kilpatricktownsend.com<br>hheindel@kilpatricktownsend.com<br>tludlam@kilpatricktownsend.com<br>kreed@kilpatricktownsend.com<br>abelagodu@kilpatricktownsend.com<br>rwilliamson@kilpatricktownsend.com<br>liza.akins@kilpatricktownsend.com | By:    *s/ Shane G. Ramsey*<br>William H. Boice<br>Georgia Bar No. 065725<br>Brian G. Corgan (*Pro Hac Vice*)<br>Georgia Bar No. 187700<br>Susan W. Pangborn (*Pro Hac Vice*)<br>Georgia Bar No. 735027; CA Bar No. 282533<br>Shane G. Ramsey (*Pro Hac Vice*)<br>Georgia Bar No. 940547<br>Heather L. Heindel (*Pro Hac Vice*)<br>Georgia Bar No. 285204<br>Akarsh P. Belagodu (*Pro Hac Vice*)<br>Georgia Bar No. 496714<br>Reginald A. Williamson (*Pro Hac Vice*)<br>Georgia Bar No. 462110<br>Elizabeth Crabtree Akins (*Pro Hac Vice*)<br>Georgia Bar No. 796422<br>1100 Peachtree Street, Suite 2800<br>Atlanta, GA 30309-4528<br>Telephone: (404) 815-6500<br>Facsimile: (404)-815-6555<br><br>Taylor H. Ludlam (*Pro Hac Vice*)<br>North Carolina Bar No. 42377<br>4208 Six Forks Road, Suite 1400 |

        Raleigh, NC 27609

        Kristopher L. Reed (*Pro Hac Vice*)
        Colorado Bar No. 36991
        1400 Wewatta Street, Suite 600
        Denver, CO  80202

        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify on November 3, 2014, a true and correct copy of **SAMUEL PLAINTIFFS' RESPONSE IN OPPOSITION TO SIGNAL DEFENDANTS' MOTION IN LIMINE TO EXCLUDE/LIMIT TESTIMONY OF FLORENCE BURKE** was filed electronically with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filings to all attorneys of record.

I FURTHER CERTIFY that U.S. Mail sent to the address of record for Global Resources, Inc. has been returned undeliverable, therefore I am unable to serve a copy of these pleadings on Global Resources, Inc.  The last known address of Global Resources, Inc. is:

> Global Resources, Inc.
> c/o Michael Pol
> 13 Herring Road
> Beaumont, MS 39423-2055

KILPATRICK TOWNSEND & STOCKTON, LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309-4528
Telephone:  (404) 815-6500
Facsimile:  (404)-815-6555
sramsey@kilpatricktownsend.com

By:   *s/ Shane G. Ramsey*
Shane G. Ramsey (*Pro Hac Vice*)
Georgia Bar No. 940547

Attorney for Plaintiffs